## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **UNITED STATES AUTOMOBILE ASSOCIATION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:18-cv-245-JRG** |
| **WELLS FARGO BANK, N.A.,** | |
| **Defendant.** | |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I. STATEMENT OF ISSUES ................................................................................................. 2

II. BACKGROUND ............................................................................................................... 2

III. LEGAL STANDARDS ..................................................................................................... 6

    A. This case should be disposed of at the pleading stage. ...........................................6

    B. The law of 35 U.S.C. § 101 ...................................................................................8

IV. ARGUMENT..................................................................................................................... 9

    A. The claims of the Asserted Patents are substantially similar and the § 101
       analysis may be accomplished using two representative claims. .........................10

    B. Claim construction is not necessary to resolve the Asserted Patents'
       invalidity under 35 U.S.C. § 101. .........................................................................11

    C. *Alice* Step One:  The Asserted Patents are directed to the abstract idea of
       monitoring, capturing, and transmitting an image. .............................................13

    D. *Alice* Step Two:  The Asserted Patents do not contain an inventive concept
       that transforms the abstract idea. ..........................................................................19

V. CONCLUSION................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S.Ct. 2347 (2014) ...........................................................8, 9, 10, 19, 21, 23, 24

*Amdocs (Israel) Limited v. Openet Telecom, Inc.,*
  841 F.3d 1288 (Fed. Cir. 2016)...........................................................................8

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.,*
  133 S. Ct. 2107 (2013) .......................................................................................8

*Bancorp Services LLC v. Sun Life Assur. Co.,*
  687 F.3d 1266 (Fed. Cir. 2012)..........................................................................17

*Becton, Dickinson and Co. v. Baxter Int'l, Inc.,*
  127 F. Supp. 3d 687 (W.D. Tex. 2015).................................................................18

*buySAFE, Inc. v. Google Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014)......................................................................7, 22

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
  Case No. 17-cv-05928, 2018 WL 1610690 (N.D. Cal. April 3, 2018)....................21

*Clear with Computers, LLC v. Altec Indus., Inc.,*
  Case No. 6:14-cv-79, 2015 WL 993392,
  *aff'd* 636 F. App'x 1015 (Fed. Cir. 2016).........................................7, 9, 11, 15, 16, 21, 23, 24

*Content Extraction and Transmission LLC v. Wells Fargo Bank, NA,*
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................7, 10, 11

*Cyberfone Sys., LL v. CNN Interactive Group,*
  558 F. App'x 988 (Fed. Cir. 2014) .....................................................................18

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011)......................................................................9, 15

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014).....................................................................19, 23

*Dealertrack, Inc. v. Huber,*
  582 F.3d 1315 (Fed. Cir. 2012)...........................................................................7

*Electric Power Group, LLC v. Alstom S.A.,*
  830 F.3d. 1350 (Fed. Cir. 2016)......................................................15, 16, 17, 22

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)........................................................................9, 19, 23

*Fairwarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016).................................................................................17

*Falkon Treasures LLC v. ADIDAS America, Inc.*,
   No. 2:16-cv-653, 2017 WL 1376447 (E.D. Tex. Apr. 17, 2017) .........................7, 9

*Genetic Tech. Ltd. v. Merial, L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016).................................................................................15

*Gottschalk v. Benson*,
   409 U.S. 63 (1972).....................................................................................................15

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) ......................................................................................6

*Hughes v. Tobacco Inst., Inc.*,
   278 F.3d 417 (5th Cir.2001) ........................................................................................7

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)..................................................................................20

*Mantis Commnc's, LLC v. Baskin-Robbins Franchising, LLC, et al.*,
   Case No. 2:17-cv-328, 2017 WL 557519 (E.D. Tex. Nov. 17, 2017) ..................7, 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)..............................................................8, 9, 14, 15, 16, 17, 23

*Mobile Telecomm. Techs., LLC v. Blackberry Corp.*,
   Case No. 3:12-cv-1652, 2016 WL 2757371 (N.D. Tex. May 12, 2016) ................21

*My Health, Inc. v. ALR Techs., Inc.*
   Case No. 2:16-cv-535, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) ...................17

*My Health, Inc. v. DeVibiss Healthcare, LLC*,
   Case No. 2:16-cv-535, 2017 WL 3836124 (E.D. Tex. Feb. 14, 2017)....................17

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ...........................................................................9

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*,
   Case No. 6:15-cv-682, 2016 WL 3584195 (E.D. Tex. Jan. 4, 2016)......................18

*SAP Am., Inc. v. InvestPic, LLC*,
   890 F.3d 1016 (Fed. Cir. 2018).............................................................7, 19, 20, 21

*Smart Authentication IP, LLC v. USAA*,
    Case No. 2:16-cv-1232, Dkt. No. 37 (E.D. Tex. Feb. 6, 2017) .........................................10, 11

*SmarTEN LLC v. Samsung Elecs. Am., Inc.*,
    Case No. 1:17-cv-1381, 2018 WL 1368268 (E.D. Va. Mar. 16, 2018)...................................18

*Smartflash LLC v. Apple Inc.*,
    680 F. App'x 977 (Fed. Cir. 2017) .......................................................................................22

*St. Isidore Research, LLC v. Comerica Inc., et al.*,
    Case No. 2:15-cv-1390, Dkt. No. 54 (E.D. Tex. Dec. 8, 2015)...............................................10

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir.2000) ....................................................................................................7

*In re TLI Comm. LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016)................................................................................................22

*Voest–Alpine Trading USA Corp. v. Bank of China*,
     142 F.3d 887 (5th Cir.1998) ...................................................................................................6

