**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION a Texas reciprocal inter-insurance exchange, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., a national banking association, | ) ) ) | Civil Action No. 2:18-CV-245 (JRG) JURY TRIAL DEMANDED |
| Defendant. | ) ) ) ) ) ) | **FILED UNDER SEAL** |

---

**FIRST AMENDED COMPLAINT**

---

Plaintiff United Services Automobile Association ("USAA"), by its undersigned counsel, for its Complaint against defendant Wells Fargo Bank, N.A. ("Wells Fargo"), states as follows, with knowledge as to its own acts, and on information and belief as to the acts of others:

1. This lawsuit is brought to address Wells Fargo's large-scale use of USAA's patented technologies that relate to remote check deposit for mobile banking systems. These patented technologies enable USAA to connect members of the military and their families across the globe to financial services. USAA developed these technologies seeking to deliver on its mission to improve the financial security of its members. In its decades of serving the military community, USAA has worked to innovate in serving the needs of its members, including a lifestyle that can make getting to a bank branch difficult, particularly if they are out to sea or deployed outside the United States. USAA's innovations and investments are protected by multiple patents issued by the United States Patent & Trademark Office. Wells Fargo has

CONFIDENTIAL - ATTORNEYS' EYES ONLY

nonetheless chosen to use USAA's patented technologies without permission and to use them for its own commercial gain.  This lawsuit is designed to address Wells Fargo's misconduct.  USAA intends to defend the significant investments it has made in these technologies for the benefit of its members.

## II.      THE PARTIES

2.      Plaintiff USAA is a reciprocal interinsurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.  The USAA family of companies is dedicated to the financial well-being of members of the military and their families through the provision of insurance, banking, investment, and retirement products and services.  USAA does business in this judicial district, and through its website at www.usaa.com and USAA Mobile smartphone applications.

3.      On information and belief, Wells Fargo is a national banking association organized under the laws of the United States of America.  Wells Fargo does business throughout the United States, including in this judicial district.

## III.     JURISDICTION AND VENUE

4.      Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq*.).

5.      The Court has personal jurisdiction over Wells Fargo because it has substantial, systematic and continuous contacts with this judicial district.  Wells Fargo has a regular and established place of business in the State of Texas and in the Eastern District of Texas, including operating hundreds of bank branches and ATMs in Texas and numerous bank branches and ATMs in this judicial district, and conducts business with customers residing in this judicial district both through its bank branches and ATMs and its online and mobile banking services.  Wells Fargo has committed acts of patent infringement and, as detailed below, contributed to or induced acts of patent infringement by others in this judicial district and elsewhere in Texas.  Wells Fargo is

CONFIDENTIAL - ATTORNEYS' EYES ONLY

registered to do business in Texas and maintains an agent authorized to receive service of process within Texas.

6.      Venue is proper under 28 U.S.C. § 1400(b) because Wells Fargo has committed acts of infringement and maintains a regular and established place of business in this judicial district.

## IV.     FACTUAL ALLEGATIONS

### USAA's Pioneering Remote Check Deposit Innovations

7.      This is an action for infringement of patents awarded to research and development teams at USAA for their years of work developing and improving technologies that, among other things, allow banking customers to easily and conveniently deposit paper checks into their accounts from their smartphones – wherever they might be in the world.

8.      USAA has been serving present and former members of the U.S. military and their families since 1922 and has become one of America's leading insurance and financial services companies.  USAA offers its members a wide range of insurance, banking and investment products and services designed to help them meet their financial security needs.  Headquartered in San Antonio, Texas, with offices in several states and Europe, USAA employs more than 33,000 people to provide for the financial wellbeing of over 12 million members.

9.      Unlike traditional banks, which typically maintain a network of brick-and-mortar bank branches or ATMs for customers to use, USAA typically interacts with its members remotely, either by mail, telephone, or with increasing frequency through its usaa.com website or USAA's mobile application.  USAA's online and mobile presence is critical to its members' well-being, as USAA's military members are often stationed in distant locations around the world with limited access to traditional banking services.

10.     This limited access resulted in USAA's members being unable to deposit checks and other financial instruments in a timely manner and compelled USAA employees to invent a new way to provide financial security to its members.  Driven by its mission, USAA began investing substantial research and development resources into developing and implementing

CONFIDENTIAL - ATTORNEYS' EYES ONLY

systems and methods that would provide USAA's members with a real-time capability to deposit a financial instrument from just about anywhere.  These pioneering systems and methods resulted in the launch of a consumer remote deposit capture system under the name "Deposit@Home®". Deposit@Home® was the first system that allowed consumer banking customers to deposit individual checks immediately, in real-time and remotely using consumer imaging devices.

11.     After the successful launch of Deposit@Home®, USAA launched its Deposit@Mobile® system through the USAA Mobile application for mobile phones.  For the first time, Deposit@Mobile® allowed customers to deposit checks anytime, anywhere by taking photographs with a mobile phone's digital camera.

12.     USAA has continued to innovate and improve its Deposit@Mobile® product, developing and implementing technological features that improve the user's mobile deposit experience, including features designed to help injured veterans and others with visual disabilities use the pioneering service.  To date, USAA has invested many millions of dollars and thousands of employee-hours in the development and implementation of its mobile deposit technologies. USAA has not licensed its competitors such as Wells Fargo to use these patented technologies.

**The USAA Patents-in-Suit**

13.     USAA is the assignee of all right, title, and interest in U.S. Patent Nos. 8,699,779 (the "'779 Patent"), 9,336,517 (the "'517 Patent"), 9,818,090 (the "'090 Patent"), and 8,977,571 (the "'571 Patent") (collectively referred to as the "USAA Patents" in this Complaint).  The USAA Patents arose from years of research and development of remote check deposit technologies by engineers in USAA's Innovation Lab.

<u>The '779 and '517 Patents</u>

14.     The '779 Patent and the '517 Patent, entitled "Systems and methods for alignment of check during mobile deposit," were invented by Bharat Prasad, Minya Liang, and Reynaldo Medina.  The patents are, generally speaking, directed to improved computing systems that enable commercially-viable remote check deposit systems, including those used today by Wells Fargo, for example, by deploying an "alignment guide," a check monitoring system that monitors specific

CONFIDENTIAL - ATTORNEYS' EYES ONLY

features of the check, such as alignment, an automatic image capture system that works in concert

with the alignment monitoring system, and a transmission system.  The addition of these structures

to remote check deposit systems dramatically increases the efficiency and performance of remote

check deposit computing systems.  Below is a figure from the patents.



