1               IN THE UNITED STATES DISTRICT COURT

2                FOR THE EASTERN DISTRICT OF TEXAS

3                        MARSHALL DIVISION

4    UNITED SERVICES AUTOMOBILE    )(

5    ASSOCIATION                   )(     CIVIL ACTION NO.

6                                  )(     2:18-CV-245-JRG

7    VS.                           )(     MARSHALL, TEXAS

8                                  )(

9    WELLS FARGO BANK, N.A.        )(     JANUARY 10, 2019

10                                 )(     10:02 A.M.

11                        MOTION HEARING

12        BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

13            UNITED STATES CHIEF DISTRICT JUDGE

14

15   APPEARANCES:

16   FOR THE PLAINTIFF: (See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
17

18   FOR THE DEFENDANT: (See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
19

20   COURT REPORTER:     Shelly Holmes, CSR, TCRR
                         Official Reporter
21                       United States District Court
                         Eastern District of Texas
22                       Marshall Division
                         100 E. Houston Street
23                       Marshall, Texas  75670
                         (903) 923-7464

24

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)

1                    I N D E X

2

3   January 10, 2019

4                                                  Page

5        Appearances                               1

6        Hearing                                   3

7        Court Reporter's Certificate             42

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          COURT SECURITY OFFICER:  All rise.

2          THE COURT:  Be seated, please.

3          All right.  This is the time set for hearing on a

4    motion to compel filed by the Plaintiff in the USAA versus

5    Wells Fargo matter.  This is Civil Case No. 2:18-CV-245.

6          Let me call for announcements on the record.

7          What says the Plaintiff, USAA?

8          MR. BUNT:  Good morning, Your Honor.  Chris Bunt

9    and Mr. Jason Sheasby here on behalf of USAA, and we're

10   ready to proceed.

11         THE COURT:  All right.

12         What's the announcement from Wells Fargo?

13         MR. MELSHEIMER:  Good morning, Your Honor.  Tom

14   Melsheimer, along with Danielle Williams and Travis

15   Underwood for Wells Fargo.  We are ready to proceed.

16         THE COURT:  All right.  Plaintiffs, this is your

17   motion.  Let me hear argument from you first from the

18   podium.

19         MR. SHEASBY:  May it please the Court.  Good

20   morning, Your Honor.

21         THE COURT:  Good morning.

22         MR. SHEASBY:  I think there are three questions

23   before the Court today.  The first is procedural.  What

24   Court should be addressing this issue?

25         The second, in our mind, is substantive, which is

1  under the Fifth Circuit opinion in Collins, the statements

2  of Mr. Alexander's are, quote, admissions by Wells Fargo.

3  And can a party block the deposition examination of

4  contradictory admissions that occurred in another body in

5  this Court?

6        And the third is, I think, a very fair policy

7  question, which is will an order instructing Wells Fargo

8  not to instruct Mr. Alexander not to answer questions in

9  some way tread on the constitutional separation of powers

10 between the PTAB and the Article III branch of government?

11       So those are the three questions, and let me jump

12 right into the procedural one.

13       THE COURT:  Is it fair to say right off the bat,

14 Mr. Sheasby, that this fight is all about what's going to

15 happen before the PTAB and not what's going to happen

16 before this Court?

17       MR. SHEASBY:  I don't believe respectfully that's

18 not the case, and let me tell you why.

19       There is a live Section 101 defense in this case.

20       THE COURT:  Of course, there was a live motion to

21 dismiss under Rule 12 based on 101, but that's no longer

22 active in the case, correct?

23       MR. SHEASBY:  The -- the motion has been

24 temporarily withdrawn, but the defense -- the Section 101

25 defense has not been withdrawn.

1           THE COURT:  The motion has been found to be moot

2   by the Court based on your amended complaint.

3           MR. SHEASBY:  Yes, Your Honor.

4           THE COURT:  And it's not been re-filed by the

5   Defendant.

6           MR. SHEASBY:  That's correct, Your Honor.

7           THE COURT:  All right.

8           MR. SHEASBY:  And let me jump right there and

9   answer the question, which is there is a live Section 101

10  defense in this case.  There is a footnote, and sometimes

11  footnotes are very important, making clear that the Defense

12  reserves the right to re-file this motion at any time.

13          And what has occurred, based on a conscious

14  decision to inject 101 defenses in two -- before two

15  bodies, which is their right, which is their absolute

16  right, is we now, based on this motion to dismiss, which

17  was found moot, and at least for the present while this

18  motion is pending is not going to be re-filed, is we know

19  exactly what their 101 defense is.

20          And we've laid a foundation that the 101 defense

21  that they're presenting is inconsistent with the statements

22  made by Mr. Alexander in his declaration to the PTAB.

23          Now, we've laid that foundation, and in the 16

24  pages of briefing that Wells Fargo's presented to Your

25  Honor, there has been no -- zero engagement or dispute of

1  the issue that there's contradictory positions.

2      THE COURT:  Let me ask you this, Mr. Sheasby.  As

3  opposed to taking Dr. Alexander's deposition and inquiring

4  as to the declarations that have been offered to the PTAB,

5  it seems from the briefing that it's your position that --

6  and you just told me that your view is there's no

7  disagreement between the parties, that there is an existing

8  inconsistency between those declarations and Wells Fargo's

9  position with regard to the 101 matter.

10      If that's true, then why can't USAA simply hold up

11  Wells Fargo's 101 motion from this Court against those

12  declarations before the PTAB?  Why do you need to depose

13  Dr. Alexander with regard to Wells Fargo's position on the

14  101 issue when you have Wells Fargo's motion that's not

15  under seal, it's a public record in this Court?  Why do you

16  need the deposition?

