**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **UNITED SERVICES AUTOMOBILE ASSOCIATION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:18-cv-245-JRG** |
| **WELLS FARGO BANK, N.A.,** | |
| **Defendant.** | |

**DEFENDANT WELLS FARGO BANK, N.A.'S
MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES ................................................................................. 1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 1

III.    BACKGROUND ............................................................................................. 2

IV.    LEGAL STANDARD......................................................................................... 4

V.    ARGUMENT ................................................................................................. 5

    (a)    The claims of the Asserted Patents are substantially similar and the § 101 analysis may be accomplished using two representative claims. .......................... 6

    (b)    Alice Step One: The claims of the Asserted Patents are directed to the abstract idea of monitoring an image for a certain criterion, determining whether that criterion is met, and when that criterion is met, capturing that image........................................................................................................... 7

    (c)    Alice Step Two: The Claims of the Asserted Patents do not contain an inventive concept that transforms the abstract idea into a patent eligible application........................................................................................ 13

    (d)    The Court's claim construction does not render the asserted claims eligible under § 101. ............................................................................................ 16

VI.    CONCLUSION............................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice v. CLS Bank Int'l,*
573 U.S. 208 (2014) ..................................................................................... *passim*

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986) .............................................................................................5

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,*
689 F.3d 1303 (Fed. Cir. 2012), *aff'd in part, rev'd in part on other grounds*
*sub nom. Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S.
576 (2013) ...........................................................................................................10

*Bancorp Servs. LLC v. Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012) ..........................................................................11

*Becton, Dickinson & Co. v. Baxter Int'l, Inc.,*
127 F. Supp. 3d 687 (W.D. Tex. 2015) ...............................................................12

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ............................................................................7

*Bilski v. Kappos,*
561 U.S. 593 (2010) ..............................................................................................5

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.,*
774 F.3d 755 (Fed. Cir. 2014) .......................................................................10, 11

*Celotex v. Catrett,*
477 U.S. 317 (1986) ..............................................................................................5

*Clear with Computers, LLC v. Altec Indus., Inc.,*
No. 6:14-cv-79, 2015 WL 993392 (Gilstrap, J.) ........................................9, 13, 16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................6, 18

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011) ........................................................................5, 8

*Dailygobble, Inc. v. SCVNGR, Inc.,*
CBM2018-00002 (PTAB May 8, 2018) ................................................................4

*DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed. Cir. 2014) ..........................................................................12

ii

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d. 1350 (Fed. Cir. 2016)..................................................................................10, 11

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...............................................................................5, 11, 12

*Fairwarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016).........................................................................................11

*Genetic Tech. Ltd. v. Merial, L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016).........................................................................................10

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)............................................................................................................11

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed. Cir. 2017).........................................................................................15

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)...........................................................................................7

*My Health, Inc. v. ALR Techs., Inc.*,
    No. 2:16-cv-535, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) ......................................11

*My Health, Inc. v. DeVibiss Healthcare, LLC*,
    No. 2:16-cv-535, 2017 WL 3836124 (E.D. Tex. Feb. 14, 2017).......................................11

*OIP Techs. v. Amazon.com*,
    788 F.3d 1359 (Fed. Cir. 2015)...........................................................................................5

*PerkinElmer, Inc. v. Intema Ltd.*,
    496 Fed. App'x 65 (Fed. Cir. 2012)...................................................................................10

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ...................................................................................5

*Recognicorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017).........................................................................................14

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*,
    Case No. 6:15-cv-682, 2016 WL 3584195 (E.D. Tex. Jan. 4, 2016)..................................12

*SmarTEN LLC v. Samsung Elecs. Am., Inc.*,
    No. 1:17-cv-1381, 2018 WL 1368268 (E.D. Va. Mar. 16, 2018)......................................12

*Solutran, Inc. v. Elavon, Inc.*,
    2019 WL 3418471 (Fed. Cir. July 30, 2019)......................................................................18

*Thorner v. Sony Comput. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012)...................................................................................18

*In re TLI Commc'ns Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)........................................................................................5

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017).................................................................................8, 14

*Ultramercial v. Hulu*,
  772 F.3d 709 (Fed. Cir. 2014)........................................................................................5

*Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*,
  CBM2019-00002, No. 16 (PTAB Apr. 26, 2019) ..........................................................4

*Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*,
  CBM2019-00003, No. 25 (PTAB June 3, 2019) ........................................................4, 2

*Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*,
  CBM2019-00004, No. 22 (PTAB May 15, 2019) ..........................................................4

*Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*,
  CBM2019-00005, No. 25 (PTAB June 3, 2019) ............................................................4

*Zuili v. Google LLC*,
  722 F. App'x 1027 (Fed. Cir. 2018) .............................................................................12

**Statutes**

35 U.S.C. § 101.................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................................5

Federal Rule of Civil Procedure 56 ..................................................................................5

Local Rule CV-5(a)............................................................................................................3

Local Rule CV-5(a)(3)(A) .................................................................................................3

Capturing a photograph by referring to a "monitoring criterion" or an "alignment guide," such as the photographer's hands or a viewfinder, is a mental process.  That mental process is all that the Asserted Patents[1] claim. The claims of the Asserted Patents are thus directed to an abstract idea and are invalid under 35 U.S.C. § 101.  Two Asserted Patents claim the use of "monitoring criterion" and the others claim use of an "alignment guide," but all four are directed to the same mental process of taking a picture by monitoring an image for some desired criterion, determining whether the criterion is met, and capturing that image when the criterion is satisfied.  The asserted claims do nothing more than apply this abstract concept using standard computer technology and what the specifications of the Asserted Patents describe are generic and known criteria, and thus add no inventive concept capable of rendering the claims eligible for patentability.

