**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas reciprocal inter-insurance exchange, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., a national banking association, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

§ CIVIL ACTION NO. 2:18-CV-245-JRG

**JURY TRIAL DEMANDED**

**FILED UNDER SEAL**

<u>**UNITED SERVICES AUTOMOBILE ASSOCIATION'S OPPOSITION TO**</u>
<u>**DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT**</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.   RESPONSE TO STATEMENT OF ISSUES ...................................................1

III.  LEGAL STANDARD .........................................................................................2

IV.   WELLS FARGO'S FAILURE TO ADDRESS ITS POST-SUIT
      CONDUCT REQUIRES DENIAL OF ITS MOTION ...................................2

V.    WELLS FARGO'S ADMISSIONS OF PRE-SUIT KNOWLEDGE
      REQUIRE DENIAL OF WELLS FARGO'S MOTION .................................3

VI.   WELLS FARGO COPIED USAA'S PATENTED PRODUCTS ................6

VII.  CONCLUSION .................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ...................................................................................................4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .....................................................................................................................2

*Apeldyn Corp. v. AU Optronics Corp.*,
    831 F. Supp. 2d 817 (D. Del. 2011) ...........................................................................................8

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    258 F. Supp. 3d 1013 (N.D. Cal. 2017) ...................................................................................10

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    Case No. 15-cv-1047-RSP, Dkt. No. 275 (E.D. Tex. Nov. 29, 2016) ...................................5

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    2016 WL 4596118 (E.D. Tex. Sept. 3, 2016) (J. Gilstrap) ............................................ 2, 3, 10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .....................................................................................................................5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ...........................................................................................................2, 10

*Mentor Graphics Corp. v. EVE-USA, Inc.*
    851 F.3d 1275 (Fed. Cir. 2017) .................................................................................................3

*Ohler v. U.S.*,
    529 U.S. 753 (2000) .....................................................................................................................6

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
    2019 WL 2375218 (E.D. Tex. June 5, 2019) (J. Gilstrap) ........................................................3

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
    44 F.3d 988 (Fed. Cir. 1995)....................................................................................................10

*WBIP, LLC v. Kohler Co.*,
    119 U.S.P.Q.2d 1301 (Fed. Cir. 2016) ......................................................................................2

**Statutes**

35 U.S.C. § 287(a) .............................................................................................................................9

Patent Act Section 284......................................................................................................................2

**Page**

**Rules**

Fed. R. Civ. P. 33(c) ................................................................................................................ 4

Fed. R. Civ. P. 56 .................................................................................................................... 2

Fed. R. Evid. 408 .................................................................................................................... 6

Fed. R. Evid. 801(d)(2) ........................................................................................................ 4

**Other Authorities**

Strong, McCormick on Evidence
    § 55, p. 246 (5th ed. 1999) ............................................................................................ 6

I.      INTRODUCTION

Wells Fargo moves for "summary judgment that Wells Fargo did not willfully infringe the Asserted Patents." The motion should be denied for at least three reasons. First, the motion entirely ignores Wells Fargo's post-suit conduct, which under current Federal Circuit precedent can alone form the basis for willfulness. Second, the factual premise of Wells Fargo's motion—that it had no pre-suit knowledge of the Asserted Patents—is directly contradicted by the evidence including Wells Fargo's own interrogatory responses, expert report, and deposition testimony. Third, the record is replete with yet further evidence of willfulness, including Wells Fargo's intentional copying of USAA's patented product, and its decision not to abate (and instead to expand) its infringing activities during this litigation.

II.     RESPONSE TO STATEMENT OF ISSUES

For each of the reasons described herein, USAA respectfully requests that Wells Fargo's motion for summary judgment regarding willfulness be denied.

III.    RESPONSE TO STATEMENT OF ALLEGED MATERIAL FACTS

1-4: Undisputed.

5: Disputed. Additional Facts:  Wells Fargo's internal communications confirm it was aware by early 2010 that USAA's mobile deposit products were the subject of pending patent applications. MSJ Ex. K. Further, the applications for the '779 and '571 patents were publicly available by October 16, 2012 upon the issuance of USAA Patent No. 8,290,237, which lists both applications in its IDS. Ex. 1 (Van Horn Dep.), 35:19-36:11; Ex. 2 ('237 IDS). These applications also disclosed the complete subject matter of the '517 and '090 patents, which share the same specifications.  Ex. 1, 36:12-24; Ex. 3 (Van Horn Report, ¶ 33; Ex. E).

