**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas reciprocal inter-insurance exchange, | § § § § | |
|  | § | CIVIL ACTION NO. 2:18-CV-245-JRG |
| Plaintiff, | § § | |
|  | § | **JURY TRIAL DEMANDED** |
| v. | § § | |
|  | § | **FILED UNDER SEAL** |
| WELLS FARGO BANK, N.A., a national banking association, | § § | |
|  | § | |
| Defendant. | § | |

**UNITED SERVICES AUTOMOBILE ASSOCIATION'S REPLY IN SUPPORT OF**
**ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT**
**DEPOSIT@MOBILE PRACTICES THE '571 AND '090 PATENTS**

USAA has repeatedly and consistently contended in this case, and in related PTAB proceedings, that the performance of its Deposit@Mobile product improved substantially and unexpectedly when USAA incorporated the auto-capture features claimed in the Asserted Patents. USAA's engineers have testified that claimed inventions are critical to the commercial success of the Deposit@Mobile product and that ██████████████████████████ ████████████████████████████ Ex. 1 (Bueche Dep.), at 38:21-39:3. Each time, Wells Fargo has declined to engage substantively with the facts, despite having numerous opportunities to do so, choosing instead to complain about the sufficiency of USAA's evidence of "nexus." Now that USAA has provided overwhelming evidence tying the claims of the Asserted Patents to its Deposit@Mobile product, which Wells Fargo has failed to rebut, Wells Fargo asserts that the facts are not "material" and asks the Court to deny summary judgment on that basis. Opp., at 1-2. The Court should not permit Wells Fargo to continue kicking the can down the road and force USAA to spend its limited trial time establishing facts that are not actually in dispute.

Wells Fargo makes only two arguments in opposition to USAA's motion.  First, it argues that the fact that USAA's Deposit@Mobile product practices the Asserted Patents is not "material" because it assumes the Court will grant Wells Fargo's separately-filed motion to bar USAA from making any argument at trial regarding objective indicia of non-obviousness. *See* Dkt. 143. As discussed below and in USAA's opposition to Wells Fargo's motion to strike, Wells Fargo is not entitled to the extraordinary relief it requests. *See* Dkt. 166. But even if it were, Deposit@Mobile's use of the Asserted Patents would still be material to other issues at trial, such as willfulness and damages. For example, USAA will present extensive evidence that Wells Fargo intentionally monitored and copied USAA's Deposit@Mobile product for years, despite knowing that USAA had applied for patent protection. That evidence, combined with the fact that the copied Deposit@Mobile product practices the Asserted Patents, is strong evidence of willfulness.

Second, Wells Fargo argues that the Court should deny USAA's motion because the summary judgment order would be "unduly prejudicial" to Wells Fargo. Wells Fargo cites no authority for the bizarre proposition that a court should deny summary judgment of an undisputed material fact because of potential "jury confusion" about the meaning of the order. *See* Opp., at 2. Rule 56 states that "the court **shall grant** summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Wells Fargo's concerns about jury confusion are unfounded, but in any event could be properly addressed by the Court with jury instructions, not by denying a meritorious summary judgment motion.

### A.     USAA Timely Disclosed Its Intent To Rely On Deposit@Mobile As Objective Evidence

Wells Fargo's argument that USAA's motion is not directed to "material" facts is premised entirely on the assumption that the Court will grant Wells Fargo's motion to strike Mr. Calman's discussion of objective indicia of non-obviousness (Dkt. 143). First, this argument is insufficient to defeat the motion because the fact that Deposit@Mobile practices the patents in suit is relevant for multiple additional reasons. This undisputed fact is relevant to damages. The experts will testify that USAA implemented the patented auto-capture system before Wells Fargo. Mr. Calman relies on USAA's initial success with this feature as a factor in evaluating the importance of auto-capture. Ex. 17 (Calman Opening Report), ¶ 412. Mr. Weinstein does the same. Ex. 18 (Weinstein Report), ¶¶ 78, 108. It is also relevant to willfulness, as discussed below.

Second, USAA has explained, in its opposition to the motion to strike Mr. Calman's objective indicia analysis, why there was a full disclosure of USAA's contentions on this issue. A review of the procedural history of this case shows that Wells Fargo was clearly on notice of USAA's intent to rely on Deposit@Mobile practicing the Asserted Patents, including to support arguments regarding objective indicia, and simply chose not to develop arguments in response

despite ample opportunity to do so. Wells Fargo's strategic decision not to dispute a critical fact is not a reason to deny summary judgment of that fact.

At the outset of this case, USAA stated its intention to rely on Deposit@Mobile as a product practicing the Asserted Patents in its Local Patent Rule 3-1 disclosures. Ex. 2, at 16. USAA also offered its product source code for inspection at that time. *Id.*, at 17-18. Wells Fargo never asked to inspect USAA's source code and never made any effort to rebut USAA's contention that Deposit@Mobile practiced the Asserted Claims at any point in discovery.

