# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **UNITED SERVICES AUTOMOBILE ASSOCIATION,** | |
| Plaintiff, | Case No. 2:18-cv-245-JRG |
| v. | **FILED UNDER SEAL** |
| **WELLS FARGO BANK, N.A.,** | |
| Defendant. | |

# WELLS FARGO'S MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF MR. ROY WEINSTEIN

## TABLE OF CONTENTS

I. BACKGROUND ................................................................................................................ 1
II. LEGAL STANDARDS ..................................................................................................... 3
III. ARGUMENT ..................................................................................................................... 3
    a. Mr. Weinstein Fails to Apportion for the Incremental Value of the Invention Claimed in the Asserted Patents. ........................................................................... 3
    b. Mr. Weinstein Miscalculates the Royalty Base By Double Counting and By Improperly Including Convoyed Sales. ................................................................. 5
        i. The Court Should Strike Mr. Weinstein's Double Counting of Cost Savings. ........................................................................................................ 5
        ii. The Court Should Strike Mr. Weinstein's Inclusion of Convoyed Sales. ......... 7
    c. Mr. Weinstein Improperly Discloses Total Profits Allegedly Attributable to MRDC as a Whole. ................................................................................................ 9
    d. Mr. Weinstein Cannot Provide Factual Testimony Relating to Marking. ............... 11
    e. Mr. Weinstein's Report Contains Irrelevant and Prejudicial Information that This Court Routinely Excludes. ............................................................................. 12
        i. The Court Should Strike Mr. Weinstein's References to Wells Fargo's Petitions for CBM Review of the Asserted Patents. ........................................ 13
        ii. The Court Should Strike Mr. Weinstein's References to Unasserted Patents. ........................................................................................................... 13
IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
 No. 2:07-cv-468, 2009 WL 4669854 (E.D. Tex. Sept. 15, 2009)..............................3

*Am. Seating Co. v. USSC Grp., Inc.*,
 514 F.3d 1262 (Fed. Cir. 2008).................................................................................7

*Biscotti Inc. v. Microsoft Corp.*,
 No. 2:13-cv-0105-JRG-RSP, 2017 WL 2537021 (E.D. Tex. May 30, 2017) .........13

*Bmc Software, Inc. v. Servicenow, Inc.*,
 No. 2:14-cv-903, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016)....................4, 5, 9, 11

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
 809 F.3d 1295 (Fed. Cir. 2015).................................................................................4

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
 Nos. 2:13-cv-1112-, 2:14-cv-61, 2015 WL 11089749 (E.D. Tex. Aug. 6,
 2015) ...................................................................................................................9, 11

*Contentguard Holdings, Inc. v. Amazon.com, Inc.*,
 Nos. 2:13-cv-1112, 2:14-cv-61, 2015 WL 12915561 (E.D. Tex. July 31, 2015)....13

*Cordis Corp. v. Medtronic Ave, Inc.*,
 511 F.3d 1157 (Fed. Cir. 2008)...............................................................................14

*Datatreasury Corp. v. Wells Fargo & Co.*,
 No. 2:06-cv-72, 2010 WL 11468934 (E.D. Tex. October 5, 2010).........................14

*Finjan, Inc. v. Sophos, Inc.*,
 No. 14-cv-01197, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) .............................5

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
 694 F.3d 51 (Fed. Cir. 2012)...............................................................................9, 10

*PACT XPP Techs., AG v. Xilinx, Inc.*,
 No. 2:07-cv-563-RSP, 2012 WL 2774971 (E.D. Tex. May 13, 2012)....................13

*Personal Audio, LLC v. Apple, Inc.*,
 Case No. 9:09-cv-111-RC, 2011 WL 13135065 (E.D. Tex. Aug. 19, 2011) ......9, 11

*Power-One, Inc. v. Artesyn Techs., Inc.*,
 No. 2:05-cv-463, 2008 WL 11348356 (E.D. Tex. Feb. 15, 2008)...........................14

*Realtime Data LLC v. EchoStar Corp.*,
 No. 6:17-cv-00084-JDL, 2018 WL 6266301 (E.D. Tex. Nov. 15, 2018) ............................ 7, 8

*ResQNet.com, Inc. v. Lansa, Inc.*,
 594 F.3d 860 (Fed. Cir. 2010) .................................................................................................. 4

