# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | |
| Plaintiff, | Case No. 2:18-cv-245-JRG |
| v. | **FILED UNDER SEAL** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## WELLS FARGO'S REPLY IN SUPPORT OF MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF MR. ROY WEINSTEIN

USAA portrays the issues raised in Wells Fargo's Motion to Exclude and/or Strike Mr. Weinstein ("Motion") as being nothing more than disagreements about the value of the specific form of autocapture claimed in the Asserted Patents.  But the disputes are more fundamental. Despite Mr. Weistein's ostensible apportionment analysis, USAA appears dead set on arguing to the Court and, ultimately, the jury that it is entitled to recover damages on technology not claimed in the Asserted Patents.  In other words, the parties dispute more than just the *value* of autocapture, they also dispute *what* should be valued for purposes of any damages award and whether any such award should be limited to the patented feature of autocapture.  USAA's position is untenable and should be rejected.

I.     **The Court Should Require Mr. Weinstein to Apportion the Value of the Asserted Patents to Technology Actually Claimed Therein.**

USAA does not dispute that much of Mr. Weinstein's Report relates to the value of MRDC as a whole, rather than the incremental value of the specific form of autocapture claimed in the Asserted Patents.   Instead, USAA argues that Mr. Weinstein's discussion of the value of unpatented features is admissible because ███████████████████████████████████ ████████████████   This argument misses the mark.  To be clear, Wells Fargo is not arguing that Mr. Weinstein cannot rely on another expert in reaching his own independent opinions. Instead, Wells Fargo objects to the portions of Mr. Weinstein's Report which contain pages of testimony in which he touts the benefits of MRDC as a whole—with or without autocapture.  (Dkt. No. 145-2 at ¶¶ 78–88, 90–108, 118–29, 135–36).

This testimony is necessarily irrelevant and unhelpful to the jury in assessing damages for infringement of patents that only claim autocapture.  Worse, it is highly prejudicial and only serves to artificially inflate the damages award beyond what USAA would be statutorily entitled in the event of infringement.  The Court should preclude Mr. Weinstein from offering irrelevant and

prejudicial opinions on the value of unpatented technology and features, and it should strike Mr. Weinstein's analysis under *Georgia-Pacific* Factors 6 (¶¶ 78–88), 8 (¶¶ 90–108), 9 (¶¶ 118–29), 10 (¶¶ 118–29), and 11 (¶¶ 135–36).[1]

## II. The Court Should Strike Mr. Weinstein's Miscalculation of the Royalty Base.

### a. Mr. Weinstein Double Counts Profits.

In his Amended Report, Mr. Weinstein calculates the "███████████████████

████████" (Dkt. No. 145-2, ¶ 149) (emphasis added). This analysis attempts to place a value on the profitability attributable to MRDC as a result of the deposits that would not have been made but for the existence of MRDC. Mr. Weinstein specifically stated that he was not including the profitability of all of Wells Fargo's mobile deposits in this analysis to avoid double counting. (*Id.*) He also stated that ███████████████████████████████████████



(Dkt. No. 145-2, ¶ 92).[2] For that reason, Mr. Weinstein appropriately ████████████

████████████████████████████████[3]

---

[1] USAA also takes issue with Wells Fargo's observation that Mr. Weinstein cites to no market-based studies, surveys, or empirical data that the patented feature alone drives consumer demand for MRDC." Resp. at 4. According to USAA, the marketing materials produced a company called Futurion (and sponsored by Mitek), which contain broad statements about the essentiality of autocapture, are "surveys" demonstrating that autocapture drives consumer demand. But there is no empirical data supporting the statements in Futurion's report. At best, the statements are marketing puffery and designed to encourage more banks to adopt autocapture.

[2] Mr. Weinstein also ████████████████████████████████████████████████. (Dkt. No. 145-2, ¶¶ 146-147). ████████████████████████████████████████████████████████████████████. But there are no such cost savings attributable to deposits that Mr. Weinstein claims never would have been made without MRDC. For that same reason—that the deposits would not have otherwise been made—Mr. Weinstein attributes the entire profitability of the new deposits to MRDC.

[3] ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Dkt. No.

145-2, ¶ 149), however, Mr. Weinstein changed his numbers. ███████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████[4] There is no support for this

calculation, it clearly double counts, and the Court should strike it.

### b. Mr. Weinstein Violates the Convoyed Sales Standard.

USAA asserts that Mr. Weinstein "did not include the profits from non-checking account

products in his base for his profits analysis" under his "ecosystem benefits" model. This is

demonstrably false. Mr. Weinstein relies on the testimony of USAA employee Mr. McKinley for

his "ecosystem" analysis. According to Mr. McKinley, ███████████████████████

██████████████████████████████████████████████████████

████████████████████████████ Ex. I, McKinley Dep., 204:5–8. Mr. McKinley

reiterated this fact when he said ██████████████████████████████████████

██████████████████████████████ (Dkt. No. 145-4, 248:12–13). Mr.

Weinstein relies on this testimony in his Report.

