IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:18-CV-00245-JRG |
| WELLS FARGO BANK, N.A. | § § § | |
| Defendant. | § | |

### EXPERT REPORT OF CHARLES E. VAN HORN

I, Charles E. Van Horn, having been retained by Winston & Strawn, to provide expert testimony on behalf of WELLS FARGO BANK, N.A., (WELLS FARGO), in the above-captioned action, submit this expert report in this matter.

### QUALIFICATIONS:

1. I am an attorney and a senior counsel in the firm of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. (Finnegan). I counsel clients on patent preparation, prosecution and filing strategies, and provide guidance and training to clients and firm attorneys on patent practice and procedures. I also serve as a patent practice expert in litigated matters.

2. I received my Juris Doctorate degree in 1968 from the Washington College of Law, American University. I received my undergraduate Bachelor of Science Degree in Chemical Engineering from Lehigh University in 1963. I received a Masters

1

### Application No. 12/549,443 (Patent No. 8,699,779)

43. Application No. 12/549,443 was filed on August 28, 2009, with a nonpublication request - acknowledged by the PTO in the Official Filing Receipt dated 09/16/2009. As filed, the application contained claims directed to a system for depositing a check and a computer-readable medium. System claim 1 required "at least one subsystem that captures the image of the check using the camera," whereas dependent system claim 6, added the feature that recited "wherein capturing the image of the check is performed automatically without user intervention as soon as the image of the check is aligned within the alignment guide." Independent system claim 8 required "at least one subsystem that captures an image of the check using the camera when the image of the check is displayed within the alignment guide in the field of view." An Information Disclosure Statement was filed dated August 26, 2009.

44. A first Office Action was mailed 05/08/2012, in which all claims were rejected by the Examiner as lacking patentability under 35 U.S.C. § 103(a) over NEPOMNIACHTCHI (U.S. Patent No. 7,978,900 B2) in view of WINDLE (U.S. Patent No. 6,606,117 B1). NEPOMNIACHTCHI was said to disclose all the claimed features of the claimed system for depositing a check except that "NEPOMNIACHTCHI's alignment function is not done before image capturing." (page 4 of Office Action). WINDLE was relied on as teaching a bounding box that aligns an object before image capturing.

45. In response to the Office Action, claims 1 and 8 were amended to recite that the processor is configured to "automatically capture the image of the check when the image of the check is determined to align with the alignment guide." (pages 2 and 3 of Reply dated August 28, 2012). In remarks filed with the Reply, Applicant agreed with

17

the observation made by the patent examiner that "NEPOMNIACHTCHI does not disclose an alignment feature that is done prior to an image of a check being captured." (page 8 of Reply dated August 28, 2012).

46. While acknowledging that the template disclosed in WINDLE may provide recommendations for fitting objects into a camera's visible display area, Applicant argued that "WINDLE fails to disclose 'automatically capture the image of the check when the image of the check is determined to align with the alignment guide' as recited in claim 1 for at least two reasons" (page 9 of Reply dated August 28, 2012):

> First, to provide recommendations for fitting objects into a camera's visible display area is not analogous to determining "whether the image of the check aligns with the alignment guide" as recited in claim 1. Specific examples for determining whether the check aligns to the alignment guide are provided in new claims 22-27.
>
> Second, nothing in the disclosure of Windle teaches or suggests "*automatically* capture the image of the check when the image of the check is determined to align with the alignment guide." (Emphasis added). The image capturing function in Windle still relies on the user to initiate. In contrast, claim 1 recites that the image of the check is automatically captured after the processor determines that the image of the check aligns with the alignment guide.

18

47. A First Supplemental Information Disclosure Statement was filed dated August 28, 2012. A Notice of Allowance and Fee(s) Due was mailed 11/08/12, along with a Notice of Allowability indicating all pending claims were allowed (i.e., considered patentable). In a statement of reasons for allowance, the Examiner stated that [I]ndependent claims 1, 8 and 15 are allowed based upon convincing arguments presented in the remarks dated 08/28/2012.

48. Prior to granting a patent on the '443 Application on April 15, 2014 as U.S. Patent No. 8,699,779, several Information Disclosure Statements were filed and considered by the Examiner, but the information cited therein did not affect the patentability of the allowed claims according to the Examiner.

