**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **UNITED SERVICES AUTOMOBILE ASSOCIATION,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 2:18-CV-00245-JRG** |
| **WELLS FARGO BANK, N.A.,** | § § | |
| **Defendant.** | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wells Fargo Bank N.A.'s ("Wells Fargo") Motion for Summary Judgment Under 35 U.S.C. § 101 (the "Motion"). (Dkt. No. 131.) The Court heard argument on this Motion at the pretrial conference held in the above-captioned case on October 17, 2019. (Dkt. No. 263.) As announced at that hearing and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **DENIED**.[1] (*Id.* at 228:3–229:5.)

## I.    Factual Background

### A.    Procedural History

United Services Automobile Association ("USAA") brought suit against Wells Fargo alleging infringement of U.S. Patent Nos. 8,977,571 (the "'571 Patent") and 9,818,090 (the "'090 Patent") (collectively, the "Asserted Patents" or "Patents-in-Suit").[2] Shortly thereafter, Wells

---

[1] As to any claims narrowed from the list of claims prior to the Court's ruling (*see* Dkt. No. 231), the Motion is **DENIED-AS-MOOT**.

[2] USAA also asserted U.S. Patent Nos. 8,699,779 (the "'779 Patent") and 9,336,517 (the "'517 Patent"). Between the Court's ruling from the bench on the Motion and the issuance of this Memorandum Opinion and Order, the then-asserted claims of the '779 and '517 Patents have been dropped from the list of claims to be asserted at trial. (Dkt. No. 268.) While the Court's ruling is effective as to those prior asserted claims, which were pending when the ruling was made from

Fargo filed a Motion for Judgment on the Pleadings that the Asserted Patents are ineligible under 35 U.S.C. § 101. (Dkt. No. 28.) The Court denied Well Fargo's motion as moot in light of USAA's subsequently filed First Amended Complaint and granted leave to refile a similar motion directed at the First Amended Complaint. (Dkt. No. 61.) Wells Fargo declined to refile under Federal Rule of Civil Procedure 12.

However, Wells Fargo did file Petitions for Covered Business Method ("CBM") Review with the United States Patent Trial and Appeal Board ("PTAB") challenging each of the Asserted Patents, inter alia, as claiming patent-ineligible subject matter under § 101. Petition, *Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*, CBM2019-00004, Paper No. 2 (P.T.A.B. Nov. 8, 2018) (hereinafter, "'571 CBM Petition"); Petition, *Wells Fargo Bank, N.A. v. United Servs. Auto. Ass'n*, CBM2019-00002, Paper No. 2 (P.T.A.B. Nov. 8, 2018). The PTAB declined to institute CBM review as to the '571 Patent because it found that the patent claimed a "technological invention"; that is, it claimed a technological feature that is novel and nonobvious and "solves a technical problem using a technical solution." Decision, *Wells Fargo Bank, N. A. v. United Servs. Auto. Assoc'n*, CBM2019-00004, Paper No. 22 at 22–32 (P.T.A.B. May 15, 2019) (hereinafter, "'571 CBM Decision"); *see also* 37 C.F.R. § 42.301 (defining the scope of CBM review). Wells Fargo sought, and the PTAB granted, dismissal of its CBM petition as to the '090 Patent. Decision, *Wells Fargo Bank, N. A. v. United Services Automobile Association*, CBM2019-00002, Paper No. 16 (P.T.A.B. Aug. 26, 2019). The PTAB also denied initiation as to Wells Fargo's related Petition for *Inter Partes* Review of the '090 Patent. Decision, *Wells Fargo Bank, N.A. v. United Services Automobile Association*, IPR2019-00815, Paper No. 17 (P.T.A.B. Aug. 26, 2019).

---

the bench, the Court confines its analysis in this Memorandum Opinion and Order to the remaining Asserted Patents.

Wells Fargo now brings the instant Motion under Federal Rule of Civil Procedure 56 that the claims of the Patents-in-Suit are directed at patent-ineligible subject matter.

### B.    The Asserted Patents and Claims

USAA asserts that Wells Fargo infringes Claims 1–10 and 12–13 of the '571 Patent and Claims 1–10 of the '090 Patent (collectively, the "Asserted Claims"). (Dkt. No. 268.) By this Motion, Wells Fargo seeks summary judgment that each of these Asserted Claims is directed at patent-ineligible subject matter. The '571 Patent and the '090 Patent share the same priority date and specification.