*Wolf v. Capstone Photography, Inc.*,
    Case No. 2:13-cv-09573, 2014 WL 7639820 (C.D. Cal. 2014) .............................................22

*Zuili v. Google LLC*,
    722 F. App'x 1027 (Fed. Cir. 2018) .......................................................................................19

**Statutes**

35 U.S.C. § 101............................................................................................7, 8, 9, 10, 11, 12, 15, 17

**Rules**

FED. R. CIV. P. 12 .............................................................................................................2, 6, 7, 24

The mental process of taking a picture is not patentable.  From the advent of photography in the 1800s to the current environment of ubiquitous selfies and social media, the mental process of taking a picture remains omnipresent.  Indeed, today thousands of mobile phone users and photographers (professional and lay alike) every minute will mentally frame a picture, adjust the camera angle or zoom to optimize the picture, and capture the desired image.  Nowhere is this mental process more astutely captured than in Pisa, Italy, where every day tourists angle and adjust their cameras and smartphones to capture this famous image:



The mental process of framing, monitoring, and then capturing an image is not patentable.  Tacking on an added step of transmitting the image is also not patentable—as this is merely tantamount to sharing the resulting image with social media or even with friends and family.

In this case, however, USAA is now asserting patents that attempt to claim this mental process—albeit in the context of mobile check deposit.  USAA seeks to patent the mental process of taking an image of a check—framing the image, monitoring the image, adjusting the camera based on simple feedback, taking the picture, and then transmitting it.  USAA patents merely seek to move this process from the human mind to a generic computer processor in violation of now well-established Supreme Court precedent. Once the standard two-step *Alice* test is applied to USAA's patents, however, the result is plain.  The patents are invalid for attempting to patent the

patent-ineligible, abstract, and wholly-mental practice of monitoring, capturing, and transmitting an image.

## I. STATEMENT OF ISSUES

Wells Fargo requests that the Court dismiss USAA's Complaint (Dkt. No. 1) pursuant Rule 12(c) because the Asserted Patents[1] are directed to the abstract idea and do not include additional meaningful limitations amounting to an inventive concept that could render the claims eligible for patenting.

## II. BACKGROUND

The four Asserted Patents stem from two patent families. The '779 Patent and the '517 Patent have the same priority date (August 28, 2009), share the same specification, and are both entitled "Systems and Methods for Alignment of Check during Mobile Deposit." Likewise, the '571 Patent and the '090 Patent have the same priority date (August 21, 2009), share the same specification, and share similar titles: "Systems and Methods for Image Monitoring of Check during Mobile Deposit," and "Systems and Methods for Image and Criterion Monitoring during Mobile Deposit," respectively.

In addition, all four Asserted Patents concern the same abstract concept of monitoring, capturing, and transmitting an image. USAA agrees at least in part with this characterization, as USAA alleged in its Complaint that all four Asserted Patents addressed "technological problems associated with computer systems used as part of capturing images . . . ." (Dkt. No. 1 at ¶¶ 15 and 17 (emphasis added)). USAA's descriptions of the Asserted Patents similarly capture the abstract concept of monitoring, capturing, and transmitting an image. For example, USAA describes the

---

[1] U.S. Patent Nos. 8,699,779 (the "'779 Patent"), 9,336,517 (the "'517 Patent"), 9,818,090 (the "'090 Patent"), and 8,977,571 (the "'571 Patent") (collectively, the "Asserted Patents").

'779 and '517 Patents as being directed to a "check <u>monitoring system</u> that monitors specific features of the check, such as alignment, an automatic <u>image capture system</u> that works in concert with the alignment monitoring system, and a <u>transmission</u> system." (*Id.* at ¶ 14 (emphasis added)). USAA describes the '090 and '571 in similar terms: "a <u>check monitoring system</u> that monitors specific features of the check with respect to a monitoring criterion, a feedback system[2] that instructs the user regarding how to satisfy the monitoring criterion, and <u>an automatic capture system</u> that works in concert with the monitoring system to automatically capture a check image when the monitoring criterion is satisfied." (*Id.* at ¶ 16)

With regard to communication networks or hardware, none of the specifications for the four Asserted Patents describe novel or unique communications networks or hardware (either on the bank's end or with the user). Instead, all four specifications describe the networks and hardware needed as "any suitable network," "any combination of systems and subsystems," "any combination of hardware components . . . and/or software components," and "any type of mobile device."

For example, the specifications state that "any suitable network" will suffice. (*See, e.g.,* '779 Patent at 17:35-37 ("The network 1014 may be any suitable network and may support any appropriate protocol suitable for communication to the computer 1010."). The specifications list the generic possibilities: "The user 102 may communicate with financial institution 130 by way of communications network 120 such as an intranet, the Internet, a local area network (LAN), a wide area network (WAN), a wireless fidelity (WiFi) network, a public switched telephone network (PSTN), a cellular network, a voice over Internet protocol (VoIP) network, and the like." ('779

---

[2] Note, as discussed further below, the inclusion of a "feedback system" is merely an extension of the monitoring system—and one that in and of itself is abstract.

3

Patent at 3:13-18, '517 Patent at 3:24-30, '090 Patent at 3:29-35, and '571 Patent at 3:12-18).

Indeed, no novel or unique communications network is described anywhere in any Asserted Patent.

Likewise, the specifications describe the financial institution's hardware and software in highly generic terms.  For example, the Asserted Patents state that hardware "may include any combination of systems and subsystems such as electronic devices including, but not limited to, computers, servers, databases, or the like," with such devices including "any combination of hardware components such as processors, databases, storage drives, registers, cache, random access memory (RAM) chips, data buses, or the like and/or software components such as operating systems, database management applications, or the like."  ('779 Patent at 4:22-32, '517 Patent at 4:35-43, '090 Patent at 5:2-11, and '571 Patent at 4:48-56).