*FIG. 3*

15.     The '779 Patent and '517 Patent describe systems and methods for providing an

"alignment guide."  The systems and methods taught by the '779 and '517 Patents solve discrete,

technological problems associated with computing systems used as part of capturing images of

checks for deposit on mobile devices, representing new, novel and useful improvements over the

existing and/or patentably distinct means and methods.  For example, an alignment guide may be

"provided in the field of view of a camera associated with a mobile device used to capture an

image of a check."  The alignment guide may be "adjustable at the mobile device."  As another

example, "an image may be captured when the image of the check is detected to be within the

alignment guide" and the "image capture may be performed automatically."  The systems and

methods taught by the '779 and '517 Patents provide improved functionality over conventional

techniques used in prior art systems, resulting in an improved user interface for the customer's

mobile device, including, for example, improving the quality of captured check images through

the use of a displayed alignment guide, improving the efficiency of systems used for remote check

depositing, and making remote check deposit systems commercially viable by reducing error rates

                CONFIDENTIAL - ATTORNEYS' EYES ONLY

and improving security.  The patents' improvements to mobile check depositing systems are further described in their specifications.

<u>The '090 and '571 Patents</u>

16.     The '090 Patent and the '571 Patent, entitled "Systems and methods for image and criterion monitoring during mobile deposit," were invented by Michael Patrick Bueche, Jr., Bharat Prasad, Minya Liang, Reynaldo Medina, and Charles Lee Oakes III.  The patents are, generally speaking, directed to improved computing systems that enable commercially-viable remote check deposit systems, including those used today by Wells Fargo, for example, by deploying a check monitoring system that monitors specific features of the check with respect to a monitoring criterion, a feedback system that instructs the user regarding how to satisfy the monitoring criterion, and an automatic capture system that works in concert with the monitoring system to automatically capture a check image when the monitoring criterion is satisfied.  The addition of these systems to remote check deposit systems dramatically increases the efficiency and performance of remote check deposit systems.  Below is a figure from the patents.



*FIG. 3*

17.     The '090 Patent and '571 Patent describe systems and methods for "monitor[ing], prior to the image of the check being captured" an "image of a check that is in the field of view of a camera."  The systems and methods taught by the '090 and '571 Patents solve discrete, technological problems associated with computer systems used as part of capturing images of

                      CONFIDENTIAL - ATTORNEYS' EYES ONLY

checks for deposit using mobile devices, representing new, novel and useful improvements over the existing and/or patentably distinct means and methods.  For example, "when the image of the check in the field of view passes monitoring criteria, an image may be taken by the camera and provided from the mobile device to a financial institution."  The image capture "may be performed automatically as soon as the image of the check is determined to pass the monitoring criteria."  As another example, "feedback may be provided to the user of the camera regarding the image of the check in the field of view."  The systems and methods taught by the '090 and '571 Patents provide improved functionality over conventional techniques used in prior art systems, resulting in an improved user interface for the customer's mobile device, including, for example, improving the quality of captured check images through the use of image monitoring and feedback indicators. The patents' improvements to mobile check depositing systems are further described in their specifications.

18.     The problems address by the patents in suit are technical problems.  An industry white paper entitled "Check 21: Controlling Image Quality at the Point of Capture" was published in 2004.  The white paper acknowledges that one challenge facing RDC is that the human eye does not have the ability to distinguish between a check image that meets digital processing criteria and one that does not.  For example, the white paper points out that what is an acceptable image to one person may be unacceptable to another.  The white paper discussed the importance of ensuring that an acceptable image of a check is captured at the first point of entry to the check clearing process, as a check image with quality issues is likely to be unpayable and represents a liability to the bank.  Further, the report identified and discussed basic measurement metrics to ensure that a check image may be successfully cleared.  A true and correct copy of "Check 21: Controlling Image Quality at the Point of Capture," is attached as Exhibit 8.  The deposit of check images requires compliance with certain technical specifications, such as the "Specifications for Electronic Exchange of Check and Image Data," also known as DSTU X9.37-2003: a 156-page technical specification published by the Accredited Standards Committee X9, Inc. that spelled out,

                    CONFIDENTIAL - ATTORNEYS' EYES ONLY

in precise detail, "the file sequences, record types, and field formats to be used for the electronic exchange of check MICR line, associated check processing data and check images in the form of cash letters." A true and correct copy of "Specifications for Electronic Exchange of Check and Image Data" is attached as Exhibit 9.

19.     Prior to USAA's inventions, paper checks were processed for deposit using specialized check scanning machines located in bank facilities or leased to businesses for use in their back offices.  High-tech equipment manufacturers sold a variety of check scanning machines that cost up to tens of thousands of dollars.  A true and correct copy of a scanner matrix posted on RemoteDepositCapture.com which includes data compiled shortly after the filing date of the USAA Patents regarding specialized check scanning machines is attached as Exhibit 10.

20.     The passage of the Federal "Check 21 Act" in 2003 increased the technical risks associated with check imaging.  A report by Alogent entitled "The Client Business Case for Remote Deposit Capture" explained how, under Check 21, items can now be returned due to poor image quality, either on the digital image, or the printed Image Replacement Document (IRD).  A true and correct copy of "The Client Business Case for Remote Deposit Capture" is attached as Exhibit 11.

21.     The RDC information clearing house for the industry published the "Remote Deposit Capture Basic Requirements" on November 8, 2010.  In the report, the RDC clearing house reported that all solutions for remote deposit capture of checks required some type of specialized check scanning hardware to capture images of checks. The report also stated that costs for check scanning hardware range from $500 into the 10s of thousands, depending upon volumes, quality, automation and other considerations.  A true and correct copy of "Remote Deposit Capture Basic Requirements" is attached as Exhibit 12.

22.     In 2004, Panini, a leading manufacturer of specialized check scanning devices, published a report entitled "Distributed Check Processing in a Check 21 Environment."  The report explained that distributed check image capture for RDC requires specialized machines that

CONFIDENTIAL - ATTORNEYS' EYES ONLY

can cost up to $7,500.  A true and correct copy of "Distributed Check Processing in a Check 21 Environment" is attached as Exhibit 13.

23.     In 2005, CIT Engineering Team, who designs specialized scanners for the RDC process, observed that the RDC process is so delicate that small insights and/or small oversights are what distinguish an outstanding check scanning product from a mediocre one.  A true and correct copy of "Teller Scanner Performance and Scanner Design- Camera Position Relative to the Feeder" is attached as Exhibit 14.

24.     In 2005, All My Papers published a report entitled "Combining Remote Capture and IRD Printing."  The report acknowledges the consequences of a flaw in image capture to the mobile deposit process, noting that a mistake with the original check imaging follows the check image and the extracted data all the way through the check image clearing process. A true and correct copy of "Combining Remote Capture and IRD Printing" is attached as Exhibit 15.

25.     In 2005, Canon published a report entitled "Two Words Every Business Should Know- Remote Deposit."  The report stated that selecting the correct check scanning hardware that is uncomplicated and reliable is vital to the remote deposit capture process. A true and correct copy of "Two Words Every Business Should Know- Remote Deposit" is attached as Exhibit 16.

26.     In 2004, the FSTC, a financial industry technical group, published a report entitled "Image Quality and Usability Assurance- Phase I Project."  The report discussed a number of factors such as image size, skew, lightness/darkness, focus, and noise, among others that can lead to a failed image.  A true and correct copy of "Image Quality and Usability Assurance- Phase I Project" is attached as Exhibit 17.