17      MR. SHEASBY:  It's a -- it's a fair point.

18      I don't need it for the PTAB.  I need it for Your

19  Honor.  In other words, there's a lot -- there's a live

20  Section 101 dispute in this case.  A declaration is not

21  admissible evidence before Your Honor.  I --

22      THE COURT:  Then -- then if you need it for this

23  Court and not the PTAB, why do you need it now as opposed

24  to this coming summer after expert witnesses have been

25  designated and would be properly deposed?

1              MR. SHEASBY:  It's a fair question.

2              I think there's a couple of ways that I approach

3    it.  The first is that time passes and memory fades.  There

4    is a declaration that was filed.  The witness is obviously

5    prepared and familiar with these issues.  And if that's the

6    case, now is the right time to take his deposition.  He may

7    never appear as an expert.  He's not designated as any type

8    of expert in this case.  His declarations makes clear that

9    the only place he's ever been retained is in the PTAB

10   and --

11             THE COURT:  And the time to designate an expert in

12   this case has not been reached yet.

13             MR. SHEASBY:  It has, with one -- so with one

14   exception, which is Rule 26(b)(4)(D) makes clear that if he

15   was retained as a non-testifying expert in this case, there

16   would be a reasonable basis on which they could oppose his

17   deposition.

18             And the language, and I quote, quote, ordinarily a

19   party may not by interrogatories or deposition discover

20   facts known or opinions held by an expert who has been

21   retained or specially employed --

22             THE COURT:  Tell me where -- tell me where you're

23   reading from.  I've got the rule in front of me.

24             MR. SHEASBY:  Rule 26(4)(b)(D) [sic], experts

25   employed only for trial preparation.

1          THE COURT:  Okay.  It's (b)(4), not (4)(b).

2          MR. SHEASBY:  I'm sorry, Your Honor, (b)(4)(D).

3          THE COURT:  Okay.  Go ahead.

4          MR. SHEASBY:  Ordinarily, a party may not by

5     interrogatories or deposition discover facts known or

6     opinions held by an expert who is retained or specially

7     employed by another party in anticipation of language or to

8     prepare for trial.

9          So it is fairly the case that if Mr. Alexander was

10    retained as a non-testifying expert in this case, Your

11    Honor is absolutely correct that Your Honor could use his

12    discretion to say, USAA, you -- I'm -- I'm going to use my

13    discretion.  This is not an exceptional circumstance.  You

14    can take the deposition after they decide whether or not to

15    designate him.

16         But we know from Mr. Alexander's declaration,

17    which was attached to the opposition filed by Wells Fargo,

18    that he is not designate -- designated as an attorney in

19    this case -- as -- as an expert witness -- expert in -- a

20    non-testifying expert in this case.  His declaration makes

21    clear that the only place he has been designated is in the

22    PTAB.

23         And so the way I approach this is the following:

24    There are two parallel proceedings in which Section 101 has

25    been injected.  That was a conscious decision by Wells

1   Fargo, and there are consequences when you make tactical

2   decisions.  They made a tactical decision, and now there's

3   a consequence.

4          We want to use our right to take the deposition of

5   inconsistent party admissions in this case for an entity

6   who is not a non-testifying expert in this case, based on

7   his own testimony.  He's just what the Fifth Circuit would

8   call an agent of Wells Fargo who made inconsistent

9   statements.

10         The reason why we want to do that is the

11  following:  One, memories fade.  If I had a witness who

12  made completely inconsistent statements in a declaration,

13  I, of course, would want that witness deposition to be

14  taken as far after those inconsistent statements as

15  possible, if ever.

16         Two, Wells Fargo is not the only entity who's

17  entitled to file a dispositive motion at any time before

18  this Court.  We believe those inconsistent statements make

19  the 101 defense fatally defective.  We believe it makes it

20  fatally defective as a matter of law, and, indeed, we

21  believe that a determination of the 101 defense was -- is

22  defective as a matter of law would be -- before Your Honor

23  would be dispositive of a 101 in any form.  And so we also

24  want the ability to control our own destiny between Your

25  Honor.

1          But really the subtext here is what Wells Fargo

2   said, that this is some type of trick to get a deposition

3   to use in front of the PTAB.  I think that's their -- their

4   main argument.

5          And the response to that is it's not a trick to

6   get information to be used solely before the PTAB.  It's a

7   litigation strategy we're employing to elucidate in an

8   admissible manner what we believe are clearly inconsistent

9   statements so we can use them anywhere.  And, oh, by the

10  way, the PTAB wants us to do this.

11         This subtext that the PTAB is somehow being

12  treaded on because we're using our right under Article III

13  to take a deposition is the exact opposite of their intent.

14         And let me explain to you what I mean by that.  If

15  you go to 37 CFR Section 42.51(b)(1), romanette (iii),

16  that's the PTAB regulations.  And what the PTAB regulations

17  say is if you are aware of inconsistent statements,

18  statements that are inconsistent with positions taken by a

19  petitioner in the PTAB proceedings, you are obligated to

20  disclose those.

21         The PTAB doesn't view themselves as competing with

22  you.  The PTAB views them as a forum in which they will not

23  allow depositions for policy reasons.  They're perfectly

24  happy and prepared and order the use of those proceedings

25  of information in their proceeding.

1          And so there's a deep policy issue here, which is

2     that the Eastern District of Texas has on a number of

3     occasions said we're not going to let you depose an expert

4     who has been designated as a non-testifying expert simply

5     because they filed a declaration in re-exam.

6          That case law doesn't apply here because this

7     entity hasn't been designated as a -- as a pre-testifying

8     expert.  But there's a deeper point here, which is that

9     every time someone files a declaration in the PTAB, I'm

10    assuming this Court doesn't want to have a fight.  That

11    doesn't mean automatically that their deposition gets taken

12    here.

13         But we're a common law system, and the flip side

14    should apply.  If we can lay a foundation that there is a

15    concrete reason why he wants wants -- wants the deposition.

16    And in fairness to us, I think we've laid that foundation.

17    We've pointed out the inconsistent statements.

18         Mr. Alexander says it's a technical problem.

19    Their 101 defense says it's a non-technical problem.  They

20    had 16 pages to explain why there's no daylight between

21    them and Mr. Alexander, and they chose not to do that.