USAA cannot overcome the hurdle that the ***claims*** of the Asserted Patents fail to incorporate any inventive conceptive capable of transforming the claims into a patent-eligible application.  Beyond the ineligible abstract concept, the claims simply recite generic and conventional concepts, which the specification admits are well-known and routine.  Accordingly, under the two-step *Alice* test, USAA's patents are invalid for attempting to patent the patent-ineligible concept of monitoring, capturing, and transmitting an image.

## I.     STATEMENT OF ISSUES

Wells Fargo requests that the Court grant summary judgment on USAA's infringement claims because the Asserted Patents are directed to an abstract idea and do not include additional limitations amounting to an inventive concept that could render the claims eligible for patenting.[2]

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

---

[1] U.S. Patent Nos. 8,699,779 (the "'779 Patent"), 9,336,517 (the "'517 Patent"), 9,818,090 (the "'090 Patent"), and 8,977,571 (the "'571 Patent") (collectively, the "Asserted Patents").

[2] Wells Fargo previously filed a Motion for Judgment on the Pleadings on § 101 grounds, which the Court denied as moot following the filing of USAA's Amended Complaint.  ECF Nos. 28, 61.

- The '779 patent issued on April 15, 2014; the '571 patent issued on March 10, 2015; the '517 patent issued on May 10, 2016, and the '090 patent issued on November 14, 2017.

- Claims 14–20 of the '571 Patent, Claim 20 of the '090 Patent, Claims 19–23 of the '779 Patent, and Claims 2–4, 11, 15, and 16 of the '517 Patent have been statutorily disclaimed.[3]

## III.    BACKGROUND

The Asserted Patents describe capturing an image of a check for deposit by monitoring the image of that check with respect to a "monitoring criterion" or an "alignment guide" and then transmitting that image to a bank for depositing the check.  The two "monitoring criterion" patents, the '090 Patent and the '571 Patent, share a priority date, and specification.   The common specification of these patents describes monitoring images for conformance to multiple monitoring criteria when capturing check images for mobile deposit.  The monitoring criteria described in these patents can include light brightness and contrast, image positioning, skewing, warping, and corner detection.  Similarly, the two "alignment guide" patents, the '779 Patent and the '517 Patent, share a priority date and specification.  Unlike the monitoring criterion specification, the common specification of the alignment guide patents is more focused on image alignment and describes determining image alignment by comparing thane image to an alignment guide when capturing check images for mobile deposit.  Despite these superficial differences, all four patents broadly claim the same basic abstract idea of monitoring, capturing, and transmitting an image.

The embodiments described are all composed of standard, off-the-shelf components.  For example, the specifications describe the networks and hardware needed as "any suitable network,"[4]

---

[3] *See* Ex. A.

[4] "[A]ny suitable network" will suffice. *E.g.*, '779 Patent at 17:35–37 ("The network 1014 may be any suitable network and may support any appropriate protocol suitable for communication to the computer 1010."). The specifications list generic possibilities: "The user 102 may communicate with financial institution 130 by way of communications network 120 such as an intranet, the Internet, a local area network (LAN), a wide area network (WAN), a wireless fidelity (WiFi) network, . . . and the like." '779 Patent at 3:13–18; '517 Patent at 3:24–30; '090 Patent at 3:29–35;'571 Patent at 3:12–18.

"any combination of systems and subsystems," "any combination of hardware components . . . and/or software components," and "any type of mobile device." Likewise, the specifications describe the financial institution's hardware and software in highly generic terms.[5] Similarly, the specifications describe the user's hardware and software as any type of mobile device, including "a mobile phone (also known as a wireless phone or a cellular phone), a personal digital assistant (PDA), or any handheld computing device, for example."[6] The components of that mobile device are generically stated to include "a processor 1020,[7] a storage device 1022,[8] an output device 1024,[9] an input device 1026,[10] and a network interface device 1028, all connected via a bus 1030.[11]" The software employed is generically described as "program modules . . . includ[ing] routines, programs, objects, components, data structures, etc. that perform particular tasks or implement particular abstract data types," or as a software object that may operate through an API

---

[5] Hardware "may include any combination of systems and subsystems such as electronic devices including, but not limited to, computers, servers, databases, or the like," with such devices including "any combination of hardware components such as processors, databases, storage drives, registers, cache, random access memory (RAM) chips, data buses, or the like and/or software components such as operating systems, database management applications, or the like." '779 Patent at 4:22–32; '517 Patent at 4:35–43; '090 Patent at 5:2–11;'571 Patent at 4:48–56.