6: Disputed.  Wells Fargo launched new infringing mobile applications after issuance of the '779 Patent. *See* Section VI below. Further, Wells Fargo's only cited evidence (a "Software

Term License Conversion Amendment") is inadmissible hearsay and, moreover, does not provide the alleged date of Wells Fargo's decision to launch its infringing product.

7: Disputed in part. The first contact between Wells Fargo and USAA regarding the Asserted Patents was before August 2017. Ex. 4 (McKinley Dep.), 113:9-114:24. USAA did provide to Wells Fargo a list of patents, along with representative claim charts for the '779 and '571 patents, on February 3, 2018.

8: Undisputed.

## III.   LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant has the burden of showing that there is no genuine issue of fact. *Anderson*, 477 U.S. at 256. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Section 284 of the Patent Act is the statutory basis for willful infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016). *Halo* "leaves in place [the] prior precedent that there is a right to a jury trial on the willfulness question." *WBIP, LLC v. Kohler Co.*, 119 U.S.P.Q.2d 1301, 1317 n.13 (Fed. Cir. 2016); *see also id.* ("Willfulness of behavior is a classical jury question of intent."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 4596118, at *2 (E.D. Tex. Sept. 3, 2016) (J. Gilstrap) (same).

## IV.   WELLS FARGO'S FAILURE TO ADDRESS ITS POST-SUIT CONDUCT REQUIRES DENIAL OF ITS MOTION

Wells Fargo's motion for summary judgment should be rejected at the outset for the simple fact that it presents **no** argument or evidence regarding Wells Fargo's post-suit activities. Wells Fargo seeks to justify this omission by asserting that "pre-suit knowledge of the asserted patent is generally required to maintain a claim of willfulness," MSJ at 4 (citing *Opticurrent*), but

that is not current law. In *Mentor Graphics Corp. v. EVE-USA, Inc.,* the Federal Circuit held that

willful infringement can be based solely on post-suit conduct. 851 F.3d 1275, 1295-96 (Fed. Cir.

2017). It is now "well-settled, at least in this District, that post-[suit conduct] can establish willful

infringement." *Packet Intelligence LLC v. NetScout Sys., Inc.,* 2019 WL 2375218, at *8 (E.D. Tex. June

5, 2019) (J. Gilstrap)).

As the moving party, Wells Fargo has the burden to "either produce evidence negating

an essential element of the nonmoving party's claim or defense or show that the nonmoving party

does not have enough evidence of an essential element to carry its ultimate burden of persuasion

at trial." *Core Wireless*, 2016 WL 4596118, at *2 (citing *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). With respect to post-suit willfulness, Wells Fargo

does not even attempt to meet its burden and summary judgment thus should be denied at the

outset. Moreover, there is extensive evidence of post-suit conduct evidencing Wells Fargo's

willfulness. As discussed in Section VI,  Wells Fargo admits that it can de-activate the infringing

functionality, yet rather than doing so has *expanded* its use of the infringing functionality and

continued to launch new infringing mobile software applications throughout this litigation, for

the purpose of maximizing profits.

## V.     WELLS FARGO'S ADMISSIONS OF PRE-SUIT KNOWLEDGE REQUIRE DENIAL OF WELLS FARGO'S MOTION

Wells Fargo's motion also should be denied for a second, equally straightforward reason.

The entire basis for the motion—that there is "no proper summary judgment evidence that Wells

Fargo had knowledge of the Asserted Patents prior to USAA filing suit in June 2018"—is

vigorously disputed. The record is replete with evidence that Wells Fargo knew of the Asserted

Patents before June 2018, including Wells Fargo's own interrogatory responses, expert reports,

and testimony of both Wells Fargo and USAA witnesses.

For example, in its Response to Interrogatory No. 4, Wells Fargo expressly admits:



Ex. 5, at 19 (Wells Fargo Interrogatory Response No. 4). Wells Fargo's admissions in its

interrogatory responses are, of course, admissible evidence. Fed. R. Civ. P. 33(c); Fed. R. Evid.