When Wells Fargo moved to dismiss on the basis of Section 101 invalidity, USAA pointed to the tangible improvement to computer systems provided by the claimed inventions, based on actual performance data from USAA's Deposit@Mobile system showing a ██████████ ████████████████████████████████████████████████████████ ██████████ Dkt. 46, at 11 n.3. Wells Fargo argued that the performance data "[bore] no relationship to the **claims**." Dkt. 49, at 9 (emphasis original).[1]

After seeing USAA's opposition to the motion to dismiss, Wells Fargo filed petitions for Covered Business Method review against the Asserted Patents, again arguing that the claims were directed to abstract ideas, not technological inventions. *See, e.g.*, Ex. 3, at 22 ('571 Patent CBM). Again, USAA presented the data showing the significant performance improvement in the Deposit@Mobile product attributable to the Asserted Patents. Ex. 4, at 24. This analysis was in a section that was literally entitled "Objective Evidence." "Petitioner's Ignore The ***Objective Evidence*** Establishing That The '571 Patent Represents A Novel Technology Solution." *Id.*, at 21-25.

---

[1] Wells Fargo ultimately abandoned its motion to dismiss and filed a motion for summary judgment under Section 101 advancing similar arguments and, once again, arguing that "the claims nowhere recite a particularized improvement to the function of the . . . mobile devices at issue" without engaging with any of the performance data from USAA's systems showing the opposite. *See* Dkt. 131, at 12-13.

Wells Fargo's response, again, was a vague assertion that USAA had failed to show sufficient nexus to the patents:



Ex. 5, at 5.

In May 2019, Wells Fargo posed an interrogatory to USAA seeking its contentions regarding secondary considerations. Ex. 6, at 39. USAA responded in June 2019 in three ways. First, it noted that objective indicia was an issue for expert analysis:

Ex. 6, at 39-40.  Second, USAA explicitly listed each of the objective indicia it intended to advance at trial: "(1)

*Id.* These are the exact topics on which Mr. Calman presents expert analysis in his report.  *Compare* Ex. 16 (Calman Validity Report), Paragraph 254-278.

And, third, the interrogatory response directed Wells Fargo to the bates ranges of the four preliminary responses USAA had filed in the CBMs. Ex. 6, at 40.  Wells Fargo characterizes this as a document dump.  It is nothing of the sort.  It is a highly organized, *de facto* pre-trial brief with full evidentiary citations setting out USAA's then-current theory on objective indicia.  Wells Fargo never complained about this interrogatory response, never asserted that it was unclear, and never moved to compel additional information.

Separately, in June 2019, Wells Fargo took the corporate testimony of USAA on "secondary considerations." In this testimony, USAA repeatedly referred to "Deposit@Mobile," its performance, and the reception by the industry as evidence of objective indicia of non-obviousness. Ex. 9 (Prasad Dep.), 247:5-250:8.

Going into expert discovery, USAA expected that Wells Fargo would continue to advance its previously-stated position that USAA had failed to show sufficient nexus between the Asserted Patents and the Deposit@Mobile product. Accordingly, USAA's expert, Mr. Calman, provided element-by-element claim charts with his opening report mapping the claims of the Asserted Patents to the Deposit@Mobile product. Exs. 7, 8 (Calman Report Exhibits T, U). Wells Fargo could have had its rebuttal technical experts analyze the Deposit@Mobile system and contest Mr. Calman's opinion, but it chose to remain silent, presumably because Deposit@Mobile practicing the Asserted Patents works to Wells Fargo's benefit on its Section 287 marking defense. *See* Dkt. 133 (Wells Fargo's Motion for Partial Summary Judgment Under 35 U.S.C. § 287(a)), at 3

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ Having elected not to dispute these facts (and in fact affirmatively relying on them when advantageous), Wells Fargo cannot credibly complain about the entry of summary judgment now that discovery is closed.

## B.      Wells Fargo's Concerns Regarding Jury Confusion Are Unfounded

Wells Fargo argues that the Court should deny summary judgment of the fact that Deposit@Mobile practices the Asserted Patents—even though no one disputes this fact—because the jury may be confused and believe that USAA's product functionality is relevant to infringement.

First, this confusion does not exist as to the commercial success and unexpected results of Deposit@Mobile itself, which relates to both validity and damages, because there is no comparison to the Wells Fargo system needed for the purposes of this analysis.

Second, none of USAA's experts or witnesses will suggest that Wells Fargo infringes the Asserted Patents because of similarities between the accused products and USAA's Deposit@Mobile product.[2] USAA agrees that the issue of infringement should be determined exclusively via a comparison of the claims of the Asserted Patents and the accused products, which is why USAA has moved to strike the portions of Wells Fargo's non-infringement report where its expert opines that the accused products do not infringe based on a comparison between the accused products and prior art systems. *See* Dkt. 152, at 1-5.