*Rite-Hite Corp. v. Kelley Co., Inc.*,
 56 F.3d 1538 (Fed. Cir. 1995) .................................................................................................. 7

*Saint Lawrence Comm's LLC v. ZTE Corp.*,
 No. 2:15-cv-349, 2017 WL 679623 (E.D. Tex. Feb. 21, 2017) ................................................ 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011) ................................................................................................ 4

**Statutes**

35 U.S.C. § 284 .................................................................................................................. 1, 3, 4

35 U.S.C. § 287 ....................................................................................................................... 12

**Other Authorities**

Fed. R. Evid. 403 ..................................................................................................................... 13

Fed. R. Evid. 602 ............................................................................................................... 11, 12

Fed. R. Evid. 702(c)-(d) ............................................................................................................ 5

Fed. R. Evid. 703 ..................................................................................................................... 11

Local Rule CV-5(a)(7)(B) ........................................................................................................ 16

Local Rule CV-5(a) ................................................................................................................. 16

Local Rule CV-5(a)(3)(A) ....................................................................................................... 16

Local Rule CV-7(h) ................................................................................................................. 16

USAA's damages expert, Mr. Roy Weinstein, acknowledges that the Asserted Patents[1] cover a very specific feature of mobile remote deposit capture ("MRDC"), yet repeatedly ignores this fact when performing his reasonable royalty analysis. Rather than assess the incremental value attributable to the narrow feature claimed in the patents, as § 284 requires, Mr. Weinstein instead attempts to squeeze the value of the entire field of MRDC into the Asserted Patents. This renders his ostensible incorporation of the apportionment analysis of USAA's other expert, Mr. Matt Calman, nothing more than a sham.

Mr. Weinstein commits numerous other errors in his Report. He miscalculates the royalty base by double counting profits and including convoyed sales without demonstrating any functional relationship between such sales and the accused features. He provides unsupported and conclusory factual testimony he is unqualified to give because he lacks a foundation of personal knowledge and expertise. And he references prejudicial and inadmissible information that should not be presented to the jury, including information about petitions for Covered Business Method Review ("CBM") and other patents held by USAA that have not been asserted in this litigation.

For these reasons, the Court should strike and exclude portions of Mr. Weinstein's Report and Supplemental Report, including his analysis under *Georgia-Pacific* Factors 6, 8, 9, 10, 11, and 13, in addition to all factual testimony for which Mr. Weinstein lacks personal knowledge and all references to CBMs and unasserted patents in at least Paragraphs 50 and 53.

I. BACKGROUND

In Mr. Weinstein's Report,[2] he repeatedly acknowledges that " ███████████

---

[1] U.S. Patent Nos. 8,699,779 (the "'779 Patent"), 9,336,517 (the "'517 Patent"), 9,818,090 (the "'090 Patent"), and 8,977,571 (the "'571 Patent") (collectively, the "Asserted Patents").
[2] Mr. Weinstein served his original report on July 19, 2019 and his amended report on August 9, 2019. This Motion will refer to his reports collectively as "Report." Mr. Weinstein also served a supplemental report on August 12, 2019, which is referred to as "Supplemental Report."

1

███████████████████████████.” Ex. A, Am. Weinstein Rep. ¶ 30; *compare* Ex. A, Am. Weinstein Rep. ¶ 190 ████████████████████████████████████████, *with* ¶ 145 ████████████████████████████████████████████████████████████████.

Despite these concessions, vast portions of Mr. Weinstein's reports have nothing to do with auto-capture. Instead, Mr. Weinstein spends the bulk of his report ████████████████████ ████████████████████ *E.g.*, Ex. A, Am. Weinstein Rep. ¶ 121. Mr. Weinstein even purports to ████████████████████████████████████████ ████████████████████████████████████████████████. Ex. A, Am. Weinstein Rep. ¶ 151. The problem with Mr. Weinstein's analysis, of course, is that the Asserted Patents do not claim MRDC. They claim a single element of MRDC: auto-capture.