USAA disputes this fact, arguing that the only benefit Mr. Weinstein accounted for was

the benefit of "driving customers to the bank's mobile application." Resp. at 7. According to

USAA, Mr. Weinstein's analysis is so limited because he ████████████████ to approximate

the value of the ecosystem effect. But the fact that Mr. Weinstein ██████████████ as a

proxy for calculating the ecosystem benefit does not mean that he did not include profits from

sales of other products in his model. It just means that he had no other way to approximate a value

---

[4] While USAA seeks to place the blame for Mr. Weinstein's complete 180 on the timing of Wells Fargo's production, Mr. Weinstein's calculation still fails to avoid double counting.

for the profitability of the other products sold as a result of MRDC.  Mr. Weinstein should not be

exempted from the traditional convoyed sales standard simply because of his reliance ███████

███

**III.  Mr. Weinstein's Disclosure of the Total Profits Attributable to MRDC is Improper and Highly Prejudicial.**

USAA does not dispute the fact that MRDC is a multi-component product, of which

autocapture is only a single feature.  USAA also does not dispute the foundational rule underlying

each of the cases Wells Fargo cites.  Nor can it.  The law is unequivocal: according to this Court,

"should a plaintiff wish to include both the patented and the unpatented features in the royalty

base, *LaserDynamics* and its prodigy make clear that a patentee must prove that the infringing

technology 'drove demand for the multi-component product.'"  *Bmc Software, Inc. v. Servicenow,*

*Inc.*, No. 2:14-cv-903, 2016 WL 379620, at *2–3 (E.D. Tex. Feb. 1, 2016).  This rule contains an

"evidentiary" component, which precludes disclosure of the total revenues or profits of accused

products which include unpatented features.  *Id.   See also Content Guard Holdings, Inc. v.*

*Amazon.com, Inc.*, Nos. 2:13-cv-1112-, 2:14-cv-61, 2015 WL 11089749, at *5 (E.D. Tex. Aug. 6,

2015) (striking damages expert's testimony about "the entire amount of revenue or profit earned

by the total sales of ***Defendants' products***") (emphasis added).

Instead, USAA argues that because Mr. Weinstein claims not to apply the entire market

value rule, the cases in Wells Fargo's Motion are distinguishable.  But just because one claims not

to apply the entire market value rule does not mean that one cannot violate the evidentiary principle

underlying the rule by disclosing the entire profits of unpatented features.[5]  USAA also argues that

---

[5] Indeed, the *Personal Audio* case demonstrates that a finding that plaintiff violated the entire market value rule is ***not*** a prerequisite to application of the evidentiary principle warranting exclusion of the entire profitability numbers of unpatented features.  *Personal Audio, LLC v. Apple, Inc.*, No. 9:09CV111, 2011 WL 13135065, at *22–24 (E.D. Tex. Aug. 19, 2011).

because Mr. Weinstein could have included the profits of even more unpatented features (*e.g.*, the profits attributable to all of Wells Fargo's checking accounts or all of Wells Fargo's mobile application generally), his inclusion of some unpatented features should be overlooked. But the fact that Mr. Weinstein's analysis could have included even more unpatented features than it did does not remove the taint of his current analysis.

## IV. USAA Did Not Timely Disclose Its Marking Contentions.

USAA does not deny that it did not timely disclose its marking contentions in response to Wells Fargo's interrogatories. Instead, it asserts that Wells Fargo had the opportunity to review USAA's source code to determine whether Deposit@Mobile practices the Asserted Patents. But USAA fails to explain how that source code review would have revealed its marking contentions. It is improper for USAA to place the burden on Wells Fargo to divine the contentions of an opposing party. Because the first notice USAA provided of its marking contentions was weeks after the close of fact discovery when it served Mr. Weinstein's Report, the Court should strike Mr. Weinstein's marking discussion.

## V. The Court Should Strike Mr. Weinstein's Discussion of the CBMs.

This Court routinely excludes discussion of PTAB proceedings. And USAA concedes that such discussion would be improper absent Wells Fargo opening the door through discussion of USAA's failed licensing campaign. For the reasons explained in Wells Fargo's Reply in Support of the Motion to Strike the Rebuttal Report of Mr. Calman, such evidence will not open the door.

Respectfully submitted on September 11, 2019.

By:  *Thomas M. Melsheimer*
Thomas M. Melsheimer
TX Bar No. 13922550
tmelsheimer@winston.com
Michael A. Bittner
TX Bar No. 24064905
mbittner@winston.com
J. Travis Underwood

TX Bar No. 24102587
tunderwood@winston.com
**Winston & Strawn LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500 – Telephone
(214) 453-6400 – Facsimile

E. Danielle T. Williams
NC Bar No. 23283
dwilliams@winston.com
**Winston & Strawn LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
(704) 350-7700 – Telephone
(704) 350-7800 – Facsimile

Matthew R. McCullough
CA Bar No. 301330
mrmccullough@winston.com
**Winston & Strawn LLP**
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500 – Telephone
(650) 858-6550 – Facsimile

Jack Wesley Hill
TX Bar No. 24032294
wh@wsfirm.com
**Ward, Smith & Hill, PLLC**
P.O. Box 1231 1507 Bill Owens Parkway
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*Counsel for Defendant*
*Wells Fargo Bank, N.A.*


## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that under L.R. CV-5(a)(7)(B) that the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 40).

/s/ *Michael Bittner*
Michael Bittner


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

/s/ *Michael Bittner*
Michael Bittner