49. In my opinion the prosecution history shows and the patent examiner stated among the reasons for determining the claims were allowable (i.e., patentable) was that they were amended to recite that the processor, in the context of the invention claimed, is configured to "automatically capture the image of the check when the image of the check is determined to align with the alignment guide." I further consider the record shows that the amendment and argument made with respect to the automatic capture feature when the image is aligned with the guide were made for reasons related to patentability that establishes the presumption that prosecution history estoppel applies to this feature.

### Application No. 14/516,350 (Patent No. 9,336,517)

50. Application No. 14/516,350 was filed on October 16, 2014, with a Nonpublication Request. The '350 Application was stated to be a continuation of

Application No. 14/224,944 filed March 25, 2014, which was a continuation of Application No. 12/549,443, filed August 28, 2009 (Application Data Sheet 37 C.F.R. § 1.76). The application was filed with a request for Prioritized Examination. As filed, the application contained 6 claims to a system for transmitting information, and 14 claims to a non-transitory computer-readable medium. Independent claim 1 required the system to "automatically capture information of the tangible item when the at least one feature aligns with the alignment guide." Similarly, independent claim 7 required instructions to "automatically capture the information of the tangible item when the at least one feature is determined to align with the alignment guide." Independent claim 14 did not recite a feature that required automatic capture of information when the at least one feature aligns with the alignment guide.

51. An Information Disclosure Statement was filed dated October 24, 2014. The decision granting the request for Prioritized Examination was mailed October 28, 2014. On December 3, 2014, an Office Action was mailed in the form of a restriction requirement pursuant to 35 U.S.C. § 121 requiring Applicant to elect a single invention for examination. The inventions were identified as:

    I.    Claims 1-13, drawn to a system/non-transitory computer-readable medium for transmitting an image;

    II.    Claims 14-20, drawn to a non-transitory computer-readable medium for receiving and processing an image from a mobile device.

In a response dated January 30, 2015, the invention of Group I was elected for examination, and claims 14-20 were canceled.

52. On February 13, 2015, an Office Action was mailed in which all pending claims were rejected over prior art. Claims 1, 3, 6, 7 and 11-13 were rejected under 35 U.S.C. § 102(e) as being anticipated by LEE (U.S. Publication No. 20100225773 A1). The examiner considered LEE to teach all the elements of the rejected claims. Claims 2, 4, 5, and 8-10 were rejected under 35 U.S.C. § 103 as being unpatentable over LEE in view of NEPOMNIACHTCHI (U.S. Patent No. 7,978,900 B2). LEE was said to disclose all the elements of these claims except it did not explicitly teach that the information being captured is contained in a financial document (page 4 of the Office Action mailed 02/13/2015). NEPOMNIACHTCHI was said to disclose a mobile communication device for capturing, aligning and detecting a financial document.

53. A Reply to the Office Action was dated May 11, 2015. In that Reply, the sole independent claims 1 and 7 were amended, but retained the feature that recited: "automatically capture information of the instrument when at least one feature aligns with the alignment guide." Among the arguments made for patentability was "that the cited art is completely silent regarding the combination of 'monitor[ing] at least one feature of a instrument that is within a field of view of a camera . . .; determin[ing] whether the at least one feature aligns with an alignment guide; [and] automatically captur[ing] the information of the instrument when the at least one feature is determined to align with the alignment guide', as recited in current amended independent claim 7.

54. A Final Office Action was mailed 07/07/2015, in which all rejections based on prior art were withdrawn, but all claims were provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 21-34 and 41-46 of copending Application No. 14/516,364 (the parent application). A Reply to the Final

21

Office Action was dated December 7, 2015, in which Applicant filed a terminal disclaimer relative to now U.S. Patent No. 9,177,198 (granted on Application No. 14/516,364). A petition for extension of time and Notice of Appeal were filed to provide sufficient time for the Examiner to consider the Reply to the Final Office Action. A Notice of Allowance and Fee(s) Due was mailed 01/08/2016 allowing all pending claims. Upon payment of the required issue fee, the application was granted as U.S. Patent No. 9,336,517.

55. In my opinion, the prosecution history shows that the claims were allowed and distinguished over the prior art because the prior art was silent about the combination of steps that included monitoring, determining, and automatically capturing the information of the instrument when the at least one feature is determined to align with the alignment guide. The combination of steps was common to independent claims 1 and 7. I consider the amendment and argument made with respect to automatic capture when the at least one feature is determined to align with the alignment guide were made for reasons related to patentability, and establishes the presumption that prosecution history estoppel applies to these elements of the claims.