The Asserted Claims generally relate to the automated capture of a digital image of a check for deposit using a mobile device. The '571 Patent and '090 Patent generally claim systems and methods for capturing check images by monitoring images for conformance with certain monitoring criteria. Claim 1 of the '571 Patent is illustrative:

> 1.  A non-transitory computer-readable medium comprising computer-readable instructions for depositing a check that, when executed by a processor, cause the processor to:
>
>> monitor an image of the check in a field of view of a camera of a mobile device with respect to a monitoring criterion using an image monitoring and capture module of the mobile device;
>>
>> capture the image of the check with the camera when the image of the check passes the monitoring criterion; and
>>
>> provide the image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.

'571 Patent, Claim 1.

Wells Fargo asserts that Claim 1 of the '090 Patent is representative for purposes of the Court's analysis. The Court is not convinced that Wells Fargo has met its initial burden of showing representativeness. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, ___ F. Supp. 3d ____, No. 2:18-cv-00007-JRG, 2019 WL 4745122, at *3–6 (E.D. Tex. Sept. 6, 2019) ("[W]hen a defendant

seeks to invalidate multiple claims based only on allegations relating to a subset of those claims, the defendant must justify treating that subset as representative of the other claims.") (citing *Aqua Prod., Inc. v. Matal*, 872 F.3d 1290, 1305 (Fed. Cir. 2017); 35 U.S.C. § 282(a)); *id.* at 5 ("Since different patents must generally contain patentably distinct inventions, it follows that the claims in one patent will not usually represent all of the inventive concepts embodied in the claims of another patent.") (citing *Novartis Pharm. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1362 (Fed. Cir. 2018)). Accordingly, the Court looks to each independent Asserted Claim in each Asserted Patent. '571 Patent, Claims 1, 9; '090 Patent, Claim 1. The Court also looks to the individual limitations of particular dependent Asserted Claims to the extent relevant to its analysis.

## II.    Legal Standard

### A.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on an issue at trial, then the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant [summary] judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### B.     Patent-Eligible Subject Matter

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of [the Patent Act]." 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." *Id.* at 217. In doing so, courts apply a two-step test.

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. This "step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir.

2016). The court must "tread carefully in construing this exclusionary principle" because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (omission in original) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 556 U.S. 66, 71 (2012)). The court must distinguish "ineligible abstract-idea-based solutions implemented with generic technical components in a conventional way from the eligible technology-based solution and software-based invention that improves the performance of the computer system itself." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (internal quotations omitted) . In doing so, the Court's analysis must be "directly tethered to the claim language" and should avoid recasting specific limitations "at a high level of abstraction." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019).

Second, if the challenged claims are directed towards a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations contain an inventive concept that "involve[s] more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of

elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, 725 F. App'x 959, 965–66 (Fed. Cir. 2018). There are many obscure references that may qualify as prior art but are insufficient to establish something is a "well-understood, routine, and conventional activity previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79. Accordingly, determining "[w]hether a particular technology is well-understood, routine, and conventional goes beyond" simply examining "what was simply known in the prior art." *Berkheimer*, 881 F.3d at 1369.

Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368.

## III.    Discussion

The Court agrees with the PTAB that the Asserted Claims are directed at a "[technical] solution to address [a] technical problem." '571 CBM Decision at 26. The Asserted Claims "focus on a specific means or method that improves the relevant technology" and not, as Wells Fargo contends, on an abstract concept such as taking a picture. *McRO, Inc. v. Bandai Namco Games*

*Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). The Court, therefore, concludes that the Asserted Claims are eligible for patent protection under step one of *Alice*.

Alternatively and independently, the Court finds that even if the Asserted Claims were directed at an abstract concept, a genuine dispute of fact would exist as to whether the claim elements individually or as an ordered combination were "well-understood, routine, and conventional to a skilled artisan in the relevant field." *Berkheimer*, 881 F.3d at 1368. Such a factual dispute precludes summary judgment.

### A. *Alice* Step One

Under step one of the *Alice* inquiry, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 573 U.S. at 217–18. Here, the Court determines that they are not.