The Asserted Patents similarly describe the user's hardware and software as any type of mobile device, including "a mobile phone (also known as a wireless phone or a cellular phone), a personal digital assistant (PDA), or any handheld computing device, for example."  ('779 Patent at 3:49-52, '517 Patent at 3:60-63, '090 Patent at 4:1-4, and '571 Patent at 3:48-51).   The components of that mobile device are generically stated to include "a processor 1020,[3] a storage

---

[3] The processor is further generically described as follows:  "The processor 1020 represents a central processing unit of any type of architecture, such as a CISC (Complex Instruction Set Computing), RISC (Reduced Instruction Set Computing), VLIW (Very Long Instruction Word), or a hybrid architecture, although any appropriate processor may be used."  ('779 Patent at 16:13-18, '517 Patent at 16:26-31, '090 Patent at 19:25-31, and '571 Patent at 18:51-56).

device 1022,[4] an output device 1024,[5] an input device 1026,[6] and a network interface device 1028, all connected via a bus 1030.[7]" ('779 Patent at 16:10-13, '517 Patent at 16:23-26, '090 Patent at 19:22-25, and '571 Patent at 18:48-51).  The software employed on this device is also generically described as program modules . . . includ[ing] routines, programs, objects, components, data structures, etc. that perform particular tasks or implement particular abstract data types," or as a software object that may operate through an API compatible with any known mobile operating system. (*See* '779 Patent at 7:55-8:2 and 15:65-16:2, '517 Patent at 7:64-8:13 and 16:11-15, '090 Patent at 11:35-50 and 19:9-13, and '571 Patent at 11:6-21 and 18:36-40).  Indeed, the wholly generic nature of the computing environment in question is exemplified in Figure 10 of the Asserted Patents, in which the entire environment is expressed in generic terms:

---

[4] The storage device is further generically described as follows:  "The storage device 1022 represents one or more mechanisms for storing data.  For example, the storage device 1022 may include read-only memory (ROM), RAM, magnetic disk storage media, optical storage media, flash memory devices, and/or other machine-readable media. In other embodiments, any appropriate type of storage device may be used." ('779 Patent at 16:35-40, '517 Patent at 16:48-53, '090 Patent at 19:46-52, and '571 Patent at 19:5-10).

[5] The output device is further generically described as follows:  "The output device 1024 is that part of the computer 1010 that displays output to the user. The output device 1024 may be a liquid crystal display (LCD) well-known in the art of computer hardware." ('779 Patent at 16:63-66, '517 Patent at 17:9-11, '090 Patent at 19:46-52, and '571 Patent at 19:5-10).

[6] The input device is further generically described as follows:  "The input device 1026 may be a keyboard, mouse or other pointing device, trackball, touchpad, touch screen, keypad, microphone, voice recognition device, or any other appropriate mechanism for the user to input data . . . ." ('779 Patent at 17:7-11, '517 Patent at 17:20-24, '090 Patent at 20:19-24, and '571 Patent at 19:43-48).

[7] The network interface device and bus are further generically described as follows: "The network interface device 1028 provides connectivity from the computer 1010 to the network 1014 through any suitable communications protocol," and "[t]he bus 1030 may represent one or more busses, e.g., USB, PCI, ISA (Industry Standard Architecture), X-Bus, EISA (Extended Industry Standard Architecture), or any other appropriate bus and/or bridge (also called a bus controller" ('779 Patent at 17:15-24, '517 Patent at 17:28-36, '090 Patent at 20:27-35, and '571 Patent at 19:51-59).



1000

***FIG. 10***

(*Id.* at Fig. 10).

## III.   LEGAL STANDARDS

### A.     This case should be disposed of at the pleading stage.

Rule 12(c) of the Federal Rules of Civil Procedure provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). In ruling on a motion under Rule 12(c), the Court may consider the pleadings themselves, and any exhibits thereto or matters incorporated by reference therein.  *See Voest–Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 n.4 (5th Cir.1998) (holding that documents attached to the pleadings "thereby [become] part of [the] pleadings").  The ultimate question for the court in

deciding a Rule 12(c) motion is whether, viewed in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir.2001); *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 440 n.8 (5th Cir.2000).

As the Federal Circuit recently reaffirmed, patent subject matter eligibility under § 101 is a question of law particularly suitable for resolution at the pleading stage of a patent litigation matter. *SAP Am., Inc. v. InvestPic, LLC*, 890 F.3d 1016, 1020 (Fed. Cir. 2018) (affirming Rule 12 invalidity finding and stating that "[l]ike other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."); *see also Content Extraction and Transmission LLC v. Wells Fargo Bank, NA*, 776 F.3d 1343 (Fed. Cir. 2014). Indeed, this Court has recognized as much, and has invalidated numerous patents at the Rule 12 stage. *See Clear with Computers, LLC v. Altec Indus., Inc.*, Case No. 6:14-cv-79, 2015 WL 993392, at *3 (recognizing that "a determination of patent validity under § 101 may be made at the pleading stage") (Gilstrap, J.), *aff'd* 636 F. App'x 1015 (Fed. Cir. 2016); *Falkon Treasures LLC v. ADIDAS America, Inc.*, No. 2:16-cv-653, 2017 WL 1376447, at *1 (E.D. Tex. Apr. 17, 2017) (Gilstrap, J., adopting report and recommendation of Payne, M.J.); and *Mantis Commnc's, LLC v. Baskin-Robbins Franchising, LLC, et al.*, Case No. 2:17-cv-328, 2017 WL 557519, at *1 (E.D. Tex. Nov. 17, 2017) (same).