27.     The systems recited in the claims in the patents in suit allow for the replacement of specialized scanning equipment.  In 2015, Celent published a report entitled "State of Remote Deposit Capture 2015- Mobile Is the New Scanner."  The abstract of the report observed that mobile RDC was becoming the new check scanner, with banks racing to offer mobile RDC, which Celent predicted would have a profound effect on the branch channel.[1]  A true and correct copy of

---

[1] The Federal Reserve System published "The Federal Reserve Payments Study: 2017 Annual Supplement."  The study provides details about the billions of paper checks deposited by

                CONFIDENTIAL - ATTORNEYS' EYES ONLY

the Abstract of the "State of Remote Deposit Capture 2015- Mobile Is the New Scanner" is attached as Exhibit 19.

28.     In 2016, an article entitled "Mobile Check Deposits- Pro Tips to Ensure They Go Smoothly" was published by an industry technology analyst on nerdwallet.com.  The article acknowledged that mobile check deposit is the most popular feature of mobile banking, with about 87 million people in the U.S. depositing checks using mobile check deposit.  The article also discussed how auto-capture provides a technological solution for capturing an image that allows even a first-time user to be successful. A true and correct copy of "Mobile Check Deposits- Pro Tips to Ensure They Go Smoothly" is attached as Exhibit 20.

29.     The claims of the patents in suit recite the essential elements of what the industry term's auto-capture, which involves autonomous monitoring, feedback and capture ███████████ ███████████████████████████████████████ In 2014, Mitek published an article entitled "Mitek MiSnap(TM) Mobile Auto Capture Improves Mobile Deposit(R) User Experience at Ten Leading Financial Institutions."  The article stated that auto-capture was new to Mitek's system, and that the addition of auto-capture eliminated user error by providing real-time feedback until a suitable image is detected, at which point it automatically captures the image. A true and correct copy of "Mitek MiSnap(TM) Mobile Auto Capture Improves Mobile Deposit(R) User Experience at Ten Leading Financial Institutions" is attached as Exhibit 22.

30.     A leading technology consulting firm published a report entitled "2017 Mobile Deposit Benchmark Report."  The report discussed the importance of the auto-capture feature to mobile deposit.  A true and correct copy of "2017 Mobile Deposit Benchmark Report," is attached as Exhibit 23.

31.     In 2015, Celent published a report entitled "State of Remote Deposit Capture 2015- Mobile Is the New Scanner."  The report observed acknowledged that USAA's systems result in a substantial improvement over the existing marketplace of complex, expensive check scanning

---

banking customers in the United States.  A true and correct copy of "The Federal Reserve Payments Study: 2017 Annual Supplement" is attached as Exhibit 18.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

machines and that mobile check image capture users now outnumber those using specialize desktop devices by more than 40 to 1.  A true and correct copy of the "State of Remote Deposit Capture 2015- Mobile Is the New Scanner" is attached as Exhibit 24.

32.  In June 2009, Celent published an article entitled "USAA's Mobile Remote Deposit Capture Initiative."  The article stated that mobile RDC is so disruptive that many banks might pass on the idea.  The report acknowledged that USAA's mobile RDC provided a compelling competitive advantage over other banks.  A true and correct copy of "USAA's Mobile Remote Deposit Capture Initiative" is attached as Exhibit 25.

33.  When USAA introduced its first-generation camera/imaging system on mobile devices (which the patents in suit improve upon), it was met with both delight, and concern because of its disruptive force. One major commentator observed that "USAA represents the bleeding edge of mobile banking technology" and described its first-generation system as a "technological development [ ] that allow[s] for deposits by iPhone and mobile payments."

34.  In September 21, 2009, AdAge published a report entitled "How Mobile Technology Is Changing Banking's Future."  The report stated that USAA represents the bleeding edge of mobile banking technology and described its first-generation system as a technological development that allows for mobile deposits. A true and correct copy of "How Mobile Technology Is Changing Banking's Future" is attached as Exhibit 26.

35.  In 2011, NCR published a white paper entitled "Mobile Remote Deposit Capture." The white paper reported that the average cost of processing a paper check transaction at a bank branch is $3.75, and that a mobile deposit costs just $0.14.   A true and correct copy of "Mobile Remote Deposit Capture" is attached as Exhibit 27.

36.  In March 2018, Mitek, whom Wells Fargo alleges provides its capture control software, published an article entitled "Mitek's Mobile Deposit Processes More Than Two Billion Checks, $1.5 Trillion in Cumulative Check Value."  The report stated over a recent 18-month period Mitek processed more than 1 billion checks using mobile deposit technology. A true and

CONFIDENTIAL - ATTORNEYS' EYES ONLY

correct copy of "Mitek's Mobile Deposit Processes More Than Two Billion Checks, $1.5 Trillion in Cumulative Check Value" is attached as Exhibit 28.



CONFIDENTIAL - ATTORNEYS' EYES ONLY

42.     In August 2016, Wells Fargo received a patent on systems for capturing check images.  Wells Fargo argued that the use of an "an image capture device" and a "display device" in a system which prompted the user to enter MICR numbers that were not detectable by the system rendered the claims patentable under Section 101, a position the USPTO agreed with.  Ex. 30, at 8.  Wells Fargo claimed that the improvement in the user interface which increased the efficiency of information captured from a check image transforms a claim such that it is "more than a 'generic mobile device and routine steps of displaying on a mobile device'" and instead "'addresses a business challenge . . . that is particular to the internet.'"  Id. at 9-10.

### Wells Fargo's Infringement

43.     Wells Fargo is one of the largest banks in the world with a substantial presence in mobile banking, including over 21 million active mobile banking users as of February 2018.

44.     Wells Fargo's remote deposit capture systems, including but not limited to *Wells Fargo Mobile*® Deposit, infringe the USAA Patents.  In this Complaint, Wells Fargo's remote deposit capture systems, including but not limited to the *Wells Fargo Mobile*® Deposit system, and any other infringing instrumentalities that include similar functionality, are referred to generally as "Wells Fargo Mobile Deposit."

45.     Wells Fargo's use of the USAA Patents is not licensed or authorized by USAA in any way.  USAA has not licensed any of the USAA patents to Wells Fargo.

46.     On information and belief, Wells Fargo released its Wells Fargo Mobile Deposit product to customers years after USAA had already implemented and released its Deposit@Mobile® service to widespread adoption.  At the time, the head of Wells Fargo's retail mobile channel in its Internet services group remarked that mobile deposit was "the service our mobile customers request most often" with "a lot of demand."  Exhibit 5.

47.     Wells Fargo Mobile Deposit allows Wells Fargo customers to deposit checks using their mobile devices, such as smartphones.  Through its website, for example, Wells Fargo encourages its customers to avoid "a trip to the branch" by depositing checks using Wells Fargo Mobile Deposit, touting the system's convenience, simplicity, and ease of use:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



48.     Wells Fargo also promotes Wells Fargo Mobile Deposit with video advertisements, including, for instance, to bank customers while they are waiting for service at bank branches. Wells Fargo further promotes Wells Fargo Mobile Deposit to customers using Wells Fargo ATMs.