22         We've laid a special foundation.  In that

23    situation, based on Fifth Circuit precedent, I believe

24    respectfully that we are entitled to control our own

25    destiny.

1            THE COURT:  Well, you said a minute ago that

2      strategic decisions, based on procedural rules, often have

3      consequences.  Isn't it true in this case that you made a

4      strategic decision to amend your complaint and thereby moot

5      the 101 motion, that had you not done that, we would still

6      have a live 101 motion before this Court and an altogether

7      different basis to address the issue that's raised today?

8            MR. SHEASBY:  It's -- it's a fair point, and I

9      think you've hit upon the crux, which is that we amended

10     our complaint to add in the additional facts that we -- we

11     presented in our opposition.  The original plan in our

12     opposition -- the original plan by Wells Fargo, and they

13     told us what they wanted us to do is they wanted a

14     sur-reply to address those new facts.  We were prepared to

15     agree to that, and in the interim, your court mooted the --

16     Your Honor mooted the motion, which is absolutely

17     appropriate, completely -- completely the step to take.

18            THE COURT:  That's good, because I do it all the

19     time.

20            MR. SHEASBY:  I -- I don't want Your Honor to

21     think that there's any subtext here.

22            Now we're in the situation in which -- you know, I

23     think there are a lot of litigation tactics going on here,

24     and I think that applies to both sides.

25            THE COURT:  I would agree to that.

1          MR. SHEASBY:  Right.  In other words, I want a

2     deposition that I can use fairly in this court, and it is,

3     indeed, the case that that deposition can elicit testimony

4     that can be used before the PTAB because the PTAB allows

5     depositions to be used.  That is a fair statement.

6          We have --

7          THE COURT:  But it's also fair that you want it

8     perhaps for use in both places, but you want it now as

9     opposed to taking it this summer after experts have been

10    designated so that you'll have it in hand before the PTAB.

11         MR. SHEASBY:  That's exactly correct, and I also

12    want it now because it is -- nine months from now it is a

13    fair position for that witness to take that says, you know

14    what, I haven't seen this declaration in nine months.  I

15    don't even remember the subject anymore.  I haven't read

16    the document in nine months.

17         Not gamesmanship, completely honest, which is that

18    memories fade.  There is something deeply practical about

19    testimony of witnesses who have recently observed or done

20    things.  That is a -- sort of a basic essence of Article

21    III procedure.

22         It's -- I would respectfully submit why Your Honor

23    doesn't normally stage discovery, which is Your Honor sets

24    a period of time after which I can take a deposition, but

25    Your Honor doesn't say, well, you don't get to take

1  depositions on 101 until 9 months later or 12 months

2  later.

3          Article III gives me the right to be the proctor

4  within reason of my own discovery plan.

5          And so the other litigation tactic we have is that

6  we've had -- and I expressed reservations about this -- we

7  had a 101 motion filed.  I expressed concern that that 101

8  motion was really an attempt to elicit -- elicit our -- our

9  proceedings.  Immediately after we filed our opposition,

10  they filed a CBM petition which actually did do exactly

11  what I was concerned about.  And now when they see the

12  writing on the wall that there's a witness who has taken

13  very inconsistent positions, they've withdrawn this motion

14  with a footnote saying, we'll re-file it later, and using

15  that as a basis to shield him from deposition.

16          So I believe that in fairness is a litigation

17  tactic, as well.

18          And so when you have litigation tactics on both

19  sides, I think the Court can fairly ask, where do I come

20  down?  And I think actually Rule 26 answers that question,

21  and it answers the question in the following way.

22          This witness has not been designated as a

23  pre-trial -- a non-testifying witness in this case, and we

24  know that because he has a sworn declaration.

25          Two, we've laid a foundation of absolutely

1   inconsistent statements, and Collins in the Fifth Circuit

2   says that those are inconsistent statements of an agent.

3   Those are inconsistent statements of Wells Fargo.

4         And, three, I have given you what is not a subtext

5   but a good faith explanation why, one, I can use that

6   testimony before Your Honor; two, why I want that testimony

7   now, because I have -- I have the right to file my own

8   dispositive motion at any time; and, three, because memory

9   fades.

10        And if I take a deposition of this busy man nine

11  months from now, I have a very reasonable concern that that

12  deposition is going to be, you know what, I just don't

13  remember what I --

14        THE COURT:  So -- so you're telling me of Reason

15  1, Reason 2, and Reason 3 are all in this court and none of

16  what you're asking for is targeted toward or for the

17  purpose of use before the PTAB in the CBM proceeding?

18        MR. SHEASBY:  That's what I'm telling you,

19  although I have to acknowledge it because it is a fair

20  statement.  What I'm doing in this court can absolutely be

21  used in front of the CBM.  They allow it, they instruct it,

22  and I have no control over that.  In other words --

23        THE COURT:  And if you're permitted to proceed as

24  you've requested, is it your intention to use that before

25  the PTAB as a part of the CBM proceeding?

1      MR. SHEASBY:  It is -- so intention or not, I have

2  an obligation to do it under the -- under what I believe is

3  my interpretation of the federal regulations, which is that

4  if I elicit inconsistent statements, I have to submit those

5  to the PTAB.

6      THE COURT:  And while I freely admit I'm not an

7  expert on the procedural rules within the PTAB regarding

8  CBM proceedings, what you read from CFR a minute ago seems

9  to indicate to me that that obligation is equally imposed

10 upon Wells Fargo, and they have an obligation to disclose

11 any inconsistencies on their side of the docket.

12     MR. SHEASBY:  Absolutely.

13     THE COURT:  And if that's the case, then the

14 inconsistency that we're talking about is already

15 positioned to be disclosed to the PTAB whether or not

16 Dr. Alexander's deposed in this case at this time or not;

17 is that correct?