[6] '779 Patent at 3:49–52; '517 Patent at 3:60–63; '090 Patent at 4:1–4;'571 Patent at 3:48–51.

[7] The processor is further generically described as follows: "The processor 1020 represents a central processing unit of any type of architecture, such as a CISC . . . , RISC . . . , VLIW . . ., or a hybrid architecture, although any appropriate processor may be used." '779 Patent at 16:13–18; '517 Patent at 16:26–31; '090 Patent at 19:25–31;'571 Patent at 18:51–56.

[8] The storage device is further generically described: "The storage device 1022 represents one or more mechanisms for storing data. For example, the storage device 1022 may include read-only memory (ROM), RAM, magnetic disk storage media, optical storage media, flash memory devices, and/or other machine-readable media. In other embodiments, any appropriate type of storage device may be used." '779 Patent at 16:35–40; '517 Patent at 16:48–53; '090 Patent at 19:46–52;'571 Patent at 19:5–10.

[9] The output device is further generically described: "The output device 1024 is that part of the computer 1010 that displays output to the user. The output device 1024 may be a liquid crystal display . . . well-known in the art of computer hardware." '779 Patent at 16:63–66; '517 Patent at 17:9–11; '090 Patent at 19:46–52;'571 Patent 19:5–10.

[10] The input device is further generically described: "The input device 1026 may be a keyboard, mouse or other pointing device, . . . or any other appropriate mechanism for the user to input data . . . ." '779 Patent at 17:7–11; '517 Patent at 17:20–24; '090 Patent at 20:19–24;'571 Patent at 19:43–48.

[11] '779 Patent at 16:10–13; '517 Patent at 16:23–26; '090 Patent at 19:22–25;'571 Patent at 18:48–51. The network interface device and bus are further generically described as follows: "The network interface device 1028 provides connectivity from the computer 1010 to the network 1014 through any suitable communications protocol," and "[t]he bus 1030 may represent one or more busses, such as . . . or any other appropriate bus and/or bridge." '779 Patent at 17:15–24; '517 Patent at 17:28–36; '090 Patent at 20:27–35;'571 Patent at 19:51–59.

3

compatible with any known mobile operating system.[12]

The Patent Trial and Appeals Board's ("PTAB") decisions denying institution of Wells Fargo's petitions for CBM review of the '779, '571, and '517 Patents are tangential to the § 101 issue because the PTAB never reached the merits of Wells Fargo's § 101 challenges, and instead denied institution on jurisdictional grounds.  In particular, the PTAB found the claims of the '779, '571, and '517 Patents were not eligible for CBM review because they recited a "technological invention."[13]  Whether a patent recites a technological invention is different from a determination of whether a patent recites § 101 eligible subject matter.  *See, e.g., Dailygobble, Inc. v. SCVNGR, Inc.*, CBM2018-00002 (PTAB May 8, 2018).

Even if the PTAB decisions were not tangential, they are of limited persuasiveness because they rely on constructions not adopted by this Court.  The PTAB held depositing a check required electronic reading or processing and clearing.[14]  This Court held instead that "[d]epositing a check does not necessarily require or follow presentment and clearing."  ECF No. 100 at 17.

## IV.    LEGAL STANDARD

The Court is well aware of the two-step test for assessing patent subject-matter ineligibility challenges under 35 U.S.C. § 101.  In the first step of the test, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea.  *Alice v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  If so, the court determines whether the **claims** recite an "inventive

---

[12] '779 Patent at 7:55–8:2, 15:65–16:2; '517 Patent at 7:64–8:13, 16:11–15; '090 Patent at 11:35–50, 19:9–13; '571 Patent at 11:6–21, 18:36–40.

[13] Ex. B, *Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*, CBM2019-00003, No. 25 at 15–26 (PTAB June 3, 2019) ("'517 PTAB Dec."); Ex. C, *Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*, CBM2019-00004, No. 22 at 22–32 (PTAB May 15, 2019) ("'571 PTAB Dec."); Ex. D, *Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*, CBM2019-00005, No. 25 at 14–26 (PTAB June 3, 2019) ("'779 PTAB Dec.").  Wells Fargo requested termination of the '090 Patent petition before an institution decision was made.  Ex. E, *Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*, CBM2019-00002, No. 16 (PTAB Apr. 26, 2019).

[14] Specifically, the PTAB construed the claims to recite that determining that the alignment of the image "is within an acceptable threshold such that the [captured information / image] can be electronically read," '517 PTAB Dec. at 21, '779 PTAB Dec. at 21, or the image quality "is within acceptable thresholds so that check data can be electronically obtained from the image without error during electronic processing and clearing." '571 PTAB Dec. at 28.

concept" sufficient to "transform the nature of the claim into patent-eligible subject matter." *Ultramercial v. Hulu*, 772 F.3d 709, 715 (Fed. Cir. 2014); *Alice*, 573 U.S. at 214–15, 217.  For example, relying on a computer or the internet to "perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs. v. Amazon.com*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *In re TLI Commc'ns Patent Litig*., 823 F.3d 607, 612 (Fed. Cir. 2016).

Transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 223 (quoting *Mayo Collaborative Servs. v. Prometheus Labs*., Inc., 566 U.S. 66, 70, 72 (2012)).  In the context of computer-related technology, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1336 (Fed. Cir. 2016).  Indeed, if—as here—a claim could be performed in the human mind it is not patent-eligible.  *CyberSource Corp. v. Retail Decisions*, Inc., 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use,' but they also can be 'done mentally.'" (citation omitted)).

Patent eligibility under 35 U.S.C. § 101 is a threshold issue of law.  *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Federal Rule of Civil Procedure 56 requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986).

## V.   ARGUMENT

Here, the Asserted Patents as a whole are directed to the same concept and may be assessed via two representative claims.  Moreover, the Court has already construed the disputed claim terms and discovery is complete.  Accordingly, there are no roadblocks to the Court concluding at

summary judgment that the Asserted Patents are invalid under *Alice* step 1 because they claim nothing more than the abstract idea of monitoring an image for a certain criterion and capturing that image once certain thresholds are met.  At step 2, the claims add nothing more—no inventive concept, and nothing additional beyond the routine and conventional.  Thus, looking at the claims as a whole, the steps in combination do not make the abstract mental process patent-eligible, and the claims of the Asserted Patents are ineligible under § 101.

> (a)  **The claims of the Asserted Patents are substantially similar and the § 101 analysis may be accomplished using two representative claims.**

The use of representative claims as a proxy for a claim-by-claim analysis of eligibility under 35 U.S.C. §101 is well-accepted, and indeed is often a practical necessity.  *See Alice*, 573 U.S. 224–25; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  The use of representative claims is particularly appropriate here, where the Asserted Patents belong to similar patent families, involve the same technology, and share nearly identical patent specifications.

Here, claim 1 of the '090 Patent and claim 1 of the '779 Patent are representative of the claims of the Asserted Patents for purposes of this Motion, and are reproduced below:

| Monitoring Criterion Family: '090 Patent, Claim 1 | Alignment Guide Family: '779 Patent, Claim 1 |
|---|---|
| 1. A system comprising: | 1. A system for depositing a check, comprising: |
| an image capture device; | a mobile device having a camera, a display and a processor, wherein the processor is configured to: |
| a presentation device; and | |
| a processor in communication with the image capture device and the presentation device, the processor configured to: | project an alignment guide in the display of the mobile device, the display of the mobile device displaying a field of view of the camera; |
| monitor a target document in a field of view of the image capture device with respect to a monitoring criterion; | monitor an image of the check that is within the field of view; |
| control the presentation device to present feedback information describing an instruction for satisfying the monitoring criterion; | determine whether the image of the check aligns with the alignment guide; |
| | automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and |
| determine whether the monitoring criterion is satisfied based on the target document in the | transmit the captured image of the check from |

| field of view of the image capture device; and<br><br>when the monitoring criterion is determined to be satisfied, control the image capture device to capture an image depicting the target document in the field of view of the image capture device. | the camera to a depository via a communication pathway between the mobile device and the depository. |

All of the claims of the Asserted Patents contain similar limitations.  Courts may treat a claim as representative where "the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc*., 881 F.3d 1360, 1365 (Fed. Cir. 2018).  The only differences between these representative claims and the other claims in the Asserted Patents are minor—providing for automatic capture, clarifying or adding minor features such as adjusting the alignment guide, editing the captured image, storing the image, changing the format of the feedback instruction (i.e., from visual text to auditory), taking a second image if the first is not satisfactory, or transmitting an image.[15]  As will be discussed, none of these differences constitute an inventive concept at *Alice* Step 2 sufficient to save the otherwise ineligible claims.

> **(b)  Alice Step One: The claims of the Asserted Patents are directed to the abstract idea of monitoring an image for a certain criterion, determining whether that criterion is met, and when that criterion is met, capturing that image.**

Step 1 of the *Alice* test requires the Court to determine whether the **_claims_** at issue are directed toward a patent-eligible concept.  At step 1, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015).  *Mayo* stated that

---

[15] In its Response to Wells Fargo's Motion for Judgment on the Pleadings, USAA contested the use of representative claims because the claims chosen were directed to an imaging system on a mobile device, but several claims in the Asserted Patents were directed a bank server.  *See* USAA's Resp. to Mtn. for Judgment on the Pleadings, ECF No. 48, at 29 (Oct. 31, 2018) (citing '779 Pat.Cls. 19–23; '571 Pat. Cls. 14–20).  USAA has since statutorily disclaimed all claims in the Asserted Patents referencing a "server," including: '090 Pat., claim 20; '571 Pat., claims 14–20; '779 Pat., claims 19–23; and '517 Pat., claims 2–4, 11, 15, 16.  *See* Ex. A.  These arguments are thus inapposite.

"mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Mayo*, 566 U.S. at 70 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "[C]omputational methods which can be performed entirely in the human mind . . . are free to all men and reserved exclusively to none." *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1371 (Fed. Cir. 2011). Thus at step 1, the Court should "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Here, the claims of the Asserted Patents are directed to monitoring an image, determining when it passes certain thresholds or meets a certain criterion, and then capturing that image. *See* '090 Patent, cl. 1 (describing generic computer components and a processor configured to "monitor a target document" with respect to "a monitoring criterion," "determine whether the monitoring criterion is satisfied," and "when the monitoring criterion is determined to be satisfied . . . capture an image."); '090 Patent Abstract ("An image of a check that is in the field of view of a camera is monitored prior to the image of the check being captured. . . . When the image of the check in the field of view passes monitoring criteria, an image may be taken by the camera . . . .").

The specification of the monitoring criterion patents describes how "[t]he monitoring criteria may be directed to proper lighting and/or framing of the check . . . in an image of the check," and may include criteria such as light contrast and brightness, image position, skew, warp, and other criteria that may affect the quality of the capture image. *E.g.*, '090 Patent 4:10–12, 4:22–27. In the alignment guide patents, the evaluated criteria are limited to one type, namely whether the image of the check is aligned with an alignment guide. *See* '517 Patent, Abstract ("An alignment guide may be provided in the field of view of a camera . . . When the image of the check

8

is within the alignment guide in the field of view, an image may be taken by the camera . . . ."). Regardless of the specific type of criterion being monitored and evaluated, the Asserted Patents are all directed to the same mental process of monitoring an image for a certain criterion, determining whether that criterion is met, and when it is, capturing the image.[16]

The steps performed by the claimed computer elements described in these claims—monitoring an image, determining whether it meets some target criterion, then taking an action based on that determination—are functional in nature and are performed by a human as part of evaluating an image when taking a photo. *See Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *4 (Gilstrap, J.).   The representative claims require monitoring of an image through a "field of view," for instance, a viewfinder; determining whether the image is adequate based on some metric, such as, for example, position within the viewfinder; and taking the photo.   In the technical parlance of the representative claims, this occurs via comparing the image against an "alignment guide" or a "monitoring criterion" and providing feedback instructions to satisfy the criterion before capturing the photo, but is analogous to a human photographer observing an image, mentally comparing it against some criteria—for instance, is the image to be captured within the frame of the camera's viewfinder?—and determining whether the criterion is satisfied.   In this process, the photographer gives himself instructions, such as, mentally instructing himself to move the camera to capture the full image within the viewfinder.   Once the comparison is mentally satisfied, the photographer performs the last step and takes the desired picture—or "automatically capture[s]" the image.

The system described in the representative claims constitutes a mental process performed by a human any time an image is evaluated as part of taking a photo, and thus constitutes an

---

[16] *See* Ex. F for a visual representation of the claim elements directed to ineligible subject matter.  Steps that are mental processes or performed by a human are highlighted in blue.  The transmission step is highlighted in purple.

ineligible abstract idea.  The Federal Circuit routinely treats "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d. 1350, 1354 (Fed. Cir. 2016) (invalidating patent directed to "monitoring" and analyzing data).  Such mental process steps include those that "merely set[] forth a routine comparison that can be performed by the human mind," such as the claimed step of comparing the monitored image to target criteria.  *Genetic Tech. Ltd. v. Merial, L.L.C.*, 818 F.3d 1369, 1378–79 (Fed. Cir. 2016).

As discussed, the representative claims require a comparison between the target image and some unspecified criteria (in the case of the monitoring criterion patents) or an alignment guide (for the alignment guide patents), and are comparable to "comparing and analyzing" claims in diagnostic patents previously held to be ineligible as directed to an abstract idea.  For example, the Federal Circuit has held that claims directed to "comparing" or "analyzing" two gene sequences fall outside the scope of § 101 because they claim only abstract mental processes.  *See In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 763–64 (Fed. Cir. 2014); *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1334 (Fed. Cir. 2012), *aff'd in part, rev'd in part on other grounds sub nom. Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013); *PerkinElmer, Inc. v. Intema Ltd.*, 496 Fed. App'x 65 (Fed. Cir. 2012) ("determining the risk of Down's syndrome by comparing" screening markers held to be an ineligible mental step).  The claims in *Association for Molecular Pathway* were held ineligible because they "recite[d] nothing more than the abstract mental steps necessary to compare two different nucleotide sequences," namely identifying the particular sequence of nucleotides in two separate DNA sequences, and comparing the particular nucleotides in each sequence to see if they were the same or different.  689 F.3d at 1334.  In a follow-on case,

the Federal Circuit noted that merely comparing two genes and identifying differences covered an "unlimited" number of comparisons, which were "not restricted by the purpose of the comparison or the alteration being detected," and thus raised preemption concerns.  *BRCA*, 774 F.3d at 763.