801(d)(2).

Wells Fargo's decision to inject its pre-suit knowledge of the patents in the case was not

accidental. Indeed, Wells Fargo claimed in its Answer and a verified interrogatory response the

defense of equitable estoppel, which **requires** pre-suit knowledge. *A.C. Aukerman Co. v. R.L.*

*Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (to satisfy the reliance element of

equitable estoppel, "the alleged infringer cannot be unaware . . . of the patentee and/or its

patent"); Dkt. 77; Ex. 5, 23-24 (Wells Fargo Interrogatory Response No. 6).

The report of Wells Fargo's damages expert, Mr. Gerardi, also cites to and relies upon

the above-quoted response to Interrogatory No. 4. Mr. Gerardi states:

Ex. 6 (Gerardi Report), ¶ 80. Mr. Gerardi also cites to the

deposition testimony of USAA representative Nathan McKinley and Wells Fargo representative

Armin Ajami discussing the claim charts. *Id.* ¶ 80, n. 105-107.

Wells Fargo 30(b)(6) witness Ajami, in the same testimony cited by Wells Fargo's damages

expert, also                                                                                                   Ex. 7

(Ajami Dep.), 124:7-21.

Further, at the deposition of USAA witness Mr. McKinley, counsel for Wells Fargo

affirmatively introduced the February 3, 2018 email and elicited from Mr. McKinley testimony

that ██████████████████████████████████████████ Ex. 8 (Exhibit 10 to the

McKinley Deposition); Ex. 4, 131:17-133:25 ███████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████

Although this evidence explicitly refers to the '779 and '571 patents, Wells Fargo's

assertion that "there is zero evidence that Wells Fargo had any pre-suit knowledge of the '090

Patent" fares no better. Given Wells Fargo's many admissions that it had notice of the '779 and

'571 patents, which are the respective parents of the '517 and '090 patents, a jury could readily

find that Wells Fargo's knowledge of '779 and '571 patents extends to the child patents,

particularly given the evidence that Wells Fargo was aware of the USAA portfolio and

intentionally copied USAA's patented product. *Arthrex, Inc. v. Smith & Nephew, Inc.*, Case No. 15-

cv-1047-RSP, Dkt. No. 275 at 4-6 (E.D. Tex. Nov. 29, 2016) (concluding that a "reasonable juror

could conclude that the scope of notice [regarding a patent patent]…. expanded to include notice

of infringement of the '541 patent after the '541 patent issued.").

Wells Fargo's argument that "the Court cannot consider the Epicenter email" pursuant

to Federal Rule of Evidence 408 and a confidentiality agreement is not well taken. It is black letter

law that "[i]f a party who has objected to evidence of a certain fact himself produces evidence…of

the same fact, he has waived his objection." *Ohler v. U.S.*, 529 U.S. 753, 755-56 (2000) (quoting 1

J. Strong, McCormick on Evidence § 55, p. 246 (5th ed. 1999)). Here Wells Fargo has repeatedly

and intentionally injected into these proceedings its knowledge of the patents in suit deriving

from its pre-suit interactions with USAA. This was the subject of its interrogatory response, it

was cited by its damages expert, and that same damages expert relied on testimony of Mr.

McKinley and Mr. Ajami on the subject. Indeed, Wells Fargo even argues in the present motion

that the pre-suit negotiations are evidence of a lack of willfulness, alleging that meeting with

USAA about its patents is evidence of "good faith."  MSJ at 12.

Having thus opened the door by affirmatively relying on its pre-suit knowledge

throughout this litigation, Wells Fargo cannot now claim that Rule 408 or the parties' agreement

precludes any use of the e-mail in these proceedings. In any event, "Rule 408 is inapplicable when

evidence of the compromise is offered to prove notice." Fed. R. Evid. 408 Committee Notes on

Rules, 2006 Amendment. To be clear, this is not a situation in which the parties signed an

agreement that acknowledged there was no pre-suit knowledge or notice of the patents. Nor is it

a situation where someone is attempting to use any offer made by either party. Regardless of

whether it was a result of the interactions between USAA and Wells Fargo, Wells Fargo's

responses make clear that it reviewed the asserted patents before this lawsuit.  Whether the email

itself is admissible or not is irrelevant to the underlying fact.