Although not relevant to infringement, the comparison between USAA and Wells Fargo's systems is relevant as evidence of copying. Ex. 17, ¶¶ 348-355. Mr. Calman concludes that the applications are "strikingly similar." Ex. 17, ¶ 350. Copying is objective evidence of non-obviousness. *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1196 (Fed. Cir. 2003). Evidence of the similarity between the patentee's commercial embodiment of the patent and the accused product is evidence of copying. *Wyers v. Master Lock Co.,* 616 F.3d 1231, 1246 (Fed. Cir. 2010). Mr. Calman relies on copying evidence for this purpose. Ex. 16, ¶ 562.

Copying of a commercial embodiment is also relevant to the willfulness inquiry. *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992). Courts routinely allow evidence of copying to be presented by comparing designs. *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 789

---

[2] Wells Fargo suggests that USAA attempted to elicit such testimony from fact witnesses at deposition, but the record shows the opposite. At Mr. Prasad's deposition, it was Wells Fargo's counsel who attempted to elicit testimony regarding the similarity between Wells Fargo's accused product and USAA's mobile deposit system. Ex. 9 (Prasad Dep.), at 69:10-70:12. On redirect, Mr. Prasad clarified that he has never seen Wells Fargo's source code and so all he can say is that Wells Fargo cannot be using USAA's code under the hood because USAA does not share its proprietary source code with anyone. *Id.*, at 257:9-258:22.

(Fed. Cir. 2019). Indeed, the Federal Circuit Bar Association's Model Patent Instructions on willful infringement expressly state that "whether or not [alleged infringer] intentionally copied a product of [patent holder] ***that is covered by the [ ] patent***" is a factor for the jury to consider, which this Court has used in the past. *See* Ex. 10, at 37. Here, the record shows that Wells Fargo was monitoring USAA's Deposit@Mobile product for years, even regularly including links to the Deposit@Mobile webpage and demonstration videos in technical architecture documents and specifically instructing its employees to ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

and initiating a patent search process to locate those patents. *See, e.g.*, Exs. 11-14, 15 (Ajami Dep.), at 10:7-11:25 and 129:11-135:10. The fact that the copied Deposit@Mobile product practices the Asserted Patents links the copying behavior to willful infringement.

Wells Fargo cites no authority for the proposition that a plaintiff may <u>never</u> compare its product to the accused's infringer's product to establish copying as it relates to willfulness and obviousness for fear of confusing the jury on infringement. To the contrary, plaintiffs regularly prove willfulness using evidence that the accused infringer intentionally copied the plaintiff's products, including before issuance of the relevant patents. *See, e.g., Stryker Corp. v. Zimmer, Inc.*, 2017 WL 4286414, at *4 (W.D. Mich. July 12, 2017) (awarding enhanced damages where "evidence of copying came from [Zimmer's lead engineer Bill] Donizetti, who admitted that Zimmer instructed Donzietti's design team to model its design after features of Stryker's products" and "designer Dan Olson admitted that using gear drives such as the ones ultimately incorporated in the Pulsavac Plus 'would probably be copying somebody'"), *aff'd*, 745 F. A'ppx. 167 (Fed. Cir. 2018); *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 748, 750 (W.D. Mich. 1999) ("Davol's undisputed pre-patent copying is probative of willfulness"), *aff'd*, 234 F.3d 1252 (Fed. Cir. 2000); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1028 (N.D. Cal. 2017)

("[S]ubstantial evidence in the record shows that Samsung copied the slide-to-unlock feature and other aspects of the iPhone. . . . The fact that Samsung copied is evidence of willfulness."); *X-Tra Light MFG Inc. v. Acuity Brands, Inc.*, No. CIVA H-04-1413, 2007 WL 7117888, at *3 (S.D. Tex. Feb. 13, 2007) ("The Federal Circuit has upheld findings of willfulness when the infringer had knowledge of a pending patent and copied prior to patent issuance. . . . Copying is relevant to the willfulness determination, and thus X–Tra Light will not be precluded from presenting evidence at trial that Acuity allegedly copied its design prior to patent issuance.").

USAA recognizes that the jury will be given clear instruction that infringement is to be decided solely based on a comparison of the asserted claims to the accused products and USAA has no intention of suggesting anything to the contrary. Rather, USAA will present evidence at trial on validity, damages, and willfulness issues and will support its argument with the fact that Deposit@Mobile practices the Asserted Patents. Wells Fargo should not be permitted to use the specter of "jury confusion" to hide substantial evidence of its intentional copying of USAA's patent-protected product. USAA respectfully requests that the Court grant USAA's motion for partial summary judgment.

DATED: September 11, 2019

Respectfully submitted,

By: */s/ Robert C. Bunt*

Jason Sheasby - *Pro Hac Vice*
Lead Attorney
Lisa Glasser - *Pro Hac Vice*
Anthony Rowles - *Pro Hac Vice*
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199

Robert C. Bunt
TX Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile:  (903) 533-9687

**Attorneys for Plaintiff United Services
Automobile Association (USAA)**

10729023

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2019 I caused a copy of the foregoing document

to be served by electronic mail on Defendant's counsel of record.


*/s/ Benjamin Manzin-Monnin*
Benjamin Manzin-Monnin


## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that, under L.R. CV-5(a)(7)(B), the foregoing document

is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 40).

*/s/ Robert C. Bunt*