Though his Report reads like it, Mr. Weinstein does not explicitly claim that the entire basis for customer demand for MRDC is driven by auto-capture. Recognizing this fact, Mr. Weinstein attempts to save his Report by applying Mr. Calman's ████████████ opinion to the entire claimed benefits of MRDC. This effort fails. As an initial matter, Mr. Weinstein miscalculates the royalty base, by double counting cost savings and improperly including convoyed sales. His apportionment analysis is also flawed: it rests solely on the defective opinions offered by Mr. Calman[3] and also improperly discloses the entire profits, cost savings, and other benefits of MRDC, without demonstrating any connection to the accused features. The same error is committed in Mr. Weinstein's Supplemental Report.

Mr. Weinstein also offers testimony relating to the marking of Deposit@Mobile. In doing so, Mr. Weinstein testifies in his Report that ████████████████████████████████████

---

[3] Mr. Calman's apportionment opinions are the subject of a contemporaneous motion to strike.

████████████████████████████████████████████

████████████████████████████ Ex. A, Am. Weinstein Rep. ¶ 50. His only cited support for this conclusion is the documents which he alleges demonstrate marking of the patents. But there is nothing in the record explaining what the documents are, where they came from, or what they stand for. And Mr. Weinstein—as a retained damages expert who has never worked at USAA or otherwise assisted in the development of Deposit@Mobile—undeniably lacks the personal knowledge and expertise to testify as to these facts.

Finally, Mr. Weinstein includes a discussion of Wells Fargo's petitions for CBM review in support of his understanding that USAA's prior licensing discussions with other banks reflected a discount to account for the possibility that the Asserted Patents are ultimately ruled invalid. Ex. A, Am. Weinstein Rep. ¶ 53 nn.88, 89. In the same discussion, Mr. Weinstein discusses ████

████████████████████████████████████████████████████████████████████████

████████████████████████████. Ex. A, Am. Weinstein Rep. ¶ 53. This discussion of CBMs and unasserted patents is both prejudicial and irrelevant to the issues presented in this suit.

## II. LEGAL STANDARDS

The proponent of an expert opinion must establish "that the pertinent admissibility requirements are met by a preponderance of the evidence." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 4669854, at *2 (E.D. Tex. Sept. 15, 2009).

## III. ARGUMENT

### a. Mr. Weinstein Fails to Apportion for the Incremental Value of the Invention Claimed in the Asserted Patents.

Section 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty *for the use made of the invention* by the infringer." 35 U.S.C. § 284 (emphasis

added). "Under § 284, damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (*citing Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). "This principle—apportionment—is the governing rule where multi-component products are involved. Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Id.* (*citing VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014)). "If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *see also Bmc Software, Inc. v. Servicenow, Inc.*, No. 2:14-cv-903, 2016 WL 379620, at *2–3 (E.D. Tex. Feb. 1, 2016) (striking expert report for failure to properly apportion).

Mr. Weinstein's report pays mere lip service to the essential requirement that a patentee apportion its damages model to exclude unpatented components of the accused products. He agrees that the Asserted Patents claim a narrow feature (autocapture) of a multi-component product (MRDC). Ex. A, Am. Weinstein Rep. ¶¶ 30, 190 ▮▮▮▮▮▮, 145 ▮▮▮▮▮▮ Yet the bulk of his report discusses the benefits, profits, cost savings, and value attributable to MRDC as a whole. *See* Ex. A, Am. Weinstein Rep. ¶¶ 78–88 (discussing "▮▮▮▮▮▮"), 90–108 (discussing ▮▮▮▮▮▮), 118–29 (discussing

4

███████████████████████████████████████████████████████████████,
135–36 (discussing ██████████████████████████████████████████████████████
████████████████████████████████). Mr. Weinstein did not conduct, rely on, or cite any market-based studies, surveys, or empirical data that the patented feature alone drives consumer demand for MRDC. Not only would presentation of his testimony to the jury be highly prejudicial and misleading, but also it runs afoul of the longstanding requirement that he apportion his damages model. Accordingly, the Court should strike Mr. Weinstein's Report for "fail[ing] to specify, distinguish, and then separate the value of . . . patented features from the unpatented features of [the] products." *Bmc Software*, 2016 WL 379620, at *3.

### b. Mr. Weinstein Miscalculates the Royalty Base By Double Counting and By Improperly Including Convoyed Sales.

Mr. Weinstein miscalculates the royalty base by committing two errors: (1) he double counts cost savings, and (2) he improperly includes convoyed sales.