### Application No. 12/545,127 (Patent No. 8,977,571)

56. Application No. 12/545,127 was filed on August 21, 2009, with a nonpublication request acknowledged by the PTO in the Official Filing Receipt dated 09/09/2009. The application was filed with 14 claims directed to a computer-readable medium that comprised instructions that "capture the image of the check with the

camera when the image of the check passes the monitoring criteria" (independent claims 1 and 8).

57. A first Office Action was mailed on November 08, 2011, in which claims 1-21 were rejected under 35 U.S.C. § 103(a) as being unpatentable over LORS (U.S. Patent No. 7,953,441) in view of GRAHAM et al. (U.S. Patent No. 7,812,986). LORS was said to disclose a system, method and computer program product allowing a user to scan a document and transmit such to a remote computer, but did not explicitly state capturing the image of the check with the camera when the image of the check passes the monitoring criteria. This function, according to the Examiner, was taught by GRAHAM et al. where the document is analyzed and if the analysis results in a good image, the image is sent to a remote location or server (citing col. 26, line 56 to col. 57, line 46, and col. 28, lines 32-44 of GRAHAM et al.) (pages 2 and 3 of Office Action mailed 11/08/2011).

58. A response to the Office Action dated February 8, 2012, was filed with the PTO arguing that all claims were patentable over the combination of LORS and GRAHAM et al. Specifically, it was argued (page 8 of Response):

> (Emphasis Added). Claim 1 recites instructions to capture of an image of a check *when the image passes a monitoring criterion.* That is, claim 1 recites a timing feature that determines *when* to capture an image of a check based on a monitoring criterion. Applicants submit Lors and Graham, whether taken alone or in combination, fail to teach, disclose, or suggest, the above recited feature of claim 1.

23

It was further argued (page 9 of Response):

> Cited by the Examiner, col. 26, line 56 - col. 27, line 46 of Graham discloses that (1) a capture device captures an image; (2) a quality assessment module makes a preliminary judgment about the content of the captured image; and (3) the quality assessment module <u>causes</u> the capture device to recapture the image at a higher resolution. Graham plainly states the capture device captures an image, either initially without <u>any</u> criteria or subsequently at a certain resolution. At col. 28, lines 32-44, Graham discloses feedback for a user to steady the capture device or changing optic parameters of the capture device. At most, the cited passages of Graham disclose *different settings* by which a capture device can capture an image. In other words, Graham is silent concerning the timing of *when* to capture an image, such as capturing an image *when* an image meets a certain monitoring criterion.

59. A Supplemental Information Disclosure Statement was filed in the PTO on February 13, 2012. On April 4, 2012, a Final Office Action was mailed in which the rejection of all claims over LORS and GRAHAM et al. was maintained. The Examiner acknowledged Applicant's argument that the combination of LORS and GRAHAM et al. did not teach or suggest a claimed timing feature that determines when to capture an

24

image of a check based on a monitoring criterion, but was not persuaded because (page 2 of Office Action):

> The claims merely recite a processor to "capture the image of the check with the camera when the image of the check passes the monitoring criterion." No timing functions are recited.

60. A Notice of Appeal and a Pre-Appeal Brief Request for Review were filed in the PTO on August 6, 2012. The purpose of the Pre-Appeal Brief program is to obtain a review of the Examiner's position and arguments presented by Applicant to determine whether the appeal should proceed. The review is conducted by a panel that consists of at least a first level supervisor and the patent examiner assigned to the application. MPEP 1204.02, 9th Ed. (March 2014). On August 21, 2012, a Notice of Panel Decision was mailed indicating the application remained under appeal, and resetting the time period for filing an appeal brief in accordance with 37 C.F.R. § 41.37.