Wells Fargo argues that the Asserted Claims are directed to an abstract idea—"[c]apturing a photograph," which "is a mental process." (Dkt. No. 131 at 1.) The Asserted Claims, Wells Fargo asserts, "do nothing more than apply this abstract concept using standard computer technology." (*Id.*) "[T]he Asserted Patents are all directed to the same mental process of monitoring an image for a certain criterion, determining whether that criterion is met, and when it is, capturing the image." (*Id.* at 9.) These steps, "performed by the claimed computer elements described in" the Asserted Claims, "are functional in nature and are performed by a human as part of evaluating an image when taking a photo." (*Id.*) Therefore, according to Wells Fargo, the Asserted Claims recite simply "a mental process performed by a human any time an image is evaluated as part of taking a photo, and thus" are directed to "an ineligible abstract idea." (*Id.* at 9–10.)

USAA counters that the Asserted Claims "engage the unique challenges associate[d] with imaging with a mobile device, imaging and image recognition using machine systems, and imaging involving check deposit." (Dkt. No. 158 at 15.) "The claimed inventions recite autonomous mobile

camera systems with specific technical features allowing the systems to compete with specialized, dedicated machines, that have to satisfy very particularized image quality requirements." (*Id.*) Therefore, USAA argues, the Asserted Claims recite "inventions with specific applications or improvement to technologies in the marketplace," and thus are not abstract. (*Id.* at 15–16 (quoting *Research Corp. Techs. Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010).)

The Court disagrees with Wells Fargo that the Asserted Claims are directed at the abstract idea of taking a picture rather than an improvement to technology. Wells Fargo made a similar argument before the PTAB in arguing that the Asserted Claims were eligible for CBM review: "The problem of taking a well-composed picture is not a technical one." '571 CBM Petition at 15. The PTAB disagreed, noting that Wells Fargo "misidentifies the disclosed problem by oversimplifying it." '571 CBM Decision at 24. Wells Fargo's argument falls short in the § 101 context for similar reasons. "[D]escribing the claims at such a high level of abstraction . . . all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

### 1. The Asserted Claims recite systems and methods for improving the capture of images in a quality sufficient to be processed.

"As the specification confirms, the claimed improvement here is" not simply taking a picture but capturing a quality image of a check such that a machine can read the data of the original check. *McRO*, 837 F.3d at 1313; *see also, e.g.*, '571 CBM Decision at 24. The common specification of the '571 and '090 Patents discloses that to reduce the burdens of having to physically present a check for deposit, existing "systems and methods have been developed to enable the remote deposit of checks." '571 Patent at 1:24–26. However, depositing a check electronically "requires the efficient and accurate detection and extraction of the information pertaining to a check in the digital image." *Id.* at 1:31–33. "Capturing a digital image at a mobile

device that allows for subsequent detection and extraction of the information from the digital image is difficult." *Id.* at 1:33–35.

To overcome this problem identified in their common specification, the Asserted Claims of the '571 Patent and the '090 Patent each recite a processor configured to or caused to monitor an image of a check or other document with respect to a "monitoring criterion" and capture an image thereof when the monitoring criterion is satisfied. *E.g.*, '571 Patent, Claims 1, 9; '090 Patent, Claim 1. As noted in the Claim Construction Order:

> The "monitoring criteria" of the patents are features of an image that are used as part of the quality-control process. "To increase the likelihood of capturing a digital image of the check 108 that may be readable and processed such that the check 108 can be cleared, the image is monitored for compliance with one or more monitoring criteria, prior to the image of the check 108 being captured."

(Dkt. No. 100 at 25 (quoting '571 Patent at 3:54–58).) "The monitoring of the monitoring criteria is repeatedly described and claimed as performed by a device rather than a human." (*Id.* at 26 (citing '571 Patent at 1:40–43, 8:40–45); *see also id.* at 27 ("There is nothing in the patents that suggests that a human may perform the monitoring and the Court does not here hold that human monitoring is encompassed by any claim.").)

Indeed, it is the machine monitoring of these criteria, rather than human monitoring, that "increase[s] the likelihood of capturing a digital image . . . that may be readable and processed" by a machine to extract relevant, necessary information. '571 Patent at 3:54–55.

> In other words, the '571 [P]atent [and the '090 Patent] use[] a machine to ensure that the quality of the check image is sufficiently high, prior to capturing the image, so that subsequently a machine will be able to read data from the check image. [These patents] thus improve[] prior computer systems and methods by solving the problem associated with those automated processes.