The focus of a § 101 inquiry, even at the pleading stage, is on the claims. *Dealertrack, Inc. v. Huber*, 582 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). Claim construction is not required to conduct a § 101 analysis. *See, e.g.*, *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (upholding Judge Stark's grant

of defendant's 12(c) motion). Thus, motions to dismiss and motions for judgment on the pleadings on § 101 grounds—like Wells Fargo's motion here—can be and routinely are decided <u>without</u> claim construction. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014) (finding subject matter ineligible without performing claim construction).

### B.     The law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. But the Supreme Court specifically recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and <u>abstract ideas</u>." *Alice*, 134 S. Ct. at 2354 *(quoting Assoc. for Molecular Pathology v. Myriad Genetics, Inc.,* 133 S. Ct. 2107, 2116 (2013))*.* Patent law does not allow monopolization of these basic "principle[s] of the physical or social sciences" because they are the "building blocks of human ingenuity." *Id.* at 2354, 2359 (emphasis added).  Instead, such building blocks should be "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 70 (2012) (internal quotations omitted).

Determining whether a patent claim impermissibly claims an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains such an abstract idea, the court evaluates whether there is, apart from the abstract idea, "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). The analysis typically begins by comparing the claim at issue to claims with a "similar or parallel descriptive nature" that have been analyzed in previous cases. *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016) ("We begin, then, with an examination of eligible and ineligible claims of a similar nature from past cases.").

Transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 566 U.S. at 72). In the context of computer-related technology, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Indeed, if—as here—a claim could be performed in the human mind, or by a human using pencil-and-paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use,' but they also can be 'done mentally.'") (citation omitted).

## IV.    ARGUMENT

This Court has efficiently applied the Supreme Court and Federal Circuit's bright-line rules of patent-eligibility to dismiss patent cases on the pleadings. *See Clear with Computers*, 2015 WL 993392, at *6; *Falkon Treasures*, 2017 WL 1376447, at *1; *Mantis Commnc's*, 2017 WL 557519, at *1.  USAA's infringement claims should be similarly dismissed because the Asserted Patents simply cannot survive the straightforward analysis these cases require.

Here, the Asserted Patents as a whole are directed to the same concept and may be treated similarly via two representative claims.  Moreover, the Asserted Patents may be invalidated at the pleading stage because claim construction is not necessary.  Here, the claims can be well understood without construction or are so generic that no construction would provide meaningful limitations to transform them into eligible subject matter.  As such, claim construction will not alter the § 101 analysis.  With these potential roadblocks easily cleared, the Asserted Patents are invalid under *Alice* step one because they claim nothing more than the abstract idea of monitoring, capturing, and transmitting an image.  This conclusion of invalidity remains untouched in *Alice*

step two because the claims add nothing more.  The entirety of the claims addresses the abstract idea itself performed on mere generic computer components.

A.     **The claims of the Asserted Patents are substantially similar and the § 101 analysis may be accomplished using two representative claims.**

The use of representative claims as a proxy for a claim-by-claim analysis of eligibility under 35 U.S.C. §101 is a well-accepted practice, and indeed it is often a practical necessity.  *See Alice*, 134 S.Ct 2359-60 (finding 208 claims to be patent-ineligible based on analysis of one representative claim); *see also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (finding that for the purpose of a § 101 challenge "1) the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea, and 2) claim 1 of the '855 patent and claim 1 of the '416 patent are representative").  Indeed, when USAA itself challenges the validity of claims based on § 101, it uses representative claims for its own purposes (including before this Court).  *See Smart Authentication IP, LLC v. USAA*, Case No. 2:16-cv-1232, Dkt. No. 37, at 8 (E.D. Tex. Feb. 6, 2017); *St. Isidore Research, LLC v. Comerica Inc., et al.*, Case No. 2:15-cv-1390, Dkt. No. 54, at 1-3 (E.D. Tex. Dec. 8, 2015).  The use of representative claims is also particularly appropriate where, as here, the Asserted Patents belong to similar patent families, involve the same technology, and share nearly identical patent specifications.

Here, claim 10 of the '779 Patent and claim 11 of the '090 Patent are representative of the claims of the Asserted Patents for the purposes of this Motion, and are reproduced below:

| '779 Patent, Claim 10 | '090 Patent, Claim 11 |
| --- | --- |
| 10. A non-transitory computer-readable medium comprising instructions for depositing a check, said instructions being executed by a processor of a mobile device to: | 11. A method for capturing an image of a target document by a mobile computing device, the method comprising:<br><br>    monitoring a target document in a field of view of an image capture device with |

| '779 Patent, Claim 10 | '090 Patent, Claim 11 |
|---|---|
| project an alignment guide in a display of the mobile device, the display of the mobile device displaying a field of view of a camera of the mobile device: | respect to a monitoring criterion, wherein the image capture device is included in the mobile computing device; |
| monitor an image of the check that is within the field of view of the camera; | controlling a presentation device to present feedback information describing an instruction for satisfying the monitoring criterion, wherein the presentation device is included in the mobile computing device; |
| determine whether the image of the check aligns with the alignment guide; | |
| automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and | determining whether the monitoring criterion is satisfied based on the target document in the field of view of the image capture device; and |
| transmit the image of the check from the mobile device to a deposit system. | when the monitoring criterion is determined to be satisfied, controlling the image capture device to capture an image depicting the target document in the field of view of the image capture device. |

All of the claims of the Asserted Patents contain similar limitations.  The only differences are minor—clarifying or adding minor features such as adjusting the alignment guide, editing the captured image, obtaining financial information the check image, storing the image, changing the format of the feedback instruction, or taking a second image if the first is not satisfactory.