49.     Wells Fargo Mobile Deposit is incorporated into the "Wells Fargo Mobile" iPhone and Android applications, where it is highlighted as a major feature in the applications' descriptions.  According to the Google Play Store, Wells Fargo Mobile has been downloaded over 10 million times on Android devices.  Exhibit 6.  Wells Fargo Mobile for iPhone is similarly popular, ranking #8 on the iTunes App Store's Finance category (and fourth among bank applications).  Exhibit 7.

50.     Wells Fargo Mobile Deposit allows customers to deposit checks remotely by identifying an account for deposit, entering the dollar amount of the deposit, and taking photographs of the front and back sides of the check for deposit, all using the customer's mobile device 'as instructed by Wells Fargo, as shown, for example, by the sequence of screenshots below from Wells Fargo's website:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



51.     Wells Fargo has taken advantage of USAA's pioneering efforts in mobile deposit technologies by incorporating – without permission – USAA's technological innovations into its Wells Fargo Mobile Deposit system.  For example, Wells Fargo Mobile Deposit includes features

CONFIDENTIAL - ATTORNEYS' EYES ONLY

that were invented, developed, and released to customers years earlier by USAA, such as check alignment guides and feedback indicators to assist the customer in orienting the camera and taking high-quality, legible photographs, as illustrated, for example, by the images below comparing figures from USAA's patents with an image from the Wells Fargo Mobile Deposit system:



52.    As another example, while Well Fargo's customers are following the on-screen guides and instructions to position the camera correctly over the check, Wells Fargo Mobile Deposit will automatically capture a photo of the check when the image is adequate – a feature that USAA developed years before Wells Fargo began offering mobile deposit to its customers.

53.    USAA recognizes that the advent of mobile check deposit has revolutionized the consumer banking experience, with considerable benefits for both banks and customers.  But it is improper for Wells Fargo to use, without permission, patented technologies that USAA has spent immense resources to invent, develop, implement, and perfect.  In view of the foregoing, before involving this Court in this matter, USAA approached Wells Fargo, for example in August 2017,

CONFIDENTIAL - ATTORNEYS' EYES ONLY

and engaged in good faith negotiations regarding "USAA's Remote Deposit Capture  (RDC) patents."  Wells Fargo, however, has not obtained a license to any of the USAA Patents and continues to profit by providing its infringing mobile deposit service to millions of Wells Fargo customers without USAA's permission and without any compensation to USAA.

## V.     FIRST CLAIM FOR RELIEF – '779 PATENT

54.     USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

55.     The '779 Patent, entitled "Systems and methods for alignment of check during mobile deposit," was duly and legally issued on April 15, 2014.  A true and correct copy of the '779 Patent is attached as Exhibit 1.

56.     The '779 Patent has been in full force and effect since its issuance.  USAA owns by assignment the entire right, title and interest in and to the '779 Patent, including the exclusive right to seek damages for past, current and future infringement thereof.  USAA is informed and believes, and on this basis alleges, that Wells Fargo, agents of Wells Fargo, and/or third parties acting under Wells Fargo's direction and control, including Wells Fargo's customers and partners, have committed and continue to commit acts of direct infringement of one or more claims of the '779 Patent, including, for example, Claim 10, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, Wells Fargo Mobile Deposit.  For example, on information and belief, Wells Fargo Mobile Deposit: is a system for depositing checks, comprising a software application installed on a mobile device, such as a customer's smartphone, having a camera, display, and processor configured to run the software application; projects an alignment guide in the display of the mobile device, which displays a field of view of the camera; monitors an image of a check that is within the camera's field of view; determines whether the image of the check aligns with the alignment guide; automatically captures the image of the check when it is determined to align with the alignment guide; and transmits the captured image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.  As another example, on information and belief,

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Wells Fargo Mobile Deposit comprises a software application installed on a mobile device, such as a customer's smartphone, comprising instructions being executed by a processor of the mobile device to: deposit a check; project an alignment guide in the display of the mobile device, which displays a field of view of the camera; determine whether the image of the check aligns with the alignment guide; automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and transmit the image of the check from the mobile device to a deposit system.

57.     For example, Wells Fargo Mobile Deposit comprises a system accessible through Android or iPhone smartphones:



CONFIDENTIAL - ATTORNEYS' EYES ONLY



58.     The Wells Fargo Mobile Deposit system uses the capabilities of the customer's smartphone to provide remote check depositing functionality:



59.     Wells Fargo Mobile Deposit receives, from the user, an indication of the amount of the check and the account into which the check is to be deposited:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



60.    Wells Fargo Mobile Deposit uses the smartphone's camera to capture images of the check for deposit:



61.    As illustrated in the above image, Wells Fargo Mobile Deposit projects an alignment guide in the field of view of the camera to assist the user in capturing images of the check.  Wells Fargo Mobile Deposit also provides instructions to users, including, for example, to "Center check and hold steady."

    CONFIDENTIAL - ATTORNEYS' EYES ONLY

62.     Wells Fargo Mobile Deposit includes guidelines for taking photos that work best, including, for example, to "Place your check on a dark-colored, plain surface that's well lit," "Position your camera directly over the check (not at an angle)," and "Fit all 4 corners in the guides of your mobile device's camera screen."

63.     Wells Fargo Mobile Deposit automatically captures the image of the check when it is properly aligned, as described, for example, in the instructions on Wells Fargo's website (red underlining added for emphasis):



64.     Wells Fargo has had actual knowledge of its infringement of the '779 Patent since at least the time of service of this Complaint, and continues to infringe the '779 Patent notwithstanding that knowledge.  USAA is further informed and believes that Wells Fargo has had actual knowledge of its infringement of the '779 Patent since before the time of service of this Complaint, including for the reasons that, for example: USAA put Wells Fargo on notice of the need to license its remote deposit capture (RDC) patents; USAA's Deposit@Home® and Deposit@Mobile® products were well-known and publicized; USAA has received acclaim for its pioneering technological developments in mobile deposit; USAA has marked its products with notices regarding the '779 Patent; USAA and Wells Fargo are competitors in the same industry and, in particular, offer competing mobile deposit products, giving Wells Fargo reason to investigate USAA's patents on the technologies; and USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  To the extent that Wells Fargo lacked knowledge of its infringement of the '779 Patent before the time of service of this Complaint, it remained willfully blind by affirmatively avoiding investigating USAA's patents or inspecting

CONFIDENTIAL - ATTORNEYS' EYES ONLY

USAA's mobile check deposit application, as evidenced by, for example, Wells Fargo's notice of

a need to license USAA's remote deposit capture (RDC) patents of which the '779 Patent is an

integral part, and, on information and belief, Wells Fargo's knowledge of USAA's

Deposit@Home® and Deposit@Mobile® products.

65.     Wells Fargo actively encourages, directs, and controls third parties, including its

customers and partners, to use Wells Fargo Mobile Deposit in an infringing manner, including

through Wells Fargo's website, advertisements, documentation/instructional material, customer

support, application and feature descriptions, and in-application instructions.  On information and

belief, for example, Wells Fargo contracts with Google and Apple to distribute its Wells Fargo

Mobile applications to Android and iPhone users, respectively.