18     MR. SHEASBY:  That's absolutely correct.  In other

19 words, we're going to point out the inconsistency based on

20 the declaration.  That's one of the reasons why the primary

21 purpose of this is not that -- not for use in the CBM, it's

22 for use in the district court.

23     In -- in fairness to us, we asked for this not to

24 happen.  We did not want this forum shopping under 101.  We

25 thought it was inconsistent.  We thought it was a

1  litigation tactic, and we expressed great reservation about

2  it.

3       It's now occurred.  And at some level, I have to

4  say -- counsel for Wells Fargo -- this is not a criticism.

5  In a footnote, we said this was going to happen, and they

6  said, you know what, it's none of your darn business.  What

7  we do in front of the CBM is what we're going to do in

8  front of the CBM.

9       And in fairness to them, it's not a crazy

10  position.  But there's a goose and gander rule here.  I

11  have a reasoned basis for seeking this deposition before

12  Your Honor.  The fact for them to say, oh, yes, but you're

13  really just doing it because of the CBM.  Well, at some

14  level, that's none of your darn business, Wells Fargo.  I

15  have a reasoned basis for doing it in this court.  I have a

16  right to file early dispositive motions.  I have a witness

17  who I think is not on all fours with them.  I want an early

18  deposition so his memory doesn't fade.

19       And if I have -- if there's -- if that's caused

20  problems for them with the CBM, well, at some level, that

21  is their decision, and it's a consequence of their tactic.

22       And so I'm not going to be Pollyannish about this.

23  If I get some amazing admission from Dr. Alexander in

24  addition to filing a dispositive motion before Your Honor

25  at any time, am I going to use that in front of the CBM?

1   Yes.  Not only am I going to use it in the CBM, my

2   interpretation of regulations obligate me to use it in

3   front of the CBM.

4          And for them to say, oh, because of that, because

5   we've forum shopped, we're going to somehow instruct how

6   you proceed in Article III, I have a problem with that.  I

7   don't think that's fair, and I don't think that's

8   consistent with the rules.  This is not a knee jerk

9   reaction in which we're trying to harass Mr. Alexander.

10          THE COURT:  Well, let's just say, for purposes of

11  discussion, that this is not about the CBM petition before

12  the PTAB, which, quite honestly, given one party's

13  statement in effect to the other it's none of your darned

14  business what I do at the PTAB and a responsive statement

15  back the other direction, well, it's none of your darned

16  business what I do at the PTAB, that kind of interplay

17  significantly cuts against the notion that this is all

18  about the district court and doesn't have anything to do

19  with the PTAB.

20          But, nonetheless, let's just say that this is only

21  about what's proceeding in the district court.  The PTAB's

22  not in the picture at all.  Then under ordinary procedure

23  in this court under the Court's docket control order, its

24  local rules, and its approach to litigation consistently

25  laid out in case after case, you would acknowledge that a

1   request by a Plaintiff to take an early deposition is

2   something that's not ordinary and subject to some level of

3   discretion by the Court as to whether under the unique

4   circumstances raised, it's appropriate or not appropriate.

5           MR. SHEASBY:  An early expert declaration, a

6   deposition?

7           THE COURT:  Yes.

8           MR. SHEASBY:  Yes, an early expert deposition, I

9   would agree with that.

10          With the -- but now I would say in response to

11  that is twofold.

12          THE COURT:  So at the end of the day, it's up to

13  you to persuade me that that's appropriate in this context.

14          MR. SHEASBY:  Right.  And I've -- and my -- my --

15  my foundation for that is the following:  One, I've laid a

16  foundation of clearly inconsistent statements, which has

17  not been rebutted.

18          Two, this witness has not been designated as a

19  pre-trial non-testifying expert in this case.  He is simply

20  under Collins in the Fifth Circuit an agent of Wells Fargo

21  in the CBM proceeding.

22          Three, there was already what I thought was an

23  agreement but was apparently just an offer.  Mr. Alexander

24  is not objecting to sitting for his deposition.

25  Mr. Alexander, at least based on my -- my reading of what

1  they said, and I quote their language --

2       THE COURT:  My understanding was Wells Fargo is

3  not opposed to putting him up for deposition as long as the

4  scope of the deposition is limited to his personal

5  knowledge.

6       MR. SHEASBY:  Factual personal knowledge.

7       THE COURT:  All right.  Well, that -- that comes

8  are forth in the briefing both ways.

9       MR. SHEASBY:  Right.  Right.

10       And so the real crux of the question is we're not

11  going to ask him about infringement issues.  We're not

12  going to ask him about issues outside of his declaration.

13  The real crux of the issue is this, am I allowed to depose

14  him on this inconsistent -- inconsistent statements about

15  it being a technical problem in order to give me what I

16  need to potentially file an early summary judgment motion,

17  in addition to ensure that his memory doesn't fade.

18       And I think because he's not designated as a

19  testifying expert in this case, a pre -- a non-testifying

20  expert in this case, Rule 26 gives them no -- no

21  protection.  And so now Your Honor has to make the

22  prudential decision is that given these unique

23  circumstances, is the inconsistency and my desire to

24  preserve in his memory the basis for that inconsistency out

25  of whack or somehow inconsistent with this Court, when

1   clearly there is a threat to renew this dispositive motion.

2   It's in a footnote.  They're not telling you they're not

3   going to file a dispositive motion.  They're not telling

4   you they're not going to -- they're going to withdraw their

5   Section 101 defense.  All they're telling you is we've

6   withdrawn it.  Let us out of jail.

7        I don't think that's appropriate in this

8   situation.  I think there's a live principled dispute here.

9        Now, let me also say something, which is that

10  my -- counsel can get up and say, oh, oh, he is designated

11  as a -- as a non-testifying expert in this case.  It is.

12  He just forgot to mention it in his declaration somehow.

13       But I still think there's a deep -- deeper point,

14  which is that they made a conscious decision to forum shop.