Such is the case here.  The comparison described in the Asserted Patents between the target image and some desired criterion is not restricted in purpose, type of criterion, or even acceptable standards, and thus the claims cover an unlimited number of comparisons.  The claims of the Asserted Patents thus implicate preemptive concerns, and must be held unpatentable under § 101. *See Gottschalk v. Benson*, 409 U.S. 63, 64 (1972) (holding a claim on an algorithm for converting binary-coded numbers to pure binary ineligible as "[t]he claims were not limited to any particular art or technology, to any particular apparatus or machinery, or to any particular end use").

Moreover, a review of prior cases further confirms that "monitoring–determining–acting" claims such as those in the Asserted Patents are directed to an abstract idea.  *See Enfish*, 822 F.3d at 1335.  Both the Federal Circuit and this Court have invalidated patents under § 101 directed to or claiming "monitoring" steps as abstract or mental processes.  *See Elec. Power*, 830 F.3d. at 1354; *Fairwarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (invalidating patent "directed to the broad concept of monitoring audit log data"); *My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-535, 2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017) (Payne, M.J.). Similarly, the Federal Circuit, this Court, and the Supreme Court have found "determining" steps to be abstract.  *Mayo*, 566 U.S. at 79 (invalidating patent with a "'determining' step [that] tells the doctor to determine the level of the relevant metabolites in the blood"); *Bancorp Servs. LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1279–80 (Fed. Cir. 2012); *My Health, Inc. v. DeVibiss Healthcare, LLC*, No. 2:16-cv-535, 2017 WL 3836124, at *4 (E.D. Tex. Feb. 14, 2017) (Payne, M.J.).  Similar findings have been made by courts for "capturing" and "instruction / feedback" steps as well.

11

*SmarTEN LLC v. Samsung Elecs. Am., Inc*., No. 1:17-cv-1381, 2018 WL 1368268, at *3–6 (E.D. Va. Mar. 16, 2018); *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 690 (W.D. Tex. 2015) (invaliding patent containing steps of "capturing, via an image capture device . . . one or more images" and "transmitting the one or more images captured").[17]

Because the "monitoring," "determining," "capturing," and "instruction" steps are all mental process steps of the type routinely found to be abstract and invalid by this and other courts, the only step remaining is the "transmitting" step.[18]  The mere transmission of data, however, does not save these claims.  The mere transmission of data has routinely been held to be abstract in nature (or part of claims found abstract and patent ineligible).  *See Rothschild Location Techs. LLC v. Geotab USA, Inc.*, Case No. 6:15-cv-682, 2016 WL 3584195, at *5 (E.D. Tex. Jan. 4, 2016) ("The Federal Circuit has identified method claims that involve collecting, organizing, recognizing, and/or transmitting information as abstract ideas."); *see also Zuili v. Google LLC*, 722 F. App'x 1027, 1030–31 (Fed. Cir. 2018) (invalidating claims "directed to the abstract idea of collecting, transmitting, analyzing, and storing data to detect fraudulent and/or invalid clicks").

Finally, the claims do not identify any inventive algorithms so as to "purport to improve the functioning of the computer itself."  *See Enfish*, 822 F.3d at 1339 ("[W]e find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis.").  This could be accomplished, for example, by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or by improving "the way a computer stores and retrieves data in memory." *Enfish*, 822 F.3d at 1339.  The claims

---

[17] For additional cases where the Federal Circuit and district courts have found such "monitoring," "determining," "capturing," and "instruction/feedback" steps to be directed to abstract, ineligible subject matter, see Exhibit G.

[18] *See* Ex. F.  In this table, the transmission step is highlighted in purple.

nowhere recite a particularized improvement to the function of the servers, networks, or mobile devices at issue. Instead, as in *Clear with Computers*, "[t]he claims here invoke computer technology only to take advantage of the relative ease by which a computer, rather than a human," can monitor, capture, and transmit images. 2015 WL 993392, at *4. The claims here also do not "effect an improvement in any other technology or technical field." *Alice*, 573 U.S. at 225. As in *Clear with Computers*, the claims contain "no inventive algorithms or otherwise creative means for [performing the claimed method] other than an instruction that the basic process be performed using generic computer components." 2015 WL 993392, at *5.

Because the asserted claims attempt to claim the abstract idea of monitoring, determining, capturing, and transmitting an image, step 1 of the *Alice* inquiry is satisfied here. Accordingly, the Asserted Patents are directed to a patent-ineligible concept.

### (c) Alice Step Two: The Claims of the Asserted Patents do not contain an inventive concept that transforms the abstract idea into a patent eligible application.

The claims of the Asserted Patents do not contain an inventive concept under *Alice* step 2 sufficient to transform the claimed abstract idea into a patent-eligible application. Once the abstract idea is itself removed, only generic computer components remain, which are insufficient to save the claims. Nor can USAA raise a fact issue relating to whether the claims contain an inventive concept sufficient to transform the claims; on the contrary, discovery is complete and there is no fact issue regarding inventiveness to save the claims from summary judgment.