Finally, separate from the pre-suit interactions between Wells Fargo and USAA, the jury

could readily find that Wells Fargo was willfully blind. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563

U.S. 754, 769 (2011) (evidence that the defendant copied its competitors' innovative product, but

failed to have its patent attorney perform a search specifically for the competitor's patents,

"plainly sufficient to support a finding of [] knowledge under the doctrine of willful blindness.").

As discussed below in Section VI, Wells Fargo had long been aware that USAA had filed for

patents, deliberately copied USAA's embodying product, and has continued its infringement

unabated in order to maximize profits. Further, Wells Fargo also knew that ██████████

████████████████████████████████████████

██████████ Ex. 9 (Rosati Dep.), 25:5-9; Ex. 7 (Ajami Dep.), 139:21-140:4.

## VI.    WELLS FARGO COPIED USAA'S PATENTED PRODUCTS

Even beyond the two fundamental barriers to Wells Fargo's motion discussed above, the

record is replete with evidence of Wells Fargo's conduct sufficient to support a finding of

willfulness. Wells Fargo's argument that it "diligently searched" for patents, yet was unaware of

USAA's patent applications because they were filed with non-publication requests, is both legally

irrelevant and directly contradicted by the record.

As early as 2010, Wells Fargo's internal correspondence confirmed ████████████

████████████████████████████████████████████████████████████████████

████████ MSJ Ex. K. ██████████████████████████████████████████████

████████████████████████████████████████ MSJ Ex. K. Further,

Wells Fargo did not release the infringing autocapture technology until May of 2014—four years

after the alleged patent search. In its motion, Wells Fargo asserts without any evidentiary citation

that it ████████████████████████████████████████████████████████

████████████████████████████████████ MSJ at 9. However, Wells Fargo

has not produced and in its motion cites **no** purported evidence that it engaged in any

investigation or received any patent clearance in connection with the 2014 release of the infringing

autocapture technology, or any of its subsequent version releases. To the contrary, there is

compelling evidence that Wells Fargo actually knew of USAA's patent applications even before

the patents issued, and nonetheless copied USAA's product in disregard of USAA's rights.

As discussed above, a Wells Fargo internal email ██████████████████████████

████████████████████ Further, the patent applications for the patents-in-suit were publicly

available prior to their issuance. As explained in Matthew Calman's report, the '779 and '571

patent applications were disclosed as non-patent literature in the patent applications for four

USAA patents that issued between 2012 and 2013:

| Patent | Title | Publication date | USAA apps in file history: |
|---|---|---|---|
| US8433127B1 | Systems and methods for real-time validation of check image quality | 4/30/2013 | 12/549,443 ('779 patent) 12/545,127 ('571 patent) |
| US8351677B1 | Systems and methods for remote deposit of checks | 1/8/2013 | 12/549,443 ('779 patent) 12/545,127 ('571 patent) |
| US8320657B1 | Systems and methods to use a digital camera to remotely deposit a negotiable instrument | 11/27/2012 | 12/549,443 ('779 patent) 12/545,127 ('571 patent) |
| US8290237B1 | Systems and methods to use a digital camera to remotely deposit a negotiable instrument | 10/16/2012 | 12/549,443 ('779 patent) 12/545,127 ('571 patent) |

Ex. 10 (Calman Report), ¶ 361. As a result of this act, the applications for the patents in suit were publicly available simply by ordering a copy of the prosecution file, or by accessing the file history at the USPTO's Public Search Facility, which can be done at no cost.  *Id.*, ¶ 362. Wells Fargo's legal expert Mr. Van Horn agrees ███████████████████████████████████ ███████ Ex. 1, 35:19-36:11. He also acknowledged ██████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ *Id.*, 23:17-19. And, of course, Wells Fargo's own documents establish that ███████████████████████████████████████████

████████████████ A jury is entitled to weigh this evidence.

Wells Fargo's reliance on *Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817, 831 (D. Del. 2011) is misplaced. *Apeldyn* is inapposite, including because there was no evidence in that case, unlike here, that the defendant was ***already aware*** that the patentee had pending patent applications.