#### i. The Court Should Strike Mr. Weinstein's Double Counting of Cost Savings.

An expert's testimony must be "the product of reliable principles and methods" and must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). An expert's methodology is unreliable and should be excluded when improperly inflates the royalty base by double or triple counting revenue streams. *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197, 2016 WL 4268659, at *3–4 (N.D. Cal. Aug. 15, 2016) (excluding expert who inflated royalty base by double counting revenue streams); *see also Saint Lawrence Comm's LLC v. ZTE Corp.*, No. 2:15-cv-349, 2017 WL 679623, at *3 (E.D. Tex. Feb. 21, 2017) (striking opinion of Mr. Weinstein that "double count[ed]" inputs into his ultimate reasonable royalty opinion).

In performing his analysis under *Georgia-Pacific* No. 13, Mr. Weinstein purports to calculate the overall benefit of MRDC to Wells Fargo by adding (1) total cost savings, (2) profit

5

from new deposits, and (3) ecosystem benefits attributable to Wells Fargo's Mobile Deposit offering as a whole. Ex. A, Am. Weinstein Rep. ¶¶ 145–51. This analysis is flawed because Mr. Weinstein double counts the benefits of MRDC to Wells Fargo in (1) the total cost savings category[4] and (2) the profits from new deposits category.

In Mr. Weinstein's initial and amended reports, he assumed, without any foundation in data, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5] Ex. A, Am. Weinstein Rep. ¶¶ 91 & nn.157, 149. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A, Am. Weinstein Rep. ¶ 149. In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The reason is simple: the "cost differential" analysis accounts for the benefit of deposits that *moved* from ATM or teller channels to the mobile channel, and the "profits from new deposits" analysis accounts for the benefit of deposits that *would have never been made* but for MRDC. They're separate benefits.

In his Supplemental Report, Weinstein abandons this approach. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B, Weinstein Supp. Rep. ¶ 3. As a result, 80% of Wells Fargo's mobile deposits are accounted for twice in Mr. Weinstein's calculation of the quantifiable benefits of MRDC: once in his calculation of cost savings and once in his calculation of profits from new deposits. This is

---

[4] The total cost savings category includes two components: (1) the cost differential between the mobile channel and the ATM and teller channels, and (2) the cost avoided from not having to construct new bank branches. This Motion focuses on the first category, the cost differential between the mobile channel and the ATM and teller channels.
[5] This assumption is based on no underlying data. It is based on an "assumption" from a Wells Fargo document that was ultimately scrapped by Wells Fargo.

6

improper: any deposits considered to be "new" (*i.e.* wouldn't have been made but for MRDC) should not be included in the cost savings analysis. By definition, they are "new," meaning they would ***never have been made*** through the teller or ATM channels, and as a result, any savings from the less-expensive deposit channel would have never been realized by Wells Fargo.

Mr. Weinstein's explanation for vastly expanding the scope of the deposits considered in his calculation of profits from new deposits is unavailing. He says that ███████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. B, Weinstein Supp. Rep. ¶ 3 n.3. But this is no explanation. Mr. Weinstein's original analysis was similarly based on Mr. Weinstein's understanding of profits from the checking account itself, and he provides no explanation why █ ███████████████████████████████████████████████████████. Ex. A, Am. Weinstein Rep. ¶ 149. As a result, his departure from his original framework is unsupportable, and reveals just how unreliable and arbitrary Mr. Weinstein's opinions are.

### ii. *The Court Should Strike Mr. Weinstein's Inclusion of Convoyed Sales.*

"A convoyed sale refers to the relationship between the sale of a patented product and a functionally associated non-patented product." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). "Convoyed or 'bundled' sales may be included as part of the royalty base if the patentee demonstrates that the unpatented products share a ***functional relationship*** with the patented component." *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, 2018 WL 6266301, at *6 (E.D. Tex. Nov. 15, 2018) (emphasis added). "Our precedent has not extended liability to include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage. . . . Damages on these items would exceed that which suitably compensates for the infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995).