61. An appeal brief was filed on November 6, 2012, arguing that claims 1-21 were patentable over the combination of LORS and GRAHAM et al. The argument distinguished the claimed invention from LORS, which automatically and continuously captures an image as follows (page 7 of Appeal Brief):

> The Final Office Action mailed April 4, 2012 ("Office Action") concedes Lors does not disclose capturing the image of the check with the camera when the image of the check passes the monitoring criteria. (Office Action, p. 3.) Indeed, Lors discloses a scanning device that ***automatically*** and

25

> ***continuously*** captures an image. (Lors, col. 2, lines 12-16 and col. 4, lines 38-40.) Instead, the Office Action alleges Graham discloses this feature, specifically at col. 26, line 56 - col. 27, line 46 and col. 28, lines 32-44. (*Id.*)

62.  The claimed invention was distinguished from GRAHAM et al. that disclose (1) capture, (2) assessment, (3) recapture, arguing that GRAHAM et al. was silent as to a timing condition of when to capture an image as follows (pages 7 and 8 of Appeal Brief).

> Graham generally discloses a "mixed media reality" system for forming a mixed media document including multiple types of media. (Graham, Abstract.) Specifically, col. 26, line 56 - col. 27, line 46 of Graham discloses that:
>
> (1) a capture device captures an image;
>
> (2) a quality assessment module makes a preliminary judgment about the content of the captured image; and
>
> (3) The quality assessment module causes the capture device to recapture the image at a higher resolution.
>
> Thus, Graham discloses that a capture device captures an image either a) initially without any parameters or b) subsequently at a particular image resolution. At most, the cited passage of Graham discloses ***different settings*** by which a capture device captures an image. In other words, Graham is silent as to a timing condition of when to capture

26

> an image, let alone monitoring an image and capturing the image **when certain predetermined criteria are met**.
>
> In contrast, claim 1 recites monitoring an image in a field of view of a camera and capturing the image **when the monitored image passes a monitoring criterion**. In other words, claim 1 recites a timing condition of *when* to capture an image of a check, the timing based on when a monitored image passes a monitoring criterion. The Office Action states "Nowhere in the independent [sic] a timing feature is recited." (Office Action, p. 2.) However, Applicant notes claim 1 recites "when" (e.g., a time) an image of check is captured, specifically capturing of the image **monitored** in a field of a view in a camera **when** the image of the check passes a monitoring criterion.

63. Notices of Allowance and Allowability were mailed on 01/17/2013 indicating (paragraph 4, page 2 of Notice of Allowability): "Claims 1-21 are allowable over the art of record based on the Appellant's arguments filed 11/06/2012".

64. On April 12, 2013, Applicant filed a Request for Continued Examination (RCE) to permit consideration of an Information Disclosure Statement. An RCE has the effect of reopening prosecution in an application that has been closed by the issuance of a Notice of Allowance, for example. Information Disclosure Statements were also filed May 22, 2013 and September 19, 2013.

27

65. On October 9, 2013, an Office Action was mailed rejecting claims 1-21 under 35 U.S.C. § 103 as being unpatentable over LORS (U.S. Patent No. 7,953,441) in view of SUGIYAMA (U.S. Publ. No. 2003/0132384). Again, LORS was relied on as teaching all features of the claims except for "capturing the image of a document with the camera when the image of the document passes the monitoring criteria." (page 3 of Office Action). This function was allegedly taught by SUGIYAMA.

66. On February 10, 2014, Applicant filed a response to the Office Action arguing that the claims were patentable over the combination of LORS in view of SUGIYAMA as they fail to teach or suggest the claimed features of: (1) monitoring an image of a check in a field of view of a camera with respect to a monitoring criterion, and (2) capturing the image of the check with the camera when the image of the check passes the monitoring criterion (pages 8-10 of the response).

67. On April 9, 2014, an Office Action was mailed in which all pending claims were provisionally rejected on the ground of obviousness-type double patenting over claims 1-30 of copending Application No. 13/922,686. All claims were considered patentable over the prior art. In response to that Office Action on April 17, 2014, Applicant filed a terminal disclaimer to overcome the double patenting rejection.

68. On June 25, 2014, an Office Action was mailed requesting that the claims be amended to put them in condition for allowance by inserting "non-transitory" to modify the term "computer-readable medium". On August 12, 2014, Applicant filed a response making the requested amendment to the claims.

69. Notices of Allowance and Allowability were mailed 10/15/2014, indicating all pending claims were allowable. The Examiner provided a statement of reasons for

allowance for each of independent claims 1, 8 and 15. Among the features identified in each of these claims was: (claim 1) capture the image of the check with the camera when the image of the check passes the monitoring criterion; (claim 8) capture the image of the check using the camera when the image of the check in the field of view passes the monitoring criterion; (claim 15) a subsystem that provides instructions from the server to the mobile device to create a digital image of the check when the image passes the monitoring criterion.