'571 CBM Decision at 28–29.

The types of monitoring criteria disclosed in the specification are not akin to human photo evaluation because they do not involve the kind of information that could be readily assessed in

real-time by a human user looking at the image on a mobile device screen. For example, the specification discloses such monitoring criteria as (1) monitoring skew by "measuring the distance from the edge(s) of the check 208 in the image to an alignment guide or the edge of the field of view" ('571 Patent at 8:10–13); (2) measuring the spacing of the MICR line to determine if "the spacing is outside of a certain range corresponding to valid spacing between number[s] in a MICR line" (*Id.* at 8:62–63); or (3) generating "one or more histograms" to be "used in the determination of light contrast and/or light brightness monitoring criteria" (*Id.* at 9:25–28.)

Though they may seek to accomplish the same ends as the manual processes they replace, these types of tasks cannot be readily done by a human user with the precision required to satisfy the claims. For example, while the human mind can appreciate the level of brightness or contrast in an image, it cannot readily generate a histogram charting "where all of the brightness levels contained in the image are found, from the darkest to the brightest." (*Id.* at 9:29–30.) The purpose of the claimed invention is not to generate a digital image not that is aesthetically pleasing to the human eye but rather to generate a digital image from which a machine can efficiently and accurately detect and extract relevant information. '571 Patent at 1:31–33. This requires a high degree of precision, not a human subjective determination.

Further, strict adherence to these monitoring criteria directly impacts to the ability of such an image to be fit for its intended purpose: to serve as a substitute check. "The Check Clearing for the 21st Century Act (or Check 21 Act) is a United States federal law that allows the recipient of a paper check to create a digital version, thereby eliminating the need for further handling of the physical document." '571 Patent at 12:19–23. Specifically, the Check 21 Act allows a substitute check to serve as "the legal equivalent of the original check" if it "accurately represents all the information on the front and back of the original check." 12 U.S.C. § 5003(b). The requirements

of a substitute check are precisely defined. *Id.* § 5002(16). As the specification discloses, "[b]y ensuring that the image of the check passes monitoring criteria during preimage capturing monitoring, the number of non-conforming images of checks is reduced during presentment of the images to a financial institution for processing and clearing." '571 Patent at 4:17–22.

The specification further discloses that the "Check 21 standard for electronic exchange is defined in the standard DSTU X9.37-2003 ('X9.37'). It is a binary interchange format." *Id.* at 12:23–25; *see also* '571 CBM Decision at 4 n.2 (noting that "DTSU X9.37–2003 has been replaced by ANS X9.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" though the "technical content . . . is identical"). "This standard establishes the construction, layout, data elements, data content, and printing specifications for an [Image Replacement Document] that includes a *machine readable* MICR line." '571 CBM Decision at 26 (emphasis added) (alterations and internal quotations omitted). Thus, to comply with the Check 21 standard, such that "the number of non-conforming images of checks is reduced," the images of the checks must be of sufficient quality to be machine-readable.[3] '571 Patent at 4:19–20.

---

[3] At oral argument, Wells Fargo asserted, "It's not the Court's claim construction that the check has to meet . . . Check 21 standards or be of sufficient ability to be processed by a computer." (Dkt. No. 263 at 220:13–16.) Rather Wells Fargo asserted, "[I]f it is passing a monitoring criterion, singular, . . . then it will be in a form sufficient" under the Court's construction of "depositing a check." (*Id.* at 219:13–15.) Wells Fargo presented this same argument at the claim construction hearing before Judge Payne, who expressed skepticism. (Dkt. No. 96 at 19:14–17 ("So you want the Court to construe 'depositing a check' to mean that an image of the check is transmitted to the bank? A Polaroid, a -- whatever, a cartoon, just -- it doesn't matter, just an image?").) To the contrary, the Claim Construction Order makes clear "that depositing a check is more than just providing it to the institution, it involves providing it in a form to enable actual crediting of funds to the deposit account." (Dkt. No. 100 at 16.) Under the Court's construction, the check must meet technical conformity with industry standards in order to be "in a form sufficient to allow money to be credited to an account." (*Id.* at 18.) In the United States, those standards are the Check 21 standard.