    **B.**    **Claim construction is not necessary to resolve the Asserted Patents' invalidity under 35 U.S.C. § 101.**

Both this Court and the Federal Circuit have routinely recognized that claim construction is not necessary to resolve a § 101 inquiry.  *See Content Extraction*, 776 F.3d at 1349, and *Clear with Computers*, 2015 WL 993392, at *3.  Indeed, as USAA has repeatedly argued before this Court, claim construction is not required to conduct a § 101 analysis. *See Smart Authentication*, Dkt. No. 37, at 22-23, and *St. Isiodore*, Dkt. No. 54, at 6.   This is particularly true in situations such as this where (as USAA itself has recognized in similar cases):

- the routine steps of the claim "can be well understood without construction,"

- the claimed steps are "so generic . . . that no construction would provide meaningful limitations to transform the abstract nature of the claims into an otherwise eligible and inventive concept," or

- the patent-eligibility issue is ripe for resolution because "construing these terms would not alter the Court's analysis under § 101."

*Id.*

Moreover, USAA's infringement allegations in the Complaint provide a clear picture of the perceived breadth with which USAA views its claims.  The alignment guides, monitoring criteria, and feedback instructions claimed in the Asserted Patents are nothing more than abstract, mental processes that any human goes through when capturing an image.  When taking a picture— whether it be a selfie or a family photo—we all go through the mental processes of checking the image in the viewfinder (or on the smartphone screen) against the desired outcome.  We tell ourselves mentally to "center the image," and "hold steady."  We tell ourselves to "fit the image on our mobile device's camera screen," "get closer," or "check the lighting."  The breadth of USAA's view of these Asserted Patents is captured in their use of these very same mental processes as alignment guides, monitoring criteria, and feedback instructions accused of infringement, such as "center check and hold steady," "place your check on a dark-colored, plain surface that's well lit," "position your camera directly over the check (not at an angle)," "fit[] all 4 corners in the guides of your mobile device's camera screen," and/or "get closer":

| | |
|---|---|
|  | *See* Complaint at ¶ 36. |
| | *Id.* at ¶ 38; |
| 74. Wells Fargo Mobile Deposit monitors the image of the check in the field of view of the camera and provides visual feedback to the customer, including, for example, indicating whether the customer should "Get closer" (e.g., move the device closer to the check) or "Hold steady" (e.g., hold the device in position). | *Id.* at ¶ 74. |

Thus, based on USAA's own allegations the claims cover nothing more than the mental processes we all use to monitor, correct, and then take a desired photo. No claim construction is necessary based on USAA's prior positions and its current allegations.

**C.** *Alice* **Step One: The Asserted Patents are directed to the abstract idea of monitoring, capturing, and transmitting an image.**

Step one of the two-part *Alice* test requires that the Court determine whether the claims are directed toward a patent-eligible concept. The claims of the Asserted Patents attempt to claim a mental process employed by even the most novice of photographers—merely replacing the human mind with a generic computer processor. Moreover, the inclusion of an additional "transmitting"

step in some claims does not save them from abstractness, as mere transmission has long been found to be abstract by this Court and the Federal Circuit.

First, the representative claims of Asserted Patents attempt to claim the mental or human-performed process of taking a picture (*i.e.*, monitoring an image, determining whether that image should be captured, and then capturing that image).  These mental or human-performed steps are highlighted in blue below (the additional transmission step—in purple—will be addressed shortly).

| **'779 Patent, Claim 10** | **'090 Patent, Claim 11** |
| --- | --- |
| 10. A non-transitory computer-readable medium comprising instructions for depositing a check, said instructions being executed by a processor of a mobile device to:<br><br>**project an alignment guide** in a display of the mobile device, the display of the mobile device displaying a field of view of a camera of the mobile device:<br><br>**monitor an image of the check that is within the field of view of the camera;**<br><br>**determine whether the image of the check aligns with the alignment guide;**<br><br>**automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and**<br><br>transmit the image of the check from the mobile device to a deposit system. | 11. A method for capturing an image of a target document by a mobile computing device, the method comprising:<br><br>**monitoring a target document in a field of view of an image capture device with respect to a monitoring criterion**, wherein the image capture device is included in the mobile computing device;<br><br>controlling a presentation device to **present feedback information describing an instruction for satisfying the monitoring criterion**, wherein the presentation device is included in the mobile computing device;<br><br>**determining whether the monitoring criterion is satisfied based on the target document in the field of view of the image capture device; and**<br><br>**when the monitoring criterion is determined to be satisfied, controlling the image capture device to capture an image depicting the target document in the field of view of the image capture device**. |

Both the Supreme Court, the Federal Circuit, and this Court have long recognized that patents cannot claim mental processes.  In *Mayo*, the Supreme Court was clear that "mental

14

processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Mayo*, 566 U.S. at 70 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). The Supreme Court then applied this principle to invalidate diagnostic and therapeutic method claims that combined routine and conventional physical implementation of a law of nature with a simple mental process." *Id.* at 78 (invalidating claims directed, *inter alia*, to "determining" a diagnostic criteria and then acting upon that determination).

Similarly, the Federal Circuit has recognized that "[m]ethods which can be performed entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). To that end, merely "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d. 1350, 1354 (Fed. Cir. 2016) (invalidating patent directed to "monitoring" and analyzing data). Such mental process steps include those that "merely set[] forth a routine comparison that can be performed by the human mind." *Genetic Tech. Ltd. v. Merial, L.L.C.*, 818 F.3d 1369, 1378-79 (Fed. Cir. 2016).