66.     USAA is informed and believes, and on this basis alleges, that from at least the

time of service of this Complaint, Wells Fargo is inducing infringement of the '779 Patent,

literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b), by knowingly

encouraging or aiding third parties to make, use, sell or offer to sell Wells Fargo Mobile Deposit

in the United States, or to import Wells Fargo Mobile Deposit into the United States, and/or in

violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Wells Fargo Mobile

Deposit in or from the United States, without license or authority from USAA, with knowledge of

or willful blindness to the fact that Wells Fargo's actions will induce others, including but not

limited to its customers, partners, and/or end users, to directly infringe the '779 Patent.  USAA is

further informed and believes, and on this basis alleges, that Wells Fargo has intentionally aided

and encouraged third parties (including Wells Fargo's customers, partners, and/or end users) to

use Wells Fargo Mobile Deposit in the United States in a manner that it knows would infringe or

have a high probability of infringing the '779 Patent, with the specific intent that those performing

the acts infringe the '779 Patent.

67.     USAA is informed and believes, and on this basis alleges, that from at least the

time of service of this Complaint, Wells Fargo is contributorily infringing the '779 Patent, literally

and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c), by selling, offering to

           CONFIDENTIAL - ATTORNEYS' EYES ONLY

sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Wells Fargo Mobile Deposit for use in infringing the '779 Patent, constituting a material part of the invention, knowing Wells Fargo Mobile Deposit to be especially made or especially adapted for use in infringing the '779 Patent.  USAA is further informed and believes, and on this basis alleges, that Wells Fargo Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

68.     USAA is informed and believes, and on this basis alleges, that these third parties have infringed and will infringe the '779 Patent by using Wells Fargo Mobile Deposit in violation of 35 U.S.C. § 271(a).

69.     As a result of Wells Fargo's infringement of the '779 Patent, USAA has been damaged.  In addition, Wells Fargo's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA.  USAA is entitled to recover for damages sustained as a result of Wells Fargo's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

70.     USAA is further informed, and on this basis alleges, that Wells Fargo's infringement of the '779 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285.  As noted above, Wells Fargo has had knowledge of the '779 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.  Thus, Wells Fargo's infringing actions have been and continue to be consciously wrongful.

To the extent 35 U.S.C. § 287 is determined to be applicable, USAA is informed and believes its requirements have been satisfied with respect to the '779 Patent.

                    CONFIDENTIAL - ATTORNEYS' EYES ONLY

## VI.   SECOND CLAIM FOR RELIEF – '517 PATENT

71.    USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

72.    The '517 Patent, entitled "Systems and methods for alignment of check during mobile deposit," was duly and legally issued on May 10, 2016.  A true and correct copy of the '517 Patent is attached as Exhibit 2.

73.    The '517 Patent has been in full force and effect since its issuance.  USAA owns by assignment the entire right, title and interest in and to the '517 Patent, including the exclusive right to seek damages for past, current and future infringement thereof.

74.    USAA is informed and believes, and on this basis alleges, that Wells Fargo, agents of Wells Fargo, and/or third parties acting under Wells Fargo's direction and control, including Wells Fargo's customers and partners, have committed and continue to commit acts of direct infringement of one or more claims of the '517 Patent, including, for example, Claim 10, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, Wells Fargo Mobile Deposit.  For example, on information and belief, Wells Fargo Mobile Deposit: is a system for depositing checks, comprising a software application installed on a mobile device, such as a customer's smartphone having a processor and an information capture component, such as a camera; generates an alignment guide adapted to align with an instrument, such as a check, from which the mobile device is adapted to capture information; monitors at least one feature of the instrument detected by the information capture component and determines whether the at least one feature aligns with the alignment guide; automatically captures information of the instrument when the at least one feature aligns with the alignment guide; and transmits the captured information to a server via a communication pathway between the mobile device and the server.  As another example, on information and belief, Wells Fargo Mobile Deposit comprises a software application installed on a mobile device, such as a customer's smartphone, comprising instructions being executed by a processor of the mobile device to: monitor at least one feature of an instrument, such as a check, that is within a field of

CONFIDENTIAL - ATTORNEYS' EYES ONLY

view of the mobile device's camera and capture information of the instrument; determine whether the at least one feature aligns with an alignment guide adapted to align with the instrument; automatically capture the information of the instrument when the at least one feature is determined to align with the alignment guide; and transmit the captured information from the mobile device to a server.

75.    For example, Wells Fargo Mobile Deposit comprises a system accessible through Android or iPhone smartphones:



CONFIDENTIAL - ATTORNEYS' EYES ONLY



76.     As discussed previously, the Wells Fargo Mobile Deposit system uses the capabilities of the customer's smartphone to provide remote check depositing functionality:



77.     Wells Fargo Mobile Deposit receives, from the user, an indication of the amount of the check and the account into which the check is to be deposited:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



78.     Wells Fargo Mobile Deposit uses the smartphone's camera to capture images of the check for deposit:



79.     As illustrated in the above image, Wells Fargo Mobile Deposit projects an alignment guide in the field of view of the camera to assist the user in capturing images of the check.  Wells Fargo Mobile Deposit also provides instructions to users, including, for example, to "Center check and hold steady."

80.     Wells Fargo Mobile Deposit includes guidelines for taking photos that work best, including, for example, to "Place your check on a dark-colored, plain surface that's well lit,"

CONFIDENTIAL - ATTORNEYS' EYES ONLY

"Position your camera directly over the check (not at an angle)," and "Fit all 4 corners in the guides of your mobile device's camera screen."

81.     Wells Fargo Mobile Deposit automatically captures the image of the check when it is properly aligned, as described, for example, in the instructions on Wells Fargo's website (red underlining added for emphasis):



82.     Wells Fargo has had actual knowledge of its infringement of the '517 Patent since at least the time of service of this Complaint, and continues to infringe the '517 Patent notwithstanding that knowledge.  USAA is further informed and believes that Wells Fargo has had actual knowledge of its infringement of the '517 Patent since before the time of service of this Complaint, including for the reasons that, for example: USAA put Wells Fargo on notice of the need to license its remote deposit capture (RDC) patents; USAA's Deposit@Home® and Deposit@Mobile® products were well-known and publicized; USAA has received acclaim for its pioneering technological developments in mobile deposit; USAA has marked its products with notices regarding the '517 Patent; USAA and Wells Fargo are competitors in the same industry and, in particular, offer competing mobile deposit products, giving Wells Fargo reason to investigate USAA's patents on the technologies; and USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  To the extent that Wells Fargo lacked knowledge of its infringement of the '517 Patent before the time of service of this Complaint, it remained willfully blind by affirmatively avoiding investigating USAA's patents or inspecting USAA's mobile check deposit application, as evidenced by, for example, Wells Fargo's notice of a need to license USAA's remote deposit capture (RDC) patents of which the '517 Patent is an

CONFIDENTIAL - ATTORNEYS' EYES ONLY

integral part, and, on information and belief, Wells Fargo's knowledge of USAA's

Deposit@Home® and Deposit@Mobile® products.