15  That has consequences.  We now know under Fifth Circuit law

16  admissions they made that this is a technical problem.  And

17  I'm entitled to that admissible testimony in that subject

18  so that I can use it and give my client every tool they

19  have to defend against that Section 101 in this case.

20       THE COURT:  And when you say they made a conscious

21  decision to forum shop, you're talking about the CBM

22  petition filed at the PTAB?

23       MR. SHEASBY:  That's correct.

24       THE COURT:  All right.  What else, Mr. Sheasby?

25       MR. SHEASBY:  So the only other issue that I think

1   you need to address is this question about whether you're

2   the Court that's right for this.

3        And there is some subtext or some suggestion that

4   we should be in front of a court that's going to decide the

5   subpoena or the enforceability of the subpoena.  And I've

6   thought a lot about this, and I don't think that's correct.

7   And it's not correct for both a very specific legal reason

8   and a prudential reason.

9        So the legal reason is the following:  This man

10  has voluntarily agreed to appear.  The only dispute is that

11  Wells Fargo is going to say if you ask him about these

12  inconsistent statements, we're going to instruct you not to

13  answer.

14       Under Rule 37 -- quote, 37(a)(2), a motion for an

15  order to a party must be made in the court where the action

16  is pending.  And it lists as one of those specific motions,

17  motions related to deposition.

18       And so the only court, based on my reading of the

19  federal rules, that can order Wells Fargo to not instruct

20  not to answer is Your Honor.  So that's the legal

21  interpretation as I see it.

22       And, in fact, the case they cite, the Traut case,

23  which is a Northern District of Texas case, makes clear,

24  quote, a party need not comply with Rule 45 and issue a

25  subpoena if a non-party will consent to have a deposition

1  by notice alone.

2      THE COURT:  And there has been a subpoena issued

3  in this case, but it's been withdrawn.

4      MR. SHEASBY:  It's been withdrawn, and there's a

5  reason for that.  And the reason why it's been withdrawn is

6  because we were originally concerned that Mr. Alexander

7  would not even appear for his deposition.  We presented the

8  subpoena, and what Wells Fargo said in response is:  We

9  don't object to fact questions, but we got a big problem

10 with you asking him about inconsistent statements.

11     And so we said:  All right.  Let's go before Judge

12 Gilstrap and get that resolved because we think that we

13 have a right to preserve his testimony.  And we filed our

14 motion before Your Honor.

15     A couple of hours later, after they asked us to

16 hold off filing our motion, they immediately filed a motion

17 to quash in the Northern District of Texas, and we told

18 them that this is nuts.  The idea that we're going to take

19 up two Article III Judges' time to dispute a precise

20 question about whether they can properly give an

21 instruction not to answer based on a live Section 101

22 defense, that's before Your Honor.  It's before Your Honor

23 under Rule 37 because the problem is not with

24 Mr. Alexander.  Mr. Alexander is not saying it's

25 burdensome, I don't want to do it, I'm too busy, don't be

1  asking me about my personal information.  There's none of

2  that.

3       Wells Fargo is saying we're going to block

4  examination by -- on inconsistent statements under Fifth

5  Circuit precedent that are inconsistent statements.

6       And my reading of Rule 37(a)(2), it's not

7  ambiguous.  That order instructing Wells Fargo not to do

8  something they're threatening to do is an order that can

9  only come from one place, and that's from Your Honor.

10       Thank you.

11       THE COURT:  All right.  Let me hear responsive

12  argument from Wells Fargo.

13       MR. MELSHEIMER:  May it please the Court, Your

14  Honor.  If it pleases the Court, Mr. Underwood is going to

15  present the argument on our behalf.

16       THE COURT:  That's fine.  Let's proceed.

17       MR. UNDERWOOD:  May it please the Court.  Good

18  morning.

19       THE COURT:  Good morning, counsel.

20       MR. UNDERWOOD:  Travis Underwood on behalf of the

21  Defendant, Wells Fargo Bank.

22       This probably comes as not a massive surprise to

23  the Court, but we disagree with many of the statements made

24  by opposing counsel just now.

25       And I think I will begin with what he ended with

1  was -- which was in effect this -- this alleged agreement

2  between the parties.

3          What actually happened, Your Honor, is that we

4  have repeatedly made an offer to USAA in an effort to

5  resolve this dispute, in an effort to prevent the Court

6  from having to spend its time and resources resolving the

7  dispute for us.  We tried to meet in the middle, and so we

8  made an offer that is rooted in the case law.

9          THE COURT:  Well, that hasn't worked so far.

10          MR. UNDERWOOD:  It has not, Your Honor,

11  unfortunately.

12          We made the offer repeatedly, and it's repeatedly

13  been eject -- rejected.  And that offer was, as I think

14  you -- you hinted on earlier, the offer was that we would

15  produce Dr. Alexander for a deposition if -- and there was

16  a condition -- if they would agree to limit the scope of

17  the deposition to a factual deposition based on his

18  personal knowledge and a deposition that did not touch upon

19  or otherwise inquire into his expert declarations that were

20  filed at the PTAB.

21          And, again, Your Honor, this -- this offer was

22  based in the case law.  We found four cases, three of them

23  from the Eastern District of Texas, one from the Northern

24  District of California related to litigation in the Eastern

25  District of Texas, and none of these cases have actually

1  allowed for depositions like the one that they are

2  requesting in this case.

3       Now, the one case did -- the Kaist opinion,

4  K-a-i-s-t, in the Northern District of California did allow

5  for a limited factual deposition.  Seeing that case, we

6  made an offer in line with that case to -- to resolve this

7  issue and to produce Dr. Alexander if they could agree to

8  this those parameters.

9       And, repeatedly, they have rejected them.  And

10 because they've rejected them, we now find ourselves here

11 today before the Court.  And I think we're kind of back at

12 Square 1.  And when we're back at Square 1, what do we do?

13 We look to the rules.

14      And there are multiple procedural flaws with their

15 motion to compel, each one of which standing alone

16 independently we believe is justification for denying their

17 motion in its entirety.