At *Alice* step 2, the Court must consider elements of each claim individually and "as an ordered combination" to determine whether the additional elements contain an "inventive concept" able to "'transform the nature of the claim' into a patent-eligible application"—*i.e.*, more than a patent upon the abstract idea itself. *Alice*, 573 U.S. at 218 (quoting *Mayo*, 566 U.S. at 79). The inventive concept cannot merely be alleged or shown through evidence; rather, "the claim ha[s] to

13

supply a 'new and useful' application of the idea in order to be patent eligible." *Alice*, 573 U.S. at 222; *Two-Way Media*, 874 F.3d at 1338 ("The main problem that [patentee] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept."); *Recognicorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("[A]n inventive concept must be evident in the claims.").

There is no factual question that **the claims** of the Asserted Patents do not contain an inventive concept that transforms the claimed abstract idea into patent-eligible subject matter. The specification itself admits that the claims lack an inventive concept, and instead simply recite generic, well-known, and conventional components. Accordingly, the Asserted Patents fail *Alice* Step 2, and summary judgment is appropriate.

The majority of the claims are written and directed toward the abstract idea itself. [19] All that is left in the non-abstract realm are generic computer components—*i.e.*, the image capture device, the presentation device, the processor, etc.—which, as discussed, are described in highly generic terms[20] and cannot save the claims. The claims are thus not transformed, but instead remain abstract and unpatentable.

Here, all of the computer components are described in highly generic terms: "**any** suitable network" or "**any** combination of hardware components such as processors, databases, storage drives, registers, cache, random access memory (RAM) chips, data buses, or the like and/or software components such as operating systems, database management applications, or the like." *See, e.g.*, '779 Patent at 4:22–32, 17:35–37 (emphasis added). The user's mobile device likewise is described generically as "a mobile phone (also known as a wireless phone or a cellular phone), a personal digital assistant (PDA), or any handheld computing device, for example." *See, e.g.*, *id.*

---

[19] *See* Ex. H.
[20] *See supra* notes 4–12

14

at 3:49–52).  It is then further described as having only the most generic of components: "a processor 1020, a storage device 1022, an output device 1024, an input device 1026, and a network interface device 1028, all connected via a bus 1030."  *E.g.*, *id.* at 16:10–13; *see supra* notes 4–12.

Such nonspecific networks, computer components, and mobile devices have routinely been found to be generic such that they do not impart an inventive concept under step 2.  *SAP Am.*, 890 F.3d at 1023 (collecting cases, stating "this court has ruled many times that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept"); *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (invalidating patent that "simply recites that the abstract idea will be implemented using the conventional components and functions generic to electronic mobile devices").

The remaining claims of the Asserted Patents suffer from similar inadequacies, and do nothing more than spell out what the specifications admit was already well known in the art and routine.  For instance, certain claims describe monitoring the image for certain criterion, such as image skew ('571 Patent cl. 13; '090 Patent cls. 8–9, 18–19), detectable corners and edges ('090 Patent cl. 10, '779 patent cl. 5), light brightness ('571 Patent cl. 12), or alignment with an edge or alignment guide ('779 patent cls. 7–9, 15–17).  Other claims describe elements for image processing, such as cleaning or cropping the image ('517 Patent cls. 12–13), storing the photo in a memory ('517 Patent cl. 6), or taking the photo automatically once the image is determined to pass some unspecified criterion.  ('571 Patent cl. 6; '090 Patent cl. 7).  These elements do not constitute an inventive concept, but rather simply incorporate conventional elements admitted by the specification to be conventional and well-known. For example, regarding corner and edge detection, the specifications admit that "[a]ny known technique(s) for edge detection and/or corner detection may be used" ('090 Patent at 7:64–8:8), and that "[e]dge detection techniques are well

15

known and any suitable method may be used herein." ('517 Patent at 10:61–63). The specifications similarly describe skew and warp detection as known and generic concepts, without describing any particular or improved means for implementing the step. *E.g.* '090 Patent at 8:37–40 ("[I]t may be determined whether the check 208 is skewed (*e.g.*, by comparing the distances to one another, by comparing the distances to predetermined values, etc."), *id.* at 8:45–54 ("[A] processor . . . may determine whether warping is present in the image . . . ."). Similarly, the claims describe image processing, cropping, de-warping, and de-skewing generically, without reciting any particularized improvement to functionality, inventive algorithms, or otherwise creative means for performing the claimed element. *See Clear with Computers*, 2015 WL 993392, at *5. Nor does the specification suggest that these functions are anything but routine and conventional. *E.g.*, '779 Patent at 8:14–20 ("[T]he image file 315 may be operated on by the software object of the client 320. These operations may include any of the following: deskewing, dewarping, magnetic ink character recognition (MICR), cropping (either automatically, or having the user 102 manually identify the corners and/or edges of the check 108 for example), reducing the resolution of the image, number detection, character recognition, and the like."). In sum, besides the ineligible abstract concept, the asserted claims simply import well-known and conventional elements, and thus fail to disclose an inventive concept sufficient to save the claims.