Here, moreover, there is also substantial evidence that Wells Fargo specifically set out to copy USAA's patented autocapture technology. Wells Fargo's corporate representative, Armin Ajami, admitted at deposition that ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Ex. 7 (Ajami Dep.), 129:11-135:10. Wells Fargo's corporate representative also admitted that the reason for that was ███████████████████████████ *Id.*, 10:7-

11:25 

Wells Fargo also regularly circulated

*E.g.*, Exs. 11-13. Indeed, the Wells Fargo "meeting minutes" contemporaneous with the May 2014 launch of the infringing autocapture technology include

Ex. 14. Ms. Lockwood Stein, who launched the consumer MRDC program at Wells Fargo, also admitted                                                     Ex. 15 (Lockwood-Stein Dep.), 34:20-35:14. Further, as discussed in USAA's opposition to Wells Fargo's Motion for Partial Summary Judgment Under 35 U.S.C. § 287(a), the USAA product that Wells Fargo consistently monitored and referenced was marked with the '779 and '571 patents by no later than December 2016.

After copying USAA's technology, and knowing of USAA's pending and issued patents, Wells Fargo has continued its infringement unabated post-suit. Wells Fargo claims that

Ex. 16 (Jitodai Dep.), 42:5-44:7; Ex. 17 (Villasenor Report), ¶ 212-213. Rather than doing so, Wells Fargo continues to release **new** product updates containing the infringing technology. Ex. 17, ¶ 64 (Wells Fargo implemented MiSnap version 3.7.1 for iOS on September 25, 2018, version 3.7 for Android on September 25, 2018, and version 3.7.1 for Android on December 11, 2018).

The reason that Wells Fargo chose to infringe, and has continued to intentionally infringe throughout this suit, is that the infringing autocapture technology is extremely advantageous to its business. Ex. 18 at 2 (2017 report sponsored by Wells Fargo's vendor stating that "auto-capture must now be treated as a must- have feature across all strata of the financial services industry."); *id.* at 16 ("The major impediment to mobile deposit is the inability to get a clear picture of the check…Automatic image capture alleviates this obstacle."). Although the parties dispute the

*amount* by which Wells Fargo has profited by its infringement, Wells Fargo's own damages expert,

Christopher Gerardi, admits that ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 6, ¶ 162.[1] In other words, Wells Fargo

has deliberately selected the path of continued infringement because infringement is profitable.

This is substantial evidence from which a jury can find willful infringement. *Halo Elecs.*, 136 S. Ct.

at 1932 (noting as a clear example of willfulness pirating of patented technology to take business

from a competitor); *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 997 (Fed. Cir. 1995)

(willful infringement where infringer admitted it copied the patentee's product, and continued to

do so after receiving actual notice of the infringement); *see also Core Wireless*, 2016 WL 4596118,

at *2 (denying summary judgment of no willfulness based on evidence of "pre-suit knowledge of

the patents-in-suit through at least one in-person meeting, as well as through detailed claim

charts"); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017)

(upholding willfulness verdict even where no pre-suit knowledge based on evidence that Samsung

copied Apple's slide-to-unlock feature before the issuance of the patent and continued to sell the

same copied designs after it was notified of the patents).

## VII.   CONCLUSION

USAA respectfully requests that Wells Fargo's motion be denied.

---

[1] ████████████████████████████████████████████████

█████████████████████████████

DATED: September 2, 2019

Respectfully submitted,

By: */s/ Robert C. Bunt*

Jason Sheasby - *Pro Hac Vice*
Lead Attorney
Lisa Glasser - *Pro Hac Vice*
Anthony Rowles - *Pro Hac Vice*
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199

Robert C. Bunt
TX Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile:  (903) 533-9687

**Attorneys for Plaintiff United Services
Automobile Association (USAA)**

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under L.R. CV-5(a)(7)(B) that the foregoing document is filed

under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 40).

                              */s/ Robert Christopher Bunt*
                              Robert Christopher Bunt

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2019 I caused a copy of the foregoing document

to be served by electronic mail on Defendant's counsel of record.

                              */s/ Benjamin Manzin-Monnin*
                              Benjamin Manzin-Monnin