"[A]n expert who wishes to include convoyed sales in a royalty base must at least present a clear explanation of 1) **why and how** the purported convoyed sales are tied to the sales of the accused products and 2) what value of the royalty base is attributable to the accused products themselves versus the convoyed sales." *Realtime*, 2018 WL 6266301, at *6 (emphasis added).

As mentioned above, Mr. Weinstein includes the "ecosystem benefits" in calculating the total quantifiable benefits allegedly attributable to Mobile Deposit. Ex. A, Am. Weinstein Rep. ¶ 150. Mr. Weinstein relies, in part, on the testimony of USAA employee Nathan McKinley in reaching this conclusion. Ex. A, Am. Weinstein Rep. ¶ 80. Mr. McKinley testified that MRDC has "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Ex. C, McKinley Dep. 248:6–14. In other words, Mr. Weinstein and Mr. McKinley believe that Mobile Deposit has "ecosystem benefits" because it can drive sales of other products. Mr. Weinstein then calculates this alleged ecosystem benefit with reference to ███████████████████████████████████████████.[6] Ex. A, Am. Weinstein Rep. ¶ 150. ███████████████████████████████████████████████████████████████████████████ Ex. A, Am. Weinstein Rep. ¶ 150.

The problem with Mr. Weinstein's analysis is that he attempts to shoehorn convoyed sales into his calculation of the royalty base without demonstrating the functional relationship between the sales of non-patented products and the accused features, autocapture. As an initial matter, Mr. Weinstein concedes that ███████████████████████████████████████████████████████████████ Ex. A, Am. Weinstein Rep. ¶ 138. On top of this, he

---

[6] ███████████████████████████████████████████████████████████████ Ex. A, Am. Weinstein Rep. ¶ 137.

8

does not even attempt to bridge the gap between the use of Mobile Deposit and increased sales of, for example, credit cards by showing a "functional relationship" between the two or by explaining *why and how* the sales of credit cards are tied to the use of Mobile Deposit. The Court should strike Mr. Weinstein's improper inclusion of convoyed sales in his calculation of the royalty base in Paragraphs 150 and 151.

### c. Mr. Weinstein Improperly Discloses Total Profits Allegedly Attributable to MRDC as a Whole.

"Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Such evidence "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id.* "Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *Id.* (*citing* 35 U.S.C. § 284); *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, Nos. 2:13-cv-1112-, 2:14-cv-61, 2015 WL 11089749, at *5 (E.D. Tex. Aug. 6, 2015) (striking damages expert's testimony about "the entire amount of revenue or profit earned by the total sales of Defendants' products"); *see also Bmc Software*, 2016 WL 379620, at *2 (ordering plaintiff's damages expert not to disclose "total revenues as to the accused products"); *Personal Audio, LLC v. Apple, Inc.*, Case No. 9:09-cv-111-RC, 2011 WL 13135065, at *22 (E.D. Tex. Aug. 19, 2011) ("When the patented component does not create the basis of customer demand for the accused product, accenting the fact that a calculated royalty amounts to only a small percentage of a defendant's

entire revenue from the accused product improperly 'lends legitimacy to the reasonableness of an expert's damages calculation.'").

In an effort to save his plainly overbroad report, Mr. Weinstein later purports to ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. A, Am. Weinstein Rep. ¶¶ 145–53 (discussing *Georgia-Pacific* No. 13). The apportionment factor is entirely derived from analysis provided by another of USAA's experts (Mr. Calman), and Mr. Weinstein's application of that factor occupies one page in his report. Ex. A, Am. Weinstein Rep. ¶¶ 152–53.

There are two flaws with Mr. Weinstein's analysis. First, his analysis discloses the total amount of profits, cost savings, and other quantifiable benefits attributable to MRDC as a whole, despite "no demonstrated correlation to the value of the patented feature alone." *LaserDynamics,* 694 F.3d at 68. Second, his analysis rests on Mr. Calman's flawed apportionment models.[7]

First, the Court should preclude Mr. Weinstein from disclosing to the jury ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. A, Am. Weinstein Rep. ¶¶ 145–53; Ex. B, Supp. Weinstein Rep. ¶ 3. Such disclosure "only serve[s] to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *LaserDynamics,* 694 F.3d at 68. On at least three occasions Courts within the Eastern District of Texas have excluded such testimony, and for the same reasons this Court should