70.     On October 17, 2014, Applicant provided comments on the Examiner's Statement of Reasons for Allowance. Applicants noted that they do not necessarily agree with the Statement and the reasons for allowance, and that the claims should be limited only by the terms used therein. Upon timely payment of the issue fee, the application was issued as U.S. Patent No. 8,977,571 dated March 10, 2015.

71.     In my opinion, the prosecution history shows and the Examiner stated that among the features of the claimed invention that distinguished it from the prior art was the requirement to capture an image of the check when the image passes the monitoring criterion. In my opinion, the record is clear the Examiner relied on this feature for patentability which establishes a presumption that prosecution history estoppel applies to this feature.

### Application No. 15/392,950 (Patent No. 9,818,090)

72.     Application No. 15/392,950 was filed on December 28, 2016, with a nonpublication request acknowledged by the PTO in the Official Filing Receipt dated 01/10/2017. The application was filed as a continuation of Application No. 13/922,686,

filed June 20, 2013, which was a continuation of Application No. 12/545,127, filed August 21, 2009, now U.S. Patent No. 8,977,571. The application was filed with a preliminary amendment that canceled all claims present in the copy of the application filed and added claims 21-30 to a system, claims 31-39 to a method for capturing an image of a target document by a mobile computing device, and claim 40 to a non-transitory computer-readable medium. In each of the only independent claims 21, 31 and 40 in the application, a processor was required, configured to control the image capture device to capture an image depicting the target document in the field of view of the image capture device when the monitoring criterion is determined to be satisfied.

73. An Information Disclosure Statement dated January 27, 2017, was filed. On February 23, 2017, an Office Action was mailed in which all claims were rejected on the ground of nonstatutory double patenting. Claims 21, 26-28, 31 and 36-38 were rejected over claims 1, 5-7, 15, and 19-21 of U.S. Patent No. 8,422,758, and claims 21, 26-28, 31, 36-38 and 40 were rejected over claims 1, 5-7, 11, 15-17, 21 and 25-27 of U.S. Patent No. 9,569,756. No rejection on prior art was made, and Applicant was advised that all claims would be considered patentable if the double patenting rejections were overcome through the filing of a terminal disclaimer.

74. A Reply to the Office Action was dated June 15, 2017, in which it was noted that the Examiner had agreed to withdraw the double patenting rejection based on U.S. Patent No. 8,422,758, and the double patenting rejection based on U.S. Patent No. 9,569,756 was overcome by filing a terminal disclaimer. Notices of Allowance and Allowability were mailed 07/14/2017. In a statement of the reasons for allowance, the Examiner stated (Notice of Allowability, pages 2 and 3) that the prior art fails to teach

the system of claim 21, the method of claim 31, or the medium of claim 40, which specifically comprises several features including:

> and when the monitoring criterion is determined to be satisfied, control the image capture device to capture an image depicting the target document in the field of view of the image capture device.

Upon payment of the issue fee, U.S. Patent No. 9,818,090 was granted on Application No. 15/392,950.

75. In my opinion, the prosecution history shows and the Examiner stated that the claims were allowed because the prior art failed to teach several features of the claimed invention, including: and when the monitoring criterion is determined to be satisfied, control the image capture device to capture an image depicting the target document in the field of view of the image capture device. I consider the record shows that the Examiner relied, inter alia, on the feature of capturing the image when the monitoring criterion is determined to be satisfied for patentability which establishes a presumption that prosecution history estoppel applies to this feature.

76. To the extent that any expert for Plaintiff offers prior to or at trial an opinion in my area of competence with which I disagree or upon which I have an opinion, I expect that I may comment on that opinion. In the event of subsequent developments, including the availability of additional evidence, that may have a bearing on my opinions, I expect that I may supplement this report to take those developments into consideration or otherwise consider the purpose of testifying at trial.

31

77.  I may use any exhibit cited herein and any documents cited under Exhibit C of this report to support or summarize the opinions set forth herein. I may also use other demonstrative exhibits, summaries, or the exhibits that are not yet prepared to further illustrate my opinions. I understand that prior to trial, such exhibits would be exchanged with Plaintiff at a time to be mutually agreed upon.

*Charles E. Van Horn*

Charles E. Van Horn

Date: 01 August 2019