While the Asserted Claims of the '571 Patent recite monitoring and capturing "the image of a check," the Asserted Claims of the '090 Patent instead recite monitoring and capturing "a target document." *Compare* '571 Patent, Claim 1 *with* '090 Patent, Claim 1. Although the '090 Patent claims an invention that is not limited to the capturing and processing of checks, the specification makes clear that the same objective—capturing an image sufficient for a machine to detect and extract relevant information—remains the same:

> It is noted that although examples and implementations described herein may refer to a check image and check data, the term "check image" may refer to any foreground image in a digital image (as opposed to the background image) and the term "check data" may refer to any foreground data in a digital image (as opposed to background data). Thus, the "check image" and the "check data" may refer to the foreground image and foreground data in implementations involving any negotiable instrument, form, or document.

'090 Patent at 7:4–13. While the '090 Patent claims are not limited to the "check image" context, the goal of machine-readable quality images remains the same.

## 2.  The Asserted Claims are not directed to an abstract idea.

The Asserted Claims, which each require a "processor" to "determine" when an image meets certain requirements, are directed to a machine-implemented solution to a machine-specific problem: the difficulty of machines detecting and extracting information from a digital image. "In other words, we are not faced with a situation where general-purpose computer components are added post-hoc to" the simple act of taking a picture. *Enfish*, 822 F.3d at 1339. "Rather, the claims are directed to a specific implementation of a solution to a problem in the software arts." *Id.* Accordingly, the Court finds "the claims at issue are not direct to an abstract idea." *Id.*

As an initial matter, and despite Wells Fargo's arguments to the contrary, the Court doubts whether the act of taking a picture is itself an abstract idea. Taking a picture is not a fundamentally abstract concept or uniquely human action, such as "a fundamental economic practice or mathematical equation." *Id.* Moreover, "the human mind is not equipped" to capture photographs

13

on its own. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019). To the contrary, the act of taking a picture requires the intervention of mechanical and technical devices and processes both before, during, and after the human user's selecting and capturing of the image. Said another way, a claim directed to allowing a machine to select and capture an appropriate picture is not adding a generic computer component to a fundamentally human process. Rather, it is removing the once-necessary human intervention from a fundamentally mechanical process. Such an "improvement in the functioning of a" mobile device is not directed to an abstract concept. *Enfish*, 822 F.3d at 1338; *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) ("We previously have held claims focused on various improvements of systems directed to patent eligible subject matter under § 101.").

Finding that an invention is directed to an abstract idea simply because it removes the need for human intervention in a process is precisely the type of "high level of abstraction" that "all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. Taken to its logical conclusion, inventions directed to everything from self-opening doors to self-driving cars would become ineligible for patent protection. Accordingly, even granting Wells Fargo's description of the subject matter to which the claims are directed, *Alice* step one does not pose a bar to patentability.

To be clear, the Court does not determine that the Asserted Claims are directed merely to taking a picture. Instead, the Court finds that they are directed to a machine-implemented process for detecting and capturing an image of sufficient quality to detect and extract relevant information from the image by a machine. Such claims are not directed to an abstract idea, even if the claimed invention replaces a prior human process. This is true because the claims improve that prior process in a technologically inventive way. The Federal Circuit's decision in *McRO* is instructive.

The claimed improvement at issue in *McRO* allowed "computers to produce 'accurate and realistic lip synchronization and facial expressions in animated characters' that previously could only be produced by human animators." 837 F.3d at 1313 (quoting U.S. Patent No. 6, 307,576 at 2:49–50). This improvement was realized through "the use of rules, rather than artists." *Id.* The Federal Circuit rejected the argument that "the claims simply use a computer as a tool to automate conventional activity." *Id.* at 1314. There was no indication that "the process previously used by animators is the same as the process required by the claims." *Id.* To the contrary, "an animator's process was driven by subjective determinations rather than specific, limited mathematical rules." *Id.* "It is the incorporation of the claimed rules, not the use of the computer, that 'improved [the] existing technological process' by allowing the automation of further tasks. *Id.* (alteration in original) (quoting *Alice*, 573 U.S. at 223).

Like the claims at issue in *McRO*, the Asserted Claims employ a processor "to perform a distinct process to automate a task previously performed by humans." *Id.* at 1314. Also like the claims in *McRO*, there is no indication that the Asserted Claims' reliance on one or more "monitoring criterion" mirror the process previously used by human photographers. To the contrary, the very improvement being claimed is the use of objective monitoring criteria to improve the acceptability of the check image relative to an image captured in reliance on the subjective determinations of a user. '571 Patent at 4:17–20 ("By ensuring that the image of the check passes monitoring criteria during preimage capturing monitoring, the number of non-conforming images of checks is reduced . . . ."). It is the use of these objective monitoring criteria, not the use of a generic computer, that "improved [the] existing technological process." *Alice*, 573 U.S. at 223.