This Court has also recognized that mental processes that could be performed as easily by a human are not patent-eligible. *Clear with Computers*, 2015 WL 993392, at *4 (invalidating patents under § 101 where "[t]he steps performed by the claimed computer elements are functional in nature and could easily be performed by a human").

Here, the Asserted Patents claim the very same type of mental process found invalid in previous cases like *Mayo*, *Electric Power*, *Genetic Technologies*, and *Clear with Computers*. Fundamentally, the Asserted Patent claims begin by claiming the mental process of deciding what picture to capture and framing that picture.  In the technical parlance of the representative claims this occurs via an "alignment guide" or a "monitoring criterion," but could just as easily be performed by an artist or photographer using their hands to frame a picture (as demonstrated graphically below):

 

This picture framing can also just as easily occur inside viewfinders of a camera, which have been around for decades.  This can be seen in the myriad of live preview viewfinders set forth in Wells Fargo's counterclaim.  (Dkt. No. 16 at ¶¶ 11-91).  In order to match the desired outcome with the current viewfinder, the photographer may have to give himself or herself a number of mental instructions—or "feedback information."  As USAA alleges (*see* Section III.B. above), such instructions may be to "Get closer," or "Hold steady."  The photographer might also want to change the angle of the shot by crouching down or hovering over the picture's subject—or in the parlance of USAA's allegations "Position your camera directly over the [subject]."  Next, the photographer makes a routine, mental comparison of what is seen in their viewfinder to the picture they desire to take—the "determining" step in the parlance of the Asserted Patents.  With this comparison mentally satisfied, the photographer performs the last step, pressing the shutter release to take the desired picture—or "automatically capture" the image.

All of these are mental steps taken by photographers every day.  Indeed, quite often the mental processes of human photographers are much more advanced than taking a simple picture of a document.  Instead, professional photographers perform complex adjustments to monitor and ultimately capture an image of their subject—leading to amazing photographic art.  But even lay photographers perform mental processes more complex than those in the Asserted Patents— leading to millions of selfies per day and the oft-shared Tower of Pisa pictures discussed above. USAA cannot patent the mental steps necessary to take a picture.

Indeed, courts have routinely found these "monitoring," "determining," "capturing," and "instruction" steps of the Asserted Patents to be abstract concepts not eligible for patent protections.  Both the Federal Circuit and this Court have invalidated patents under § 101 directed to or claiming "monitoring" steps as abstract or mental processes.  *See Electric Power*, 830 F.3d. at 1354 (invalidating patent directed to "monitoring" and analyzing data); *Fairwarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (invalidating patent "directed to the broad concept of monitoring audit log data"); *My Health, Inc. v. ALR Techs., Inc.* Case No. 2:16-cv-535, 2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017) (Payne, M.J.) (finding that "[p]atient treatment and monitoring methods" have long been declared ineligible and cannot be differentiated from "ordinary mental processes," and awarding fees).  Similarly, the Federal Circuit, this Court, and even the Supreme Court have found "determining" steps to be abstract.  *Mayo*, 566 U.S. at 79 (invalidating patent with a "'determining' step [that] tells the doctor to determine the level of the relevant metabolites in the blood"); *Bancorp Services LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1279-1280 (Fed. Cir. 2012) (invalidating "claims that require determining values . . . as a matter of mere mathematical calculation"); *My Health, Inc. v. DeVibiss Healthcare, LLC*, Case No. 2:16-cv-535, 2017 WL 3836124, at *4 (E.D. Tex. Feb. 14, 2017) (Payne, M.J.) (finding patient

treatment claims with multiple "determining" steps of the type that "have universally been found to be unpatentable under *Alice*").  Similar findings have been made by courts for "capturing" and "instruction/feedback" steps as well.  *SmarTEN LLC v. Samsung Elecs. Am., Inc.*, Case No. 1:17-cv-1381, 2018 WL 1368268, at *3-6 (E.D. Va. Mar. 16, 2018) (invalidating patent claiming various "monitoring subsystem[s]" that "provide feedback to [the] user"); *Becton, Dickinson and Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 690 (W.D. Tex. 2015) (invaliding patent containing steps of "capturing, via an image capture device . . . one or more images" and "transmitting the one of more images captured").[8]

Because the "monitoring," "determining," "capturing," and "instruction" steps are all mental process steps of the type routinely found to be abstract and invalid by this and other courts, the only step remaining is the "transmitting" step (in purple above).  The mere transmission of data, however, does not save these claims.  Transmitting data is itself an abstract process.  To carry the metaphor above forward, the transmitting step is tantamount to a photograph or mobile device user sharing their photos (such as their Tower of Pisa photo) with friends and family, or uploading the image to any number of social media sites.  To similar ends, the mere transmission of data has also routinely been held by this and other Courts to be abstract in nature (or part of claims found abstract and patent ineligible).  *See Rothschild Location Techs. LLC v. Geotab USA, Inc.*, Case No. 6:15-cv-682, 2016 WL 3584195, at *5 (E.D. Tex. Jan. 4, 2016) (recognizing that "[t]he Federal Circuit has identified method claims that involve collecting, organizing, recognizing, and/or <u>transmitting</u> information as abstract ideas" (emphasis added) (citing *Cyberfone Sys., LL v. CNN Interactive Group*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("using categories to organize, store,

---

[8] *See also* Exhibit A (gathering additional cases where Federal Circuit and district courts have found such steps abstract).

and <u>transmit</u> information")); *Zuili v. Google LLC*, 722 F. App'x 1027, 1030-31 (Fed. Cir. 2018) (invalidating claims "directed to the abstract idea of collecting, <u>transmitting</u>, analyzing, and storing data to detect fraudulent and/or invalid clicks" (emphasis added)).