83.     Wells Fargo actively encourages, directs, and controls third parties, including its

customers and partners, to use Wells Fargo Mobile Deposit in an infringing manner, including

through Wells Fargo's website, advertisements, documentation/instructional material, customer

support, application and feature descriptions, and in-application instructions.  On information and

belief, for example, Wells Fargo contracts with Google and Apple to distribute its Wells Fargo

Mobile applications to Android and iPhone users, respectively.

84.     USAA is informed and believes, and on this basis alleges, that from at least the

time of service of this Complaint Wells Fargo is inducing infringement of the '517 Patent, literally

and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b), by knowingly

encouraging or aiding third parties to make, use, sell or offer to sell Wells Fargo Mobile Deposit

in the United States, or to import Wells Fargo Mobile Deposit into the United States, and/or in

violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Wells Fargo Mobile

Deposit in or from the United States, without license or authority from USAA, with knowledge of

or willful blindness to the fact that Wells Fargo's actions will induce others, including but not

limited to its customers, partners, and/or end users, to directly infringe the '517 Patent.  USAA is

further informed and believes, and on this basis alleges, that Wells Fargo has intentionally aided

and encouraged third parties (including Wells Fargo's customers, partners, and/or end users) to

use Wells Fargo Mobile Deposit in the United States in a manner that it knows would infringe or

have a high probability of infringing the '517 Patent, with the specific intent that those performing

the acts infringe the '517 Patent.

85.     USAA is informed and believes, and on this basis alleges, that from at least the

time of service of this Complaint Wells Fargo is contributorily infringing the '517 Patent, literally

and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c), by selling, offering to

sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by

supplying or causing to be supplied in or from the United States, Wells Fargo Mobile Deposit for

CONFIDENTIAL - ATTORNEYS' EYES ONLY

use in infringing the '517 Patent, constituting a material part of the invention, knowing Wells Fargo Mobile Deposit to be especially made or especially adapted for use in infringing the '517 Patent.  USAA is further informed and believes, and on this basis alleges, that Wells Fargo Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

86.     USAA is informed and believes, and on this basis alleges, that these third parties have infringed and will infringe the '517 Patent by using Wells Fargo Mobile Deposit in violation of 35 U.S.C. § 271(a).

87.     As a result of Wells Fargo's infringement of the '517 Patent, USAA has been damaged.  In addition, Wells Fargo's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA.  USAA is entitled to recover for damages sustained as a result of Wells Fargo's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

88.     USAA is further informed, and on this basis alleges, that Wells Fargo's infringement of the '517 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285.  As noted above, Wells Fargo has had knowledge of the '517 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.  Thus, Wells Fargo's infringing actions have been and continue to be consciously wrongful.

89.     To the extent 35 U.S.C. § 287 is determined to be applicable, USAA is informed and believes its requirements have been satisfied with respect to the '517 Patent.

## VII.   THIRD CLAIM FOR RELIEF – '090 PATENT

90.     USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

     CONFIDENTIAL - ATTORNEYS' EYES ONLY

91.    The '090 Patent, entitled "Systems and methods for image monitoring of check during mobile deposit," was duly and legally issued on November 14, 2017.  A true and correct copy of the '090 Patent is attached as Exhibit 3.

92.    The '090 Patent has been in full force and effect since its issuance.  USAA owns by assignment the entire right, title and interest in and to the '090 Patent, including the exclusive right to seek damages for past, current and future infringement thereof.  USAA is informed and believes, and on this basis alleges, that Wells Fargo, agents of Wells Fargo, and/or third parties acting under Wells Fargo's direction and control, including Wells Fargo's customers and partners, have committed and continue to commit acts of direct infringement of one or more claims of the '090 Patent, including, for example, Claim 11, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, Wells Fargo Mobile Deposit.  For example, on information and belief, Wells Fargo Mobile Deposit: is a system comprising a software application installed on a mobile device, such as a customer's smartphone having a processor, an image capture device, such as a camera, and a presentation device, such as a display; monitors a target document, such as a check, in the field of view of the image capture device with respect to a monitoring criterion; controls the presentation device to present feedback information describing an instruction for satisfying the monitoring criterion; determines whether the monitoring criterion is satisfied based on the target document in the field of view of the image capture device; and controls the image capture device to capture an image depicting the target document when the monitoring criterion is determined to be satisfied.  As another example, Wells Fargo Mobile Deposit comprises a software application installed on a mobile device, such as a customer's smartphone, comprising instructions that, when executed by a processor of the mobile device, cause the processor to perform certain steps for capturing an image of a check, including: monitoring a target document, such as a check, in the field of view of an image capture device, such as the device's camera, with respect to a monitoring criterion; controlling a presentation device, such as the device's display, to present feedback information describing an instruction for satisfying the monitoring criterion; determining whether the monitoring criterion is satisfied based

CONFIDENTIAL - ATTORNEYS' EYES ONLY

on the target document in the field of view of the image capture device; and, when the monitoring criterion is deemed to be satisfied, controlling the image capture device to capture an image depicting the target document in the field of view of the image capture device.

93.    For example, Wells Fargo Mobile Deposit comprises a system accessible through Android or iPhone smartphones:



CONFIDENTIAL - ATTORNEYS' EYES ONLY



94.     As discussed above, the Wells Fargo Mobile Deposit system uses the capabilities of the customer's smartphone to provide remote check depositing functionality:



95.     Wells Fargo Mobile Deposit receives, from the user, an indication of the amount of the check and the account into which the check is to be deposited:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



96.     Wells Fargo Mobile Deposit uses the smartphone's camera to capture images of the check for deposit:



97.     As illustrated in the above image, Wells Fargo Mobile Deposit projects an alignment guide in the field of view of the camera to assist the user in capturing images of the check.  Wells Fargo Mobile Deposit also provides instructions to users, including, for example, to "Center check and hold steady."

          CONFIDENTIAL - ATTORNEYS' EYES ONLY

98.    Wells Fargo Mobile Deposit includes guidelines for taking photos that work best, including, for example, to "Place your check on a dark-colored, plain surface that's well lit," "Position your camera directly over the check (not at an angle)," and "Fit all 4 corners in the guides of your mobile device's camera screen."

99.    Wells Fargo Mobile Deposit monitors the image of the check in the field of view of the camera and provides visual feedback to the customer, including, for example, indicating whether the customer should "Get closer" (e.g., move the device closer to the check) or "Hold steady" (e.g., hold the device in position).