18      THE COURT:  I assume you're going to tell me that

19 if the statements from Plaintiff's counsel were accurate,

20 that all of this is about the district court and not the

21 PTAB, then there's no reason for them not to take your

22 offer and take the deposition and agree not to go into the

23 declarations that are filed before the PTAB.

24      MR. UNDERWOOD:  That's right, Your Honor.  That is

25 what we expected would be the case, and particularly given

1   the current lay of the land.  And -- and Your Honor hit

2   upon it.

3           Originally, there was this 101 dispositive motion.

4   And it's on that motion that they predicate their relevance

5   arguments.

6           Now, footnote on that, counsel made a lot of

7   comments about purported inconsistencies.  We actually

8   don't agree with that.  We -- we don't believe that there

9   are inconsistencies between the declarations at the PTAB

10  and the 101 motion.  We don't actually think that's

11  germane, though, so that's why I stuck it in a footnote.

12  But that motion was pending, and that was their hook for

13  relevance.

14          As the Court observed, that motion is no longer

15  pending.  The Court denied it as moot, and the Court gave

16  us a shock clock to re-file the motion, 15 days.  That has

17  passed.  That time has passed.  We didn't re-file it.

18  There's no longer a 101 dispositive motion before the

19  Court.

20          USAA can no longer argue that Rule 12(d) somehow

21  entitles it to take discovery to defend against the motion,

22  and they also can't argue that there's any urgency to get

23  this testimony before the normal rules and the normal

24  parameters and procedures for taking expert testimony in

25  any case.

1          THE COURT:  Is it fair to say, Mr. Underwood, that

2   Wells Fargo moved for an early 101 for the strategic

3   benefit of forcing USAA to lay out its posture before Wells

4   Fargo moved to institute CBM review at the PTAB, and then

5   having done that, USAA made a tactical error in amending

6   their complaint which resulted in the mooting of the 101

7   and then gave you the freehand to just step back and say,

8   well, you know, we're not going to urge that again, we're

9   going to leave it on the sidelines?

10          You've gotten the benefit of forcing them to show

11   you your position -- their position on 101 before you went

12   to the PTAB, and now you don't want to bring it back up

13   until you see what the PTAB is going to do.  Isn't that

14   really the -- the pathway of the strategic steps that have

15   been taken so far?

16          MR. UNDERWOOD:  Your Honor, respectfully, I

17   disagree with that.  It is not fair to say that the reason

18   or the purpose underlying our decision to file the 101

19   motion in this case was somehow to elicit them to put all

20   their cards on the table, so to speak, so that we got some

21   sort of tactical advantage at the PTAB.

22          THE COURT:  Well, if it wasn't tactical, if it was

23   substantive and it was filed early and then based on their

24   amended complaint, that original motion under 101 was

25   mooted, why wouldn't you jump at the chance to reurge it

1   now because it's pressing and it's substantive and it needs

2   to go forward early in the case?  If it's not strategic, if

3   it's substantive, why not urge the 101 again?

4           MR. UNDERWOOD:  Well, as an initial manner, Your

5   Honor, and -- and counsel pointed this out, we aren't

6   saying that we're not going to file it at all again, but we

7   think based on the timing, it doesn't make sense to file it

8   right now.

9           And -- and what I mean by that is given the

10  current lay of the land and in particular with claim

11  construction on the horizon, we did not want to find

12  ourselves in a situation where we re-filed the 101

13  dispositive motion under 12(c) -- I guess it would have

14  been a week or two ago -- and then, you know, take time for

15  that to get briefed up.  You know, by that time, we start

16  to find ourselves in the throws of claim construction

17  preparation.  And at that point in time, the -- the posture

18  makes it a little bit strange to take up the 101 motion on

19  the eve of a claim construction hearing.

20          And so we felt that with the benefit of the

21  Court's claim construction, we could perhaps reurge it.

22  And, of course, there are -- there are certain moving parts

23  that will impact whether or not that is ultimately reurged.

24          But, Your Honor, given the lay of the land, we

25  felt -- and, again, claim construction, we felt it didn't

1  make sense to re-file it right now.

2       THE COURT:  Well, quite honestly, if it was a

3  pressing substantive matter that needed to be urged early

4  in this case under Rule 12 and then for whatever reason

5  that motion was no longer active, the conscious decision to

6  step back and not reurge it promptly again smacks somewhat

7  of gamesmanship.

8       But I'll be honest with you, whatever strategic

9  moves both of these parties are making for purposes of the

10  CBM review are before the CBM -- before the PTAB.  They're

11  not before me.  And while I'm persuaded there is some

12  gamesmanship going on on both sides with relation to the

13  parallel proceedings at PTAB, I don't necessarily intend

14  that to be dispositive with regard to the motion that's

15  before me now.

16       But I don't think it's a stretch to say that there

17  are some steps being taken or some steps being withheld

18  that have a whole lot more to do with the PTAB than they do

19  with the district court.  Nonetheless, that's -- that's one

20  person's view.  It just happens to be my view.

21       MR. UNDERWOOD:  Well, that's an important view,

22  Your Honor.

23       THE COURT:  Let me hear the rest of your argument.

24       MR. UNDERWOOD:  Okay.  Your Honor, thank you.

25       Just to close the loop on this, as I was saying,

in effect given the fact that there's no longer this 101

motion pending, there's -- there's no urgency, there's no

reason why the normal rules and the normal operating

procedure should not apply, why that, you know, they

shouldn't wait to take this deposition, if at all, until

after disclosures have been made.  And on the no urgency

point, Your Honor, I think this is something that the Court

itself may have hinted at.

The parties had previously agreed to an expedited

briefing schedule, and pursuant to that agreement, the

parties moved the Court to order an expedited briefing

schedule.  And the Court denied the expedited briefing

schedule.