### (d) The Court's claim construction does not render the asserted claims eligible under § 101.

The Court's construction of the claim term "depositing a check" does not change the outcome of the *Alice* inquiry. The Court construed "depositing a check" to mean "providing a check to a depository in a form sufficient to allow money to be credited to an account." ECF No. 100 at 18. The Court did not construe "depositing a check" to include presentment or clearing. *Id.* at 13. Instead, the Court recognized the Asserted Patents contemplate that a check may be

received in a form sufficient to allow for money to be credited to an account—*e.g.*, it is in frame with all corners present—but it does not necessarily require deposit of funds, as depositing a check does not necessarily require or follow presentment or clearing.  *Id.* at 17.

Importantly, the Court did not state that the check needs to be in any particular form to be deemed "sufficient" for deposit, or even reference technical standards for check deposit, but simply held the check must be "in a form suitable to allow the funds associated with the check to be deposited," regardless of whether the funds are actually deposited.  *Id.*  Put simply, the fact that check must be in a "form sufficient to deposit" does not incorporate any specific legal or technical standards, but instead generally refers to the ability to extract data and process it.

There is no basis to conclude that the Court's construction impliedly incorporated technical standards and specifications for check deposit, such as the Check 21 legislation or standards published by Accredited Standards Committee X9, Inc., as well as requirements regarding machine readability.  USAA argued in its Response to Wells Fargo's Motion for Judgment on the Pleadings that check deposit via a remote image "is a technical problem with technical criteria," referencing various technical standards.  ECF No. 48 at 7.  And in its preliminary claim construction disclosure, USAA argued that "depositing a check" meant "depositing a check in accordance with applicable Check 21 formats."[21]  USAA thus may argue that the Court's construction of "depositing a check" incorporates these technical specifications into the claims, and thus recite a specific improvement to computer technology and/or an inventive concept capable of saving otherwise ineligible claims.

The Court's construction does not narrow the meanings of the claims in this way; the claims, under the Court's construction, "do not . . . purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."  *See Alice*,

---

[21] Ex. I, USAA Preliminary Claim Constructions and Extrinsic Evidence, at 4–6, 54 (Feb. 7, 2019) (excerpted copy).

573 U.S. at 225.  First, as stated, the Court's construction does not elucidate any particular standards for what constitutes a check being "sufficient" for deposit, and thus the claims are not so limited.  While the specification may discuss technical requirements under Check 21 and X9, the ***claims*** are not so limited, and it is axiomatic that limitations from the specification cannot limit the claims.  *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims . . . .").  Accordingly, any argument USAA may make regarding Check 21, X9, machine readable checks, or any other standard not expressly referenced in the claims is inapposite.

Moreover, the construction of "depositing a check" supports the conclusion that the claims are directed to an abstract idea.  In explaining its construction, the Court focused on a check being "in a form suitable" for deposit of funds.  ECF No. 100 at 17.  The Court quoted the specification describing how making a deposit with a digital image "requires the efficient and accurate detection and extraction of the information pertaining to a check in the digital image."  *Id.* at 18 (quoting '571 Patent at 1:13–33, '779 Patent at 1:13–33).  The Federal Circuit has held that claims describing extracting and processing information from hard copy documents, including checks, are drawn to an abstract idea.  *Content Extraction*, 776 F.3d at 1348; *Solutran, Inc. v. Elavon, Inc.*, 2019 WL 3418471, at *4 (Fed. Cir. July 30, 2019) (affirming *Content Extraction*).

## VI.   CONCLUSION

Because the claims of the Asserted Patents disclose only an abstract idea run on generic computer components, there is no "inventive concept" that could transform the unpatentable, abstract idea into a patent-eligible invention.  *Alice*, 573 U.S. at 221. The Asserted Patents are not patent-eligible and this motion for summary judgment should be granted.

Respectfully submitted on August 19, 2019.

By:   *Thomas M. Melsheimer*
      Thomas M. Melsheimer
      TX Bar No. 13922550
      tmelsheimer@winston.com
      Michael A. Bittner
      TX Bar No. 24064905
      mbittner@winston.com
      J. Travis Underwood
      TX Bar No. 24102587
      tunderwood@winston.com
      **Winston & Strawn LLP**
      2121 North Pearl Street, Suite 900
      Dallas, TX 75201
      (214) 453-6500 – Telephone
      (214) 453-6400 – Facsimile

      E. Danielle T. Williams
      NC Bar No. 23283
      dwilliams@winston.com
      **Winston & Strawn LLP**
      300 South Tryon Street, 16th Floor
      Charlotte, NC 28202
      (704) 350-7700 – Telephone
      (704) 350-7800 – Facsimile

      Matthew R. McCullough
      CA Bar No. 301330
      mrmccullough@winston.com
      **Winston & Strawn LLP**
      275 Middlefield Road, Suite 205
      Menlo Park, CA 94025
      (650) 858-6500 – Telephone
      (650) 858-6550 – Facsimile

Jack Wesley Hill
TX Bar No. 24032294
wh@wsfirm.com
**Ward, Smith & Hill, PLLC**
P.O. Box 1231 1507 Bill Owens Parkway
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*Counsel for Defendant*
*Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

<u>/s/ *Michael Bittner*</u>
Michael Bittner