---

[7] Wells Fargo is contemporaneously filing a motion to strike the opinions of Mr. Calman, which includes arguments supporting exclusion of Mr. Calman's apportionment analysis. To avoid duplication, those arguments will not be repeated in this brief but are incorporated herein by reference to the extent necessary to preserve any argument that Mr. Weinstein should not be permitted to rely on such flawed analysis.

do so here. *E.g.*, *Bmc Software*, 2016 WL 379620, at *2 (ordering plaintiff's damages expert not to disclose "total revenues as to the accused products"); *Content Guard*, 2015 WL 11089749, at *5 (granting motion to strike damages expert's testimony about "the entire amount of revenue or profit earned by the total sales of Defendants' products"); *Personal Audio*, 2011 WL 13135065, at *22 (E.D. Tex. Aug. 19, 2011).

Second, the Court should strike Mr. Weinstein's reliance on Mr. Calman's flawed apportionment models for the reasons explained in Wells Fargo's motion to strike the opinions of Mr. Calman filed contemporaneously herewith.

### d. Mr. Weinstein Cannot Provide Factual Testimony Relating to Marking.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Though expert witnesses may base *opinions* on facts or data of which they lack personal knowledge, there is no rule permitting an expert witness to offer factual testimony without knowledge. *See* Fed. R. Evid. 703 ("An expert may base *an opinion* on facts or data in the case that the expert has been made aware of or personally observed.") (emphasis added).

Mr. Weinstein asserts ████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. A, Am. Weinstein Rep. ¶ 50. For support, Mr. Weinstein cites to two documents, which appear to be screenshots of unknown and unidentified origin. Ex. D, USAA_WF219679; Ex. E, USAA_WF219681. He cites no testimony, discovery responses, or other authority explaining the identity or significance of these screenshots.

The Court should strike Mr. Weinstein's bald factual assertion for three reasons. First, Mr. Weinstein has no personal knowledge as to the truth or falsity of the fact he asserts. The nature and identity of the documents he relies on is unclear based on the record information available to

11

the Court and the parties. It is axiomatic that a witness must have personal knowledge to testify as to facts, and it is equally obvious that Mr. Weinstein—as a retained expert with no experience working on USAA's Deposit@Mobile system—lacks the personal knowledge to provide this testimony. *See* Fed. R. Evid. 602. Indeed, he does not even purport to have made any investigation whatsoever into the nature of the documents he relies on for his testimony.

Second, Mr. Weinstein lacks the qualifications to provide expert opinions on the nature of these documents. Mr. Weinstein is an economist. Ex. F, Weinstein CV. He has no background at USAA, or in the banking sector more broadly, and he has no experience backdating or identifying mysterious screenshots produced without metadata.

Third, Mr. Weinstein's statement is an untimely disclosure of USAA's contentions regarding marking. On May 1, 2019, Wells Fargo served its First Set of Common Interrogatories on USAA, two of which sought information regarding USAA's marking contentions. Ex. G, Common Interrogatories. One interrogatory sought information concerning ▌

▌

▌ Ex. H, USAA's Resp. to Wells Fargo Common Interrogatory. ▌

▌

▌ *Id.* USAA has not further supplemented its interrogatory responses despite fact discovery closing on July 19. USAA cannot now disclose its marking contentions through the backdoor of its damages expert, Mr. Weinstein. For these reasons, the Court should strike Mr. Weinstein's testimony on marking.

### e. Mr. Weinstein's Report Contains Irrelevant and Prejudicial Information that This Court Routinely Excludes.

The Court may exclude evidence "if its probative value is substantially outweighed by a

12

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Mr. Weinstein's report references Wells Fargo's petitions for CBM review of the Asserted Patents and USAA patents not asserted in this litigation. The Court should strike these discussions, because these matters are irrelevant to the issues the jury will be asked to decide and because their disclosure would be highly prejudicial.

> i. *The Court Should Strike Mr. Weinstein's References to Wells Fargo's Petitions for CBM Review of the Asserted Patents.*

This Court routinely precludes parties from presenting evidence or argument relating to PTO review of asserted patents. *E.g.*, *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-0105-JRG-RSP, 2017 WL 2537021, at *1 (E.D. Tex. May 30, 2017); *Contentguard Holdings, Inc. v. Amazon.com, Inc.*, Nos. 2:13-cv-1112, 2:14-cv-61, 2015 WL 12915561, at *1 (E.D. Tex. July 31, 2015).