Wells Fargo points to several cases for the proposition that claims that recite phrases such as "monitoring" and "determining" are directed to an abstract idea. (Dkt. No. 131 at 11–12.) These cases neither espouse nor impose such a bright line rule. For example, in *Electric Power Group, LLC v. Alstom S.A.*, the Federal Circuit affirmed the district court's determination that the claims at issue were directed to "the abstract idea of monitoring and analyzing data from disparate sources." 830 F.3d 1350, 1353 (Fed. Cir. 2016). However, the Federal Circuit did not take issue with "monitoring" *per se*. Rather, the Federal Circuit distinguished those claims from the claims in *Enfish* because it found "the focus of the claims is not on such an *improvement* in computers as tools, but on certain independently abstract ideas that *use* computers as tools." *Id.* at 1354 (emphasis added).

Here, as Wells Fargo itself has asserted, "[i]t is undisputed the Asserted Patents claim a single, narrow feature of mobile remote deposit capture: a specific type of autocapture," which is a claimed improvement over the prior manual mobile remote deposit capture system. (Dkt. No. 172 at 1.) "The specification confirms" as much. *Core Wireless*, 880 F.3d at 1363; '571 Patent at 1:33–35 ("Capturing a digital image at a mobile device that allows for subsequent detection and extraction of the information from the digital image is difficult."); *id.* at 3:54–57 ("To increase the likelihood of capturing a digital image of the check 108 that may be readable and processed such that the check 108 can be cleared, the image is monitored for compliance with one or more monitoring criteria . . . ."). Unlike the claims at issue in *Electric Power*, the Asserted Claims do not *use* the mobile device as a tool, but rather they *improve* the mobile device as a tool.

Similarly, in *Bancorp Services LLC v. Sun Life Assurance Co.*, the Federal Circuit found ineligible claims that involved calculating the value of insurance policies in part by "determining an investment value and a value of the underlying securities." 687 F.3d 1266, 1271, 1277 (Fed.

Cir. 2012). The patent owner argued that "because its claims are limited to being performed on a computer, they cannot claim only an abstract idea." *Id.* However, the Federal Circuit found that the claims involved the abstract idea of using well-known calculations and noted "the fact that the required calculations could be performed more efficiently via a computer" did not render the claims eligible. *Id.* at 1278. Instead, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Id.* The Federal Circuit distinguished claims where "the computer simply performs more efficiently what could otherwise be accomplished manually," from claims like those at issue in *Research Corp. Technologies, Inc. v. Microsoft*, 627 F.3d 859 (Fed. Cir. 2010), which "represented improvements to computer technologies in the marketplace" and claim methods that "could not, as a practical matter, be performed entirely in a human's mind." *Bancorp*, 687 F.3d at 1279. Similarly, here, the claimed invention, which involves performing real-time calculations to ensure a digital image meets objective criteria, cannot practically be performed in a human's mind.

The claims in these cases were not found ineligible *per se* for reciting a step such as "monitoring," "determining," "capturing," or "instruction." (*See* Dkt. No. 131 at 12.) Rather, the relevant inquiry is whether the claims are directed to an improvement in computer technologies or simply a use of computers as tools to enhance the efficiency of fundamental human tasks.

In *SRI International, Inc. v. Cisco Systems, Inc.*, the defendant argued that claims that involved "monitoring . . . an enterprise network" by "detecting . . . suspicious network activity" were directed to an abstract concept because "the asserted claims are so general that they encompass steps that people can go through in their minds." 930 F.3d 1295, 1301, 1304 (Fed. Cir. 2019) (internal quotations omitted). The Federal Circuit was not convinced:

> We disagree. This is not the type of human activity that § 101 is meant to exclude. Indeed, we tend to agree with [the patentee] that the human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets as recited by the claims.

*Id.* at 1304. Similarly, while the human mind may judge a digital image for subjective, aesthetic criteria, it is not equipped, particularly in real-time while looking at the image on a mobile device screen, to judge objective, technological criteria within the digital image that make the image acceptable for subsequent machine recognition.