Because the claims of the Asserted Patents attempt to claim the abstract idea of monitoring, capturing, and transmitting an image, step one of the *Alice* inquiry is satisfied here.  The Asserted Patents are directed to a patent-ineligible concept.  Because the claims do not contain some additional inventive concept, something in addition to the abstract idea of monitoring, capturing, and transmitting an image, the claims fail step two and are invalid.

### D.   *Alice* Step Two:  The Asserted Patents do not contain an inventive concept that transforms the abstract idea.

The Asserted Patents do not contain an inventive concept under *Alice* step 2.  Once the abstract idea is itself removed, only generic computer components remain, which are insufficient to save the claims.  Moreover, USAA's expected responses under *DDR*, *Enfish*, and their progeny are easily addressed.

Turning to the second step of the *Alice* test, the Court must consider the remaining elements of the claims, <u>other than the abstract idea</u>, to determine whether they contain an "inventive concept" sufficient to transform the abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2357.  In other words, "[w]hat is needed is an inventive concept in the non-abstract application realm."  *SAP Am., Inc. v. InvestPic, LLC*, 890 F.3d 1016, 1022 (Fed. Cir. 2018).  The Supreme Court, however, has been clear, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice*, 134 S.Ct. at 2358.  Here, the majority of the claims are written and directed toward the abstract idea itself (see highlighted claims in Section C above).  All that is left in the non-abstract realm are generic

computer components, which cannot save the claims.  The claims are thus not transformed, but instead remain abstract and unpatentable.

Here, the Asserted Patents describe <u>all</u> of the computer components in highly-generic terms.  The communications network may be "<u>any suitable network</u> and may support <u>any appropriate protocol</u> suitable for communication."  (*See, e.g.*, '779 Patent at 17:35-37 (emphasis added)).  The bank systems are described as "<u>any combination of hardware</u> components such as processors, databases, storage drives, registers, cache, random access memory (RAM) chips, data buses, or the like and/or software components such as operating systems, database management applications, or the like."  (*See, e.g.*, *id.* at 4:22-32 (emphasis added)).  Such networks and computers have routinely been found to be generic such that they do not impart an inventive concept under *Alice* step 2.  *SAP Am., Inc.*, 890 F.3d at 1023 (collecting cases and stating that "this court has ruled many times that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea").

The user's mobile device likewise is described generically as "a mobile phone (also known as a wireless phone or a cellular phone), a personal digital assistant (PDA), or <u>any handheld computing device</u>, for example."  (*See, e.g.*, *id.* at 3:49-52 (emphasis added)).  Such handheld computing devices are then further described as having only the most generic of components: "a processor 1020, a storage device 1022, an output device 1024, an input device 1026, and a network interface device 1028, all connected via a bus 1030."  (*See, e.g.*, *id.* at 16:10-13; *see also* notes 3-7 above).  Such mobile devices have also routinely been found to be generic such that they do not impart an inventive concept under *Alice* step 2.  *See Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (invalidating patent that "simply recites that the abstract

idea will be implemented using the conventional components and functions generic to electronic mobile devices"); *Mobile Telecomm. Techs., LLC v. Blackberry Corp.*, Case No. 3:12-cv-1652, 2016 WL 2757371, at *4 (N.D. Tex. May 12, 2016) (Lynn, J.) ("mobile units are generic computer hardware components" that "do not add something significantly more as required to transform the abstract idea"); *Cellspin Soft, Inc. v. Fitbit, Inc.*, Case No. 17-cv-05928, 2018 WL 1610690, at *7 (N.D. Cal. April 3, 2018) (invalidating patent that "merely utilizes generic computer hardware and software components, namely a ubiquitous mobile phone" (internal quotations omitted)).

As such, all of the hardware associated with the Asserted Claims do not impart an inventive concept sufficient to save these claims.

The stated software features also do not save the claims.  First, as demonstrated in the section above, the non-hardware claim language is directed to the abstract idea itself.  Claim language directed to the abstract idea itself cannot provide the necessary inventive concept under *Alice* step 2—which seeks something in addition to the abstract idea or "an inventive concept in the non-abstract application realm."  *SAP Am., Inc.*, 890 F.3d at 1022.

Second, any attempts by USAA to argue that the "automatic" nature of the image capture save these claims must fail.  The fact that any image capture may be done "automatically" in the Asserted Claims does not save them from ineligibility.  As this Court has recognized, that a generic or "general purpose computer with minimal programming can perform functions 'automatically' and 'dynamically,'" does not save the claims.  *Clear with Computers*, 2015 WL 993392, at *4.  Rather the "implementation of an abstract idea on such a computer is not an inventive concept." *Id.* (citing *Alice*, 134 S.Ct. at 2358).

Third, even if the Court finds that the transmission of data is not itself abstract (as argued above), the mere transmission of data of generic networks does not impart an inventive concept

sufficient to save the claims.  The Federal Circuit has recognized that mere transmission by itself is "not even arguably inventive."  *BuySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *see also Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 983 (Fed. Cir. 2017) ("merely storing, underlined transmitting, retrieving, and writing data to implement an abstract idea on a computer does not transform the nature of the claim' into a patent-eligible application." (emphasis added, internal quotation omitted).

Fourth, the fact that the mobile devices contain a camera is not sufficient to save the claims. At this point, cameras (including cameras embedded in mobile devices) are generic and as such are insufficient to provide an alleged inventive concept. *In re TLI Comm. LLC Patent Litigation*, 823 F.3d 607, 612, 614 (Fed. Cir. 2016) (invalidating patent claiming a mobile device with camera where "the problem facing the inventor was not how to combine a camera with a cellular telephone," and instead the use of a mobile device camera "fall[s] squarely within our precedent finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea"); *see also Wolf v. Capstone Photography, Inc.*, Case No. 2:13-cv-09573, 2014 WL 7639820, at *12 (C.D. Cal. 2014) (invalidating claims that "recite generic technological categories such as a computer network server, a web-site server, and a digital camera").

USAA will likely take issue with the real-world, human activities above, including the Tower of Pisa example by pointing out that the Asserted Claims are limited to the capture of financial checks.  But the fact that the Asserted Claims are limited to check image capture does not save the claims.  Limiting an abstract idea to a particular field—such as monitoring an electric power grid—does not save a claim from abstraction or provide an inventive concept. *Electric Power Group*, 830 F.3d. at 1356.  Moreover, the Supreme Court has made clear that preemption

is not the test that Courts and judges should apply—opting instead for the two-step test laid out in *Mayo* and followed in *Alice*.  *Mayo*, 566 U.S. at 88-89 ("Courts and judges are not institutionally well suited to making the kinds of judgments needed to distinguish among different laws of nature. And so the cases have endorsed a bright-line prohibition against patenting laws of nature, mathematical formulas and the like, which serves as a somewhat more easily administered proxy for the underlying 'building-block' concern); *accord Alice*, 134 S.Ct. at 2355.  As such, any protestation by USAA that its abstract claims are narrow or specific to the idea of check processing is misplaced.

In addition, the steps of the asserted claims also do not "improve the functioning <u>of the computer</u> itself," *Alice*, 134 S. Ct. at 2359 (emphasis added), which could be accomplished for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or by improving "the way a computer stores and retrieves data in memory," *Enfish*, 822 F.3d at 1339.  The claims nowhere recite a particularized improvement to the function of the servers, networks, or mobile devices at issue.  Instead, as in *Clear with Computers*, "[t]he claims here invoke computer technology only to take advantage of the relative ease by which a computer, rather than a human," can monitor, capture, and transmit images.  *Clear with Computers*, 2015 WL 993392, at *4.

The claims here also do not "effect an improvement in any other technology or technical field." *See Alice*, 134 S.Ct. at 2359.  USAA alleges that the Asserted Patents "solve discrete, technological problems associated with computing systems used as part of capturing images of checks for deposit on mobile devices."  (*See* Dkt. No. 1 at ¶ 15).[9]  But these claims, like those in

---

[9] Although this quote is specifically alleged for the '779 and '517 patents in the Complaint, USAA includes a virtually identical self-serving allegation for the '090 and '571 patents, merely replacing

*Clear with Computers*, contain "no inventive algorithms or otherwise creative means for [performing the claimed method] other than an instruction that the basic process be performed using generic computer components."  *Clear with Computers*, 2015 WL 993392, at *5.

## V.      CONCLUSION

Because the claims of the Asserted Patents disclose only an abstract idea run on generic computer components, there is no "inventive concept" that could transform the unpatentable, abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2357.  The Asserted Patents are not patent-eligible and this case should be dismissed now at the Rule 12 stage.

---

"computing systems" with "computer systems" and "for deposit on mobile devices" with "for deposit using mobile devices."  Dkt. No. 1 at ¶ 17.  The similarity of these vague, high-level statements further confirms that all of the Asserted Patents are equally abstract under Step 1, and that there is no inventive concept in the non-abstract application realm at Step 2.

September 18, 2018                                    Respectfully submitted,

                                                              By:   */s/ Thomas M. Melsheimer*  
                                                                   Thomas M. Melsheimer  
TX Bar No. 13922550  
tmelsheimer@winston.com  
Michael A. Bittner  
TX Bar No. 24064905  
mbittner@winston.com  
J. Travis Underwood  
TX Bar No. 24102587  
tunderwood@winston.com  
**Winston & Strawn LLP**  
2121 North Pearl Street, Suite 900  
Dallas, TX 75201  
(214) 453-6500 – Telephone  
(214) 453-6400 – Facsimile  

E. Danielle T. Williams  
NC Bar No. 23283  
dwilliams@winston.com  
**Winston & Strawn LLP**  
300 South Tryon Street, 16th Floor  
Charlotte, NC 28202  
(704) 350-7700 – Telephone  
(704) 350-7800 – Facsimile  

Matthew R. McCullough  
CA Bar No. 301330  
mrmccullough@winston.com  
**Winston & Strawn LLP**  
275 Middlefield Road, Suite 205  
Menlo Park, CA 94025  
(650) 858-6500 – Telephone  
(650) 858-6550 – Facsimile  

*Counsel for Defendant*  
*Wells Fargo Bank, N.A.*

## CERTIFICATE OF CONFERENCE

On September 13, 2018, lead counsel for Wells Fargo and USAA conferred via telephone regarding the subject matter of this motion per the requirements of Local Rule CV-7(h) and Judge Gilstrap's Standing Order. Counsel indicated that USAA is opposed to this motion and that the parties' disagreed that prior claim construction is not needed to inform the Court's analysis as to patentability.

/s/ *Michael A. Bittner*
Michael A. Bittner

## CERTIFICATE OF COMPLIANCE WITH
## STANDING ORDER ON 35 U.S.C. § 101 MOTION PRACTICE

_____  The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

__X__  The parties **disagree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

/s/ *Michael A. Bittner*
Michael A. Bittner

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

/s/ *Michael A. Bittner*
Michael A. Bittner

26