100.    Wells Fargo Mobile Deposit automatically captures the image of the check when the image is satisfactory, as described, for example, in the instructions on Wells Fargo's website (red underlining added for emphasis):



101.    Wells Fargo has had actual knowledge of its infringement of the '090 Patent since at least the time of service of this Complaint, and continues to infringe the '090 Patent notwithstanding that knowledge.  USAA is further informed and believes that Wells Fargo has had actual knowledge of its infringement of the '090 Patent since before the time of service of this Complaint, including for the reasons that, for example: USAA put Wells Fargo on notice of the need to license its remote deposit capture (RDC) patents; USAA's Deposit@Home® and Deposit@Mobile® products were well-known and publicized; USAA has received acclaim for its pioneering technological developments in mobile deposit; USAA has marked its products with notices regarding the '090 Patent; USAA and Wells Fargo are competitors in the same industry and, in particular, offer competing mobile deposit products, giving Wells Fargo reason to

CONFIDENTIAL - ATTORNEYS' EYES ONLY

investigate USAA's patents on the technologies; and USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  To the extent that Wells Fargo lacked knowledge of its infringement of the '090 Patent before the time of service of this Complaint, it remained willfully blind by affirmatively avoiding investigating USAA's patents or inspecting USAA's mobile check deposit application, as evidenced by, for example, Wells Fargo's notice of a need to license USAA's remote deposit capture (RDC) patents of which the '090 Patent is an integral part, and, on information and belief, Wells Fargo's knowledge of USAA's Deposit@Home® and Deposit@Mobile® products.

102.   Wells Fargo actively encourages, directs, and controls third parties, including its customers and partners, to use Wells Fargo Mobile Deposit in an infringing manner, including through Wells Fargo's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions.  On information and belief, for example, Wells Fargo contracts with Google and Apple to distribute its Wells Fargo Mobile applications to Android and iPhone users, respectively.

103.   USAA is informed and believes, and on this basis alleges, that from at least the time of service of this complaint, Wells Fargo is inducing infringement of the '090 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b), by knowingly encouraging or aiding third parties to make, use, sell or offer to sell Wells Fargo Mobile Deposit in the United States, or to import Wells Fargo Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Wells Fargo Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Wells Fargo's actions will induce others, including but not limited to its customers, partners, and/or end users, to directly infringe the '090 Patent.  USAA is further informed and believes, and on this basis alleges, that Wells Fargo has intentionally aided and encouraged third parties (including Wells Fargo's customers, partners, and/or end users) to use Wells Fargo Mobile Deposit in the United States in a manner that it knows would infringe or

   CONFIDENTIAL - ATTORNEYS' EYES ONLY

have a high probability of infringing the '090 Patent, with the specific intent that those performing the acts infringe the '090 Patent.

104.    USAA is informed and believes, and on this basis alleges, that from at least the time of service of this complaint, Wells Fargo is contributorily infringing the '090 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Wells Fargo Mobile Deposit for use in infringing the '090 Patent, constituting a material part of the invention, knowing Wells Fargo Mobile Deposit to be especially made or especially adapted for use in infringing the '090 Patent.  USAA is further informed and believes, and on this basis alleges, that Wells Fargo Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

105.    USAA is informed and believes, and on this basis alleges, that these third parties have infringed and will infringe the '090 Patent by using Wells Fargo Mobile Deposit in violation of 35 U.S.C. § 271(a).

106.    As a result of Wells Fargo's infringement of the '090 Patent, USAA has been damaged.  In addition, Wells Fargo's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA.  USAA is entitled to recover for damages sustained as a result of Wells Fargo's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

107.    USAA is further informed, and on this basis alleges, that Wells Fargo's infringement of the '090 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285.  As noted above, Wells Fargo has had knowledge of the '090 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with

CONFIDENTIAL - ATTORNEYS' EYES ONLY

reckless disregard for USAA's patent rights.  Thus, Wells Fargo's infringing actions have been and continue to be consciously wrongful.

108.    To the extent 35 U.S.C. § 287 is determined to be applicable, USAA is informed and believes its requirements have been satisfied with respect to the '090 Patent.

## VIII.   FOURTH CLAIM FOR RELIEF – '571 PATENT

109.    USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

110.    The '571 Patent, entitled "Systems and methods for image monitoring of check during mobile deposit," was duly and legally issued on March 10, 2015.  A true and correct copy of the '571 Patent is attached as Exhibit 4.

111.    The '571 Patent has been in full force and effect since its issuance.  USAA owns by assignment the entire right, title and interest in and to the '571 Patent, including the exclusive right to seek damages for past, current and future infringement thereof.  USAA is informed and believes, and on this basis alleges, that Wells Fargo, agents of Wells Fargo, and/or third parties acting under Wells Fargo's direction and control, including Wells Fargo's customers and partners, have committed and continue to commit acts of direct infringement of one or more claims of the '571 Patent, including, for example, Claim 1, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, Wells Fargo Mobile Deposit.  For example, on information and belief, Wells Fargo Mobile Deposit comprises a software application installed on a mobile device, such as a customer's smartphone, comprising instructions that, when executed by a processor, cause the processor to: monitor an image of the check in a field of view of a camera of a mobile device with respect to a monitoring criterion using an image monitoring and capture module of the mobile device; capture the image of the check with the camera when the image of the check passes the monitoring criterion; and provide the image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.  As another example, Wells Fargo Mobile Deposit comprises a software application installed on a mobile device, such as a customer's smartphone, comprising

CONFIDENTIAL - ATTORNEYS' EYES ONLY

instructions that, when executed by a processor, cause the processor to: initialize a software object on a mobile device operated by a user, the software object configured to communicate with a camera; monitor an image of the check in a field of view of the camera with respect to a monitoring criterion using an image monitoring and capture module associated with the camera; capture the image of the check using the camera when the image of the check in the field of view passes the monitoring criterion; and transmit the image of the check from the mobile device to a deposit system configured to clear the check and deposit funds of the check into a deposit account of the user.  As another example, Wells Fargo Mobile Deposit is part of a system comprising: a subsystem that receives at a server a request for access to a deposit system from a mobile device; a subsystem that receives, at the server from the mobile device, an image of the check in a field of view of a camera associated with the mobile device; a subsystem that monitors, at a computing device of the server, the image with respect to a monitoring criterion; a subsystem that provides instructions from the server to the mobile device to create a digital image of the check when the image passes the monitoring criterion; a subsystem that receives the digital image at the server from the mobile device; a subsystem that processes the digital image at a check processing module of the server; and a subsystem that deposits funds of the check into an account associated with the deposit system using the processed digital image and a check clearance module of the server.

112.    For example, Wells Fargo Mobile Deposit comprises a system accessible through Android or iPhone smartphones:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



113.    As discussed above, the Wells Fargo Mobile Deposit system uses the capabilities of

the customer's smartphone to provide remote check depositing functionality:

   CONFIDENTIAL - ATTORNEYS' EYES ONLY



114.     Wells Fargo Mobile Deposit receives, from the user, an indication of the amount of the check and the account into which the check is to be deposited:



115.     Wells Fargo Mobile Deposit uses the smartphone's camera to capture images of the check for deposit:

CONFIDENTIAL - ATTORNEYS' EYES ONLY



116.    As illustrated in the above image, Wells Fargo Mobile Deposit projects an alignment guide in the field of view of the camera to assist the user in capturing images of the check.  Wells Fargo Mobile Deposit also provides instructions to users, including, for example, to "Center check and hold steady."

117.    Wells Fargo Mobile Deposit includes guidelines for taking photos that work best, including, for example, to "Place your check on a dark-colored, plain surface that's well lit," "Position your camera directly over the check (not at an angle)," and "Fit all 4 corners in the guides of your mobile device's camera screen."

118.    Wells Fargo Mobile Deposit monitors the image of the check in the field of view of the camera and provides visual feedback to the customer, including, for example, indicating whether the customer should "Get closer" (e.g., move the device closer to the check) or "Hold steady" (e.g., hold the device in position).

119.    Wells Fargo Mobile Deposit automatically captures the image of the check when the image is satisfactory, as described, for example, in the instructions on Wells Fargo's website (red underlining added for emphasis):

CONFIDENTIAL - ATTORNEYS' EYES ONLY



120.    Wells Fargo has had actual knowledge of its infringement of the '571 Patent since at least the time of service of this Complaint, and continues to infringe the '571 Patent notwithstanding that knowledge.  USAA is further informed and believes that Wells Fargo has had actual knowledge of its infringement of the '571 Patent since before the time of service of this Complaint, including for the reasons that, for example: USAA put Wells Fargo on notice of the need to license its remote deposit capture (RDC) patents; USAA's Deposit@Home® and Deposit@Mobile® products were well-known and publicized; USAA has received acclaim for its pioneering technological developments in mobile deposit; USAA has marked its products with notices regarding the '571 Patent; USAA and Wells Fargo are competitors in the same industry and, in particular, offer competing mobile deposit products, giving Wells Fargo reason to investigate USAA's patents on the technologies; and USAA has approached Wells Fargo regarding licensing of USAA's mobile deposit patents.  To the extent that Wells Fargo lacked knowledge of its infringement of the '571 Patent before the time of service of this Complaint, it remained willfully blind by affirmatively avoiding investigating USAA's patents or inspecting USAA's mobile check deposit application, as evidenced by, for example, Wells Fargo's notice of a need to license USAA's remote deposit capture (RDC) patents of which the '571 Patent is an integral part, and, on information and belief, Wells Fargo's knowledge of USAA's Deposit@Home® and Deposit@Mobile® products.

121.    Wells Fargo actively encourages, directs, and controls third parties, including its customers and partners, to use Wells Fargo Mobile Deposit in an infringing manner, including through Wells Fargo's website, advertisements, documentation/instructional material, customer

CONFIDENTIAL - ATTORNEYS' EYES ONLY

support, application and feature descriptions, and in-application instructions.  On information and belief, for example, Wells Fargo contracts with Google and Apple to distribute its Wells Fargo Mobile applications to Android and iPhone users, respectively.

122.    USAA is informed and believes, and on this basis alleges, that from at least the time of service of this complaint, Wells Fargo is inducing infringement of the '571 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b), by knowingly encouraging or aiding third parties to make, use, sell or offer to sell Wells Fargo Mobile Deposit in the United States, or to import Wells Fargo Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Wells Fargo Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Wells Fargo's actions will induce others, including but not limited to its customers, partners, and/or end users, to directly infringe the '571 Patent.  USAA is further informed and believes, and on this basis alleges, that Wells Fargo has intentionally aided and encouraged third parties (including Wells Fargo's customers, partners, and/or end users) to use Wells Fargo Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the '571 Patent, with the specific intent that those performing the acts infringe the '571 Patent.

123.    USAA is informed and believes, and on this basis alleges, that from at least the time of service of this complaint, Wells Fargo is contributorily infringing the '571 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Wells Fargo Mobile Deposit for use in infringing the '571 Patent, constituting a material part of the invention, knowing Wells Fargo Mobile Deposit to be especially made or especially adapted for use in infringing the '571 Patent.  USAA is further informed and believes, and on this basis alleges, that Wells Fargo Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

   CONFIDENTIAL - ATTORNEYS' EYES ONLY

124.    USAA is informed and believes, and on this basis alleges, that these third parties have infringed and will infringe the '571 Patent by using Wells Fargo Mobile Deposit in violation of 35 U.S.C. § 271(a).

125.    As a result of Wells Fargo's infringement of the '571 Patent, USAA has been damaged.  In addition, Wells Fargo's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA.  USAA is entitled to recover for damages sustained as a result of Wells Fargo's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

126.    USAA is further informed, and on this basis alleges, that Wells Fargo's infringement of the '571 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285.  As noted above, Wells Fargo has had knowledge of the '571 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.  Thus, Wells Fargo's infringing actions have been and continue to be consciously wrongful.

127.    To the extent 35 U.S.C. § 287 is determined to be applicable, USAA is informed and believes its requirements have been satisfied with respect to the '571 Patent.

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, USAA prays for judgment against Wells Fargo as follows:

A.    That Wells Fargo has infringed, and continues to infringe, each of the USAA Patents;

B.    That each claim of each of the USAA Patents is valid and enforceable;

C.    That Wells Fargo pay damages adequate to compensate USAA for Wells Fargo's infringement, together with interest and costs under 35 U.S.C. § 284;

D.    That Wells Fargo be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

CONFIDENTIAL - ATTORNEYS' EYES ONLY

E.      That Wells Fargo be ordered to play supplemental damages to USAA, including interest, with an accounting, as needed;

F.      That Wells Fargo's infringement is willful and that the damages awarded to USAA should be enhanced up to three times the actual damages awarded;

G.      That USAA be awarded damages for its costs, disbursements, expert witness fees, and attorneys' fees and costs incurred in prosecution this action, with interest, including damages for an exceptional case pursuant to 35 U.S.C. § 285 and as otherwise provided by law; and

H.      That USAA be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## X.      DEMAND FOR JURY TRIAL

128.    Pursuant to Federal Rule of Civil Procedure 38(b), USAA hereby demands a trial by jury on all issues triable to a jury.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Date: November 26, 2018                    Respectfully submitted,


                                           **PARKER, BUNT & AINSWORTH, P.C.**
                                           */s/ Robert Christopher Bunt*

                                           Robert Christopher Bunt
                                           Texas State Bar No. 00787165
                                           Charles Ainsworth
                                           Texas Bar No. 00783521
                                           100 E. Ferguson, Suite 1114
                                           Tyler, Texas 75702
                                           Tel. (903) 531-3535
                                           Fax (903) 533-9687
                                           charley@pbatyler.com
                                           rcbunt@pbatyler.com


                                           **IRELL & MANELLA LLP**
                                           Jason Sheasby (CA #205455), *pro hac vice*
                                           Ben Hattenbach (CA #186455), *pro hac vice*
                                           Anthony Rowles (CA #301209), *pro hac vice*
                                           1800 Avenue of the Stars, Suite 900
                                           Los Angeles, CA 90067
                                           Tel. (310) 277-1010
                                           Fax (310) 203-7199
                                           jsheasby@irell.com
                                           bhattenbach@irell.com
                                           trowles@irell.com


                                           **Attorneys for Plaintiff United Services**
                                           **Automobile Association (USAA)**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under L.R. CV-5(a)(7)(B) that the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 40).

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on November 26, 2018. I further certify that all counsel of record, who have consented to electronic service are being served with a notice of filing of this document on November 26, 2018 via the Court's CM/ECF system.

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt

     CONFIDENTIAL - ATTORNEYS' EYES ONLY