And -- and our view is that, in effect, is in

align with what we're saying right now, which is there's no

urgency for this deposition or this issue to take place

right now, particularly given that there's no longer the

101 motion pending.

Your Honor, there are other procedural problems

with their motion.  Rule 37, which is what counsel ended

with, given that they have rejected our offer to produce

Dr. Alexander for a limited factual deposition, there's no

agreement between the parties.  It's that simple.  It's

almost like -- like a 1L contracts situation.  When there's

an offer, there's got to be an acceptance for there to be

1  an agreement.  But here there's been no acceptance, so

2  there's no agreement.

3       Because there's no agreement, they need an order

4  from the Court, or, in the alternative, a subpoena, which

5  is, as the Court observed, they withdrew, they would need

6  an order from the Court actually requiring Dr. Alexander to

7  show up.

8       The problem for them is that they filed their

9  motion under Rule 37 of the Federal Rules of Civil

10 Procedure, and the case law that we've cited to in our

11 brief, the MetroPCS case and the Traut case, as counsel

12 referenced, unequivocally stands for the proposition that

13 you cannot use a Rule 37 motion to compel a party or a

14 non-party to show up for attendance at a deposition.  The

15 case law says -- the rule just doesn't address it.

16      So we think on that ground alone, the motion is

17 worthy of denial because it is -- it is just procedurally

18 flawed at the outset.

19      Now, the proper course for them would be to serve

20 a subpoena, which is what Rule 30 says.  Rule 30 says:  If

21 you want to depose someone, you need to serve a subpoena

22 under Rule 45.  And they did originally do that, but

23 they've since withdrawn it.

24      So right now there's no procedural mechanism for

25 them to compel Dr. Alexander to show up.  So we think that

1   standing alone is a reason to deny USAA's motion to compel.

2          Your Honor, I think there are a couple of other

3   procedural problems, as well, and I'll just briefly touch

4   on these.  They're in our brief.

5          They -- since they noticed it, as opposed to

6   serving a subpoena, there's actually another reason why

7   that's flawed, and that's because notices only work for

8   parties, their directors, their officers, or managing

9   agents.  It's our position that Dr. Alexander is a third

10  party, and he -- he would not fall within the scope.  So as

11  a result, the notice is flawed.

12         Your Honor, we also think that their motion is --

13  is overbroad.  What they did is they noticed his deposition

14  under Rule 30, which governs fact depositions.  They didn't

15  govern it under Rule 26, which governs a party's access to

16  experts.

17         And, nonetheless, what they're now moving for is

18  that full, wide ranging, unlimited expert deposition.  As a

19  result, we think they're moving for something and asking

20  the Court for something that they never actually noticed.

21  So we think there are additional procedural problems there.

22         Your Honor, I also want to touch on the PTAB

23  briefly because counsel represented that this dispute is

24  really about what's happening at the district court, that

25  it is not about what's happening at the PTAB.

1          And, frankly, our concern is that that may not

2   actually be the case.  Our concern is that they want this

3   deposition in -- in large part because they want to use

4   what they get from the deposition in their response briefs

5   at the PTAB, which are due in February and then in March.

6          And so our concern, Your Honor, is not unfounded.

7   We actually have reason to believe this.  And the reason is

8   there's been a previous deponent in this case.  He was a

9   Wells Fargo employee that USAA deposed.  And pursuant to

10  the Court's protective order, his deposition transcript was

11  designated confidential.

12         Now, counsel approached us, and they requested

13  that we agree to de-designate certain portions of that

14  deposition such that they would be not confidential.  And

15  they said the reason we want to do this is so we can use it

16  at the PTAB.

17         Now, counsel mentioned that he's entitled to do

18  that.  Maybe that's the case.  But I think it shows what

19  they're doing here, which is they're using this case to get

20  discovery which they can then turn around and use at the

21  PTAB.

22         And, Your Honor, the concern with that is that it

23  entirely circumvents the PTAB's rules which don't allow for

24  any depositions to incur -- to occur prior to an

25  institution decision.  We're still, you know, months away

1  from an institution decision, so we're still clearly within

2  the time during which those rules wouldn't allow for a

3  deposition.

4       So knowing that they can't get a deposition at the

5  PTAB, what do they do?  Well, they come to the district

6  court, and they try to use the district court to get that

7  information to then turn around and use at the PTAB.

8       And that is our concern here, Your Honor.  And,

9  frankly, we think that if they were allowed to do that in

10  this case, we think that it would -- it would open up the

11  flood gates, so to speak, because all the cases we've seen

12  so far, the cases I referenced earlier from both this

13  district and others, have not allowed for a gambit like

14  this to succeed.

15       And -- and our concern, Your Honor, is that if

16  they do this and if the Court permits them to do what

17  they're asking to do, then it -- then it allows Plaintiffs

18  to circumvent those rules.  And it, in effect, almost

19  writes those rules off the books because they're allowed to

20  get discovery from the district court anyways.

21       So our concern is that it, in effect, abrogates

22  those rules, Your Honor, and we think -- we think that is a

23  very important concern and consideration in this case.

24       Your Honor, the last thing I'll say is that we

25  think that this situation that the Court is presented with

1    is one in which we have done everything we can do to act in

2    good faith to resolve it.  And now what they've done is

3    they've come to the Court, and, in effect, they've tried to

4    get the benefit of our efforts to compromise, and they're

5    now trying to use some of that against us.

6            For example, Exhibit A, Your Honor, would be their

7    effort to say that we've already reached an agreement to

8    produce Dr. Alexander, when, in fact, they've rejected it.

9    And so what it seems to be is that they're almost

10   weaponizing the meet and confer requirement and our efforts

11   to peacefully resolve this dispute without having to come

12   to the Court.

13           And so, Your Honor, we're concerned that some of

14   what they've done has chilled any incentive to resolve

15   issues moving forward.  And we think it's -- it's a great

16   concern and -- and worthy of consideration in this matter.

17           So unless the Court has any further questions for

18   me, I'll sit down.

19           THE COURT:  All right.  Thank you, Mr. Underwood.

20           Mr. Sheasby, I'll give you a very brief response,

21   and then we'll bring this argument to a close.

22           And I'm not suggesting that you re-argue what you

23   already have, but if opposing counsel's raised something

24   that's not been touched on before and you want to respond

25   to it, that's what you're up there for.

1          MR. SHEASBY:  Two things.

2          First, Your Honor, the deposition that we're

3   referring to is by Mr. Nishant, and I think it tells

4   everything you need to know about this dispute.

5          So Mr. Nishant is a technical witness at Wells

6   Fargo.  We took his deposition.  We took his deposition --

7   we tried to get it as early as we could before our

8   opposition to the motion to dismiss.  They refused to give

9   it to us.  They gave that deposition after our opposition.

10  We obtained very significant admissions from Mr. Nishant.

11  We used those admissions in our reply brief, and we also

12  amended our complaint to add those admissions, and it was

13  on that basis that they sought their sur-reply.

14         Those Nishant admissions, which we're using to be

15  defending against their 101 argument in this case, also

16  were used -- also are going to be used in the CBM, as the

17  CBM regulations allow for.

18         So they are absolutely a hundred percent right.

19  There's no gamesmanship going on here.  If I hurt them on

20  Section 101 arguments in this Court, it's going to hurt

21  them in the CBM.  That is the nature of life.

22         The second thing is I often don't -- I try not to

23  get emotional in these things, but the idea that I've

24  somehow abused the meet and confer process is something

25  that I find an extremely disturbing allegation.

 1              Their brief to you said, quote, we agreed to offer

 2     him as a fact witness.  They didn't say as an offer of

 3     compromise, if you would agree to X, we'll do Y.

 4              The case law required them to offer him as a fact

 5     witness.  The idea that I've created some gamesmanship,

 6     I've abused their trust, that I've acted in a sharp way is

 7     not something that I take lightly.

 8              The issue before this Court is very simple.  Are

 9     they allowed to block a witness who gave what I believe are

10     very damaging testimony for me taking that deposition so it

11     becomes stale, so he can run away from it.  The answer is

12     they are not.  And the Court that decides that under Rule

13     7 -- 37 is Your Honor.

14              Thank you for your time today, Your Honor.  Thank

15     you for the extended argument you've allowed me on this

16     issue.  I greatly appreciate it.

17              THE COURT:  All right, counsel.

18              I'm going to take this matter under advisement.

19     I'll try to get you a ruling as soon as possible and give

20     you guidance on this issue.

21              From a high level, though, I will simply say that

22     the Court is persuaded that both Plaintiff and Defendant

23     are using this Court and its procedures to better

24     themselves before the PTAB with regard to the CBM

25     litigation.

1          I'm persuaded that Defendant moved early for a 101

2    to force Plaintiff to flesh out their position so that

3    could be known at the time of the CBM litigation.

4          I'm persuaded that Plaintiff, attempting to avoid

5    that, for no other reason that I can think of, filed both

6    its response to the 101 and its sur-reply under seal in

7    attempts to block that from being used at the PTAB.

8          This deposition issue that's before me, it's -- in

9    my mind, it's not about this Court and the case here.  It's

10   about trying to better both sides' position before the PTAB

11   in hopes that the CBM litigation will be the dispositive

12   litigation in this case.

13         If it gets back to me at some later date, it will

14   be because this Court is Plan B and not Plan A in this

15   litigation, and I will tell both of you, this Court finds

16   it distasteful to be used as a tool, perhaps in parallel

17   litigation, perhaps in issues that have some basis in both

18   places, but primarily as a -- preparing ground for the

19   litigation before the PTAB.

20         That doesn't mean it's illegal.  That doesn't mean

21   it's unethical.  But nobody likes to be used.  And, quite

22   honestly, my feeling is that this Court is being used by

23   both of you and has been through the litigation that's led

24   up to this point.

25         That notwithstanding, I've got a motion with

1    regard to a request effectively to take an early

2    deposition.  I'm going to look at it.  And I'm going to

3    consider this Court's precedence and the applicable rules

4    of procedure and the posture in which the case is before

5    this Court, and I'm going to give you a ruling.

6          But that's not going to change the fact that while

7    the PTAB proceedings under the America Invents Act are

8    intended by Congress to be parallel to the district court,

9    I'm not persuaded that Congress intended the district court

10   to be a tool to be used by parties as they proceed and

11   attempt to better their posture before the PTAB, any more

12   than I think Congress intended the PTAB to be a tool to use

13   before the district court.

14         I understand the temptation.  I understand the

15   pressures on skilled and aggressive litigators on both

16   sides of the issue to take whatever advantage they can.

17   But I can tell you, the Court doesn't like the

18   distastefulness of being a tool used for some other

19   proceeding some other place.

20         And despite the argument I've heard from both

21   sides, I'm persuaded that's at the root of what's before

22   the Court in this issue and in this case.

23         It may end up coming back here.  It may end up

24   being tried to a verdict in this court.  But it will be

25   only after the PTAB has declined to institute review here.

1  And that's the first opportunity to reach a dispositive

2  result, and that's where your efforts on both sides of

3  these various issues are targeted, in my view.

4          Nonetheless, this matter is under review.  I will

5  get you a ruling as soon as possible.

6          I thank you for your attendance and your argument.

7  You are excused, and the Court stands in recess.

8          COURT SECURITY OFFICER:  All rise.

9          (Hearing concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3           I HEREBY CERTIFY that the foregoing is a true and

4   correct transcript from the stenographic notes of the

5   proceedings in the above-entitled matter to the best of my

6   ability.

7

8

9    /S/ Shelly Holmes                        1/14/19
    SHELLY HOLMES, CSR, TCRR                   Date
10  OFFICIAL REPORTER
    State of Texas No.: 7804
11  Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25