Mr. Weinstein provides a comprehensive discussion of the petitions for CBM review that Wells Fargo filed with respect to the Asserted Patents in the context of Georgia-Pacific No. 1. Included in his discussion of the CBM petitions are citations to the CBM discussions from the deposition of USAA witness Nathan McKinley and citations to the petitions themselves. Ex. A, Am. Weinstein Rep. ¶ 53 n.88. The Court should strike this discussion, and prevent USAA from presenting such evidence to the jury, as it routinely does, because such information is substantially outweighed by the danger of unfair prejudice.

> ii. *The Court Should Strike Mr. Weinstein's References to Unasserted Patents.*

This Court has also precluded parties from introducing or discussing unasserted patents. *E.g.*, *PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-cv-563-RSP, 2012 WL 2774971, at *1 (E.D. Tex. May 13, 2012) ("It is not clear why the Court should permit any party to introduce patents that are not asserted in this case, let alone valuations or proposed transactions involving unasserted

13

patents."); *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2010 WL 11468934, at *26 (E.D. Tex. October 5, 2010); *Power-One, Inc. v. Artesyn Techs., Inc.*, No. 2:05-cv-463, 2008 WL 11348356, at *1 (E.D. Tex. Feb. 15, 2008); *see also Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1183–84 (Fed. Cir. 2008) (affirming exclusion of evidence of unasserted claims).

Mr. Weinstein includes a discussion of USAA's "remote deposit capture" patent portfolio, a large portfolio containing many patents that have not been asserted in this lawsuit. Ex. A, Am. Weinstein Rep. ¶ 53. The Court should strike this discussion and preclude Mr. Weinstein from testifying as to patents in USAA's portfolio that have not been asserted in this suit because such discussion because "[a]ny such probative value would be substantially outweighed by the dangers of jury confusion and waste of time that discussion of non-asserted claims would likely entail." *Datatreasury*, 2010 WL 11468934, at *26.

## IV. CONCLUSION

For the reasons stated herein, the Court should strike Mr. Weinstein's Report for failure apportion damages properly, should strike the analysis Mr. Weinstein proffers under *Georgia-Pacific* Factors 6 (¶¶ 78–88), 8 (¶¶ 90–108), 9 and 10 (¶¶ 118–129), 11 (¶¶ 135–136), and 13 (¶¶ 145–151, and Supplemental Report ¶ 3), and should strike all factual testimony for which Mr. Weinstein lacks personal knowledge (¶ 50) and all references to CBMs (¶ 53) and unasserted patents (¶ 53).

Respectfully submitted on August 23, 2019.

By: *Thomas M. Melsheimer*
Thomas M. Melsheimer
TX Bar No. 13922550
tmelsheimer@winston.com
Michael A. Bittner
TX Bar No. 24064905
mbittner@winston.com
J. Travis Underwood

TX Bar No. 24102587
tunderwood@winston.com
**Winston & Strawn LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500 – Telephone
(214) 453-6400 – Facsimile

E. Danielle T. Williams
NC Bar No. 23283
dwilliams@winston.com
**Winston & Strawn LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
(704) 350-7700 – Telephone
(704) 350-7800 – Facsimile

Matthew R. McCullough
CA Bar No. 301330
mrmccullough@winston.com
**Winston & Strawn LLP**
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500 – Telephone
(650) 858-6550 – Facsimile

Jack Wesley Hill
TX Bar No. 24032294
wh@wsfirm.com
**Ward, Smith & Hill, PLLC**
P.O. Box 1231 1507 Bill Owens Parkway
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*Counsel for Defendant*
*Wells Fargo Bank, N.A.*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under L.R. CV-5(a)(7)(B) that the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 40).

/s/ *Michael Bittner*
Michael Bittner

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

/s/ *Michael Bittner*
Michael Bittner

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirements of Local Rule CV-7(h). Counsel for both parties discussed the issues presented here via email beginning on August 17, 2019, and via telephone on August 20, 2019. USAA indicated that it was opposed to the relief sought herein.

/s/ *Thomas M. Melsheimer*
Thomas M. Melsheimer