In sum, the Court finds that the Asserted Claims are directed to an "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. Accordingly, the Asserted Claims are eligible under step one of the *Alice* inquiry.

While this ends the *Alice* inquiry, the Court, out of an abundance of caution, will proceed to analyze the claims under step two of *Alice*.

### B.      *Alice* **Step Two**

At step two, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Berkheimer*, 881 F.3d at 1367 (quoting *Alice*, 573 U.S. at 217). "The second step of the Alice test is satisfied when the claim limitations 'involve more than performance of well-understood, routine, and conventional activities previously known to the industry.'" *Id.* (quoting *Content Extraction*, 776 F.3d at 1347–48) (internal quotations omitted). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Id.* Here the Court finds that Wells Fargo has failed to meet its burden to show the absence of a genuine dispute as to this material fact question such that summary judgment is inappropriate.

Wells Fargo asserts that all of the limitations of the Asserted Claims recite either an abstract concept, generic computer components, or other elements that were well known in the art. (Dkt. No. 131 at 13–16.) For example, Wells Fargo argues that the examples of monitoring criteria disclosed in the specification are described as well known. (*Id.* at 15–16.) Even assuming *arguendo* Wells Fargo is correct that each claim limitation recites well-understood, routine, and conventional activities, this is not sufficient under *Alice* to meet its burden.

Rather, the Court must look to whether "the elements of each claim both individually and '*as an ordered combination*'" were well-understood, routine, and conventional in the industry. *Berkheimer*, 881 F.3d at 1367 (emphasis added). Wells Fargo has provided no evidence that the claim elements as an ordered combination were well-understood, routine, and conventional. To the contrary, the specification discloses that the need satisfied by this ordered combination was long felt in the industry: "Capturing a digital image at a mobile device that allows for subsequent detection and extraction of the information from the digital image is difficult." '571 Patent at 1:33–35. The Asserted Patents disclose an ordered combination to alleviate this need: "To increase the likelihood of capturing a digital image of the check 108 that may be readable and processed such that the check 108 can be cleared, the image is monitored for compliance with one or more monitoring criteria, *prior to* the image of the check 108 being captured." '571 Patent at 3:54–58; *see also* '571 Patent, Claims 1, 9; '090 Patent, Claim1. Regardless of whether the individual elements of the claims were known in the art, Wells Fargo proffers no evidence that the elements as an ordered combination were well-understood, routine, and conventional.

Moreover, USAA has proffered expert testimony that this type of autonomous decision making recited by the Asserted Claims was not disclosed in the prior art. (Dkt. No. 158 at 20; Dkt. No. 158-17 ¶¶ 245–249, 262–268, 276–279, 284–286, 287–290.) Since "the scope and content of

the prior art" is a factual question, the factual dispute as to whether the limitations in such an ordered combination were disclosed in the prior art is not amenable to resolution on summary judgment. *See Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1377 (Fed. Cir. 2019).

Bearing in mind that Wells Fargo has the burden to prove ineligibility by clear and convincing evidence, the Court concludes that the intrinsic evidence in the specification and USAA's expert testimony suffice to show that summary judgment is improper. Specifically, the Court concludes that such evidence makes clear that there is a genuine dispute of material fact as to whether the ordered combination of elements were well-understood, routine, and conventional at the time of patenting.

Finally, the Court finds that Wells Fargo has failed to proffer evidence that the individual limitations of the dependent claims of the Asserted Patents were well-understood, routine, and conventional. For example, Wells Fargo proffers no evidence that the limitations providing corrective feedback to the user to assist in satisfying the monitoring criteria were well known in the industry. *See* '571 Patent, claims 2–5, 10–11; '090 Patent, Claims 1–10.

As such, and in light of Wells Fargo's failure to advance affirmative evidence as to the lack of inventiveness of the ordered combination, the Court finds that Wells Fargo has failed to meet its summary judgment burden under *Alice* step two.

## IV.    Conclusion

For the reasons set forth herein, the Court determines that the Asserted Claims are eligible for patent protection under 35 U.S.C. § 101. Accordingly, Wells Fargo's Motion for Summary Judgment under 35 U.S.C. § 101 (Dkt. No. 131) is **DENIED**.

**So ORDERED and SIGNED this 28th day of October, 2019.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE