08:41:54

1          IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
2                   MARSHALL DIVISION

3   UNITED STATES AUTOMOBILE      )(
    ASSOCIATION
4                                 )(     CIVIL ACTION NO.

5   VS.                           )(     2:18-CV-245-JRG

6                                 )(     MARSHALL, TEXAS
                                         OCTOBER 30, 2019
7   WELLS FARGO BANK, N.A.        )(     9:25 A.M.

8

9        TRANSCRIPT OF VOIR DIRE OF THE JURY PANEL

10                    MORNING SESSION

11     BEFORE THE HONORABLE CHIEF JUDGE RODNEY GILSTRAP,

12               UNITED STATES DISTRICT JUDGE

13
    APPEARANCES:
14

15  FOR THE PLAINTIFF:

16
    JASON SHEASBY
17  ANTHONY ROWLES
    LISA GLASSER
18  IRELL & MANELLA
    1800 Avenue of the Stars
19  Suite 900
    Los Angeles, CA 90067-4276
20

21
    ROBERT CHRISTOPHER BUNT
22  PARKER, BUNT & AINSWORTH, PC
    100 East Ferguson
23  Suite 418
    Tyler, TX 75702
24

25

```
 1   FOR THE DEFENDANT:

 2
     THOMAS M. MELSHEIMER
 3   M. BRETT JOHNSON
     MICHAEL A. BITTNER
 4   J. TRAVIS UNDERWOOD
     WINSTON & STRAWN LLP
 5   2121 North Pearl Street
     Suite 900
 6   Dallas, TX 75201

 7
     E. DANIELLE T. WILLIAMS
 8   WINSTON & STRAWN LLP
     300 South Tyron Street
 9   16th Floor
     Charlotte, NC 28202
10

11   MATTHEW R. MCCULLOUGH
     WINSTON & STRAWN LLP
12   275 Middlefield Road
     Suite 205
13   Menlo Park, CA 94025

14
     JACK WESLEY HILL
15   WARD, SMITH & HILL, PLLC
     P.O. Box 1231
16   1507 Bill Owens Parkway
     Longview, TX 75606
17

18
     COURT REPORTER:      Shelly Holmes, CSR, TCRR
19                        Official Court Reporter
                          United States District Court
20                        Eastern District of Texas
                          Marshall Division
21                        100 E. Houston
                          Marshall, Texas  75670
22                        (903) 923-7464

23
     (Proceedings recorded by mechanical stenography, transcript
24   produced on a CAT system.)

25
```

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | P R O C E E D I N G S                                    |
| 09:25:28 | 2  | (Venire panel in.)                                    |
| 09:25:28 | 3  | COURT SECURITY OFFICER:  All rise.                    |
| 09:25:29 | 4  | THE COURT:  Thank you.  Be seated.                    |
| 09:25:51 | 5  | Good morning, ladies and gentlemen.  Thank you for    |
| 09:26:04 | 6  | being here.                                           |
| 09:26:04 | 7  | My name is Rodney Gilstrap, and I am the Chief        |
| 09:26:10 | 8  | United States District Judge for the U.S. District Court |
| 09:26:12 | 9  | for the Eastern District of Texas.                    |
| 09:26:15 | 10 | I have lived in Marshall since 1981 when I got out    |
| 09:26:19 | 11 | of law school.  I practiced law in this community and in |
| 09:26:22 | 12 | the surrounding area for 30 years before I was appointed to |
| 09:26:27 | 13 | this position.  I've been on the bench here since 2011. |
| 09:26:32 | 14 | Also, I will confess to you, I was not born in the    |
| 09:26:35 | 15 | State of Texas.  I was born in Florida.  But I got here as |
| 09:26:38 | 16 | quick as I could.                                     |
| 09:26:39 | 17 | I came to Texas at the age of 18 to attend college    |
| 09:26:44 | 18 | at Baylor University, and stayed there to complete my |
| 09:26:47 | 19 | studies at Baylor Law School.  I'm married, I have two |
| 09:26:51 | 20 | grown children.  And my wife owns and operates a retail |
| 09:26:54 | 21 | floral business here in Marshall.                     |
| 09:26:56 | 22 | Now, I tell you all these things about myself         |
| 09:27:00 | 23 | because in a few minutes, I'm going to ask each of you to |
| 09:27:03 | 24 | tell me the same kind of information about yourselves, and |
| 09:27:06 | 25 | I think you're entitled to know as much about me as I'm |

4

09:27:09  1  about to find out about each of you.

09:27:12  2        We are about to engage in the selection of a jury

09:27:16  3  in a civil case involving allegations of patent

09:27:19  4  infringement.  However, before we go any further, I'd like

09:27:24  5  to briefly review with you how we came to have our jury

09:27:29  6  trial system for civil cases such as this.

09:27:31  7        If you go back in ancient history and if you look

09:27:35  8  at the Pentateuch, the first five books of the Old

09:27:39  9  Testament, you'll see that the ancient Jewish Nation

09:27:42  10 empaneled juries to determine issues of property ownership

09:27:45  11 and property value.

09:27:47  12       The ancient Greeks began using a jury system about

09:27:51  13 1500 BC.  The Romans, as they did with most things, copied

09:27:56  14 the jury system and borrowed it from the Greeks.  And it

09:28:00  15 was the Romans that brought the jury system to what we now

09:28:04  16 know to be Great Britain when they conquered that island in

09:28:09  17 the 4th century AD.

09:28:10  18       And by the 12th century AD, jury trials had been a

09:28:16  19 part of the ordinary, established life in Great Britain for

09:28:19  20 800 years.

09:28:21  21       But then in the 12th century, a tyrannical king

09:28:24  22 came to the throne of Great Britain named King John, and

09:28:27  23 King John became embroiled in multiple disputes with his

09:28:33  24 nobles that led that country to the verge of civil war.

09:28:37  25 One of those disputes was King John's efforts to do away

09:28:41   1   with the right to trial by jury.

09:28:43   2        Civil war was avoided by an agreement reached

09:28:46   3   between the King and his nobles through a document you've

09:28:47   4   all heard of called the Magna Carta signed at a place

09:28:51   5   called Runnymede.

09:28:52   6        In fact, ladies and gentlemen, the language in the

09:28:55   7   Magna Carta that addresses the right to trial by jury has

09:29:00   8   been adopted in the state constitutions of 28 of our United

09:29:06   9   States adopted verbatim directly out of the Magna Carta.

09:29:09   10        So you can see that the concept of the right to

09:29:14   11   trial by jury was well ingrained in our Founding Fathers

09:29:18   12   when they came to this continent from Great Britain as

09:29:21   13   British colonists.

09:29:24   14        And the right to trial by jury through those

09:29:28   15   British colonists flourished in America for over a hundred

09:29:35   16   years until another tyrannical king came to the throne of

09:29:35   17   Great Britain.  This time his name was King George, the

09:29:38   18   III.  And like King John, King George, III, sought to do

09:29:42   19   away with the right to trial by jury among his colonists'

09:29:46   20   subjects here in America.

09:29:47   21        Thomas Jefferson, in writing the Declaration of

09:29:51   22   Independence, which spells out the specific reasons why we

09:29:56   23   needed to break from the mother country and form our own

09:30:00   24   independent nation, lists the king's attempts to do away

09:30:05   25   with the right to trial by jury as one of the specific

09:30:07  1  reasons in the Declaration of Independence as to why we

09:30:12  2  should seek our own independent status.

09:30:14  3       After we did achieve our independent status as our

09:30:20  4  own nation, we adopted certain governing documents; first,

09:30:24  5  something called the Articles of Confederation.

09:30:27  6       They didn't work so well.  So we adopted a new

09:30:30  7  governing document for this country called the

09:30:33  8  Constitution.

09:30:37  9       And after the adoption of the Constitution, there

09:30:39 10  were 10 important amendments added to what you all know to

09:30:42 11  be the Bill of Rights.

09:30:43 12       In the Bill of Rights, you find the Seventh

09:30:46 13  Amendment to the Constitution, and it is the Seventh

09:30:48 14  Amendment that embodies in our Constitution that same

09:30:51 15  guarantee of a right to trial by jury in a civil case.

09:30:54 16       The Seventh Amendment, along with the other nine

09:31:01 17  amendments in the Bill of Rights, were all ratified in

09:31:04 18  1791.  So for well over 200 years every American citizen,

09:31:07 19  through our Bill of Rights and our Constitution, has had a

09:31:11 20  guaranteed right to submit their disputes in civil matters

09:31:14 21  to a jury of their peers.

09:31:17 22       So by being here this morning, ladies and

09:31:19 23  gentlemen, and presenting yourselves for service in a

09:31:24 24  jury -- or on a jury in a civil case, you are in a very

09:31:28 25  real way doing your part as American citizens to preserve,

09:31:32   1   protect, and defend our Constitution, and particularly the

09:31:38   2   guarantees it contains to the right -- or regarding the

09:31:41   3   right to trial by jury.

09:31:42   4          I always tell prospective jurors, such as

09:31:47   5   yourselves, who appear for jury duty that in my personal

09:31:52   6   opinion, jury service is the second highest form of public

09:31:55   7   service that any American can render.  In my personal

09:32:00   8   opinion, the highest form of public service are those young

09:32:02   9   men and women who serve in our armed forces.

09:32:05  10          Now, I want you all to understand that by being

09:32:09  11   here today, you are embarking on and rendering very

09:32:14  12   important public service to your country.  And that's no

09:32:18  13   small thing.

09:32:18  14          Also, later in the process this morning, you're

09:32:23  15   each -- you're going to be addressed by the lawyers in this

09:32:26  16   case, and when they address you, they're going to ask

09:32:28  17   various questions of the panel.

09:32:31  18          I want you to understand that they're not seeking

09:32:34  19   to pry unduly into your personal affairs.  They're not

09:32:38  20   attempting to be nosy, ladies and gentlemen.  They are

09:32:40  21   asking questions calculated to help secure for us a jury

09:32:46  22   that is fair and impartial to hear the evidence in this

09:32:50  23   case and to return a verdict based on that evidence.

09:32:52  24          Now, I don't know if it will happen today, it

09:32:56  25   rarely does, but I want you to understand that if at

09:32:59  1   anywhere in the process you're asked a specific question

09:33:02  2   that you believe in your context and in your personal life

09:33:07  3   is so personal and so private that you don't feel

09:33:10  4   comfortable answering it in front of everyone else on the

09:33:14  5   panel, then you have the option of simply saying in

09:33:16  6   response to that question, I'd like to talk to Judge

09:33:19  7   Gilstrap about that.  And if that's your response, I'll

09:33:22  8   provide an opportunity for you to answer that question

09:33:25  9   outside of the presence of everyone else on the panel.

09:33:27  10          But, as I say, that rarely comes up.  But if it

09:33:31  11  should, then I want you to know you have that option.

09:33:35  12          The important thing, ladies and gentlemen, is for

09:33:37  13  each of you to give full, complete, and truthful answers to

09:33:41  14  the questions asked.  As long as your answers are full,

09:33:46  15  complete, and truthful, there are no wrong answers.

09:33:49  16          Now, the trial in this case will begin today after

09:33:53  17  we select the jury, and we will continue the trial

09:33:57  18  tomorrow, Thursday of this week, we'll continue the trial

09:34:00  19  Friday morning.  We will not be in trial Friday afternoon

09:34:04  20  of this week because I have to preside at an investiture of

09:34:09  21  a newly-appointed district judge in our district.

09:34:12  22          Then we'll pick back up on Monday of next week,

09:34:16  23  and we will try the case through Thursday of next week

09:34:21  24  because Friday I have to go to Beaumont and preside over

09:34:25  25  the investiture of another new district judge appointed in

09:34:29   1   our district.

09:34:30   2          That means I expect the case will probably be over

09:34:32   3   by the end of Thursday of next week with the schedule that

09:34:36   4   I've given you.  That's not a guarantee, but it is my best

09:34:39   5   guess.

09:34:41   6          But what I need to know from each of you is, if

09:34:43   7   over that period of time that I've just described,

09:34:46   8   basically from now through Thursday of next week, if any of

09:34:50   9   you have a surgical procedure scheduled for yourselves or

09:34:54  10   there's a surgical procedure scheduled for someone who

09:34:58  11   you're responsible to be a caregiver for who's dependent

09:35:01  12   upon you, or if you have non-refundable international

09:35:05  13   airline tickets you can't get your money back on; if

09:35:08  14   there's some very important and significant reason why you

09:35:10  15   couldn't serve if you were selected during that period of

09:35:13  16   time, I need to know about that now.

09:35:15  17          If there are any of you that fall in that

09:35:18  18   category, would you please raise your hands and let me make

09:35:20  19   a note of it?

09:35:22  20          All right.  No. 1.  I don't see anybody else in

09:35:28  21   the jury box.  Anybody outside of the jury box?  I don't

09:35:31  22   see any other hands.

09:35:32  23          All right.  Thank you.

09:35:33  24          At this time, I'm going to call for announcements

09:35:38  25   in the case of United States Automobile Association versus

09:35:43  1   Wells Fargo Bank.  This is Civil Case No. 2:18-CV-245.

09:35:50  2        And, counsel, as you give your announcements,

09:35:53  3   would you identify yourselves, the members of your trial

09:35:55  4   team, and any corporate representatives that you have with

09:35:57  5   you?

09:35:57  6        We'll begin with the Plaintiff.  What says the

09:35:59  7   Plaintiff?

09:35:59  8        MR. BUNT:  Thank you, Your Honor.

09:36:00  9        Good morning, ladies and gentlemen.  My name is

09:36:04  10  Chris Bunt.  It's my pleasure to be here today representing

09:36:08  11  United Services Automobile Association.

09:36:11  12        With me today is Mr. Jason Sheasby, Ms. Lisa

09:36:18  13  Glasser, Mr. Tony Rowles.  We also have with us senior vice

09:36:22  14  president of USAA, Jason Kamiya.

09:36:27  15        And in the gallery we have some of our witnesses;

09:36:30  16  Mr. Tom Conte, Mr. Matt Calman, and Mr. Roy Weinstein.  And

09:36:36  17  also assisting us today with our jury selection is Ms. Tara

09:36:36  18  Trask and Mr. Todd Parish.

09:36:42  19        And we're ready to proceed, Your Honor.

09:36:44  20        THE COURT:  All right.  What says the Defendant?

09:36:45  21        MR. HILL:  Good morning, Your Honor.  Thank you.

09:36:48  22        Good morning, ladies and gentlemen.  My name is

09:36:52  23  Wesley Hill.  And it's my pleasure in this case to

09:36:54  24  represent Wells Fargo Bank.

09:36:56  25        And Wells Fargo Bank is represented here, for

09:36:58   1   purposes of the trial, by their corporate representative,

09:37:01   2   Ms. Margot Lockwood-Stein.  She is the senior vice

09:37:06   3   president of digital payments at Wells Fargo.

09:37:08   4         Thank you, Ms. Stein.

09:37:10   5         And then also on our trial team here that will be

09:37:12   6   trying the case with us this week, other folks you'll get

09:37:15   7   to see and meet, is Mr. Tom Melsheimer, Ms. Danielle

09:37:18   8   Williams, Ms. Renee Skinner, and Mr. Brett Johnson.

09:37:23   9         And we also have witnesses who you'll meet through

09:37:26  10   the course of the trial.  I won't bother to introduce those

09:37:28  11   folks to you now.  I know you're seeing a lot of names and

09:37:31  12   faces, but it's good to see you folks this morning, and we

09:37:33  13   look forward to presenting our case.

09:37:35  14         Thank you, Your Honor.

09:37:36  15         THE COURT:  Thank you, counsel.

09:37:37  16         As I've told you, ladies and gentlemen, this is a

09:37:42  17   patent case arising under the patent laws of the United

09:37:45  18   States.

09:37:45  19         What the Plaintiff is claiming is that in this

09:37:48  20   case, their patent was infringed by the Defendant, and

09:37:52  21   they're seeking money damages because of that alleged

09:37:54  22   infringement.

09:37:55  23         The Defendants deny that they infringe the

09:37:57  24   Plaintiff's patent.

09:37:59  25         Now, that's very short and simple and an informal

09:38:03   1    way of describing the case to you in layman's terms.

09:38:05   2         I know you've all seen the patent video prepared

09:38:09   3    by the Federal Judicial Center, and having seen that, you

09:38:12   4    know more already about patent cases than most people do

09:38:16   5    when they appear for jury duty.

09:38:18   6         Now, as I say, the lawyers for both sides are

09:38:20   7    about to question the members of the panel to gather

09:38:23   8    information that they'll use to exercise their peremptory

09:38:27   9    challenges and complete the process of selecting the jurors

09:38:30   10   that will try this case.

09:38:33   11        Again, ladies and gentlemen, there aren't any

09:38:34   12   wrong answers to the questions you're going to be asked, as

09:38:37   13   long as your answers are full, complete, and truthful.

09:38:39   14        Again, the lawyers are not attempting to pry into

09:38:44   15   your personal affairs.  They're attempting to represent

09:38:46   16   their clients' interest and help for -- help secure an

09:38:50   17   impartial and fair jury to hear the evidence.

09:38:53   18        If for any reason a question is asked of the panel

09:38:57   19   by a member of either trial team that I don't think is

09:39:01   20   proper, I will certainly stop them, but I want you to

09:39:04   21   understand, these are very experienced trial lawyers.  They

09:39:07   22   understand the Rules of Civil Procedure, they understand

09:39:09   23   the local rules, and the standing orders of this Court, and

09:39:12   24   I don't expect that to happen.  But if it should, I won't

09:39:15   25   hesitate to intervene.

09:39:18  1      One thing I do want to call your attention to,

09:39:21  2 because some of the lawyers during their questioning may

09:39:24  3 ask you about your ability to implement this, is the burden

09:39:31  4 of proof.

09:39:32  5      In this case, the jury is going to be called upon

09:39:35  6 to apply a single burden of proof to the evidence that's

09:39:38  7 presented, and that burden of proof is known as the

09:39:41  8 preponderance of the evidence.  Let me say that again, the

09:39:46  9 preponderance of the evidence.

09:39:46 10      So when responding to any lawyer's questions about

09:39:52 11 the burden of proof, I need to instruct you that when a

09:39:56 12 party has the burden of proof on any claim or defense by a

09:39:59 13 preponderance of the evidence, that means that the jury

09:40:04 14 must be persuaded by the credible or believable evidence

09:40:07 15 that that claim or defense is more probably true than not

09:40:11 16 true.  Let me say that again.  More probably true than not

09:40:16 17 true.

09:40:17 18      This is sometimes described and talked about as

09:40:21 19 being the greater weight and degree of credible testimony.

09:40:28 20      Let me give you an example that I hope will help.

09:40:31 21 I think you can see in front of our court reporter a statue

09:40:34 22 of the Lady of Justice.  She's blindfolded.  She holds the

09:40:38 23 sword of justice unsheathed and lowered at her right side.

09:40:43 24 She holds the Scales of Justice in her left hand raised

09:40:45 25 above her.  Those scales are exactly equal and exactly

09:40:48  1   balanced, and that's where these two parties should start

09:40:52  2   at the beginning of this trial, exactly in the same

09:40:55  3   position.

09:40:56  4       Over the course of the trial, evidence is going to

09:40:58  5   be presented to the jury.  And for one party, think about

09:41:03  6   it this way.  The evidence that one party will put on will

09:41:07  7   be put on one side of those scales, and the evidence the

09:41:10  8   other party will put on will be put on the other side of

09:41:13  9   those scales.  And when all the evidence has been

09:41:15  10  presented, the jury is going to be asked to answer certain

09:41:18  11  questions.

09:41:19  12      And in answering those questions, if the party who

09:41:22  13  has the burden of proof has those scales with the evidence

09:41:27  14  from each side placed on them, if those scales tip in favor

09:41:32  15  of the party who has the burden of proof, then they've met

09:41:36  16  the preponderance of the evidence standard, even if those

09:41:39  17  scales tip ever so slightly.  Again, the greater weight and

09:41:45  18  degree of credible testimony, more probably true than not

09:41:48  19  true.

09:41:48  20      Now, this burden of proof, the preponderance of

09:41:55  21  the evidence, is not to be confused with any other burden

09:42:01  22  of proof.  I suspect you've all heard of a different burden

09:42:04  23  of proof called beyond a reasonable doubt.  That burden of

09:42:06  24  proof is the burden of proof applied in a criminal case.

09:42:09  25  It has no application in a civil case like this one.

```
09:42:11   1         You may also have heard of another burden of proof
09:42:15   2   called clear and convincing evidence.  This, too, has no
09:42:20   3   application in this case.
09:42:22   4         The only burden of proof that you will apply to
09:42:25   5   the evidence and the testimony presented during this trial
09:42:28   6   is the burden of proof that I've described to you and is
09:42:32   7   known as the preponderance of the evidence.
09:42:34   8         Now, I give you these instructions, ladies and
09:42:37   9   gentlemen, as I say, in case any of the lawyers in their
09:42:40  10   questioning ask you about your ability to fairly apply
09:42:44  11   that -- that standard to the evidence that will be
09:42:46  12   presented during the trial.
09:42:49  13         Now, before the lawyers address you, I'm going to
09:42:53  14   ask each of you to take a moment and stand and answer for
09:42:56  15   me the nine questions that you see on the screen and that
09:42:59  16   you have in laminated form in your hands.  And this is
09:43:03  17   where I get to find out about you, what I told you about
09:43:07  18   myself when I came out to begin today.
09:43:10  19         This is the way we're going to do it.  We're going
09:43:12  20   to do it one at a time.  We'll start with Panel Member
09:43:16  21   No. 1, and we'll go numerically through the entire panel.
09:43:19  22   When it is your turn, if you will stand -- and also, ladies
09:43:22  23   and gentlemen, we're going to use a handheld microphone
09:43:26  24   that the Court Security Officer will bring to you.  Please
09:43:28  25   wait until you get that handheld microphone, and then
```

09:43:32   1   please use it when you give your answers.

09:43:34   2          This is a big courtroom.  There are a lot of

09:43:36   3   people here.  It's important that everyone's answers are

09:43:39   4   heard.

09:43:39   5          Also, after you've answered these questions, as

09:43:43   6   the lawyers continue with their questioning, you may get

09:43:46   7   individual questions posed to you by one or more of the

09:43:49   8   lawyers for either party.  If you get a specific question

09:43:53   9   posed to you that you're going to answer, let's do it in

09:43:56  10   exactly the same way.

09:43:57  11          Please stand before you give your answer, wait

09:44:00  12   until the Court Security Officer brings you the handheld

09:44:03  13   microphone, and then using that handheld microphone, answer

09:44:06  14   the question that's asked.  We'll do it that way in both

09:44:10  15   instances.

09:44:11  16          So with that, we'll begin with Panel Member No. 1,

09:44:15  17   Ms. Hutto.  If you'll give us your answers to those nine

09:44:18  18   questions that are before you.

09:44:20  19          JUROR HUTTO:  My name is it Karen Hutto.  I live

09:44:30  20   in Longview.  I have two sons.  My place of employment is

09:44:34  21   Dr. William Rotzler.  I'm an officer manager.

09:44:38  22          THE COURT:  Ma'am, can you hold that microphone a

09:44:39  23   little closer?

09:44:40  24          JUROR HUTTO:  I've worked there for --

09:44:42  25          THE COURT:  Thank you.

09:44:43  1          JUROR HUTTO:  -- probably 13, 14 years.  I

09:44:47  2  graduated high school.

09:44:47  3          My spouse's name is John.  His place of employment

09:44:50  4  was in our business for 20 years and Jennings Scrap &

09:44:56  5  Salvage for 30 years before that.  He is now retired.

09:45:03  6          And I've not been on a jury before.

09:45:04  7          THE COURT:  Okay.  If you'll hand the microphone

09:45:07  8  to Panel Member No. 2.

09:45:08  9          Ms. Hammond, if you'll give us your answers,

09:45:11  10  please?

09:45:11  11          JUROR HAMMOND:  My name is Andrea Hammond.  I live

09:45:14  12  in Gilmer.  I have two adult boys.  Place of employment is

09:45:18  13  Benefit Risk Management, and I process medical claims.

09:45:22  14  Been there for five years.  I have some college.

09:45:25  15          Spouse is David Hammond.  Place of employment is a

09:45:29  16  peace of officer for the State of California.  Been

09:45:31  17  there -- was there for 30 years.

09:45:33  18          And I've never served.

09:45:34  19          THE COURT:  All right.  Thank you.

09:45:35  20          Next is Panel Member No. 3, Mr. Coleman.

09:45:39  21          JUROR COLEMAN:  My name is Johnny Coleman.  I live

09:45:41  22  in Ore City, Texas.  I have three sons.  One is in

09:45:47  23  elementary school.  I work for Ore City Independent School

09:45:49  24  District.  I'm an agriculture teacher.  I've been there 26

09:45:50  25  years.  I graduated from SFA in Nacogdoches.

09:45:54   1              My wife's name is Sherry.  She is the office

09:45:58   2     manager for Ore City Machine Shop, and she's been there

09:46:02   3     about 28 years.

09:46:03   4              I did serve on a grand jury in Upshur County 15 or

09:46:08   5     20 years ago.

09:46:08   6              And I'm the minster at Ore City Church of Christ.

09:46:12   7     I've been there 35 years.

09:46:13   8              THE COURT:  That's your only jury service, the

09:46:15   9     grand jury?

09:46:16  10              JUROR COLEMAN:  Yes, sir.

09:46:16  11              THE COURT:  Thank you.

09:46:17  12              All right.  Next is No. 4, Mr. Parras.

09:46:20  13              JUROR PARRAS:  My name is Santiago Parras.  I live

09:46:24  14     in Ore City.  I have two daughters.  I'm retired.  I used

09:46:29  15     to work for a pipeline company, Valero, and I worked for

09:46:38  16     about 30 years there.  High school.

09:46:42  17              My -- Nanette is my spouse's name.  She works at

09:46:48  18     the ER at Good Shepherd.  She's been there for 11 years.

09:46:53  19              And I never served.

09:46:56  20              THE COURT:  What kind of work for Valero did you

09:46:59  21     do, sir?

09:47:01  22              JUROR PARRAS:  Gas measurement -- gas measurement.

09:47:04  23              THE COURT:  Thank you.

09:47:04  24              All right.  Next is Panel Member No. 5, Mr. Laird.

09:47:07  25              JUROR LAIRD:  My name is Kyle Laird.  I live in

09:47:09  1   Hallsville.  I've got three little boys.  I work for S & B

09:47:16  2   Engineering.  I've been there for -- I guess since July.

09:47:19  3   So prior to that, I was with Flint Hills Resources for

09:47:22  4   about seven years.  I have a Bachelor of Science in

09:47:25  5   electrical engineering technology from Texas A&M.

09:47:28  6          My spouses's name is Kay Lynn.  She's a

09:47:29  7   stay-at-home mom.  She's been a stay-at-home mom for about

09:47:33  8   12 years.

09:47:33  9          And I have never served on a jury.

09:47:35  10         THE COURT:  All right, sir.  Thank you.

09:47:38  11         No. 6, Ms. Martin.

09:47:39  12         JUROR MARTIN:  My name is Dawn Martin.  I live out

09:47:42  13  in Diana, Texas.  I have no children.  I am the executive

09:47:47  14  director for Windridge Therapy Equestrian Center, a

09:47:52  15  non-profit organization.  I have technical training for my

09:47:54  16  job in that realm.  I have been at Windridge for 30 years.

09:47:58  17         My spouse's name is David Martin.  He is a

09:48:01  18  postmaster for the United States Postal Service.  He has

09:48:04  19  been there about 21 years.

09:48:07  20         And I served on a civil case in Upshur County.

09:48:13  21         THE COURT:  How long ago was that?

09:48:15  22         JUROR MARTIN:  10 years ago.

09:48:17  23         THE COURT:  And what about your educational

09:48:18  24  background?

09:48:18  25         JUROR MARTIN:  Just high school, technical

| | | |
|---|---|---|
| 09:48:22 | 1 | training for my job. |
| 09:48:22 | 2 | THE COURT:  Thank you, ma'am. |
| 09:48:23 | 3 | Next is No. 7, Mr. Cothren. |
| 09:48:28 | 4 | JUROR COTHREN:  Good morning, Judge.  My name is |
| 09:48:29 | 5 | Paul Cothren.  I'm from Atlanta, Texas.  I have one son. |
| 09:48:35 | 6 | And I am currently the Cass County Commissioner for |
| 09:48:39 | 7 | Precinct 33.  I'm in my 19th year of service.  My |
| 09:48:45 | 8 | educational background is high school. |
| 09:48:46 | 9 | My spouse's name is Loretta.  She works in the |
| 09:48:50 | 10 | Bloomburg ISD school system.  She works in the computer |
| 09:48:55 | 11 | lab, and she's been there for 12, 15 years in the school |
| 09:48:59 | 12 | system; probably eight years at Bloomburg.  Started in |
| 09:49:04 | 13 | Queen City, Texas. |
| 09:49:09 | 14 | My prior jury service, I was seated, but we did |
| 09:49:12 | 15 | not -- they deliberated out of court, however that happens, |
| 09:49:15 | 16 | between the lawyers.  Once they seated the jury, then it -- |
| 09:49:18 | 17 | they came in and dismissed us. |
| 09:49:20 | 18 | THE COURT:  All right, sir.  Thank you very much. |
| 09:49:23 | 19 | We'll next go to Panel Member No. 8. |
| 09:49:29 | 20 | JUROR HRELJA:  I'm Angie Hrelja from Lone Star, |
| 09:49:35 | 21 | Texas.  I have three girls.  I work at Gilmer ISD as an |
| 09:49:39 | 22 | inclusion teacher.  Been there for 11 years. |
| 09:49:43 | 23 | My spouse is John Hrelja.  He works at Intellect. |
| 09:49:48 | 24 | He's been there for nine years. |
| 09:49:50 | 25 | And I've never served on a jury. |

09:49:52  1            THE COURT:  All right.  Thank you.

09:49:53  2            Next is No. 9, Ms. Carpenter.

09:49:55  3            JUROR CARPENTER:  My name is Vanessa, and I live

09:50:00  4     in Gilmer.

09:50:00  5            THE COURT:  Ms. Carpenter, hold that microphone

09:50:02  6     closer, please.

09:50:03  7            JUROR CARPENTER:  I have three grown children.

09:50:08  8     I'm a stay-at-home -- I baby-sit my granddaughter.

09:50:12  9            THE COURT:  Okay.

09:50:12  10           JUROR CARPENTER:  And I've been doing that for the

09:50:15  11    year that she's been here.  I've been to high school and

09:50:18  12    some college.

09:50:19  13           My spouse's name is Floyd.  And he works for Holt

09:50:26  14    Caterpillar.  He's been there about 41 years.

09:50:30  15           And I served on a civil case here.

09:50:34  16           THE COURT:  In this Court?

09:50:35  17           JUROR CARPENTER:  Yes.

09:50:35  18           THE COURT:  How long ago was that?

09:50:35  19           JUROR CARPENTER:  My daughter graduated in 2010,

09:50:37  20    so it was before that.

09:50:38  21           THE COURT:  Over 10 years ago?

09:50:39  22           JUROR CARPENTER:  Yeah.

09:50:40  23           THE COURT:  Thank you, ma'am.

09:50:40  24           No. 10 is next, Mr. Howard.

09:50:45  25           JUROR HOWARD:  My name is Paul Howard.  We have --

09:50:49  1  between me and my wife, we have three grown sons.  And the

09:50:54  2  place of employment was at Red River Army Depot, which I

09:50:58  3  retired.  And the type of work I did --

09:51:01  4        THE COURT:  Hold the microphone a little closer,

09:51:03  5  Mr. Howard.

09:51:03  6        JUROR HOWARD:  Okay.  I'm sorry.  The type of work

09:51:07  7  I did was missile certification.  I worked there for 16

09:51:13  8  years on missiles, but my prior education was high school

09:51:17  9  and my training in electronics was through the Army.

09:51:26 10        My -- my wife's name is Ana.  She works at Waskom

09:51:32 11  school district as a special education aide.  And I'm not

09:51:41 12  really sure how long she worked there.  She was working

09:51:43 13  there when we got married.

09:51:46 14        Prior service -- prior service -- jury service, I

09:51:50 15  had a civil -- no, I had both civil and criminal.  In the

09:51:56 16  civil case, I told the Judge I already made up my mind what

09:52:01 17  was going on --

09:52:02 18        THE COURT:  Where -- where was that civil case

09:52:03 19  tried?

09:52:04 20        JUROR HOWARD:  In Texarkana.

09:52:05 21        THE COURT:  All right.  And how long ago was that

09:52:07 22  civil case?  Best guess.

09:52:11 23        JUROR HOWARD:  At least five years.

09:52:13 24        THE COURT:  Okay.

09:52:13 25        JUROR HOWARD:  And criminal case, I had there in

| | | |
|---|---|---|
| 09:52:17 | 1 | New Boston where they was judging a clerk of a judge |
| 09:52:24 | 2 | stealing money. |
| 09:52:24 | 3 | THE COURT:  All right, sir. |
| 09:52:25 | 4 | JUROR HOWARD:  After two days, she changed her |
| 09:52:29 | 5 | mind and pled guilty, so they dismissed us. |
| 09:52:32 | 6 | THE COURT:  All right.  Thank you very much. |
| 09:52:34 | 7 | Next is Panel Member No. 11, Ms. Smith. |
| 09:52:38 | 8 | JUROR SMITH:  My name is Terisa Smith.  I live |
| 09:52:41 | 9 | outside of Gladewater, which is a Gilmer address.  I don't |
| 09:52:41 | 10 | have any children, just two Basset Hounds.  Those are my |
| 09:52:45 | 11 | children.  I retired from Kroger -- 32 years there.  I only |
| 09:52:48 | 12 | have high school education. |
| 09:52:50 | 13 | My spouse's name is Darrell Smith.  He retired |
| 09:52:54 | 14 | also from ENS; 25 years he was there. |
| 09:52:57 | 15 | And I have not served on a jury. |
| 09:52:58 | 16 | THE COURT:  What kind of work did you do for |
| 09:53:01 | 17 | Kroger? |
| 09:53:01 | 18 | JUROR SMITH:  Store manager. |
| 09:53:02 | 19 | THE COURT:  Thank you, ma'am. |
| 09:53:03 | 20 | Next is Panel Member No. 12, Ms. Faulkner. |
| 09:53:06 | 21 | JUROR FAULKNER:  Beverly Faulkner.  I have no |
| 09:53:08 | 22 | children.  I retired from banking of 30 years and some real |
| 09:53:14 | 23 | estate.  I worked, as I said, in banking 30 years.  My |
| 09:53:19 | 24 | education, high school graduate with some college. |
| 09:53:22 | 25 | My husband's name is Irving Heard.  He's a retired |

09:53:27  1   realtor.  He was in real estate for 30 years.

09:53:29  2        And I've had no prior jury service.

09:53:32  3        THE COURT:  Thank you.  Next is Panel Member No.

09:53:34  4   13, Ms. Blackmon.

09:53:36  5        JUROR BLACKMON:  My name is Karen Blackmon.  I

09:53:41  6   live in Gladewater.  I have six children.  I own a day care

09:53:46  7   center in Gladewater and is a licensed center.  And I also

09:53:50  8   have a part-time job working for -- as a retail

09:53:50  9   merchandiser for Hallmark Cards.  I've had my day care

09:53:54  10  center for 24 years.  I've worked for Hallmark for a month.

09:53:58  11  My educational background is high school and an associate's

09:54:01  12  in early childhood.

09:54:02  13       My spouse's name is Ricky Blackmon.  He is working

09:54:06  14  for Texas Eastman, Eastman Chemical Company.  He is an

09:54:12  15  operations supervisor for research and development.  He's

09:54:15  16  been there 26 years.

09:54:18  17       I have prior jury service in a civil case in Gregg

09:54:22  18  County in the mid- to late '80s.

09:54:24  19       THE COURT:  All right.  Thank you very much.

09:54:25  20       Ms. McCain is next, No. 14.

09:54:29  21       JUROR MCCAIN:  My name is Debbie McCain.  I live

09:54:31  22  in Jefferson, Texas.  No children.  Place of employment

09:54:35  23  Longview Cancer Center 31 years.  Associate's degree.

09:54:39  24       No spouse.  I'm a widow.

09:54:40  25       And I've served on civil and criminal case.

09:54:43  1          THE COURT:  You have served on criminal and civil
09:54:45  2   cases?
09:54:46  3          JUROR MCCAIN:  Yes.
09:54:47  4          THE COURT:  How long ago and where were those?
09:54:48  5          JUROR MCCAIN:  Marion County, probably the last
09:54:51  6   was civil, maybe three years.  I believe the criminal case
09:54:57  7   was here, probably about 20 years ago.
09:55:00  8          THE COURT:  Thank you very much, ma'am.
09:55:01  9          All right.  I'll ask the Court Security Officer to
09:55:05  10  take the handheld mic around to Panel Member No. 15, and
09:55:09  11  we'll next here from Mr. Holladay.
09:55:12  12          JUROR HOLLADAY:  I'm Lee Holladay.  I have two
09:55:15  13  children in high school.  I live in Hallsville, Texas.  I
09:55:21  14  work for Christus Good Shepherd Medical Center.  I'm a
09:55:25  15  certified registered nurse anesthetist there.  I've given
09:55:29  16  anesthesia there for 20 years.  I've been -- practice
09:55:32  17  nurse.
09:55:32  18          My wife, Sherry, is a school teacher.  She's
09:55:36  19  worked there for 12 years in Hallsville.
09:55:40  20          Never served on a jury.
09:55:42  21          THE COURT:  All right, sir.  Thank you very much.
09:55:44  22          Next is Panel Member No. 16, Ms. Perkins.
09:55:48  23          JUROR PERKINS:  My name is Salien Perkins.  I live
09:55:53  24  in Hallsville.  I have three children.  I work at Bed Bath
09:55:56  25  & Beyond.  I'm assistant manager there.  I've been there

09:55:59  1    for seven years.  I have a high school education.

09:56:02  2          I'm not married.

09:56:04  3          And I've had no civil or criminal cases.

09:56:07  4          THE COURT:  And the store for Bed Bath & Beyond

09:56:09  5    that you work at is located where, ma'am?

09:56:12  6          JUROR PERKINS:  Longview, Texas.

09:56:14  7          THE COURT:  Thank you.

09:56:15  8          No. 17 is next, Mr. Byrd.

09:56:17  9          JUROR BYRD:  My name is Michael Byrd.  I'm married

09:56:19  10   to Christi Byrd.  We have three children.  I work at U.S.

09:56:23  11   Steel.  I'm a manager of the machine shop and weld shop.

09:56:28  12   I've worked there since 2006.  I graduated from high school

09:56:33  13   from Daingerfield and have a certificate in mechanical -- I

09:56:39  14   mean, computer-aided manufacturing from TSTC here in

09:56:42  15   Marshall.

09:56:43  16          My wife works at Bobbin Insurance.  She's an

09:56:49  17   account manager for the commercial side, and she's worked

09:56:53  18   there for about five years.

09:56:55  19          And I've never served on a jury.

09:56:56  20          THE COURT:  Thank you, sir.  Next is No. 18,

09:56:59  21   Mr. Tigert.

09:57:00  22          JUROR TIGERT:  My name is Richard Tigert.  I live

09:57:02  23   in Daingerfield, Texas.  I've got one child, one

09:57:06  24   12-year-old girl.  I work for the Daingerfield-Lone Star

09:57:09  25   ISD maintenance.  I work on anywhere from plumbing,

09:57:13  1  electrical, HVAC.  I've worked there six years.  High
09:57:18  2  school education.
09:57:18  3       My spouse's name is Staci Tigert.  She's a
09:57:24  4  physical therapist assistant.  And she's done that for the
09:57:28  5  past 15, 20 years.
09:57:31  6       Prior jury was a criminal case here about 10 years
09:57:33  7  ago.
09:57:34  8       THE COURT:  All right, sir.  Thank you very much.
09:57:38  9       Next take the microphone around to Panel Member
09:57:41  10  No. 19, Mr. Harris.
09:57:43  11       JUROR HARRIS:  My name is Carl Harris.  I'm from
09:57:47  12  Elysian Fields, Texas.  I have one daughter.  I work for
09:57:51  13  Enterprise Products, and that's a pipeline company.  I'm in
09:57:53  14  gas measurement.  I've been there 20 years.  I have a
09:57:55  15  Bachelor of Science in computer science.
09:57:58  16       My wife's name is Terry, and she is a librarian at
09:58:01  17  the middle school at Elysian Fields School District.  And
09:58:05  18  she's worked there 15 years.
09:58:08  19       And I've been on a civil here in Marshall probably
09:58:11  20  five years ago.
09:58:12  21       THE COURT:  Was that in state court or here?
09:58:16  22       JUROR HARRIS:  It was County Court at Law.
09:58:17  23       THE COURT:  County Court at Law.  Thank you, sir.
09:58:20  24       Next is No. 20, Mr. Blaylock.
09:58:23  25       JUROR BLAYLOCK:  Good morning, Judge.

```
09:58:25   1              THE COURT:  Good morning.
09:58:26   2              JUROR BLAYLOCK:  My name is Louis Blaylock.  I
09:58:31   3    live in Atlanta, Texas.  I have three grown daughters, and
09:58:34   4    my place of employment was Red River Army Depot.  I was an
09:58:39   5    integrated electronic technician, and I was there for 43
09:58:46   6    years.  And I have a high school education and the
09:58:51   7    military.
09:58:52   8              And I'm divorced.
09:58:54   9              And I have served on -- I have served on a civil
09:59:01  10    case, and it was in Linden, Texas about maybe seven years
09:59:04  11    ago.
09:59:04  12              THE COURT:  Thank you, sir.
09:59:05  13              If you'll pass the microphone to our next panel
09:59:09  14    member, please, Ms. Barnard.
09:59:12  15              JUROR BARNARD:  My name is Denise Barnard.  I live
09:59:16  16    in Gilmer, Texas.  I have two grown children. I'm a store
09:59:20  17    manager of Tuesday Morning in Longview.  Worked there for
09:59:25  18    about 10 years.  I have some college.
09:59:27  19              My spouse's name is Jimmy.  He is presently
09:59:30  20    unemployed.
09:59:32  21              And I've never served on a jury.
09:59:37  22              THE COURT:  What is Tuesday Morning in Longview?
09:59:40  23    What kind of store is that?
09:59:40  24              JUROR BARNARD:  It's a close-out store, kind of
09:59:42  25    like TJ Maxx.
```

```
09:59:43   1              THE COURT:  Okay.  Thank you, ma'am.
09:59:45   2              Next is Panel Member No. 22, Mr. Davis.
09:59:51   3              JUROR DAVIS:  Good morning, my name is Keith
09:59:55   4    Davis.  I live in Douglasville, Texas.  I have three
10:00:00   5    children.  I'm a self-employed owner-operator in the
10:00:02   6    logging industry.  I've done that for nine and a half years
10:00:06   7    now.  Unfortunately, I'm a high school drop-out.
10:00:10   8              My wife's name is Susan.  She is currently
10:00:18   9    retired, taking care of our only child we have living at
10:00:22  10    home.
10:00:28  11              And I have no prior jury service.
10:00:29  12              THE COURT:  All right, sir.  Thank you, Mr. Davis.
10:00:31  13              Next is 23, Mr. Henson.
10:00:34  14              JUROR HENSON:  Good morning.  My name is Michael
10:00:36  15    Henson.  I live in Jefferson, Texas.  I have three grown
10:00:40  16    children.  I work for Smithfield Direct LLC.  I've been
10:00:46  17    there 28 and a half years.  I have a high school diploma.
10:00:51  18    I have a diesel mechanics class I took at Kilgore College.
10:00:57  19              My wife's name is Sarah.  She used to work for
10:01:00  20    Jordan Healthcare before she retired.  She was there for,
10:01:04  21    oh, 8 or 10 years.
10:01:05  22              And I served on civil and criminal cases in Marion
10:01:09  23    County.
10:01:09  24              THE COURT:  How long ago, sir?
10:01:11  25              JUROR HENSON:  It's been five, six years.
```

| | | |
|---|---|---|
| 10:01:12 | 1 | THE COURT:  Thank you very much. |
| 10:01:14 | 2 | And we'll next pass the microphone to Panel Member |
| 10:01:18 | 3 | No. 24, Ms. Kelley. |
| 10:01:20 | 4 | JUROR KELLEY:  My name is Toni Kelley.  I have |
| 10:01:24 | 5 | three children who are grown.  My place -- I'm a retired |
| 10:01:30 | 6 | nurse.  I worked as a nurse for all my life practically.  I |
| 10:01:41 | 7 | went to -- |
| 10:01:42 | 8 | THE COURT:  Did you work in a hospital, did you |
| 10:01:44 | 9 | work at a clinic, did you work at a doctor's office -- |
| 10:01:48 | 10 | JUROR KELLEY:  All those places. |
| 10:01:49 | 11 | THE COURT:  Okay. |
| 10:01:49 | 12 | JUROR KELLEY:  All those places. |
| 10:01:49 | 13 | THE COURT:  Okay. |
| 10:01:49 | 14 | JUROR KELLEY:  I served in hospitals, schools. |
| 10:01:52 | 15 | The last place I worked was for a medical massage |
| 10:01:57 | 16 | therapist, and I was just an assistant. |
| 10:01:58 | 17 | THE COURT:  Okay.  Thank you. |
| 10:02:00 | 18 | JUROR KELLEY:  I went to a vocational school. |
| 10:02:04 | 19 | My spouse's name is Phillip Kelley.  He work -- |
| 10:02:09 | 20 | he's retired from AEP, American Electric Power.  And he |
| 10:02:15 | 21 | worked there for 30 years. |
| 10:02:18 | 22 | And I worked -- I was on a civil case in Morris |
| 10:02:24 | 23 | County. |
| 10:02:24 | 24 | THE COURT:  How long ago, ma'am? |
| 10:02:26 | 25 | JUROR KELLEY:  Probably 20 years. |

| | | |
|---|---|---|
| 10:02:28 | 1 | THE COURT:  Okay.  Thank you very much. |
| 10:02:28 | 2 | Next is No. 25, Mr. Traylor. |
| 10:02:32 | 3 | JUROR TRAYLOR:  My name is Todd Traylor.  I have |
| 10:02:37 | 4 | three grown boys.  I'm a fourth generation farmer, which |
| 10:02:41 | 5 | I've had -- that's what I've always done.  I've got a high |
| 10:02:44 | 6 | school diploma. |
| 10:02:44 | 7 | My wife's name is Tara.  She worked at |
| 10:02:49 | 8 | St. Michael's until three years ago.  She was involved in |
| 10:02:51 | 9 | an accident.  She's at home now.  Let's see, she had worked |
| 10:02:55 | 10 | there like 17, 18 years. |
| 10:02:56 | 11 | And I've had no prior jury service. |
| 10:02:58 | 12 | THE COURT:  All right, sir.  Thank you very much. |
| 10:02:59 | 13 | Next is Ms. Haines, No. 26. |
| 10:03:01 | 14 | JUROR HAINES:  Excuse me, I'm a little froggy, so |
| 10:03:05 | 15 | excuse my voice.  My name is Kimberly Haines.  I live in |
| 10:03:10 | 16 | Longview, Texas.  I have a six and eight-year-old, as well |
| 10:03:14 | 17 | as 25 and 26-year-old stepsons. |
| 10:03:16 | 18 | Place of employment I'm a small business owner. |
| 10:03:19 | 19 | I'm an artist.  I run two different art businesses, |
| 10:03:22 | 20 | paintings, drawings, as well as I do digital designs, |
| 10:03:26 | 21 | marketing materials for other small businesses. |
| 10:03:29 | 22 | Prior to that, I worked in staffing doing contract |
| 10:03:32 | 23 | work for Caterpillar where I worked in Illinois.  And then |
| 10:03:36 | 24 | before that I worked in banking for 10 years. |
| 10:03:39 | 25 | My educational background, I have my master's in |

| | | |
|---|---|---|
| 10:03:43 | 1 | business administration.  My specific areas of study was |
| 10:03:47 | 2 | risk management and financial institution management. |
| 10:03:50 | 3 | My spouse's name is Scott Haines.  He is senior |
| 10:03:54 | 4 | vice president at East Texas Professional Credit Union in |
| 10:03:57 | 5 | Longview.  He has been there for seven years.  That's why |
| 10:04:01 | 6 | we moved from Texas to Illinois.  Prior to that he worked |
| 10:04:05 | 7 | for a credit union in Illinois for 22 years. |
| 10:04:09 | 8 | And this is my first time serving on a jury. |
| 10:04:11 | 9 | THE COURT:  Thank you very much, ma'am. |
| 10:04:13 | 10 | Next is No. 27, Mr. Marks. |
| 10:04:17 | 11 | JUROR MARKS:  My name is Carl Marks.  I live in |
| 10:04:19 | 12 | Waskom, Texas.  I have seven children.  I work at General |
| 10:04:27 | 13 | Cable as a line operator.  I worked there for 33 years.  I |
| 10:04:34 | 14 | graduated Marshall High School and attended Panola College. |
| 10:04:37 | 15 | My spouse's name is Ruby.  She works for Texas |
| 10:04:41 | 16 | Department of Criminal Justice, region supervisor.  She had |
| 10:04:47 | 17 | worked there for 14 years. |
| 10:04:48 | 18 | And I served on three criminal case -- cases. |
| 10:04:52 | 19 | THE COURT:  And where were those, sir? |
| 10:04:54 | 20 | JUROR MARKS:  Harrison County. |
| 10:04:55 | 21 | THE COURT:  How long ago? |
| 10:04:57 | 22 | JUROR MARKS:  Last one was about 10 years ago. |
| 10:04:59 | 23 | THE COURT:  All right.  Thank you, Mr. Marks. |
| 10:05:00 | 24 | Next is No. 28, Mr. Callison. |
| 10:05:03 | 25 | JUROR CALLISON:  My name is Stuart Callison.  I |

10:05:07  1   live in Bloomburg, Texas.  I have three children.  I work

10:05:10  2   for the Texas Department of Transportation Atlanta District

10:05:14  3   as an environmental specialist.  I oversee environmental

10:05:18  4   studies for highway and bridge projects.  I worked there

10:05:22  5   for 25 years.  I have a bachelor's degree in environmental

10:05:23  6   geology from Stephen F Austin.

10:05:25  7           My spouse's -- my wife's name is Renee.  She's a

10:05:29  8   teacher at Texarkana ISD.  She has about three years there.

10:05:32  9   Prior to that she worked 22 years at Queen City ISD.

10:05:36  10          And I have not served on a -- on a jury.

10:05:38  11          THE COURT:  All right, sir.  Thank you very much.

10:05:39  12          If you'll pass that microphone back to our Court

10:05:44  13  Security Officer.

10:05:44  14          Thank you, ladies and gentlemen.

10:05:46  15          Now, I need to say a couple additional things to

10:05:50  16  you before I turn the questioning over to the lawyers in

10:05:54  17  the case.

10:05:54  18          The jurors that are actually selected to serve in

10:05:58  19  this case will serve in the role as the judges of the

10:06:02  20  facts.  And the jury selected will make the sole

10:06:05  21  determination about what the facts are in this case.

10:06:10  22          Now, my job, as the Judge, is to rule on questions

10:06:13  23  of law, evidence, and procedure, to maintain the decorum of

10:06:17  24  the courtroom, and to oversee the efficient flow of the

10:06:20  25  evidence during the trial.

| | | |
|---|---|---|
| 10:06:21 | 1 | Also, I want to say a couple additional things to |
| 10:06:26 | 2 | you about our judicial system that I hope will put things |
| 10:06:29 | 3 | in a proper perspective for you. |
| 10:06:31 | 4 | In any jury trial, besides the parties themselves, |
| 10:06:37 | 5 | there are always three participants; the jury, the judge, |
| 10:06:42 | 6 | and the lawyers. |
| 10:06:43 | 7 | With regard to the lawyers, I think it's important |
| 10:06:50 | 8 | for each of you to understand that our judicial system is |
| 10:06:52 | 9 | an adversary system, which simply means that during the |
| 10:06:55 | 10 | course of the trial, each of the parties through their |
| 10:06:57 | 11 | counsel will seek to present their respective cases to the |
| 10:07:02 | 12 | jury in the best -- the very best light possible. |
| 10:07:06 | 13 | Now, it's no surprise -- should be no surprise to |
| 10:07:10 | 14 | any of you that lawyers are sometimes criticized in the |
| 10:07:12 | 15 | media and in the public, but the Court's observed that a |
| 10:07:16 | 16 | fair amount of this criticism results from a basic |
| 10:07:19 | 17 | misunderstanding about our adversary system in which the |
| 10:07:24 | 18 | lawyers act as advocates for the competing parties. |
| 10:07:28 | 19 | As an advocate, a lawyer is ethically and legally |
| 10:07:32 | 20 | obligated to zealously assert his or her client's position |
| 10:07:37 | 21 | under the rules of our adversary system.  And by presenting |
| 10:07:41 | 22 | the best case possible on behalf of their clients, the |
| 10:07:45 | 23 | lawyers hopefully will enable the jury to better weigh the |
| 10:07:48 | 24 | relevant evidence, to determine the truth, and arrive at a |
| 10:07:53 | 25 | just verdict based on that evidence. |

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 10:07:55 | 1  | This adversary system of justice has served our          |
| 10:07:59 | 2  | nation well and has been in place since the very beginning, |
| 10:08:03 | 3  | over 200 years, and America's lawyers have been, are now, |
| 10:08:07 | 4  | and will continue to be an indispensable part of our     |
| 10:08:11 | 5  | judicial system.                                         |
| 10:08:11 | 6  | So as we go forward, throughout this trial, even         |
| 10:08:15 | 7  | though there might be times when I would frown or growl at |
| 10:08:20 | 8  | the lawyers, it's simply because I am trying to make sure |
| 10:08:24 | 9  | that their advocacy doesn't get outside the boundaries of |
| 10:08:30 | 10 | our adversary system and our Rules of Procedure.         |
| 10:08:31 | 11 | So keep in mind, ladies and gentlemen, they are          |
| 10:08:35 | 12 | just doing their jobs, and I think it's important for you |
| 10:08:37 | 13 | to be aware of that as we go forward.                    |
| 10:08:41 | 14 | Also, ladies and gentlemen, throughout the course        |
| 10:08:43 | 15 | of the trial, I'm going to do my very best to make sure  |
| 10:08:47 | 16 | that the members of the jury have no idea about what I   |
| 10:08:49 | 17 | think about the evidence that's presented during the trial, |
| 10:08:53 | 18 | because evaluating the evidence and determining the facts |
| 10:08:57 | 19 | in this case from that evidence is the job of the jury.  It |
| 10:09:00 | 20 | is not my job during this trial.                         |
| 10:09:02 | 21 | So those of you that are selected to serve on this       |
| 10:09:06 | 22 | jury should not take any expressions or comments that you |
| 10:09:11 | 23 | see or hear or think you see or hear as coming from me as |
| 10:09:18 | 24 | something to consider in deciding what the ultimate facts |
| 10:09:21 | 25 | are in this case.                                        |

| | | |
|---|---|---|
| 10:09:21 | 1 | With that, I will now allow the lawyers to address |
| 10:09:24 | 2 | the panel for their respective clients. |
| 10:09:26 | 3 | We'll begin with the Plaintiff. |
| 10:09:28 | 4 | Mr. Bunt, you may address the panel on behalf of |
| 10:09:31 | 5 | the Plaintiff. |
| 10:09:31 | 6 | MR. BUNT:  Thank you, Your Honor. |
| 10:09:32 | 7 | THE COURT:  Would you like a warning on your time? |
| 10:09:34 | 8 | MR. BUNT:  Yes, Your Honor.  Could I have notice |
| 10:09:36 | 9 | when I have five minutes remaining? |
| 10:09:37 | 10 | THE COURT:  Yes, you can.  You may proceed. |
| 10:09:39 | 11 | MR. BUNT:  Thank you, Your Honor. |
| 10:09:40 | 12 | Good morning again, ladies and gentlemen.  As I |
| 10:09:42 | 13 | mentioned earlier, my name is Chris Bunt.  It's my honor to |
| 10:09:46 | 14 | be here today representing United Services Automobile |
| 10:09:51 | 15 | Association, who I'm just going to refer to as USAA from |
| 10:09:54 | 16 | here on out. |
| 10:09:55 | 17 | I know a little bit about each of you from the |
| 10:09:57 | 18 | information you've provided and from the questionnaires, |
| 10:10:00 | 19 | and I really appreciate that.  Let me tell you the same |
| 10:10:03 | 20 | about me. |
| 10:10:03 | 21 | I grew up in Hallsville.  I've been practicing law |
| 10:10:06 | 22 | in Tyler for the last 26 years.  I'm married.  My wife's |
| 10:10:12 | 23 | name is Celia.  She's the office manager at our firm.  We |
| 10:10:15 | 24 | have two kids, a daughter 17 and a son 13.  And I've been |
| 10:10:20 | 25 | sitting where y'all have on many occasions, but I've not |

10:10:23  1   actually been selected for a jury yet.

10:10:25  2          So His Honor is going to give us an opportunity to

10:10:29  3   discuss the case in more detail a little later on today,

10:10:32  4   but I want to give you just a high-level overview of what

10:10:35  5   this case is about.

10:10:36  6          So this case concerns two U.S. patents that are

10:10:41  7   owned by my client, USAA.  And these patents relate to

10:10:46  8   depositing checks using your smartphone or a mobile device

10:10:50  9   instead of going to the bank using a teller or an ATM.

10:10:55 10          And, specifically, the invention uses the

10:10:58 11   processor within the mobile device -- within the phone

10:11:02 12   itself, to automatically capture the check image at the

10:11:10 13   right quality to meet all the requirements for deposit.

10:11:12 14          Now, we allege that Wells Fargo is using our

10:11:14 15   patented technology in their own product.  And in patent

10:11:18 16   cases, this sort of trespassing is called infringement.

10:11:22 17   Wells Fargo denies that they are trespassing on our

10:11:25 18   property.

10:11:25 19          We contend that Wells Fargo has made profits and

10:11:32 20   saved costs and had other benefits as a result of using our

10:11:36 21   technology.

10:11:37 22          They deny that.  They deny that they're

10:11:39 23   trespassing on our property, but they say that if they are,

10:11:44 24   we owe -- they owe no more than 10 -- than $12 million.  We

10:11:50 25   contend that they owe $300 million to USAA.

| | | |
|---|---|---|
| 10:11:54 | 1 | Now, this part of the trial gives the lawyers a |
| 10:11:56 | 2 | chance to discuss with the jury any life experiences you |
| 10:12:00 | 3 | may have that might start you out leaning one direction or |
| 10:12:03 | 4 | the other.  And there's nothing wrong with having life |
| 10:12:08 | 5 | experiences that start you leaning.  We all lean one |
| 10:12:10 | 6 | direction or another on issues, but we just want to know |
| 10:12:13 | 7 | about those and see if that would affect your ability to be |
| 10:12:16 | 8 | able to sit on this jury. |
| 10:12:17 | 9 | So you heard this morning about -- from the patent |
| 10:12:21 | 10 | jury video about patents and how those are pieces of |
| 10:12:25 | 11 | property.  And you understand that when the Patent Office |
| 10:12:28 | 12 | issues a patent, it's like a deed that's being given to the |
| 10:12:31 | 13 | patent owner. |
| 10:12:32 | 14 | So I want to start with y'all.  How many in the |
| 10:12:35 | 15 | jury box -- how many land owners do we have, folks who own |
| 10:12:40 | 16 | a piece of property?  That's everybody. |
| 10:12:42 | 17 | Let me just start with Ms. Hutto, if you don't |
| 10:12:45 | 18 | mind, Juror No. 1. |
| 10:12:48 | 19 | I'm sorry. |
| 10:12:49 | 20 | Thank you, Ms. Hutto.  Let me ask you this:  If an |
| 10:12:52 | 21 | oil company -- oil and gas company were to come out and |
| 10:12:56 | 22 | drill a well on your property without your permission, |
| 10:12:58 | 23 | would you have any hesitation about going to court to |
| 10:13:02 | 24 | enforce your property rights and to get them off of your |
| 10:13:04 | 25 | property? |

| | | |
|---|---|---|
| 10:13:05 | 1 | JUROR HUTTO:  No. |
| 10:13:06 | 2 | MR. BUNT:  Okay.  Let me ask Mrs. Hammond, who's |
| 10:13:09 | 3 | sitting right next to you, the same question. |
| 10:13:13 | 4 | JUROR HAMMOND:  The answer would be no. |
| 10:13:15 | 5 | MR. BUNT:  Okay.  You'd have no qualms? |
| 10:13:16 | 6 | JUROR HAMMOND:  No. |
| 10:13:17 | 7 | MR. BUNT:  Is there anybody in the jury box who'd |
| 10:13:19 | 8 | have any issue about going to court -- who feels a little |
| 10:13:23 | 9 | hesitant about going to court to enforce their property |
| 10:13:27 | 10 | rights?  Can I see a show of hands if anybody feels that |
| 10:13:29 | 11 | way? |
| 10:13:30 | 12 | How about over here in the gallery?  Is there |
| 10:13:31 | 13 | anybody who feels like they'd have hesitations about going |
| 10:13:33 | 14 | to court to enforce their property rights? |
| 10:13:35 | 15 | Let me change up the question a little bit.  Is |
| 10:13:37 | 16 | there anybody who feels like intellectual property should |
| 10:13:42 | 17 | be treated dif -- like patents, should be treated |
| 10:13:45 | 18 | differently than, say, land-type property?  Anybody feel |
| 10:13:49 | 19 | like that in the jury box? |
| 10:13:50 | 20 | Let me just pick on Mr. Coleman, No. 3.  How do |
| 10:14:00 | 21 | you feel about that? |
| 10:14:01 | 22 | JUROR COLEMAN:  I feel like it would be the same. |
| 10:14:03 | 23 | MR. BUNT:  Okay.  Thank you, sir. |
| 10:14:04 | 24 | And, Mr. Parras, how do you feel about that? |
| 10:14:07 | 25 | JUROR PARRAS:  I feel the same. |

| | |
|---|---|
| 10:14:08 | 1 |

```
10:14:08   1            MR. BUNT:  Okay.  Thank you, sir.

10:14:09   2            Does anybody feel differently about that?

10:14:12   3            You're going to hear from a financial expert that

10:14:16   4   we're going to bring to you who's going to explain the

10:14:19   5   profits and cost savings and other benefits that Wells

10:14:23   6   Fargo has made using our property.  And as I've told you

10:14:26   7   before, we're going to be asking the jury to award $300

10:14:31   8   million.

10:14:32   9            So my question is, is there anybody on the panel

10:14:36  10   who feels like, you know what, no matter what the evidence

10:14:40  11   is, no matter whether you can prove infringement, there's

10:14:44  12   just no way you could ever see yourself writing down a

10:14:46  13   figure of $300 million?  Is there anybody who feels that

10:14:49  14   way in the jury box?

10:14:53  15            Let me just pick on somebody.  Mr. Laird, No. 5 --

10:14:57  16   Juror No. 5.  Do you feel like if there's evidence to

10:15:00  17   support a verdict of $300 million, you could award that?

10:15:04  18            JUROR LAIRD:  Yes, sir.

10:15:04  19            MR. BUNT:  Okay.  Ms. Martin, how about you?  You

10:15:08  20   feel the same way?

10:15:10  21            JUROR MARTIN:  Yes, sir.

10:15:11  22            MR. BUNT:  Is there anybody over on this side who

10:15:13  23   does not agree with that, who thinks in the back of their

10:15:15  24   head, you know what, you may have a great case, you may

10:15:18  25   prove up your damages, but there's just no way I could
```

| | | |
|---|---|---|
| 10:15:21 | 1 | award that much money?  Anybody feel that way? |
| 10:15:23 | 2 | Yes, ma'am, Ms. Perkins?  That's Juror No. 16.  Do |
| 10:15:30 | 3 | you have some qualms about that number? |
| 10:15:32 | 4 | JUROR PERKINS:  Yes, sir. |
| 10:15:33 | 5 | MR. BUNT:  Okay.  You'd feel like you have |
| 10:15:35 | 6 | difficulty awarding that number even if there was evidence |
| 10:15:37 | 7 | to support it? |
| 10:15:38 | 8 | JUROR PERKINS:  Yes, sir. |
| 10:15:39 | 9 | MR. BUNT:  Thank you, ma'am.  I appreciate your |
| 10:15:41 | 10 | candor about that. |
| 10:15:41 | 11 | Does anybody else feel that way, like Ms. Perkins? |
| 10:15:45 | 12 | Oh, we're getting some numbers up now.  Okay. |
| 10:15:48 | 13 | So let's go to Ms. Hrelja, Juror No. 8.  Yes, |
| 10:15:51 | 14 | ma'am, how do you feel about that? |
| 10:15:53 | 15 | JUROR HRELJA:  I just feel like that's an awful |
| 10:15:55 | 16 | lot of money to be awarded. |
| 10:15:57 | 17 | MR. BUNT:  And would you feel like you would have |
| 10:15:59 | 18 | difficulty awarding that much money even if there is |
| 10:16:02 | 19 | evidence to support it? |
| 10:16:05 | 20 | JUROR HRELJA:  Yes, sir, because I'm probably a |
| 10:16:08 | 21 | different kind of breed.  I just -- I think we should all |
| 10:16:11 | 22 | share.  So, you know, I wouldn't award it. |
| 10:16:13 | 23 | MR. BUNT:  Okay.  Thank you, ma'am.  I really |
| 10:16:16 | 24 | appreciate your candor. |
| 10:16:17 | 25 | Yes, was it Ms. Carpenter?  Did you feel the same |

10:16:20  1    way?

10:16:20  2             JUROR CARPENTER:  Yes.

10:16:21  3             MR. BUNT:  Okay.  How -- tell me more about that.

10:16:24  4             JUROR CARPENTER:  I just think that's a lot of

10:16:26  5    money.

10:16:26  6             MR. BUNT:  And you would have difficulty awarding

10:16:28  7    that much money no matter what the evidence was?

10:16:30  8             JUROR CARPENTER:  Yes.

10:16:31  9             MR. BUNT:  Okay.  Thank you, ma'am.  I do

10:16:33 10    appreciate your honesty.

10:16:34 11             Was there somebody else on this -- yes, ma'am,

10:16:38 12    Ms. Smith?

10:16:39 13             JUROR SMITH:  I believe it's an excessive amount.

10:16:42 14             MR. BUNT:  No matter what the evidence is, what

10:16:43 15    the savings, cost, profits, all that sort of stuff?

10:16:48 16             JUROR SMITH:  Yes, sir.

10:16:48 17             MR. BUNT:  Okay.  And you would have difficulty

10:16:50 18    awarding that sum regardless of what the evidence showed?

10:16:53 19             JUROR SMITH:  Yes, sir.

10:16:54 20             MR. BUNT:  Thank you, ma'am.  I appreciate that.

10:16:55 21             Well, let me ask this as a follow-on question.  As

10:17:00 22    His Honor told you -- oh, I apologize.  Thank you, sir.

10:17:03 23             Right there, too.  Yes, sir, Mr. Holladay?

10:17:06 24             JUROR HOLLADAY:  Yes, sir.  I -- I wouldn't

10:17:08 25    necessarily say no, but depending on the -- I guess the

10:17:12  1  relative scale of things, it may or may not be appropriate.

10:17:15  2  But just to say for that amount of money, I would

10:17:19  3  originally say no, but it would depend on the relative

10:17:22  4  scale.

10:17:22  5       MR. BUNT:  Okay.  Let me see if I can make sure

10:17:25  6  I'm clear on this.

10:17:26  7       You were saying that you -- it depends on the

10:17:31  8  evidence?

10:17:32  9       JUROR HOLLADAY:  Yes, sir, that's what I would --

10:17:33  10  I would say or the value of the company in assets and

10:17:38  11  things of that matter.

10:17:39  12       MR. BUNT:  And are you starting out thinking that

10:17:42  13  it would be difficult, though, to ever award $300 million

10:17:45  14  in a case?

10:17:46  15       JUROR HOLLADAY:  Yes, sir.

10:17:46  16       MR. BUNT:  Okay.  Thank you, sir.  I appreciate

10:17:48  17  that.

10:17:48  18       We have two more.  Ms. -- Ms. Kelley.

10:17:55  19       JUROR KELLEY:  Yes.

10:17:56  20       MR. BUNT:  Yes, ma'am.  Can you elaborate on that?

10:17:59  21       JUROR KELLEY:  I just feel like that is an

10:18:01  22  excessive amount.

10:18:02  23       MR. BUNT:  Okay.  And you would have difficulty

10:18:04  24  awarding that sum of money regardless of what the evidence

10:18:06  25  was?

10:18:07  1          JUROR KELLEY:  I -- I really think that I would.
10:18:10  2     I'm -- I'm kind of with him, because I don't know all the
10:18:13  3     information, but that seems a little bit extreme to me.
10:18:18  4          MR. BUNT:  Okay.  And Mr. Traylor?
10:18:22  5          JUROR TRAYLOR:  That's a very excessive amount of
10:18:24  6     money.  You know, I have a farmer's point of view.  I just
10:18:28  7     don't agree.  I'm sorry.
10:18:29  8          MR. BUNT:  Thank you, sir.  I appreciate that.
10:18:31  9          So let me ask this:  My client, USAA, provides
10:18:39  10    financial services to military and military families.
10:18:43  11    These services include both banking and insurance.
10:18:48  12          Is there anybody here who's had a bad experience
10:18:51  13    with USAA, either through their insurance or through their
10:18:55  14    banking sector?
10:18:56  15          Over here on the jury box, is there anybody who's
10:18:59  16    had a bad experience?
10:19:01  17          Over here in the gallery, is there anybody who's
10:19:03  18    had a bad experience with USAA?
10:19:06  19          Okay.  I'm not seeing any hands.
10:19:08  20          Could I get a show of hands of how many of you in
10:19:12  21    the gallery -- I'm sorry, in the jury box work at a bank or
10:19:16  22    have worked at a bank?
10:19:19  23          Yes, ma'am, that's Juror No. 12, Ms. Faulkner.
10:19:26  24    What did you do at the bank?  I believe you said you were
10:19:29  25    retired from the bank, didn't you?

| | | |
|---|---|---|
| 10:19:31 | 1 | JUROR FAULKNER:  Yes, retired. |
| 10:19:32 | 2 | MR. BUNT:  What did you do there? |
| 10:19:34 | 3 | JUROR FAULKNER:  Everything from teller to a |
| 10:19:38 | 4 | branch manager. |
| 10:19:39 | 5 | MR. BUNT:  Okay.  Thank you, ma'am.  I appreciate |
| 10:19:40 | 6 | that. |
| 10:19:41 | 7 | Anybody else in the jury box -- yes, ma'am, |
| 10:19:44 | 8 | Ms. Hutto, Juror No. 1. |
| 10:19:47 | 9 | JUROR HUTTO:  That was a very long time ago.  Bank |
| 10:19:49 | 10 | by mail, things like that. |
| 10:19:51 | 11 | MR. BUNT:  Okay.  And was that -- where was that |
| 10:19:53 | 12 | that you were working? |
| 10:19:54 | 13 | JUROR HUTTO:  Texas Commerce Bank in Longview. |
| 10:19:57 | 14 | MR. BUNT:  How long ago, 15 years ago or so? |
| 10:20:00 | 15 | JUROR HUTTO:  30. |
| 10:20:00 | 16 | MR. BUNT:  Okay.  Anything about that experience |
| 10:20:02 | 17 | that would make it difficult for you to sit on this jury? |
| 10:20:05 | 18 | JUROR HUTTO:  No. |
| 10:20:05 | 19 | MR. BUNT:  Anybody else on the jury box who's |
| 10:20:07 | 20 | worked at a bank? |
| 10:20:09 | 21 | Okay.  How about over in the gallery, any folks? |
| 10:20:14 | 22 | Yes, ma'am.  It is Ms. Haines, Juror No. 26.  I |
| 10:20:18 | 23 | believe you said in your questionnaire form you had worked |
| 10:20:21 | 24 | at a bank; is that right? |
| 10:20:22 | 25 | JUROR HAINES:  Yes.  My education is in banking, |

10:20:24   1    and I worked at a bank for 10 years throughout college and

10:20:29   2    post-college.

10:20:31   3            MR. BUNT:  And then you also -- your husband --

10:20:33   4            JUROR HAINES:  My husband is -- yeah, he's been

10:20:35   5    working at a credit union.  That's actually how we met, at

10:20:38   6    a banking conference, and so, yeah, he's worked at a credit

10:20:41   7    union -- the current one for seven years, when we moved to

10:20:42   8    Texas.  Prior to that, he worked at a local credit union in

10:20:44   9    Illinois for 23 years.

10:20:48  10            MR. BUNT:  Okay.  Thank you very much.

10:20:49  11            Can I see a show of hands -- well, actually I

10:20:52  12    think y'all provided me some of this information.

10:20:55  13            Mr. Parras, Juror No. 4, you indicated that you

10:21:05  14    had served in the military; is that correct?

10:21:07  15            JUROR PARRAS:  Yes, sir.

10:21:07  16            MR. BUNT:  I apologize, can you remind me which

10:21:10  17    branch of the service you were in?

10:21:12  18            JUROR PARRAS:  Air Force.

10:21:13  19            MR. BUNT:  U.S. Air Force.  First of all, thank

10:21:15  20    you for your service, sir.

10:21:16  21            And, second, you understand that USAA provides

10:21:19  22    insurance and banking service to military members.  Have

10:21:23  23    you -- I don't believe you raised your hand that you had

10:21:25  24    ever used USAA.

10:21:27  25            JUROR PARRAS:  No, I haven't.

| | | |
|---|---|---|
| 10:21:28 | 1 | MR. BUNT:  Do you have any friends or family |
| 10:21:30 | 2 | members who have used USAA? |
| 10:21:32 | 3 | JUROR PARRAS:  Not that I know of. |
| 10:21:33 | 4 | MR. BUNT:  Haven't heard -- haven't heard of |
| 10:21:36 | 5 | anybody with negative experiences about USAA? |
| 10:21:39 | 6 | JUROR PARRAS:  No, I haven't. |
| 10:21:41 | 7 | MR. BUNT:  And is there -- assuming you could be |
| 10:21:43 | 8 | fair to both USAA and Wells Fargo in this matter? |
| 10:21:45 | 9 | JUROR PARRAS:  I think so. |
| 10:21:46 | 10 | MR. BUNT:  Okay.  Thank you, sir. |
| 10:21:47 | 11 | Also, Mr. Howard, Juror No. 10, you served in the |
| 10:21:58 | 12 | military as well, didn't you, sir? |
| 10:22:00 | 13 | JUROR HOWARD:  Yes, sir. |
| 10:22:00 | 14 | MR. BUNT:  And was that the Army, U.S. Army? |
| 10:22:03 | 15 | JUROR HOWARD:  Yes, sir. |
| 10:22:04 | 16 | MR. BUNT:  Again, thank you for your service.  And |
| 10:22:06 | 17 | I would have the same questions for you that I had for |
| 10:22:09 | 18 | Mr. Parras.  You didn't mention you had used USAA, but do |
| 10:22:12 | 19 | you have any friends or family members who have? |
| 10:22:14 | 20 | JUROR HOWARD:  I use AAA for insurance. |
| 10:22:17 | 21 | MR. BUNT:  Okay. |
| 10:22:18 | 22 | JUROR HOWARD:  Car insurance.  That's all. |
| 10:22:19 | 23 | MR. BUNT:  Any bad experiences about that? |
| 10:22:21 | 24 | JUROR HOWARD:  No, sir. |
| 10:22:22 | 25 | MR. BUNT:  And would that experience make it |

| | | |
|---|---|---|
| 10:22:24 | 1 | difficult for you to be fair to both USAA and to Wells |
| 10:22:27 | 2 | Fargo? |
| 10:22:28 | 3 | JUROR HOWARD:  Yes, because I've used Wells Fargo |
| 10:22:31 | 4 | as a bank 20 years ago or better. |
| 10:22:35 | 5 | MR. BUNT:  Okay.  So you could be fair to both of |
| 10:22:37 | 6 | them? |
| 10:22:39 | 7 | JUROR HOWARD:  Yes, sir. |
| 10:22:39 | 8 | MR. BUNT:  Thank you, sir.  I appreciate that. |
| 10:22:41 | 9 | Also, Mr. Blaylock, Juror No. 20, you served in |
| 10:22:53 | 10 | the military also, didn't you, sir? |
| 10:22:54 | 11 | JUROR BLAYLOCK:  Yes, I did. |
| 10:22:55 | 12 | MR. BUNT:  And did you say U.S. Army? |
| 10:22:57 | 13 | JUROR BLAYLOCK:  Yes. |
| 10:22:58 | 14 | MR. BUNT:  Again, thank you, sir, for your |
| 10:23:00 | 15 | service. |
| 10:23:00 | 16 | The same questions to you.  Do you -- have any of |
| 10:23:03 | 17 | your family members or friends used USAA? |
| 10:23:06 | 18 | JUROR BLAYLOCK:  Not to my knowledge. |
| 10:23:09 | 19 | MR. BUNT:  Okay.  So you wouldn't have any issue |
| 10:23:12 | 20 | being fair to both Wells Fargo and to -- and to USAA, |
| 10:23:17 | 21 | correct? |
| 10:23:17 | 22 | JUROR BLAYLOCK:  Yes, I would have an issue. |
| 10:23:21 | 23 | MR. BUNT:  Okay.  What would that be? |
| 10:23:25 | 24 | JUROR BLAYLOCK:  I'd like to address this question |
| 10:23:29 | 25 | maybe to Judge Gilstrap. |

| | | |
|---|---|---|
| 10:23:30 | 1 | MR. BUNT:  We can certainly do that.  Thank you, |
| 10:23:32 | 2 | sir.  I appreciate that. |
| 10:23:34 | 3 | THE COURT:  We'll talk about it at another time, |
| 10:23:37 | 4 | sir. |
| 10:23:37 | 5 | MR. BUNT:  Mr. Laird, have -- you have a technical |
| 10:23:42 | 6 | background -- yes, sir, that's Juror No. 5. |
| 10:23:46 | 7 | JUROR LAIRD:  Yes, sir. |
| 10:23:47 | 8 | MR. BUNT:  And have you written code -- source |
| 10:23:49 | 9 | code? |
| 10:23:49 | 10 | JUROR LAIRD:  Yes, sir. |
| 10:23:50 | 11 | MR. BUNT:  You do that as part of your job? |
| 10:23:52 | 12 | JUROR LAIRD:  Not presently, no. |
| 10:23:54 | 13 | MR. BUNT:  But you have in the past? |
| 10:23:56 | 14 | JUROR LAIRD:  Yes, sir. |
| 10:23:56 | 15 | MR. BUNT:  Okay.  Thank you, sir.  I appreciate |
| 10:23:58 | 16 | that. |
| 10:23:58 | 17 | How many of you have -- let's say in the jury box, |
| 10:24:00 | 18 | how many of you have used a phone to deposit a check |
| 10:24:03 | 19 | before?  Oh, quite a few of you. |
| 10:24:06 | 20 | Okay.  Ms. Hammond -- |
| 10:24:10 | 21 | JUROR HAMMOND:  Yes. |
| 10:24:11 | 22 | MR. BUNT:  -- did -- you raised your hand.  What |
| 10:24:13 | 23 | bank do you use for that? |
| 10:24:14 | 24 | JUROR HAMMOND:  Navy Federal Credit Union. |
| 10:24:16 | 25 | MR. BUNT:  Okay.  Do you like that app? |

| | | |
|---|---|---|
| 10:24:18 | 1 | JUROR HAMMOND:  Yes. |
| 10:24:19 | 2 | MR. BUNT:  Okay.  Do you happen to know if that |
| 10:24:21 | 3 | app has auto capture where it will automatically take a |
| 10:24:25 | 4 | picture of the check without you having to push any |
| 10:24:29 | 5 | buttons? |
| 10:24:29 | 6 | JUROR HAMMOND:  It does. |
| 10:24:30 | 7 | MR. BUNT:  It does.  Okay.  Thank you. |
| 10:24:31 | 8 | Who -- who else on the first row has used -- yes, |
| 10:24:35 | 9 | sir, Mr. Laird.  You've used it?  How do you -- how do you |
| 10:24:38 | 10 | like that? |
| 10:24:38 | 11 | JUROR LAIRD:  I use it every time I have a paper |
| 10:24:42 | 12 | check, but I hardly ever have paper checks anymore, so... |
| 10:24:46 | 13 | MR. BUNT:  Does yours have the auto capture |
| 10:24:49 | 14 | feature also? |
| 10:24:49 | 15 | JUROR LAIRD:  Yes. |
| 10:24:49 | 16 | MR. BUNT:  Okay.  Thank you. |
| 10:24:50 | 17 | And, Mr. Cothren, you've used the mobile deposit? |
| 10:24:54 | 18 | JUROR COTHREN:  Yes, I have. |
| 10:24:55 | 19 | MR. BUNT:  And does your -- your phone app have |
| 10:24:57 | 20 | the -- the manual capture, or is it the automatic capture |
| 10:25:01 | 21 | that you don't have to push any buttons? |
| 10:25:04 | 22 | JUROR COTHREN:  The last time I used it, it was |
| 10:25:06 | 23 | manual. |
| 10:25:07 | 24 | MR. BUNT:  Thank you, sir.  I appreciate that. |
| 10:25:09 | 25 | Over here in the gallery -- well, I apologize, |

| | | |
|---|---|---|
| 10:25:11 | 1 | back row, was there somebody who had used mobile deposit? |
| 10:25:16 | 2 | Okay.  Over in the gallery, quite a few of you. |
| 10:25:22 | 3 | Let me start with Mr. Holladay.  You've used |
| 10:25:26 | 4 | mobile phone deposit? |
| 10:25:28 | 5 | JUROR HOLLADAY:  Yes, sir. |
| 10:25:28 | 6 | MR. BUNT:  And how do you like that?  Is it good, |
| 10:25:31 | 7 | bad? |
| 10:25:31 | 8 | JUROR HOLLADAY:  Yes, sir, I like it. |
| 10:25:32 | 9 | MR. BUNT:  Okay.  Does your phone app have the |
| 10:25:35 | 10 | automatic capture feature? |
| 10:25:36 | 11 | JUROR HOLLADAY:  I do not believe so. |
| 10:25:38 | 12 | MR. BUNT:  Okay. |
| 10:25:39 | 13 | JUROR HOLLADAY:  Chase -- Chase Bank. |
| 10:25:42 | 14 | MR. BUNT:  Thank you, sir. |
| 10:25:43 | 15 | Who else on -- was there anybody else on this row? |
| 10:25:46 | 16 | Okay.  How about the next row?  Anybody else who |
| 10:25:54 | 17 | has used mobile deposit?  Okay.  Looks like No. -- yes, |
| 10:25:58 | 18 | ma'am, Ms. Haines? |
| 10:26:00 | 19 | JUROR HAINES:  Yes, I use it all the time for |
| 10:26:02 | 20 | personal and my business. |
| 10:26:03 | 21 | MR. BUNT:  And I'm assuming probably from East |
| 10:26:08 | 22 | Texas Professional Credit Union? |
| 10:26:08 | 23 | JUROR HAINES:  That is correct. |
| 10:26:08 | 24 | MR. BUNT:  And does it have the automatic capture |
| 10:26:08 | 25 | feature to it? |

10:26:09   1           JUROR HAINES:  You hit the button front and back
10:26:12   2   to take the image.
10:26:13   3           MR. BUNT:  So you actually have to push the button
10:26:15   4   to do that?
10:26:16   5           JUROR HAINES:  Yes, yes.
10:26:17   6           MR. BUNT:  Okay.  And then, Mr. Callison, you've
10:26:18   7   used remote deposit?
10:26:22   8           JUROR CALLISON:  Yes, sir.
10:26:23   9           MR. BUNT:  Okay.  And how do you -- do you like
10:26:23  10   that, don't like it?
10:26:23  11           JUROR CALLISON:  I like it.
10:26:24  12           MR. BUNT:  Okay.  Does your phone app have the
10:26:25  13   manual or is it automatic capture?
10:26:28  14           JUROR CALLISON:  I've used the Regions and
10:26:32  15   Capital One app, and you just zoom in -- I mean, just get
10:26:33  16   your camera right above it, and it takes the picture, so --
10:26:33  17           MR. BUNT:  It takes it by itself?
10:26:35  18           JUROR CALLISON:  Yes.
10:26:36  19           MR. BUNT:  Okay.  Thank you.
10:26:37  20           Some of you had expressed strong feelings about
10:26:41  21   lawsuits in your questionnaires.
10:26:42  22           I believe -- Ms. Blackmon, yes, ma'am?  You had
10:26:48  23   said, I think if I've got this right, dislike suits with
10:26:53  24   big awards.  No -- no intent.  Did I get that correct?
10:26:59  25           JUROR BLACKMON:  To be honest, I can't remember

| | | |
|---|---|---|
| 10:27:01 | 1 | exactly what I wrote.  I just have a lot of problems with |
| 10:27:04 | 2 | big, huge awards that don't seem to be justified.  But the |
| 10:27:08 | 3 | ones I'm mainly referring to would be ones where injury |
| 10:27:12 | 4 | would have been the issue. |
| 10:27:15 | 5 | MR. BUNT:  Okay.  Well, you said something about |
| 10:27:16 | 6 | intent in there, I believe. |
| 10:27:18 | 7 | JUROR BLACKMON:  Yeah, if -- if -- a lot of times |
| 10:27:21 | 8 | you see these personal injury trial lawyers, and they -- |
| 10:27:24 | 9 | they're looking for somebody, and they're going to help |
| 10:27:26 | 10 | them make a buck while they're making a buck, as well.  And |
| 10:27:30 | 11 | the -- a lot of times the accident was not intentional.  It |
| 10:27:34 | 12 | was -- you know, accidents happen.  That's why they call |
| 10:27:36 | 13 | them accidents. |
| 10:27:37 | 14 | MR. BUNT:  Sure. |
| 10:27:38 | 15 | JUROR BLACKMON:  And I have a problem when someone |
| 10:27:41 | 16 | goes after somebody just because they can get a check. |
| 10:27:44 | 17 | MR. BUNT:  Well, let me ask you this because a |
| 10:27:46 | 18 | patent case does not require intent.  For instance, if |
| 10:27:50 | 19 | somebody comes and builds a house on your piece of |
| 10:27:52 | 20 | property, it doesn't matter that they didn't know it was |
| 10:27:55 | 21 | your piece of property.  They're still going to have to get |
| 10:27:58 | 22 | off when you tell them to. |
| 10:27:59 | 23 | Is that going to start you out thinking -- making |
| 10:28:02 | 24 | it difficult for you to sit on this jury because there's a |
| 10:28:04 | 25 | no-intent element in an infringement case? |

10:28:06   1              JUROR BLACKMON:  No.

10:28:07   2              MR. BUNT:  Okay.  Thank you, ma'am.  I appreciate

10:28:08   3    that.

10:28:08   4              Mr. Coleman, I believe you said that you had

10:28:14   5    issues with frivolous lawsuits.  And I think everybody

10:28:16   6    would probably agree with that.  But you understand I have

10:28:19   7    filed a lawsuit against Wells Fargo on behalf of USAA.

10:28:25   8    Because of your feelings about lawsuits, am I going to be

10:28:28   9    starting out a little bit behind Wells Fargo?

10:28:32  10              JUROR COLEMAN:  I kind of agree with what she

10:28:35  11    said.  And I've -- I've seen some really silly stuff.  And

10:28:38  12    that's what I don't have much patience -- I would say in

10:28:43  13    response to your question about 300 million, you'd have to

10:28:45  14    knock it out of the park.

10:28:46  15              MR. BUNT:  Okay.  Well, let me ask another

10:28:48  16    question about that because Judge Gilstrap has told us that

10:28:53  17    the burden of proof for USAA is to prove by a preponderance

10:28:59  18    of the evidence that there's been infringement.

10:29:00  19              JUROR COLEMAN:  I understand all that.

10:29:02  20              MR. BUNT:  And that there's been damages.

10:29:03  21              JUROR COLEMAN:  Yes, sir.

10:29:04  22              MR. BUNT:  And we intend to do that.  And you

10:29:06  23    heard him say that if you tip the scales in favor, then

10:29:09  24    that's a preponderance of the evidence?

10:29:09  25              JUROR COLEMAN:  Yes, sir.

| | | |
|---|---|---|
| 10:29:10 | 1 | MR. BUNT:  Are you saying that the -- the Scales |
| 10:29:14 | 2 | of Justice would have to turn more than just a |
| 10:29:17 | 3 | preponderance of the evidence to find damages in that |
| 10:29:19 | 4 | amount? |
| 10:29:19 | 5 | JUROR COLEMAN:  No, sir, because I was instructed |
| 10:29:21 | 6 | not to. |
| 10:29:21 | 7 | MR. BUNT:  Well -- and that's my question.  Can |
| 10:29:23 | 8 | you set that aside and do whatever Judge Gilstrap tells you |
| 10:29:26 | 9 | as far as the burden of proof? |
| 10:29:28 | 10 | JUROR COLEMAN:  Certainly I can.  Like I said, I'm |
| 10:29:31 | 11 | just -- yes, I can. |
| 10:29:32 | 12 | MR. BUNT:  I appreciate that. |
| 10:29:33 | 13 | JUROR COLEMAN:  Yes, sir. |
| 10:29:33 | 14 | MR. BUNT:  I want to hear what you think. |
| 10:29:34 | 15 | Anybody else on the first two rows over here who |
| 10:29:39 | 16 | would have difficulty applying the burden of proof that |
| 10:29:44 | 17 | Judge Gilstrap said, the preponderance of the evidence, in |
| 10:29:46 | 18 | a case involving $300 million? |
| 10:29:50 | 19 | Okay.  How about over here? |
| 10:29:54 | 20 | All right.  The -- Wells Fargo is being |
| 10:29:59 | 21 | represented by the Winston & Strawn law firm.  You met |
| 10:30:01 | 22 | Mr. Tom Melsheimer a moment ago.  He's the lead counsel. |
| 10:30:04 | 23 | Winston & Strawn, they have offices all over the world. |
| 10:30:09 | 24 | Mr. Melsheimer has an office in Dallas. |
| 10:30:11 | 25 | Is there anybody here who knows or has a |

10:30:13  1    relationship with Winston & Strawn or with Mr. Melsheimer?

10:30:17  2           Okay.  Also, more locally, we've got Mr. Wesley

10:30:22  3    Hill.  He lives in Tyler and practices in Longview at the

10:30:25  4    Ward Smith & Hill law firm.

10:30:29  5           Is there anybody here who knows Mr. Hill or knows

10:30:32  6    his firm?

10:30:34  7           Let me just list out some of the folks at his

10:30:37  8    firm.  There's Johnny Ward, Mr. T. John Ward, Mr. Bruce

10:30:41  9    Smith, Ms. Claire Henry, Ms. Andrea Fair, Mr. Brett Miller,

10:30:47 10    and Mr. Hill's legal assistant, Wendy Cavasos.  Anybody

10:30:56 11    know those individuals?  I'm not seeing any hands.

10:30:57 12           I believe Mr. Mike Collins is assisting Wells

10:31:02 13    Fargo picking the jury.  He's from Tyler.  Anybody there

10:31:06 14    who knows Mr. Collins?

10:31:08 15           And then also sitting beside Mr. Collins is

10:31:12 16    Mr. Don Nichols.  Anybody know Mr. Don Nichols?  He's

10:31:16 17    assisting with the jury also.

10:31:17 18           Any of you own Wells Fargo stock?  Anybody -- if

10:31:22 19    you know?  I see Juror No. 9, Ms. Carpenter.  You're not

10:31:30 20    sure if -- just have no way of knowing?

10:31:30 21           JUROR CARPENTER:  I may have.  I don't know.

10:31:32 22           MR. BUNT:  Okay.  Thank you.  If you don't know,

10:31:33 23    that's fine.

10:31:34 24           Anybody who knows if they actually own Wells Fargo

10:31:37 25    stock?

| | | |
|---|---|---|
| 10:31:38 | 1 | How many of you are current customers of Wells |
| 10:31:42 | 2 | Fargo? |
| 10:31:45 | 3 | Okay.  Ms. Carpenter -- well, let me start with |
| 10:31:49 | 4 | Ms. Hutto.  She's No. 1. |
| 10:31:53 | 5 | JUROR HUTTO:  We purchased a bed that -- |
| 10:31:56 | 6 | THE COURT:  Do you mind standing up, ma'am? |
| 10:31:59 | 7 | JUROR HUTTO:  The place where we bought it from |
| 10:32:02 | 8 | financed through them. |
| 10:32:04 | 9 | MR. BUNT:  Through Wells Fargo? |
| 10:32:05 | 10 | JUROR HUTTO:  Yes. |
| 10:32:06 | 11 | MR. BUNT:  Of course, you understand USAA is suing |
| 10:32:10 | 12 | Wells Fargo.  You probably see where I'm going with this. |
| 10:32:12 | 13 | Am I going to be starting off a little bit behind Wells |
| 10:32:15 | 14 | Fargo because of that experience? |
| 10:32:15 | 15 | JUROR HUTTO:  No. |
| 10:32:16 | 16 | MR. BUNT:  Okay.  Thank you, ma'am. |
| 10:32:17 | 17 | Who else currently banks with Wells Fargo? |
| 10:32:20 | 18 | Yes, ma'am, Ms. Carpenter, Juror No. 9? |
| 10:32:23 | 19 | JUROR CARPENTER:  We have a student loan for my |
| 10:32:28 | 20 | youngest child through Wells Fargo. |
| 10:32:29 | 21 | MR. BUNT:  Okay.  Same question to you.  My client |
| 10:32:32 | 22 | has sued Wells Fargo.  You do banking with Wells Fargo. |
| 10:32:36 | 23 | And is my client starting out a little bit behind as a |
| 10:32:41 | 24 | result of you having some interactions with Wells Fargo? |
| 10:32:43 | 25 | JUROR CARPENTER:  No. |

| | | |
|---|---|---|
| 10:32:43 | 1 | MR. BUNT:  Thank you, ma'am. |
| 10:32:44 | 2 | Who else? |
| 10:32:47 | 3 | Yes, ma'am, Ms. McCain, Juror No. 14.  Do you bank |
| 10:32:52 | 4 | with Wells Fargo now? |
| 10:32:54 | 5 | JUROR MCCAIN:  They -- they've done some of my |
| 10:32:57 | 6 | management -- my money for me.  And I am not biassed one |
| 10:33:02 | 7 | way or the other. |
| 10:33:03 | 8 | MR. BUNT:  Thank you, ma'am.  I appreciate you |
| 10:33:06 | 9 | anticipating my question. |
| 10:33:06 | 10 | Does anybody work -- well, I'm sorry, let's go |
| 10:33:11 | 11 | over here.  Anybody over here who -- who banks with Wells |
| 10:33:14 | 12 | Fargo? |
| 10:33:16 | 13 | Okay.  No hands. |
| 10:33:18 | 14 | Anybody work for Wells Fargo or have a family |
| 10:33:21 | 15 | member or friend who works for Wells Fargo?  I don't see |
| 10:33:26 | 16 | any hands. |
| 10:33:27 | 17 | Ms. Hammond, were you a -- Juror No. 2. |
| 10:33:38 | 18 | I'm looking through my notes hurriedly.  Did -- |
| 10:33:44 | 19 | did you -- were you involved in a lawsuit as a Defendant in |
| 10:33:47 | 20 | a suit? |
| 10:33:47 | 21 | JUROR HAMMOND:  No. |
| 10:33:48 | 22 | MR. BUNT:  Okay.  I apologize.  I wrote that down |
| 10:33:50 | 23 | wrong. |
| 10:33:50 | 24 | Ms. Perkins, Juror No. 16, I believe you indicated |
| 10:33:56 | 25 | in your questionnaire form that you were married to a |

| | | |
|---|---|---|
| 10:34:00 | 1 | lawyer at one time? |
| 10:34:01 | 2 | JUROR PERKINS:  Yes, sir. |
| 10:34:02 | 3 | MR. BUNT:  Who was that? |
| 10:34:03 | 4 | JUROR PERKINS:  William Perkins. |
| 10:34:05 | 5 | MR. BUNT:  And where did he practice law? |
| 10:34:07 | 6 | JUROR PERKINS:  Louisiana. |
| 10:34:08 | 7 | MR. BUNT:  Okay.  All right. |

10:34:09  8        And, Mr. Marks, Juror No. 27, your wife worked for
10:34:21  9   the Carlyle law firm; is that correct?
10:34:24  10        JUROR MARKS:  She did, yes.
10:34:26  11        MR. BUNT:  How long ago has that been?
10:34:31  12        JUROR MARKS:  About 15 -- about 16 years ago.
10:34:34  13        MR. BUNT:  Anything about that experience that
10:34:35  14   would make it difficult for you to sit on this jury?
10:34:39  15        JUROR MARKS:  No.
10:34:40  16        MR. BUNT:  You feel like you could be fair to both
10:34:42  17   USAA and Wells Fargo in this case?
10:34:44  18        JUROR MARKS:  Yes.
10:34:45  19        MR. BUNT:  Thank you, sir.  I appreciate that.
10:34:47  20        THE COURT:  You have five minutes remaining,
10:34:49  21   counsel.
10:34:49  22        MR. BUNT:  You'd be surprised at how often this
10:34:55  23   happens.  Is there anybody on the jury panel who knows one
10:34:58  24   another?  I bet -- I figured I'd get some hands.
10:35:04  25        Okay.  Juror No. 7, Mr. Cothren, who do you know?

| | | |
|---|---|---|
| 10:35:08 | 1 | JUROR COTHREN:  Mr. Stuart Callison, Juror No. 28. |
| 10:35:16 | 2 | MR. BUNT:  And how do y'all know each other? |
| 10:35:19 | 3 | JUROR COTHREN:  We're close acquaintances. |
| 10:35:21 | 4 | MR. BUNT:  You see each other around town or -- |
| 10:35:24 | 5 | JUROR COTHREN:  Yes. |
| 10:35:24 | 6 | MR. BUNT:  Y'all live in the same community? |
| 10:35:26 | 7 | JUROR COTHREN:  We live in the same community.  I |
| 10:35:28 | 8 | was real -- growing up, I was real close to his wife, went |
| 10:35:32 | 9 | to church together many years as a child.  Just real good |
| 10:35:36 | 10 | acquaintances.  Don't see him all that often, but we're |
| 10:35:39 | 11 | close friends. |
| 10:35:40 | 12 | MR. BUNT:  Well, let me ask you this:  You know, |
| 10:35:42 | 13 | invariably, if the two of y'all ended up on a jury |
| 10:35:46 | 14 | together, would it be difficult for you if you had |
| 10:35:49 | 15 | different opinions than he did and wanted to go one |
| 10:35:52 | 16 | direction and he wanted to go the other?  Is that going to |
| 10:35:55 | 17 | make things difficult for you sitting on a jury? |
| 10:35:57 | 18 | JUROR COTHREN:  No, sir. |
| 10:35:58 | 19 | MR. BUNT:  Okay.  Thank you, sir. |
| 10:35:59 | 20 | Before we leave the jury box, was there somebody |
| 10:36:03 | 21 | else who knew someone on the panel? |
| 10:36:05 | 22 | Okay.  Yes, sir, let's go back to Mr. -- |
| 10:36:12 | 23 | Mr. Blaylock -- no, I'm sorry, Mr. Traylor, do you know |
| 10:36:16 | 24 | somebody on the panel? |
| 10:36:20 | 25 | JUROR TRAYLOR:  Yes, I know Ricky Tigert. |

| | | |
|---|---|---|
| 10:36:22 | 1 | MR. BUNT:  Okay.  And how do y'all know each |
| 10:36:24 | 2 | other? |
| 10:36:25 | 3 | JUROR TRAYLOR:  Our fathers were lifetime friends. |
| 10:36:27 | 4 | MR. BUNT:  Okay.  So do you see him regularly? |
| 10:36:29 | 5 | JUROR TRAYLOR:  Pretty regular, yes.  I worked on |
| 10:36:30 | 6 | his kid's show calves. |
| 10:36:30 | 7 | MR. BUNT:  Well, same question I asked |
| 10:36:30 | 8 | Mr. Cothren.  Do you think that would cause any |
| 10:36:34 | 9 | difficulties -- |
| 10:36:34 | 10 | JUROR TRAYLOR:  Not at all.  I can think on my |
| 10:36:36 | 11 | own. |
| 10:36:36 | 12 | MR. BUNT:  I appreciate that. |
| 10:36:38 | 13 | Same question to you, Mr. Tigert.  I'm assuming |
| 10:36:41 | 14 | you feel the same way as -- as -- |
| 10:36:44 | 15 | JUROR TIGERT:  Yes, no problem at all. |
| 10:36:46 | 16 | MR. BUNT:  Thank you, sir. |
| 10:36:47 | 17 | JUROR TIGERT:  I know this guy right here, Mikey |
| 10:36:49 | 18 | Byrd. |
| 10:36:49 | 19 | MR. BUNT:  Okay.  And how do you know him? |
| 10:36:51 | 20 | JUROR TIGERT:  Just -- we grew up together in |
| 10:36:53 | 21 | Daingerfield. |
| 10:36:54 | 22 | MR. BUNT:  I told y'all this happens quite a bit. |
| 10:36:56 | 23 | So any issues, Mr. Byrd, with -- if you got on the |
| 10:37:00 | 24 | same panel as -- as Mr. Tigert, is that going to cause hard |
| 10:37:04 | 25 | feelings if you end up coming down to a different decision |

| | | |
|---|---|---|
| 10:37:07 | 1 | than he did? |
| 10:37:09 | 2 | JUROR BYRD:  No issues at all. |
| 10:37:10 | 3 | THE COURT:  Thank you, sir. |
| 10:37:11 | 4 | Let me ask this, just one final question: |
| 10:37:17 | 5 | Invariably, people come back later and say, I wish you'd |
| 10:37:22 | 6 | ask this question.  If only you'd known this, you would |
| 10:37:24 | 7 | have known that I wasn't the right person for this jury. |
| 10:37:27 | 8 | So I'm sure I have left out many questions. |
| 10:37:30 | 9 | Let me just ask it like this:  Is there anyone |
| 10:37:33 | 10 | here who feels like this is just not the right case for |
| 10:37:38 | 11 | you, and if you could just raise your hands and -- and let |
| 10:37:41 | 12 | me know who y'all are.  Anybody in the jury box? |
| 10:37:45 | 13 | Yes, ma'am, Ms. Hrelja?  And is it for the same |
| 10:37:50 | 14 | reasons that you mentioned earlier today about damages? |
| 10:37:55 | 15 | JUROR HRELJA:  It is.  But I also don't think I'm |
| 10:37:58 | 16 | knowledgeable enough on what y'all are talking about to |
| 10:38:03 | 17 | make a biassed decision on that. |
| 10:38:06 | 18 | MR. BUNT:  Okay.  I appreciate that. |
| 10:38:07 | 19 | JUROR HRELJA:  I deal with small children on a |
| 10:38:09 | 20 | daily basis. |
| 10:38:10 | 21 | MR. BUNT:  That's okay.  That's fine. |
| 10:38:11 | 22 | Anybody else? |
| 10:38:12 | 23 | Yes, sir, Mr. Parras? |
| 10:38:18 | 24 | JUROR PARRAS:  Well, it's -- it's not a personal |
| 10:38:21 | 25 | opinion, but my daughter had problems with Wells Fargo. |

| | | |
|---|---|---|
| 10:38:28 | 1 | And I sign a check to my grandkids over there in Katy every |
| 10:38:35 | 2 | month, and, boy, they're five months behind on running |
| 10:38:39 | 3 | those checks through.  They put them in through Wells |
| 10:38:42 | 4 | Fargo, and checks don't show up over here in my bank. |
| 10:38:45 | 5 | MR. BUNT:  Okay.  I appreciate that. |
| 10:38:49 | 6 | Anybody else who feels like it would be difficult |
| 10:38:53 | 7 | sitting on this jury, for whatever reason? |
| 10:38:56 | 8 | How about -- yes, sir, Mr. Traylor? |
| 10:39:03 | 9 | JUROR TRAYLOR:  This goes back to the money |
| 10:39:05 | 10 | involved in this case here.  I feel like -- and this is |
| 10:39:09 | 11 | outside looking in -- I feel like for this type money, I |
| 10:39:12 | 12 | feel like both parties involved here have been overcharged |
| 10:39:16 | 13 | if we have this type of money involved. |
| 10:39:16 | 14 | MR. BUNT:  Okay. |
| 10:39:18 | 15 | JUROR TRAYLOR:  I just don't -- don't like it at |
| 10:39:20 | 16 | all. |
| 10:39:20 | 17 | MR. BUNT:  Okay.  I appreciate that.  Thank you, |
| 10:39:21 | 18 | sir. |
| 10:39:22 | 19 | Anybody -- yes, sir, Mr. Holladay? |
| 10:39:25 | 20 | JUROR HOLLADAY:  In the past -- probably 10 years |
| 10:39:27 | 21 | ago, or when I was in graduate school, my wife worked for a |
| 10:39:32 | 22 | bank and was wrong -- wrongfully accused without any |
| 10:39:37 | 23 | evidence by a bank and was mistreated badly.  And it just |
| 10:39:42 | 24 | hasn't set well with my family for the big bank, which she |
| 10:39:48 | 25 | went through over nothing. |

```
10:39:49    1              MR. BUNT:  Okay.

10:39:50    2              JUROR HOLLADAY:  I'd be leaning probably toward

10:39:52    3   this side going into it.

10:39:53    4              MR. BUNT:  Okay.  I appreciate that, sir.

10:39:55    5              Anybody else that I left out?

10:39:58    6              Yes, sir, Mr. Marks, Juror No. 27?

10:40:03    7              JUROR MARKS:  Yes.  I feel like that I just don't

10:40:06    8   have the knowledge to get the understanding of what's going

10:40:12    9   on.  And I'd just be following somebody else.

10:40:15   10              MR. BUNT:  Okay.  Thank you, sir.  I really do

10:40:17   11   appreciate all the information y'all have provided.

10:40:19   12              THE COURT:  Counsel, your time has expired.

10:40:22   13              MR. BUNT:  Thank you, Your Honor.

10:40:22   14              I look forward to presenting our case to you.

10:40:25   15              THE COURT:  All right.  Mr. Hill, you may address

10:40:26   16   the panel on behalf of the Defendant.

10:40:27   17              MR. HILL:  Thank you, Your Honor.

10:40:28   18              THE COURT:  Would you like a warning on your time?

10:40:30   19              MR. HILL:  Yes, sir, I'd like a five-minute

10:40:32   20   warning, as well, Judge.

10:40:33   21              THE COURT:  All right.  You may proceed.

10:40:36   22              MR. HILL:  Good morning, ladies and gentlemen.

10:40:40   23              Let me say right upfront, Wells Fargo does not

10:40:43   24   infringe on USAA's patents.  We don't infringe.  We don't

10:40:49   25   trespass.  And we don't owe them any money for anything,
```

| | | |
|---|---|---|
| 10:40:53 | 1 | okay?  I just want to get that out there right upfront. |
| 10:40:56 | 2 | THE COURT:  Counsel, this is not the time to make |
| 10:40:58 | 3 | an argument.  You're here to ask questions of the panel, |
| 10:41:00 | 4 | and you need to proceed on that basis. |
| 10:41:02 | 5 | MR. HILL:  Thank you, Your Honor. |
| 10:41:02 | 6 | Ladies and gentlemen, Wells Fargo's auto capture |
| 10:41:06 | 7 | feature in its mobile deposit app, you'll learn, is what |
| 10:41:10 | 8 | USAA accuses of infringement in this case.  Our banking app |
| 10:41:14 | 9 | works different than the narrow, single way of doing auto |
| 10:41:19 | 10 | capture that USAA's patents tries to cover -- claims to |
| 10:41:24 | 11 | cover, okay? |
| 10:41:25 | 12 | So that's what you're going to hear about in this |
| 10:41:28 | 13 | case.  They mentioned you're going to hear that they claim |
| 10:41:30 | 14 | we infringe.  We deny it.  We do deny it because our |
| 10:41:34 | 15 | product works differently.  They have a patent on one way |
| 10:41:38 | 16 | of doing it.  We do it a different way. |
| 10:41:40 | 17 | Now, the facts of our case are going to come out |
| 10:41:44 | 18 | in opening statement, and this is not the time for me to |
| 10:41:48 | 19 | try to argue my case, as the Judge mentioned, or tell you |
| 10:41:51 | 20 | about the facts of the case, but I want you to understand |
| 10:41:54 | 21 | where we stand, okay?  We deny these allegations, and we -- |
| 10:41:57 | 22 | THE COURT:  Mr. Hill, you've said that about six |
| 10:41:59 | 23 | times.  You're not here to argue the merits of this case. |
| 10:42:02 | 24 | You're either going to ask this panel questions, which |
| 10:42:04 | 25 | you're entitled to do, or I'm going to make you sit down. |

```
10:42:07   1            MR. HILL:  Thank you, Your Honor.
10:42:07   2            THE COURT:  Let's proceed.
10:42:08   3            MR. HILL:  I appreciate it.
10:42:09   4            Now, thank you for being here.  This is an
10:42:14   5  important case that we need your help to resolve, and this
10:42:16   6  is going to be our only chance to speak to you.
10:42:18   7            So just as with Mr. Bunt, he encouraged you to
10:42:22   8  speak up, speak to him, I'm going to encourage you to do
10:42:25   9  the same to me as we ask questions about just how you see
10:42:29  10  things.
10:42:29  11            Now, as mentioned earlier, what we're trying to
10:42:34  12  find out is whether you lean one way or another based on
10:42:36  13  life experience.  And that's what we're going to be
10:42:40  14  inquiring about today.
10:42:40  15            I want to start out by telling you, as everybody
10:42:44  16  has, fairly, I'm Wesley Hill.  Practice law in Longview.
10:42:48  17  Grew up over in Murchison, Texas in Henderson County.  I'm
10:42:54  18  married.  I've got a 25-year-old grown son, who is a school
10:42:59  19  teacher in Austin; and a 7th grader, 12-year-old little
10:43:02  20  girl.  And I appreciate just getting to talk to you folks
10:43:04  21  today.
10:43:04  22            Now, folks, you saw the patent video this morning,
10:43:07  23  and you got the chance to learn some things.  Did anybody
10:43:10  24  learn something that was new?  Did you see -- hear things
10:43:14  25  about the patent system this morning in the video that you
```

| | |
|---|---|
| 10:43:17 | 1 |
| 10:43:20 | 2 |
| 10:43:25 | 3 |
| 10:43:27 | 4 |
| 10:43:31 | 5 |
| 10:43:33 | 6 |
| 10:43:35 | 7 |
| 10:43:38 | 8 |
| 10:43:40 | 9 |
| 10:43:41 | 10 |
| 10:43:43 | 11 |
| 10:43:46 | 12 |
| 10:43:46 | 13 |
| 10:43:48 | 14 |
| 10:43:52 | 15 |
| 10:43:53 | 16 |
| 10:43:55 | 17 |
| 10:43:58 | 18 |
| 10:43:59 | 19 |
| 10:44:02 | 20 |
| 10:44:06 | 21 |
| 10:44:06 | 22 |
| 10:44:08 | 23 |
| 10:44:09 | 24 |
| 10:44:16 | 25 |

1  saw that was different than what you had thought coming

2  into this case?  Anybody?  Couple hands.

3       All right.  Right here.  Let's start -- let's

4  start with you, Mr. Cothren.  Tell me what you saw this

5  morning that was news to you.

6       JUROR COTHREN:  As far as new, all my comment

7  would be is that I've never seen the process from start to

8  finish the way it was presented today.

9       MR. HILL:  Yes, sir.

10       JUROR COTHREN:  I understood generally how it

11  worked, but not each and every phase of it.

12       MR. HILL:  Okay.

13       JUROR COTHREN:  And the opportunity to come in

14  later and add more documents to it.

15       MR. HILL:  All right.  Thank you, sir.

16       Who else -- who else learned something that they

17  thought was new about the way the patent system worked.

18       Yes, ma'am, No. 14?

19       JUROR MCCAIN:  I did not realize the process was

20  so overwhelming with the amount of numbers of patents that

21  are filed.

22       MR. HILL:  You didn't realize how many patents get

23  filed each year?

24       JUROR MCCAIN:  That's correct.  That's correct.

25       MR. HILL:  Thank you, Ms. McCain.

10:44:17  1        Now, ladies and gentlemen, one of the things that
10:44:19  2   you heard in the patent video this morning is that a patent
10:44:21  3   is like a deed.  It indicates the boundaries defining the
10:44:25  4   landowner's property, okay?  So it sets the limits on the
10:44:28  5   property.  And anyone who learns of a patent can then go
10:44:32  6   read it and understand exactly what the inventor invented
10:44:37  7   and the limits that the patent claims set forth.
10:44:41  8        And so what I'd like to do, folks, is talk to you
10:44:45  9   about what that means, because those of you that make it on
10:44:48  10  the jury, are going to learn that to prove infringement in
10:44:51  11  this case, USAA, as the Plaintiff with the burden of proof,
10:44:55  12  has to show that each and every element, each and every
10:45:01  13  element of their patent claim is met by the Wells Fargo app
10:45:07  14  that they're going to accuse of infringement, okay?  It's
10:45:11  15  not like horseshoes or hand grenades where close counts;
10:45:17  16  you've got to show each and every element.
10:45:18  17       Is that part of things different from what anybody
10:45:23  18  thought, coming in this morning, about how patents work,
10:45:27  19  that they're that precise?  Was that part different to
10:45:30  20  anybody?
10:45:32  21       So I want to give you an example.  And let me do
10:45:39  22  that by asking this:  Is there anybody who's got a fishing
10:45:42  23  boat, kind of likes to fish?  Fishing boat, likes to fish?
10:45:47  24  Okay.  Let's -- let's start, No. 11.  That's -- that's
10:45:52  25  Ms. Smith.

10:45:53  1              JUROR SMITH:  Yes, sir.

10:45:54  2              MR. HILL:  Ms. Smith, you've got a fishing boat,

10:45:57  3  you like to fish?

10:45:58  4              JUROR SMITH:  Yes, sir.

10:45:58  5              MR. HILL:  Tell me this do you have a fish finder

10:45:58  6  on that fishing boat?

10:45:58  7              JUROR SMITH  Yes.

10:46:02  8              MR. HILL:  You got a Lowrance, you got a

10:46:04  9  Humminbird, a Garmin?

10:46:08  10             JUROR SMITH:  Humminbird.

10:46:10  11             MR. HILL:  Humminbird, okay.  Well, I want you to

10:46:11  12  imagine, Ms. Smith, that if Humminbird came out with a new

10:46:14  13  big fish catching system, okay, that's what they're calling

10:46:18  14  their product, big fish catching system, and Humminbird got

10:46:24  15  a patent on it.  And that patent has three elements to it.

10:46:27  16             They're going to monitor for fish, they're going

10:46:30  17  to -- when a big fish is detected, catch the fish with a

10:46:35  18  net, and they're going to put it in the live well, okay?

10:46:39  19  So that's their patent.  Monitor for fish.  When a big fish

10:46:43  20  is detected, catch it with a net.  And, step three, put it

10:46:50  21  in a live well.  All right?

10:46:50  22             Now, I want you to imagine, Ms. Smith, that me and

10:46:52  23  you've decided we're going to put us together our own big

10:46:54  24  fish catching system, okay?  And our big fish catching

10:46:59  25  system is going to work like this.  It's going to catch

10:47:01   1   fish with a net.  We're then going to pick out the big

10:47:04   2   ones.  And we're going to put those in the live well.

10:47:10   3   Okay?  So we're going to catch everything with a net, pick

10:47:14   4   out the big ones, and put them in the live well.

10:47:17   5           What's the difference between those two?

10:47:19   6           JUROR SMITH:  Not anything, just the order.

10:47:21   7           MR. HILL:  The order, okay.  Do you think the

10:47:23   8   order would matter?

10:47:25   9           JUROR SMITH:  No, not if the three components are

10:47:28   10   the same, it shouldn't matter.

10:47:29   11           MR. HILL:  Okay.  So if we made that product

10:47:32   12   and --

10:47:33   13           THE COURT:  Counsel, counsel, approach the bench,

10:47:33   14   please.

10:47:33   15           MR. HILL:  Yes, sir, Your Honor.

10:47:39   16           THE COURT:  Have a seat, ma'am.

10:47:39   17           (Bench conference.)

10:47:42   18           THE COURT:  Mr. Hill, you began this voir dire

10:47:45   19   with blatant argument to the jury panel.  You continue to

10:47:48   20   do it repeatedly.  I instructed you clearly to stop it.

10:47:53   21   These are not questions to determine bias or prejudice.

10:47:58   22   These are not questions to do anything other than to argue

10:48:01   23   the merits of your case during jury selection.

10:48:04   24           I am going to deduct three minutes from the

10:48:06   25   Plaintiff's [sic] closing time as a sanction for that, and

| | |
|---|---|
| 10:48:12 | 1 |
| 10:48:15 | 2 |
| 10:48:18 | 3 |
| 10:48:22 | 4 |
| 10:48:26 | 5 |
| 10:48:28 | 6 |
| 10:48:29 | 7 |
| 10:48:31 | 8 |
| 10:48:32 | 9 |
| 10:48:34 | 10 |
| 10:48:39 | 11 |
| 10:48:41 | 12 |
| 10:48:45 | 13 |
| 10:48:47 | 14 |
| 10:48:51 | 15 |
| 10:48:55 | 16 |
| 10:48:56 | 17 |
| 10:48:58 | 18 |
| 10:49:00 | 19 |
| 10:49:04 | 20 |
| 10:49:07 | 21 |
| 10:49:09 | 22 |
| 10:49:11 | 23 |
| 10:49:13 | 24 |
| 10:49:16 | 25 |

I'm going to instruct you not to continue in this vein but to ask questions seeking to determine the ability of this panel and its members to be fair and impartial, but not to argue either overtly or indirectly the merits of your case.

MR. HILL:  Yes, sir, Your Honor.

THE COURT:  And if you continue it, I will -- I will continue to sanction you at higher levels.

MR. HILL:  Let me say --

THE COURT:  And I will say this, Mr. Hill:  You have tried multiple lawsuits before me.  I have never seen you conduct yourself this way, and I am very surprised.

MR. HILL:  Your Honor, if I may.  In my own -- to say, Your Honor, I'm surprised as well to be called down for it.  And I'm not making an excuse.  It's not that at all.  I was stating forcefully, but simply stating our position to start the case, and I -- believe me, Your Honor, if I thought these questions I was asking now -- I think you're about to see exactly where this is going. It's about people's ability to be fair, not arguing the merits.  And I would not go where I thought was argument in your eyes.  So I'm not there intentionally, Your Honor, and I won't go there anymore.

THE COURT:  Whether you're intentionally there or not, you're there, in my view, and you need to continue this voir dire process in a non-argumentative way.

10:49:19   1          MR. HILL:  Yes, sir.

10:49:23   2          MR. SHEASBY:  Your Honor, could I ask one

10:49:25   3   question?  When you said three minutes from, did you say

10:49:26   4   three minutes from the voir dire or three minutes from

10:49:27   5   closing?

10:49:27   6          THE COURT:  Three minutes from closing argument.

10:49:28   7          MR. MELSHEIMER:  Thank you, Your Honor.

10:49:29   8          THE COURT:  Instead of 30, it's now 27 or 40 it's

10:49:32   9   now 37.

10:49:33  10          MR. HILL:  All right.

10:49:34  11          THE COURT:  All right.  Let's continue.

10:49:36  12          MR. HILL:  Thank you, Judge.

10:49:37  13          (Bench conference concluded.)

10:49:42  14          THE COURT:  Let's continue.

10:49:42  15          MR. HILL:  Thank you, Your Honor.

10:49:43  16          Now, folks, you heard Ms. Smith and I talking

10:49:47  17   about these different things.  I usually find people break

10:49:50  18   into one or two camps when they think about patents, okay?

10:49:54  19   One camp is people think, okay, it's different, something

10:49:58  20   may be different, but if you're technically still doing the

10:50:01  21   same thing, that's just a technicality, and that's not

10:50:08  22   fair.  Okay?

10:50:08  23          Other people fall into another camp, and they say,

10:50:12  24   rules are the rules, and if you have to meet each and every

10:50:16  25   element, you've got to meet each and every element.  And

```
10:50:19   1    that's kind of a divide we see among the way people often
10:50:23   2    think about patents.
10:50:23   3            I want to know who thinks they fall into the first
10:50:26   4    camp; that if it sounds close, it probably isn't fair.
10:50:33   5    It's a technicality if it's just a little bit different.
10:50:39   6    And I think that's probably not fair, and you may have an
10:50:42   7    issue.  Anybody feel that way about it?  That's the way you
10:50:45   8    look at it?
10:50:46   9            Yes, ma'am.  No. 16 here, that's Ms. Perkins.
10:50:50  10            JUROR PERKINS:  Yes, sir.
10:50:51  11            MR. HILL:  Tell me about that, Ms. Perkins.
10:50:53  12            JUROR PERKINS:  Changing one widget of an item
10:50:57  13    does not change the product.
10:50:59  14            MR. HILL:  Okay.
10:50:59  15            JUROR PERKINS:  Okay.  I think sometimes in
10:51:04  16    patents, particularly, they'll change one size of a screw
10:51:08  17    and think, okay, now that patent is no longer viable.
10:51:10  18            MR. HILL:  Okay.
10:51:11  19            JUROR PERKINS:  And I think that's wrong.
10:51:12  20            MR. HILL:  All right.  Now, let me ask the other
10:51:15  21    side.  Who thinks that different is different, and that's
10:51:22  22    fair competition?  Different is different.  And so if you
10:51:28  23    build a product, you're not the same as their patent.  You
10:51:31  24    do it a different way.  Is that fair competition?  Anybody
10:51:37  25    share that point of view?  Okay?
```

10:51:40   1          Now, Ms. -- Ms. Perkins, let me -- let me ask you

10:51:48   2   one follow-up question about that if you don't mind.  If

10:51:52   3   you were in a case -- I understand how you feel about it if

10:51:55   4   it's a little different -- if you were in a case and you

10:51:57   5   were told as part of that case that for the person with the

10:52:00   6   burden of proof to prove infringement, they have to show

10:52:04   7   each and every element of the claim, and that if one's

10:52:09   8   missing, there's no infringement, would you be able to

10:52:12   9   follow that instruction, or do you think your belief that,

10:52:16  10   well, close is -- it's not fair?

10:52:19  11          JUROR PERKINS:  No, I'm pretty strong in my

10:52:21  12   belief.

10:52:22  13          MR. HILL:  Pretty strong in your belief?

10:52:24  14          JUROR PERKINS:  Yes, sir.

10:52:24  15          MR. HILL:  So you think you would -- you would

10:52:25  16   have some issue potentially following that instruction if

10:52:28  17   follow that?

10:52:28  18          JUROR PERKINS:  Yes, sir, I do.

10:52:29  19          MR. HILL:  Okay.  Thank you, ma'am.

10:52:31  20          Now, let me also talk to you folks about another

10:52:41  21   thing I think you're going to learn about a patent case.

10:52:44  22   You're going to learn in a patent case that the words

10:52:46  23   matter -- the words of the actual patent claims.

10:52:49  24          That's what you saw in the video this morning

10:52:52  25   where they talked about the claims of the patent, and

| | | |
|---|---|---|
| 10:52:54 | 1 | you're going to learn that the words matter. |
| 10:52:55 | 2 | Is there anybody here that's ever been in a |
| 10:52:58 | 3 | dispute with an insurance company about coverage? |
| 10:53:02 | 4 | Okay.  We've got a couple here. |
| 10:53:05 | 5 | No. 5, yes, sir, Mr. Laird.  Been in a dispute |
| 10:53:09 | 6 | with an insurance company about coverage? |
| 10:53:11 | 7 | JUROR LAIRD:  It was simple insurance on furniture |
| 10:53:14 | 8 | that I bought. |
| 10:53:14 | 9 | MR. HILL:  Okay.  All right.  And in the process |
| 10:53:17 | 10 | of that, did you learn in discussing your issue with an |
| 10:53:21 | 11 | insurance company that the words seem to matter a lot, |
| 10:53:24 | 12 | words of the policy? |
| 10:53:25 | 13 | JUROR LAIRD:  Of course. |
| 10:53:26 | 14 | MR. HILL:  Okay.  Anybody else ever been in a |
| 10:53:29 | 15 | dispute with an insurance company over policy words or a |
| 10:53:33 | 16 | contract dispute maybe, something where words really |
| 10:53:36 | 17 | mattered? |
| 10:53:38 | 18 | Now, here again, I think people often fall into |
| 10:53:42 | 19 | two camps, okay?  One camp says sticking to the words -- |
| 10:53:50 | 20 | sticking to the words of the policy, sticking to the words |
| 10:53:52 | 21 | of the contract may not reflect the intent.  It may be |
| 10:53:56 | 22 | technical.  May be a technicality.  And so I'm more |
| 10:54:01 | 23 | inclined to go with the intent. |
| 10:54:04 | 24 | Anybody feel that way about if they're looking at |
| 10:54:09 | 25 | a dispute about words, whether it's a contract or something |

10:54:13   1   else?

10:54:13   2           The other camp, people look at it and they say,

10:54:17   3   the words are the deal, and you stick to the deal.  The

10:54:23   4   words are the words, and you stick to the deal.  Who thinks

10:54:26   5   they fall maybe more into that camp?

10:54:29   6           All right.  I've got some hands here.  Let me see,

10:54:31   7   we didn't get any hands the first time.  Everybody

10:54:36   8   generally feel they're in the second camp?  Is that what I

10:54:39   9   should take from that?  Yeah?  So words are the deal.

10:54:41  10           Now, what you're going to learn in this case,

10:54:43  11   ladies and gentlemen, is that the words in a patent case

10:54:49  12   matter because it's those words that define the scope of

10:54:52  13   the invention.  And it's those words that limit the scope

10:54:55  14   of the invention, and those are what tells the world what

10:54:58  15   was invented and also what was not invented.

10:55:02  16           So let me ask this question of those of you here:

10:55:07  17   If you are elected -- or chosen to serve on this jury, will

10:55:11  18   each of you commit to me that you will decide the case

10:55:18  19   based on the law the Judge gives you about how you read the

10:55:21  20   words of that patent?  Can I get that commitment here from

10:55:26  21   the front row?

10:55:27  22           Is there anybody who thinks they would have

10:55:29  23   trouble doing that?  The Judge instructs you on the words

10:55:32  24   of the patent, that you'll have any trouble following those

10:55:34  25   instructions?

10:55:35  1          Anybody on the second row?

10:55:37  2          Anybody out here?

10:55:39  3          All right.  Now, before I get too far into this, I

10:55:44  4   want to ask the obvious questions that the lawyers always

10:55:47  5   have to ask in these cases.  I want to ask about if you

10:55:50  6   know anybody in the courtroom that may be on the

10:55:52  7   Plaintiff's side of the case, okay?

10:55:54  8          So, first off, you heard earlier the lawyers were

10:55:57  9   introduced to you.  There's a law firm called Irell &

10:56:01 10   Manella that is representing USAA, the Plaintiff.

10:56:05 11   Mr. Jason Sheasby from the Los Angeles office of Irell &

10:56:08 12   Manella is here on behalf of them.  Anyone familiar with

10:56:12 13   the law firm Irell & Manella or Mr. Sheasby?  No?  All

10:56:16 14   right.

10:56:16 15          They've also hired, as you met earlier, a local

10:56:20 16   lawyer, Mr. Bunt -- Chris Bunt from over in Tyler.  He

10:56:23 17   practices with a firm called Parker, Bunt & Ainsworth.

10:56:27 18   Chris's wife and his -- his family are from the Hallsville

10:56:30 19   area.  The Bunts or the Parkers, they're from the

10:56:35 20   Hallsville area.

10:56:37 21          Does anyone have any connections to Mr. Bunt or

10:56:40 22   think they know any of his family -- the Parker family or

10:56:42 23   the Bunt family there in the Hallsville area?

10:56:45 24          All right.  Now, the other person or other company

10:56:52 25   you've been asked about in this case is United Services

| | | |
|---|---|---|
| 10:56:58 | 1 | Automobile Association.  That's USAA.  That's the Plaintiff |
| 10:57:01 | 2 | in the case.  And they are a San Antonio-based Fortune 500 |
| 10:57:05 | 3 | diversified financial services group of companies, |
| 10:57:08 | 4 | including Texas Department of Insurance-regulated |
| 10:57:12 | 5 | reciprocal insurance exchange and subsidiaries offering |
| 10:57:16 | 6 | banking and investing and insurance. |
| 10:57:19 | 7 | Is there anyone here today who has personal |
| 10:57:22 | 8 | experience -- feels like they know USAA?  No? |
| 10:57:29 | 9 | Yes, sir, No. -- it's Mr. Howard? |
| 10:57:35 | 10 | JUROR HOWARD:  I know AAA, my insurance.  And I |
| 10:57:41 | 11 | went to there because it was the cheapest and the best. |
| 10:57:44 | 12 | MR. HILL:  Okay.  Well, let's talk about that, |
| 10:57:46 | 13 | Mr. Howard, because I want to make sure we're clear on it. |
| 10:57:50 | 14 | You said you know AAA insurance. |
| 10:57:50 | 15 | JUROR HOWARD:  Uh-huh. |
| 10:57:52 | 16 | MR. HILL:  There is a AAA in this world, the |
| 10:57:54 | 17 | American Automobile Association. |
| 10:57:57 | 18 | JUROR HOWARD:  Right. |
| 10:57:57 | 19 | MR. HILL:  Okay.  This company -- |
| 10:57:58 | 20 | JUROR HOWARD:  I got it mixed up then. |
| 10:57:59 | 21 | MR. HILL:  This company is USAA. |
| 10:58:02 | 22 | JUROR HOWARD:  Oh, okay. |
| 10:58:03 | 23 | MR. HILL:  Who do you have business with? |
| 10:58:05 | 24 | JUROR HOWARD:  The car insurance. |
| 10:58:07 | 25 | MR. HILL:  The AAA? |

| | | |
|---|---|---|
| 10:58:09 | 1 | JUROR HOWARD:  AAA. |
| 10:58:10 | 2 | MR. HILL:  All right.  Thank you, sir. |
| 10:58:12 | 3 | Anybody else who is a USAA customer or member? |
| 10:58:23 | 4 | Now, one thing that you heard Mr. Bunt mention is |
| 10:58:25 | 5 | that USAA markets itself to military families -- to |
| 10:58:31 | 6 | military members and military families.  But it is not a |
| 10:58:35 | 7 | military-affiliated organization.  It is a private company, |
| 10:58:41 | 8 | okay? |
| 10:58:41 | 9 | Is there anybody that thought USAA was somehow |
| 10:58:46 | 10 | affiliated -- part of the U.S. military?  No?  Everybody |
| 10:58:55 | 11 | understand that's a private company?  All right. |
| 10:58:58 | 12 | Now, is there anybody here that just has |
| 10:59:02 | 13 | particularly strong feelings toward USAA?  You like them a |
| 10:59:07 | 14 | lot or maybe you don't.  Anybody with feelings one way or |
| 10:59:13 | 15 | the other? |
| 10:59:14 | 16 | Now, let me ask the same question about my |
| 10:59:18 | 17 | client -- about Wells Fargo Bank.  Most folks have heard of |
| 10:59:22 | 18 | Wells Fargo.  Is there anybody that has negative feelings |
| 10:59:26 | 19 | toward Wells Fargo? |
| 10:59:29 | 20 | Now, I know we heard earlier from -- from you, |
| 10:59:31 | 21 | Mr. Parras.  I appreciate that. |
| 10:59:33 | 22 | Anybody else?  Okay.  Right here, No. 15, yes, |
| 10:59:38 | 23 | sir? |
| 10:59:39 | 24 | JUROR HOLLADAY:  I'd like to go back to your |
| 10:59:40 | 25 | previous question about USAA. |

10:59:42  1          MR. HILL:  Yes, sir.

10:59:43  2          JUROR HOLLADAY:  Just the people that I've worked

10:59:45  3   with in the military that come and go through our

10:59:48  4   anesthesia practice, have had USAA and had positive things

10:59:52  5   to say about that.

10:59:53  6          MR. HILL:  Okay.

10:59:54  7          JUROR HOLLADAY:  So that might lean me towards --

10:59:56  8          MR. HILL:  You think you would start out leaning

10:59:58  9   toward USAA because of what you've heard about them before?

11:00:01  10         JUROR HOLLADAY:  Yes, sir.  That and just my

11:00:03  11  negative experience with my wife and the bank in the past.

11:00:06  12         MR. HILL:  All right.  Also, about that,

11:00:09  13  Mr. Holladay, do you think that experience -- negative

11:00:12  14  experience that your wife had with a bank in the past -- it

11:00:15  15  wasn't Wells Fargo Bank, was it --

11:00:16  16         JUROR HOLLADAY:  No, sir.

11:00:18  17         MR. HILL:  All right.  But you think just because

11:00:19  18  of that negative experience with a bank, that my side of

11:00:22  19  the case might start out behind because of --

11:00:26  20         JUROR HOLLADAY:  Maybe.

11:00:27  21         MR. HILL:  I appreciate that, sir.

11:00:30  22         All right.  Anybody else that had USAA thoughts?

11:00:33  23         Yes, sir, No. 28?

11:00:35  24         JUROR CALLISON:  Actually it was more about Wells

11:00:43  25  Fargo.  And I put it in my written response, that I've

| | | |
|---|---|---|
| 11:00:44 | 1 | heard some -- a lot of negative reviews in our little town |
| 11:00:48 | 2 | about our local branch. |
| 11:00:49 | 3 | MR. HILL:  Problems with a local branch, you've |
| 11:00:51 | 4 | heard people talk about? |
| 11:00:52 | 5 | JUROR CALLISON:  Yes. |
| 11:00:53 | 6 | MR. HILL:  Okay.  Anything about that that would |
| 11:00:54 | 7 | cause you to start out -- cause us to start out behind in |
| 11:00:57 | 8 | your mind? |
| 11:00:59 | 9 | JUROR CALLISON:  I'm guessing this is a -- kind of |
| 11:01:01 | 10 | an app issue.  It probably wouldn't cause me -- |
| 11:01:04 | 11 | MR. HILL:  Okay.  All right.  I appreciate that, |
| 11:01:05 | 12 | sir. |
| 11:01:05 | 13 | Let me ask this:  Now, we've -- we've covered |
| 11:01:13 | 14 | jurors that know each other.  Does anybody know Judge |
| 11:01:15 | 15 | Gilstrap?  Anybody know Judge Gilstrap from the community? |
| 11:01:18 | 16 | All right.  Let me ask, has anyone here ever been |
| 11:01:25 | 17 | involved with a patent case -- involved with a patent case |
| 11:01:29 | 18 | in some way?  Could be you served on a prior jury in a |
| 11:01:33 | 19 | patent case or could be you were asked to participate in |
| 11:01:38 | 20 | some kind of mock trial or study of some sort about a |
| 11:01:42 | 21 | patent dispute?  Anybody ever had any of those experiences? |
| 11:01:48 | 22 | Now, we talked earlier to some of you folks that |
| 11:01:56 | 23 | have used mobile deposit before.  And I got a list here -- |
| 11:02:01 | 24 | let me see hands one more time, those of you that have used |
| 11:02:05 | 25 | a mobile deposit product for depositing a check. |

| | | |
|---|---|---|
| 11:02:09 | 1 | Has anybody used one both ways, used both the |
| 11:02:15 | 2 | manual capture style and the auto capture style? |
| 11:02:17 | 3 | Right here, No. 5.  Yes, sir, that's Mr. Laird? |
| 11:02:25 | 4 | JUROR LAIRD:  Chase Bank has the auto and manual. |
| 11:02:29 | 5 | MR. HILL:  Did they strike you as that different? |
| 11:02:30 | 6 | JUROR LAIRD:  I turned the auto off because it |
| 11:02:32 | 7 | didn't work that well. |
| 11:02:33 | 8 | MR. HILL:  Okay.  So you turned it off and used |
| 11:02:35 | 9 | the manual part? |
| 11:02:36 | 10 | JUROR LAIRD:  Uh-huh. |
| 11:02:37 | 11 | MR. HILL:  All right.  Anybody else choose to use |
| 11:02:40 | 12 | both? |
| 11:02:42 | 13 | Now, as mentioned, because this case concerns |
| 11:02:47 | 14 | mobile deposit, it concerns checks -- paper checks.  And so |
| 11:02:51 | 15 | I'd like to know how many of you think paper checks are |
| 11:02:58 | 16 | still really important in your life; you still deal in |
| 11:03:01 | 17 | paper checks a lot, still use a lot of paper checks? |
| 11:03:04 | 18 | All right.  Let's keep your hands up, please, if |
| 11:03:06 | 19 | you can.  We've got No. 1, 7, 3, 5. |
| 11:03:10 | 20 | All right.  Well, I want to go down the row and |
| 11:03:10 | 21 | ask a few questions of you folks about the paper check |
| 11:03:14 | 22 | experience.  We'll start with No. 1, Ms. Hutto. |
| 11:03:17 | 23 | Ms. Hutto, would you say that paper checks are |
| 11:03:23 | 24 | just as important in your life today as they were, say, 15 |
| 11:03:26 | 25 | years ago? |

```
11:03:27   1              JUROR HUTTO:  Yes.

11:03:27   2              MR. HILL:  Okay.  You still regularly deal in

11:03:29   3   paper checks and have to deposit those?

11:03:32   4              JUROR HUTTO:  Yes.

11:03:33   5              MR. HILL:  All right.  Great.  I appreciate that.

11:03:34   6              Let's move on down the row here.  We have No. 3.

11:03:36   7              Yes, sir, Mr. Coleman.

11:03:38   8              JUROR COLEMAN:  Yes.

11:03:39   9              MR. HILL:  Same question.

11:03:41  10              JUROR COLEMAN:  No, I don't use them near like I

11:03:43  11   did 15 years ago.

11:03:43  12              MR. HILL:  All right.  You think they're --

11:03:44  13              JUROR COLEMAN:  I still use them quite a bit, but

11:03:46  14   we use a card most of the time, but we use lots of checks.

11:03:51  15              MR. HILL:  All right.  Declining in importance,

11:03:53  16   would you think, paper checks, just in your personal life?

11:03:55  17              JUROR COLEMAN:  Yes.

11:03:55  18              MR. HILL:  Thank you.

11:03:56  19              Come on down here.  We had No. 6, that's Ms.

11:04:00  20   Martin.

11:04:00  21              JUROR MARTIN:  Personal life, no.  Checks very --

11:04:05  22   very rarely.  Business life, very important.

11:04:08  23              MR. HILL:  Very important still in the business?

11:04:10  24              JUROR MARTIN:  Yes.

11:04:12  25              MR. HILL:  So would you say they're more or less
```

| | | |
|---|---|---|
| 11:04:14 | 1 | important now than they were 15 years ago, in your personal |
| 11:04:17 | 2 | experience? |
| 11:04:17 | 3 | JUROR MARTIN:  In my -- in my personal life, less |
| 11:04:19 | 4 | important. |
| 11:04:20 | 5 | MR. HILL:  All right. |
| 11:04:20 | 6 | JUROR MARTIN:  In my business life, very |
| 11:04:22 | 7 | important. |
| 11:04:22 | 8 | MR. HILL:  Then we'll move on down here. |
| 11:04:26 | 9 | Mr. Cothren. |
| 11:04:27 | 10 | JUROR COTHREN:  In my personal life, no, they do |
| 11:04:29 | 11 | not have the same relevance today they did 15 years ago. |
| 11:04:34 | 12 | Working for the county, we cut checks for all vendors.  I |
| 11:04:38 | 13 | deal with paying bills every two weeks. |
| 11:04:41 | 14 | MR. HILL:  All right.  Thank you. |
| 11:04:42 | 15 | Here on the back row, we had a number of hands |
| 11:04:44 | 16 | also.  I would like to ask you folks the same question. |
| 11:04:51 | 17 | Yes, ma'am, No. 8? |
| 11:04:53 | 18 | JUROR HRELJA:  Yes. |
| 11:04:55 | 19 | MR. HILL:  What do you think, 15 years ago to |
| 11:04:57 | 20 | today, more important or less important? |
| 11:05:00 | 21 | JUROR HRELJA:  It would be the same for me. |
| 11:05:02 | 22 | Probably more important today because now I pay my own |
| 11:05:06 | 23 | bills.  So I am a personal believer of writing a check, |
| 11:05:09 | 24 | handing it to somebody, believing in the postal service. |
| 11:05:16 | 25 | Apps kind of scare me a little bit, definitely over the |

```
11:05:18   1   Internet.
11:05:19   2           MR. HILL:  All right.  And coming on down.  We had
11:05:20   3   a few hands on the back row.  Who else says paper checks
11:05:23   4   still just as important in your life today as they were 15
11:05:25   5   years ago?  Anybody?
11:05:28   6           Yes, No. 14, Ms. McCain?
11:05:31   7           JUROR MCCAIN:  They're just as important to me
11:05:37   8   today as they were 15 years ago.
11:05:38   9           MR. HILL:  All right.  Thank you, ma'am.
11:05:39  10           What about out here in the audience?  Let's see
11:05:42  11   your hands, just as important today as they were 15 years
11:05:45  12   ago?  Okay.  We've got Ms. Perkins.  Who else do we have,
11:05:49  13   up there on the -- okay.  Great.  Great.  I appreciate
11:05:51  14   that.
11:05:52  15           Now, earlier there was a question about source
11:05:56  16   code, and I know we heard from Mr. Laird about source code.
11:06:00  17           Is there anybody else that thinks they have
11:06:03  18   familiarity or some knowledge about source code, about
11:06:07  19   computer source code, anybody?  Any kind of training, any
11:06:12  20   kind of classes, any kind of insight into how source code
11:06:16  21   works in a computer?
11:06:21  22           Is there anybody who regularly converts computer
11:06:25  23   file types as part of either your work or things you do at
11:06:29  24   home?
11:06:29  25           All right.  Mr. Laird.
```

| | | |
|---|---|---|
| 11:06:31 | 1 | Anybody else regularly -- okay.  Right back here, |
| 11:06:34 | 2 | No. 19.  That's Mr. Harris. |
| 11:06:40 | 3 | JUROR HARRIS:  Some of the devices I use at work |
| 11:06:42 | 4 | generate one file type, have to send it in to the corporate |
| 11:06:46 | 5 | office, and you have to convert it to another file type |
| 11:06:49 | 6 | before you send it in. |
| 11:06:50 | 7 | MR. HILL:  So that conversion process, how you |
| 11:06:52 | 8 | convert a file from one type to another is something you're |
| 11:06:55 | 9 | familiar with, sir? |
| 11:06:56 | 10 | JUROR HARRIS:  Yes. |
| 11:06:57 | 11 | MR. HILL:  Now, I noticed you mentioned also, |
| 11:06:59 | 12 | Mr. Harris, that you've got a Bachelor of Science in |
| 11:07:01 | 13 | computer science; is that right? |
| 11:07:03 | 14 | JUROR HARRIS:  Yes, sir. |
| 11:07:03 | 15 | MR. HILL:  Did your computer science training for |
| 11:07:07 | 16 | college discuss computer source code, deal in anything of |
| 11:07:08 | 17 | that sort? |
| 11:07:09 | 18 | JUROR HARRIS:  That was '86. |
| 11:07:11 | 19 | MR. HILL:  Okay. |
| 11:07:11 | 20 | JUROR HARRIS:  Your phone's got more than what I |
| 11:07:14 | 21 | dealt with in '86. |
| 11:07:15 | 22 | MR. HILL:  All right, then. |
| 11:07:16 | 23 | Now, let me ask, this is a lawsuit, and there's a |
| 11:07:30 | 24 | Plaintiff in a lawsuit, and there's a Defendant in a |
| 11:07:32 | 25 | lawsuit.  That's the way it works.  Has anybody here |

| | | |
|---|---|---|
| 11:07:34 | 1 | themselves ever had to be a Plaintiff in a lawsuit? |
| 11:07:37 | 2 | Plaintiff in a lawsuit? |
| 11:07:39 | 3 | Okay.  I've got a few specific questions I want to |
| 11:07:43 | 4 | ask of some of you before my time expires that -- of things |
| 11:07:48 | 5 | you mentioned either in your questionnaire or you mentioned |
| 11:07:50 | 6 | here in court today. |
| 11:07:51 | 7 | And so I want to -- No. 7, Mr. Cothren, what did |
| 11:07:56 | 8 | you do before you were a County Commissioner? |
| 11:07:59 | 9 | JUROR COTHREN:  I worked in several different |
| 11:08:01 | 10 | occupations.  Probably the most major was the recycled |
| 11:08:04 | 11 | paper industry.  I was a salaried employee for quality |
| 11:08:09 | 12 | control, purchasing, chipping, I wore many hats. |
| 11:08:13 | 13 | Construction work.  It's been a long time ago, |
| 11:08:20 | 14 | that's the ones I can remember. |
| 11:08:21 | 15 | MR. HILL:  All right.  Very good.  Thank you, sir. |
| 11:08:23 | 16 | Also then, No. 9, if I can, that's Ms. Carpenter. |
| 11:08:29 | 17 | Ms. Carpenter, you mentioned you had been on a |
| 11:08:32 | 18 | prior federal jury service in this courtroom? |
| 11:08:34 | 19 | JUROR CARPENTER:  Yes. |
| 11:08:35 | 20 | MR. HILL:  Do you remember what kind of case it |
| 11:08:36 | 21 | was? |
| 11:08:37 | 22 | THE COURT:  Ma'am, please -- please stand up, |
| 11:08:40 | 23 | ma'am. |
| 11:08:41 | 24 | JUROR CARPENTER:  No. |
| 11:08:42 | 25 | MR. HILL:  You don't remember?  Was it a patent |

| | | |
|---|---|---|
| 11:08:45 | 1 | case? |
| 11:08:45 | 2 | JUROR CARPENTER:  Something about Sony is all I |
| 11:08:47 | 3 | can remember. |
| 11:08:47 | 4 | MR. HILL:  All right.  Did you serve through the |
| 11:08:50 | 5 | whole case, and y'all made a decision? |
| 11:08:52 | 6 | JUROR CARPENTER:  No, they came back from lunch |
| 11:08:53 | 7 | and they had settled. |
| 11:08:55 | 8 | MR. HILL:  All right.  All right.  Thank you, |
| 11:08:57 | 9 | ma'am. |
| 11:08:57 | 10 | Now, let me ask right next to you here, |
| 11:09:00 | 11 | Mr. Howard. |
| 11:09:00 | 12 | THE COURT:  You have five minutes remaining, |
| 11:09:02 | 13 | counsel. |
| 11:09:02 | 14 | MR. HILL:  Thank you, Your Honor. |
| 11:09:03 | 15 | Mr. Howard, you mentioned earlier that you had |
| 11:09:06 | 16 | served on a civil case once before or had been called for |
| 11:09:08 | 17 | one, but they let you go, because before they got started, |
| 11:09:11 | 18 | you said you already had your mind made up. |
| 11:09:14 | 19 | JUROR HOWARD:  Yes, sir, because it was an inmate |
| 11:09:16 | 20 | suing the guards. |
| 11:09:18 | 21 | MR. HILL:  Okay.  All right.  Well, that -- my |
| 11:09:20 | 22 | question is, do you have your mind made up in this case? |
| 11:09:22 | 23 | JUROR HOWARD:  No. |
| 11:09:23 | 24 | MR. HILL:  All right.  Is there anybody that does |
| 11:09:25 | 25 | have their mind made up in this case? |

11:09:28   1          Okay.  Thank you.

11:09:29   2          Let's look here to No. 14, please, Ms. McCain.

11:09:37   3          Let me ask you a similar question, Ms. McCain.

11:09:40   4   You also mentioned serving on a civil case in Marion County

11:09:44   5   three years ago, I think you said.  Do you remember what

11:09:47   6   kind of case that was?

11:09:49   7          JUROR MCCAIN:  Dissolving parental rights.

11:09:56   8          MR. HILL:  Okay.  All right.  Very good.  Anything

11:09:57   9   about that experience you think would impact your thoughts

11:10:00  10   about this case?

11:10:01  11          JUROR MCCAIN:  No, sir.

11:10:02  12          MR. HILL:  All right.  Thank you, ma'am.

11:10:10  13          Ladies and gentlemen, I know, as Mr. Bunt

11:10:12  14   mentioned, there's not a question that we can always ask

11:10:14  15   that triggers the thought in everybody's mind of, you know,

11:10:14  16   if the lawyer -- or may have triggered the thought in your

11:10:20  17   mind -- if the lawyer had just asked me this question, he

11:10:23  18   would have learned something about me that he probably

11:10:26  19   needs to know.  He would learn something about my past

11:10:30  20   experiences that might impact on my service in this case.

11:10:34  21          And that's the challenge of these things is, we

11:10:36  22   only have limited amount of time.  There's a lot of folks.

11:10:39  23   We only get to talk to you for a short period of time.

11:10:42  24          But I would ask if any of you have anything that

11:10:44  25   you think in your mind that parties like these in a case

| | | |
|---|---|---|
| 11:10:48 | 1 | over a serious issue ought to know as they try to pick the |
| 11:10:53 | 2 | fairest jury they can get to hear a case for them, will you |
| 11:10:57 | 3 | please raise your hand and let me know?  If there's |
| 11:11:01 | 4 | anything that's come up, anything -- any of the questions |
| 11:11:04 | 5 | you've heard today may have triggered, that have caused you |
| 11:11:06 | 6 | to think, you know, if they had just asked the right |
| 11:11:08 | 7 | question, they'd probably want to know this?  Anybody? |
| 11:11:15 | 8 | All right.  Well, let me say thank you.  I |
| 11:11:17 | 9 | appreciate your time.  I appreciate your attention.  We |
| 11:11:19 | 10 | look forward to presenting our case to you.  And I want to |
| 11:11:24 | 11 | thank all of you again for showing up, doing your civic |
| 11:11:27 | 12 | duty, and participating in jury service because it really |
| 11:11:30 | 13 | is what makes our civil justice system work. |
| 11:11:33 | 14 | Thank you, Your Honor. |
| 11:11:34 | 15 | THE COURT:  All right.  Counsel, approach the |
| 11:11:36 | 16 | bench, please. |
| 11:11:48 | 17 | (Bench conference.) |
| 11:11:48 | 18 | THE COURT:  I do want to clarify one thing on the |
| 11:11:51 | 19 | record.  I think I misspoke the last time you were up here |
| 11:11:56 | 20 | and I said I was deducting three minutes from the |
| 11:11:58 | 21 | Plaintiff's closing.  It's from the Defendant's closing, |
| 11:12:01 | 22 | just to make sure that's clear. |
| 11:12:02 | 23 | All right.  Does Plaintiff have any challenges for |
| 11:12:05 | 24 | cause? |
| 11:12:05 | 25 | MR. SHEASBY:  Yes, Your Honor.  We challenge for |

| | | |
|---|---|---|
| 11:12:08 | 1 | cause Juror No. 8 and Juror No. 11. |
| 11:12:12 | 2 | MR. BUNT:  And 25. |
| 11:12:14 | 3 | MR. SHEASBY:  And 25, yes, Your Honor. |
| 11:12:16 | 4 | THE COURT:  All right.  Does Defendant have |
| 11:12:22 | 5 | challenges for cause? |
| 11:12:23 | 6 | MR. HILL:  Yes, Your Honor.  We would challenge |
| 11:12:26 | 7 | for cause No. 4, challenge for cause No. 21, Your Honor, |
| 11:12:37 | 8 | and also 22 and also 15. |
| 11:12:45 | 9 | MR. MELSHEIMER:  20 had wanted to speak to you. |
| 11:12:50 | 10 | THE COURT:  I have a note.  I'm going to call |
| 11:12:52 | 11 | No. 20 up. |
| 11:12:53 | 12 | MR. MELSHEIMER:  Thank you, Your Honor. |
| 11:12:53 | 13 | THE COURT:  Thank you for reminding me. |
| 11:12:55 | 14 | All right.  That means I'll send the panel to |
| 11:12:58 | 15 | recess except I'll retain, so that I can talk with them |
| 11:13:02 | 16 | here at the bench in your presence, No. 4, No. 8, No. 11, |
| 11:13:11 | 17 | No. 15, No. 20, No. 21, No. 22, and No. 25.  Does anybody |
| 11:13:22 | 18 | have anything different? |
| 11:13:24 | 19 | MR. SHEASBY:  Your Honor, the only thing I have |
| 11:13:26 | 20 | different is that Juror No. 1 said she had an issue that |
| 11:13:29 | 21 | prevented her from serving this week, and perhaps we may |
| 11:13:33 | 22 | want to ask her about that. |
| 11:13:35 | 23 | THE COURT:  That's right. |
| 11:13:36 | 24 | Okay.  You have anything different, Mr. Hill? |
| 11:13:38 | 25 | MR. HILL:  No, sir. |

11:13:38  1          THE COURT:  Okay.  All right.  If you'll return to

11:13:41  2    your seats, gentlemen.

11:13:42  3          MR. SHEASBY:  Thank you, Your Honor.

11:13:43  4          (Bench conference concluded.)

11:13:44  5          THE COURT:  Ladies and gentlemen, I'm about to

11:13:53  6    excuse the members of the venire panel for recess.

11:13:58  7    However, there are a few of you I'm going to ask to stay

11:14:00  8    behind so that I can talk with you one at a time here at

11:14:03  9    the bench.

11:14:06  10         The members of the panel that I'm going to ask to

11:14:08  11   stay behind are Panel Member No. 1, Ms. Hutto; No. 4,

11:14:15  12   Mr. Parras; No. 8, Ms. Hrelja; No. 11, Ms. Smith; No. 15,

11:14:27  13   Mr. Holladay; No. 20, Mr. Blaylock; No. 21, Ms. Barnard,

11:14:35  14   No. 22, Mr. Davis; and No. 25, Mr. Traylor.

11:14:42  15         Everyone else, I'm going to excuse you for recess.

11:14:47  16   I'm going to ask that you exit the courtroom through the

11:14:50  17   double doors in the back.  We'll -- we'll begin with

11:14:56  18   Commissioner Cothren here, he can lead the way.  But just a

11:14:59  19   moment.  I want to give you a couple more instructions.

11:15:01  20         First of all, ladies and gentlemen, as you exit

11:15:04  21   the courtroom through the double doors in the back, if you

11:15:06  22   will make a left and go around the corner, you'll find two

11:15:10  23   important things; you'll find the water fountains and

11:15:12  24   you'll find the restrooms.  So take advantage of those

11:15:16  25   during recess.

| | | |
|---|---|---|
| 11:15:17 | 1 | Also, ladies and gentlemen, I'm going to ask you |
| 11:15:19 | 2 | not to leave the building.  Stay inside the building, |
| 11:15:22 | 3 | please. |
| 11:15:22 | 4 | Number three, don't discuss anything that's |
| 11:15:26 | 5 | happened in the courtroom this morning.  Talk about the |
| 11:15:29 | 6 | weather, talk about how Baylor is number one in the Big 12 |
| 11:15:36 | 7 | Conference right now, talk about any other matter you want |
| 11:15:37 | 8 | to talk about, grandchildren, anything you want to talk |
| 11:15:40 | 9 | about, but don't talk about what's happened in the |
| 11:15:43 | 10 | courtroom today. |
| 11:15:43 | 11 | I remind all of you, you have heard absolutely no |
| 11:15:48 | 12 | evidence in this case.  What the lawyers tell you and what |
| 11:15:53 | 13 | they've said during their questioning this morning is not |
| 11:15:57 | 14 | evidence in this case. |
| 11:15:59 | 15 | So don't discuss what's happened in here |
| 11:16:02 | 16 | whatsoever. |
| 11:16:02 | 17 | And then when time permits, I will have everyone |
| 11:16:06 | 18 | back in the courtroom. |
| 11:16:08 | 19 | But if I could get everyone that I've mentioned |
| 11:16:12 | 20 | specifically to remain, if you will just step aside and let |
| 11:16:15 | 21 | those around you that are leaving leave, and then remain in |
| 11:16:19 | 22 | the seat that you're in, we'll proceed from there. |
| 11:16:22 | 23 | Those I've not mentioned are now excused for |
| 11:16:25 | 24 | recess. |
| 11:17:18 | 25 | (Venire panel out.) |

| | | |
|---|---|---|
| 11:17:19 | 1 | THE COURT:  All right.  Be seated, please. |
| 11:17:21 | 2 | Counsel, approach the bench, please. |
| 11:17:31 | 3 | (Bench conference.) |
| 11:17:32 | 4 | (Open court.) |
| 11:17:34 | 5 | THE COURT:  Ms. Hutto, would you come up and join |
| 11:17:56 | 6 | us, please? |
| 11:18:10 | 7 | (Bench conference continued.) |
| 11:18:10 | 8 | THE COURT:  Good morning.  These are our |
| 11:18:12 | 9 | microphones.  If you and I can just talk privately into |
| 11:18:16 | 10 | those microphones, Ms. Hutto. |
| 11:18:18 | 11 | JUROR HUTTO:  Okay. |
| 11:18:19 | 12 | THE COURT:  When we started today and I asked |
| 11:18:20 | 13 | about people that would have a very difficult time being |
| 11:18:23 | 14 | available if selected to serve, you raised your hand.  Can |
| 11:18:25 | 15 | you tell me what your scheduling issues are? |
| 11:18:27 | 16 | JUROR HUTTO:  Well, part of it is the -- I work in |
| 11:18:33 | 17 | a small medical office where there's only three employees. |
| 11:18:35 | 18 | THE COURT:  I know Dr. Rotzler. |
| 11:18:38 | 19 | JUROR HUTTO:  Okay.  And so we have no nurse right |
| 11:18:42 | 20 | now, so I'm having to do that job.  So there's only a nurse |
| 11:18:44 | 21 | and receptionist and no one else, and we can't seem to find |
| 11:18:48 | 22 | someone to step in and help. |
| 11:18:49 | 23 | THE COURT:  Okay. |
| 11:18:50 | 24 | JUROR HUTTO:  So I'm having problems with my |
| 11:18:52 | 25 | 86-year-old parents being in the hospital, one last week, |

| | | |
|---|---|---|
| 11:18:55 | 1 | one this week.  You know, I don't have full care of them, |
| 11:18:58 | 2 | but it's still a stressful matter. |
| 11:19:03 | 3 | THE COURT:  Okay. |
| 11:19:05 | 4 | JUROR HUTTO:  Anyway, he wrote me a letter.  I |
| 11:19:07 | 5 | don't know if that helps, but... |
| 11:19:09 | 6 | THE COURT:  All right.  I'll give you that back. |
| 11:19:17 | 7 | That just confirms in writing what you've told me about |
| 11:19:21 | 8 | Dr. Rotzler and his -- his staffing issues. |
| 11:19:23 | 9 | JUROR HUTTO:  Yes. |
| 11:19:24 | 10 | THE COURT:  All right. |
| 11:19:25 | 11 | JUROR HUTTO:  We have someone hired, but it's |
| 11:19:27 | 12 | three weeks before they can come to work. |
| 11:19:28 | 13 | THE COURT:  Okay.  Mr. Bunt, do you have any |
| 11:19:35 | 14 | questions for Ms. Hutto? |
| 11:19:38 | 15 | MR. BUNT:  No, Your Honor, I don't. |
| 11:19:39 | 16 | THE COURT:  Mr. Hill? |
| 11:19:41 | 17 | MR. HILL:  No, sir. |
| 11:19:41 | 18 | THE COURT:  Ms. Hutto, I'm going to ask you to |
| 11:19:44 | 19 | join the rest of the group outside.  Just don't discuss |
| 11:19:46 | 20 | anything that we've talked about in here. |
| 11:19:48 | 21 | JUROR HUTTO:  Okay. |
| 11:19:49 | 22 | THE COURT:  Thank you. |
| 11:19:50 | 23 | JUROR HUTTO:  All right. |
| 11:19:51 | 24 | (Juror exits courtroom.) |
| 11:19:51 | 25 | THE COURT:  I'm not going to excuse Ms. Hutto. |

| | | |
|---|---|---|
| 11:19:55 | 1 | Her employer can certainly arrange for temporary help. |
| 11:20:00 | 2 | That's not anything personal to her, and she did not |
| 11:20:04 | 3 | indicate anything with her parents that would justify her |
| 11:20:09 | 4 | being excused.  She made it clear she wasn't the sole |
| 11:20:13 | 5 | caregiver, and the Court's not inclined to excuse an |
| 11:20:21 | 6 | employee whose employer is having staffing problems.  I |
| 11:20:26 | 7 | just don't think that rises to the level of an excuse from |
| 11:20:31 | 8 | jury duty.  So Ms. Hutto stays on the panel. |
| 11:20:33 | 9 | (Open court.) |
| 11:20:33 | 10 | THE COURT:  All right.  Mr. Parras, would you come |
| 11:20:36 | 11 | up, please, sir? |
| 11:20:52 | 12 | (Bench conference continued.) |
| 11:20:52 | 13 | THE COURT:  Good morning. |
| 11:20:57 | 14 | JUROR PARRAS:  Good morning. |
| 11:20:57 | 15 | THE COURT:  If you'll step up, Mr. Parras.  These |
| 11:21:00 | 16 | are microphones, and if you and I can just talk quietly |
| 11:21:03 | 17 | into those microphones. |
| 11:21:05 | 18 | JUROR PARRAS:  Okay. |
| 11:21:06 | 19 | THE COURT:  Mr. Hill, do you have questions of |
| 11:21:07 | 20 | Mr. Parras? |
| 11:21:09 | 21 | MR. HILL:  I did. |
| 11:21:09 | 22 | Mr. Parras, when we were talking earlier, you were |
| 11:21:11 | 23 | explaining to me the problem that you had with your |
| 11:21:13 | 24 | daughter and dealing with Wells Fargo Bank.  I know in your |
| 11:21:15 | 25 | questionnaire, too, you had written in an opinion about |

11:21:19  1   Wells Fargo, mentioning that you thought they were shady.

11:21:21  2   Those are long-held beliefs that you've had?

11:21:25  3             JUROR PARRAS:  Ever since they treated my daughter

11:21:27  4   the way that they did.

11:21:29  5             MR. HILL:  Okay.  And you think because of the way

11:21:31  6   they've treated your daughter, that would be the kind of

11:21:33  7   thing that would cause you to be biassed against Wells

11:21:37  8   Fargo?

11:21:37  9             JUROR PARRAS:  I'm afraid I can't set it aside.

11:21:39  10            MR. HILL:  Okay.  All right.  So we'd start out

11:21:40  11   behind in your mind even -- irrespective of the facts, just

11:21:44  12   because you've had this bad personal experience with them?

11:21:50  13            JUROR PARRAS:  I don't want -- I don't want to put

11:21:51  14   it that way, but it -- but, to me, what I -- it -- it would

11:21:56  15   be hard for me to -- to set aside what -- you know, after

11:22:02  16   I -- after that happened to my daughter and what's happened

11:22:04  17   to me, you know, with checks -- checks that I told you

11:22:07  18   about --

11:22:08  19            MR. HILL:  Yes, sir.

11:22:09  20            JUROR PARRAS:  -- I just -- I just -- you know, in

11:22:11  21   my mind, I don't know whether Wells Fargo did this or not

11:22:16  22   or whatever, but I can say that I wouldn't put it past

11:22:20  23   them.

11:22:21  24            MR. HILL:  Okay.  All right.  Thank you, sir.

11:22:22  25            THE COURT:  Mr. Bunt, do you have any questions of

| | | |
|---|---|---|
| 11:22:25 | 1 | Mr. Parras? |
| 11:22:26 | 2 | MR. BUNT:  Mr. Parras, do you think -- |
| 11:22:28 | 3 | THE COURT:  You're going to have to -- |
| 11:22:29 | 4 | MR. BUNT:  I apologize.  Do you think that if the |
| 11:22:31 | 5 | Judge instructs you -- |
| 11:22:31 | 6 | COURT REPORTER:  Judge? |
| 11:22:31 | 7 | THE COURT:  You're going to have to speak up. |
| 11:22:38 | 8 | MR. BUNT:  If Judge Gilstrap instructs you to |
| 11:22:41 | 9 | follow his guidance, his instructions, his law, and apply |
| 11:22:46 | 10 | it to the facts of the case, do you think you could do |
| 11:22:48 | 11 | that? |
| 11:22:48 | 12 | JUROR PARRAS:  Well, like I said, it would be |
| 11:22:50 | 13 | pretty hard for me to set aside what they did to my |
| 11:22:54 | 14 | daughter.  It involved a mortgage.  So it was -- it was a |
| 11:22:58 | 15 | pretty big deal. |
| 11:23:00 | 16 | MR. BUNT:  Thank you, sir. |
| 11:23:01 | 17 | THE COURT:  Mr. Parras, at the end of the day, the |
| 11:23:03 | 18 | question that the Court always has in a situation like this |
| 11:23:07 | 19 | is, can you be fair and impartial and can you treat Wells |
| 11:23:12 | 20 | Fargo the same way you would treat USAA in this case? |
| 11:23:17 | 21 | JUROR PARRAS:  I have nothing against them. |
| 11:23:19 | 22 | THE COURT:  Do you have -- I understand.  But can |
| 11:23:21 | 23 | you treat both parties the same way? |
| 11:23:23 | 24 | JUROR PARRAS:  No. |
| 11:23:23 | 25 | THE COURT:  You can't do it? |

| | | |
|---|---|---|
| 11:23:24 | 1 | JUROR PARRAS:  No. |
| 11:23:25 | 2 | THE COURT:  Okay, sir.  Well, I'm going to let you |
| 11:23:27 | 3 | join the rest of the group outside.  Just don't discuss |
| 11:23:30 | 4 | anything we've talked about in here. |
| 11:23:32 | 5 | JUROR PARRAS:  All right. |
| 11:23:32 | 6 | MR. BUNT:  Can I ask just one more question? |
| 11:23:34 | 7 | THE COURT:  All right. |
| 11:23:35 | 8 | MR. BUNT:  Do you know that the Wells Fargo that's |
| 11:23:36 | 9 | on the other side, that's the bank that your daughter was |
| 11:23:39 | 10 | using, or is it some other bank? |
| 11:23:41 | 11 | JUROR PARRAS:  It's Wells Fargo, the bank. |
| 11:23:43 | 12 | MR. BUNT:  Thank you, Judge. |
| 11:23:46 | 13 | Thank you, sir. |
| 11:23:46 | 14 | THE COURT:  All right.  Thank you, Mr. Parras. |
| 11:23:46 | 15 | JUROR PARRAS:  All right. |
| 11:23:46 | 16 | (Juror exits courtroom.) |
| 11:23:46 | 17 | (Bench conference continued.) |
| 11:23:49 | 18 | THE COURT:  I'm going to excuse Mr. Parras for |
| 11:23:51 | 19 | cause. |
| 11:23:51 | 20 | (Open court.) |
| 11:23:59 | 21 | THE COURT:  Ms. Hrelja, would you come up and join |
| 11:24:01 | 22 | us, please? |
| 11:24:06 | 23 | (Bench conference continued.) |
| 11:24:06 | 24 | THE COURT:  Good morning, ma'am. |
| 11:24:26 | 25 | These are the microphones, and if you and I can |

11:24:29  1   just talk quietly here at the microphones.

11:24:31  2          JUROR HRELJA:  Okay.

11:24:32  3          THE COURT:  Mr. Bunt, do you have some questions?

11:24:35  4          MR. BUNT:  Yes, Your Honor.

11:24:37  5          THE COURT:  Go ahead.

11:24:37  6          MR. BUNT:  Ms. Hrelja, you had mentioned that you

11:24:40  7   have some difficulty awarding $300 million in this case; is

11:24:45  8   that right?

11:24:45  9          JUROR HRELJA:  Yes, sir.

11:24:46  10         MR. BUNT:  And you just have difficulty with the

11:24:49  11  whole notion of anything being awarded $300 million; is

11:24:53  12  that correct?

11:24:54  13         JUROR HRELJA:  Besides my children?

11:24:56  14         MR. BUNT:  Yes, of course.

11:24:58  15         JUROR HRELJA:  Yes, sir.  A thing, a possession,

11:25:01  16  yes, sir.  That's a whole lot of money.

11:25:02  17         MR. BUNT:  It is a whole lot.  And you understand

11:25:04  18  that's what we're asking for in this case?

11:25:06  19         JUROR HRELJA:  Yes.

11:25:06  20         MR. BUNT:  And would you have difficulty --

11:25:11  21         JUROR HRELJA:  For an app, yes, sir.

11:25:14  22         THE COURT:  Ma'am, you understand you haven't

11:25:15  23  heard any evidence at all?

11:25:17  24         JUROR HRELJA:  Yes, I know.

11:25:19  25         THE COURT:  Let me ask this question:  Could you

11:25:21  1  commit to me that if you were selected to serve on this

11:25:24  2  jury, you would wait until you heard all the evidence and

11:25:27  3  then after you heard all the evidence, decide the issues in

11:25:32  4  this case, including if it comes to that, what amount of

11:25:35  5  money to award the Plaintiff?  Or are you telling me that

11:25:40  6  you couldn't even consider $300 million, no matter what the

11:25:44  7  evidence is; that even before you've heard the first

11:25:48  8  sentence of sworn testimony, your mind's made up?  Which --

11:25:52  9  which of those is it?

11:25:53  10       JUROR HRELJA:  I mean, I would listen to it, yes.

11:26:01  11       THE COURT:  I don't think anybody disagrees it's a

11:26:04  12  lot of money.

11:26:04  13       JUROR HRELJA:  Yes.

11:26:04  14       THE COURT:  But we know the amount of money.  We

11:26:06  15  don't know what the evidence is.

11:26:08  16       JUROR HRELJA:  Right.

11:26:08  17       THE COURT:  And so you're being asked to make a

11:26:10  18  commitment when you know one part, but you haven't heard

11:26:12  19  the other part.

11:26:14  20       My -- my question is:  Could you listen to the

11:26:17  21  evidence and make a decision after you've heard all the

11:26:21  22  evidence, and if that evidence in your mind supported an

11:26:26  23  award of that amount, could you do that?  Or are you

11:26:29  24  telling me, Judge, it really doesn't matter what the

11:26:32  25  evidence is, I could never consider that amount of money,

11:26:36  1   no matter what?  That's -- that's my question.

11:26:39  2          JUROR HRELJA:  Aside from the amount of money,

11:26:41  3   it's that -- it's the -- it's an app dealing with money --

11:26:45  4   like an app on how to deposit your own money?

11:26:48  5          THE COURT:  Yes, ma'am.

11:26:49  6          JUROR HRELJA:  So I am more of -- I don't really

11:26:52  7   care what kind of app is.  I don't agree with an app to

11:26:55  8   deposit your check.

11:26:56  9          Now, that, I do stand on.  I think you should --

11:27:02  10  banks and humans and --

11:27:03  11         THE COURT:  Well, there are a lot of things in the

11:27:05  12  world I don't agree with either, but that doesn't mean they

11:27:09  13  don't happen.  And this happens, and there is a patent on

11:27:11  14  it.

11:27:12  15         JUROR HRELJA:  Right.

11:27:12  16         THE COURT:  You're not going to be asked do you

11:27:15  17  think it's a good idea or bad idea.

11:27:15  18         JUROR HRELJA:  Okay.  Just the --

11:27:17  19         THE COURT:  You're going to be asked is:  Do the

11:27:18  20  products that the Defendants use infringe the patent that

11:27:23  21  the Plaintiff has?  And if it does, what's a fair amount of

11:27:29  22  money to compensate the Plaintiff for that infringement?

11:27:33  23  Those are the questions you'll be asked.

11:27:36  24         And the Plaintiff may very well at the end of the

11:27:38  25  trial get up and ask the jury to agree with them that the

11:27:44  1  Defendants do infringe, and if they do agree with them that

11:27:48  2  the Defendants infringe, the Plaintiffs may very well ask

11:27:51  3  the jury to award $300 million to compensate them for what

11:27:56  4  they say is infringement.

11:27:57  5       Now, if you can let the evidence you've heard

11:28:03  6  through the trial answer that question for you, I think you

11:28:07  7  probably can serve.  If you're telling me you've already

11:28:12  8  got your mind made up and you couldn't award $300 million

11:28:16  9  no matter what the evidence was, then that means you have a

11:28:19  10 problem with being able to be impartial in the case.

11:28:22  11      So that's really the core of the matter I'm trying

11:28:25  12 to get to.

11:28:27  13      JUROR HRELJA:  Right.

11:28:27  14      THE COURT:  I'm trying to decide can you be

11:28:30  15 impartial and can you let the evidence guide you, or is

11:28:33  16 your mind made up?  So not about whether you like apps or

11:28:36  17 don't like apps.  And I might -- I might be more in

11:28:39  18 agreement with you there than you would think.

11:28:42  19      But the question is:  On the award of damages, if

11:28:46  20 any, can you -- is your mind already made up?  There's just

11:28:50  21 no way, no how, no matter what the evidence is you could

11:28:54  22 consider $300 million?  Or -- or could you tell me that

11:28:57  23 you'd listen to the evidence and let the evidence guide you

11:29:00  24 as to what's a fair amount of damages if there are any

11:29:04  25 damages awarded?  And that's not a foregone conclusion at

11:29:08   1   this point.

11:29:09   2        JUROR HRELJA:  Right.  Yes, I can listen to

11:29:13   3   evidence, and, yes, I can make up my mind on whether or not

11:29:16   4   to go one way or another.

11:29:19   5        THE COURT:  Okay.

11:29:19   6        JUROR HRELJA:  Do I think I'm perfect for it?  No,

11:29:21   7   I don't.

11:29:22   8        THE COURT:  All right.

11:29:23   9        JUROR HRELJA:  I'm just being honest.  But, yes, I

11:29:26  10   mean, I can weigh out situations.

11:29:27  11        THE COURT:  Okay.  All right.

11:29:27  12        Mr. Hill, do you have any questions?

11:29:29  13        MR. HILL:  Ma'am, if -- do you believe you'd be

11:29:32  14   able to just be fair-minded, keep an open mind, hear all

11:29:36  15   the evidence, and then decide the case based on the

11:29:38  16   evidence you hear and the instructions the Judge gives you

11:29:40  17   at the end?

11:29:41  18        JUROR HRELJA:  Sure.

11:29:42  19        MR. HILL:  All right.  Thank you.  That's all I

11:29:44  20   have.

11:29:44  21        THE COURT:  One more -- yes, follow up.

11:29:46  22        MR. BUNT:  Are you starting out with the idea that

11:29:51  23   an app is not worth all that much --

11:29:53  24        THE COURT:  Speak up.

11:29:53  25        JUROR HRELJA:  Yes, sir.

| | | |
|---|---|---|
| 11:29:53 | 1 | MR. BUNT:  Are you starting out with the idea that |
| 11:29:58 | 2 | an app is not worth that much? |
| 11:30:00 | 3 | JUROR HRELJA:  Yes, sir.  I know that they get a |
| 11:30:01 | 4 | great deal of money, so, I mean, I know they probably are, |
| 11:30:01 | 5 | but to me in that particular realm, no, sir, they're not. |
| 11:30:04 | 6 | MR. BUNT:  And sitting here before you've heard |
| 11:30:07 | 7 | any evidence at all, are you having difficulty with the |
| 11:30:10 | 8 | idea of being able to award $300 million even if the |
| 11:30:14 | 9 | evidence shows that? |
| 11:30:17 | 10 | JUROR HRELJA:  Yes, for that particular thing, |
| 11:30:21 | 11 | yes. |
| 11:30:21 | 12 | MR. BUNT:  Thank you, ma'am. |
| 11:30:22 | 13 | THE COURT:  All right.  I'm going to let you join |
| 11:30:24 | 14 | the rest of the panel outside during recess through the |
| 11:30:27 | 15 | double doors.  Just don't discuss anything we've talked |
| 11:30:29 | 16 | about in here. |
| 11:30:30 | 17 | JUROR HRELJA:  Okay. |
| 11:30:30 | 18 | THE COURT:  Thank you. |
| 11:30:30 | 19 | (Juror exits courtroom.) |
| 11:30:31 | 20 | (Bench conference continued.) |
| 11:30:31 | 21 | THE COURT:  Counsel, I'm going to carry this issue |
| 11:30:49 | 22 | until I hear from the other venire members, and then I'll |
| 11:30:52 | 23 | let you know. |
| 11:30:55 | 24 | MR. MELSHEIMER:  Your Honor, may I go deliver a |
| 11:30:57 | 25 | message to one of my co-counsel at the table about |

| | | |
|---|---|---|
| 11:31:00 | 1 | something? |
| 11:31:00 | 2 | THE COURT:  Yes, you may. |
| 11:31:06 | 3 | (Open court.) |
| 11:31:06 | 4 | Ms. Smith, would you join us, please? |
| 11:31:18 | 5 | (Bench conference continued.) |
| 11:31:18 | 6 | MR. MELSHEIMER:  Thank you, Your Honor. |
| 11:31:19 | 7 | THE COURT:  Good morning. |
| 11:31:20 | 8 | JUROR SMITH:  Yes, sir. |
| 11:31:21 | 9 | THE COURT:  These are our microphones.  You and I |
| 11:31:23 | 10 | can just talk quietly here. |
| 11:31:25 | 11 | During the questioning, the Plaintiffs mentioned |
| 11:31:29 | 12 | that at the end of the trial, they may be asking the jury |
| 11:31:32 | 13 | to award as much as $300 million.  I think most people |
| 11:31:36 | 14 | agree that's a lot of money.  You indicated that you |
| 11:31:40 | 15 | thought it was an excessive amount. |
| 11:31:46 | 16 | I guess my question to you, Ms. Smith, is, can |
| 11:31:52 | 17 | you, if you're selected, can you listen to the evidence and |
| 11:31:55 | 18 | wait to make up your mind about what a proper award would |
| 11:32:00 | 19 | be if there's any award -- and there may not be -- but if |
| 11:32:04 | 20 | the jury finds that the Plaintiff's patent has been |
| 11:32:09 | 21 | infringed by the Defendant, then the jury is going to be |
| 11:32:12 | 22 | asked to award an appropriate amount of money as damages. |
| 11:32:15 | 23 | Can you listen to the evidence in the case and |
| 11:32:21 | 24 | decide after you've heard all the evidence what the proper |
| 11:32:24 | 25 | amount of damages, if any, is, even if it's as high as $300 |

11:32:30  1  million, or are you telling me that number is so big and so

11:32:35  2  high, it doesn't matter what the evidence is?  I've already

11:32:37  3  got my mind made up.  I could never ever consider an amount

11:32:40  4  that high.  Which of those two do you feel like fits your

11:32:44  5  situation?

11:32:45  6       JUROR SMITH:  I don't believe -- I don't believe I

11:32:47  7  could agree to that amount.

11:32:48  8       THE COURT:  No matter what?

11:32:49  9       JUROR SMITH:  Huh-uh.

11:32:49  10      THE COURT:  And you understand you've not heard

11:32:51  11  any evidence in the case?

11:32:52  12      JUROR SMITH:  Yes, sir.

11:32:52  13      THE COURT:  So it doesn't matter what the evidence

11:32:53  14  is, you couldn't ever consider that amount?

11:32:56  15      JUROR SMITH:  No, sir.

11:32:56  16      THE COURT:  Okay.  All right.  Mr. Hill, do you

11:32:59  17  have questions?

11:32:59  18      MR. HILL:  No, sir, Your Honor.

11:33:00  19      THE COURT:  Mr. Bunt?

11:33:01  20      MR. BUNT:  No, sir, Your Honor.

11:33:02  21      THE COURT:  Ms. Smith, I'm going to let you join

11:33:04  22  the rest of the panel outside.  Just don't discuss what we

11:33:07  23  talked about in here.

11:33:08  24      JUROR SMITH:  Yes, sir.

11:33:09  25      THE COURT:  Thank you, ma'am.

```
11:33:13   1            JUROR SMITH:  Yes, sir.

11:33:13   2            (Juror exits courtroom.)

11:33:14   3            (Bench conference continued.)

11:33:14   4            THE COURT:  I'm going to excuse Ms. Smith.

11:33:18   5            MR. MELSHEIMER:  She made it pretty easy.

11:33:22   6            THE COURT:  Did you say something to me?

11:33:22   7            MR. MELSHEIMER:  She made it pretty easy, I

11:33:25   8    thought.

11:33:25   9            (Open court.)

11:33:25  10            THE COURT:  Mr. Holladay, could you come up,

11:33:25  11    please?

11:33:28  12            (Bench conference continues.)

11:33:28  13            THE COURT:  Good morning, Mr. Holladay.

11:33:35  14            JUROR HOLLADAY:  Yes, sir.

11:33:35  15            THE COURT:  These are our microphones.

11:33:38  16            JUROR HOLLADAY:  No problem.

11:33:39  17            THE COURT:  If we could talk quietly up here.

11:33:41  18            JUROR HOLLADAY:  Sure.

11:33:42  19            THE COURT:  I've heard about the bad experience

11:33:44  20    your wife had working at a bank.  Now, I gather that was

11:33:47  21    not a Wells Fargo Bank?

11:33:48  22            JUROR HOLLADAY:  No, sir.

11:33:50  23            THE COURT:  Okay.  And you've made it clear that

11:33:53  24    it would be hard for you to award a figure as high as the

11:33:57  25    number that the Plaintiffs mentioned, but I didn't hear you
```

11:34:01  1  say you couldn't do it.  I thought I heard you say you'd

11:34:05  2  listen to the evidence and let that guide you in regard to

11:34:07  3  an award.

11:34:08  4      I did hear you say that you have friends at work

11:34:12  5  who use USAA and have had good experiences with them.  I

11:34:17  6  guess all of this taken together, Mr. Holladay, the

11:34:23  7  bottom-line question is going to be, if you're selected to

11:34:25  8  serve on this jury, will the Plaintiff and the Defendant

11:34:30  9  start out in your mind in the same place, and will you

11:34:33 10  treat them equally and will you listen to the evidence and

11:34:37 11  let the evidence and only the evidence guide you in

11:34:41 12  answering the questions that are going to be in the verdict

11:34:44 13  form?

11:34:45 14      If you can do that, then I need to know it, and if

11:34:49 15  for whatever reason here you tell me I cannot be fair and

11:34:53 16  impartial, I cannot listen to the evidence and let that

11:34:56 17  guide me as to how I answer any questions, I'm -- I'm just

11:35:01 18  not able to treat both of these two parties the same and

11:35:04 19  fairly and equally.  Which of those two is it,

11:35:10 20  Mr. Holladay?

11:35:11 21      JUROR HOLLADAY:  My original concern with me being

11:35:14 22  on this jury was my feelings to lean towards this side --

11:35:19 23      THE COURT:  Yes, sir.

11:35:20 24      JUROR HOLLADAY:  -- more truthfully, just based on

11:35:25 25  my partner's experiences with USAA, the things they've

11:35:27   1   said, you know, if you need to get this, if you can get on

11:35:31   2   it, if you're in the military, how great this was and --

11:35:33   3          THE COURT:  Of course, you understand you haven't

11:35:35   4   heard any evidence in this case?

11:35:37   5          JUROR HOLLADAY:  No, that is true.  But that's my

11:35:38   6   initial gut feeling.  But I'm not saying I couldn't do it.

11:35:43   7   I'm just saying if I was -- originally had some -- some way

11:35:51   8   to be --

11:35:51   9          THE COURT:  Yes, sir.

11:35:53  10          JUROR HOLLADAY:  I felt like you need to know.

11:35:55  11          THE COURT:  Well, and I appreciate that, and

11:35:56  12   that's completely proper to let both the Court and the

11:36:02  13   parties know what you bring with you to the process.

11:36:07  14          None of us come up here with a blank slate.  We

11:36:07  15   all have the experiences we've had, and no matter what

11:36:11  16   those experiences are, at least in this context and in the

11:36:15  17   position you are as a member of this venire panel, the

11:36:20  18   question at the end of the day is, you've had some

11:36:22  19   experiences one way and some experiences another.

11:36:24  20          Can you treat these two -- two parties the same

11:36:31  21   and can you listen to the evidence and can you let the

11:36:34  22   evidence be the sole guide as to how you answer any

11:36:36  23   questions?

11:36:38  24          JUROR HOLLADAY:  Yes, sir.

11:36:38  25          THE COURT:  That the jury is going to be asked to

| | | |
|---|---|---|
| 11:36:41 | 1 | answer? |
| 11:36:41 | 2 | JUROR HOLLADAY:  I could do that, yes, sir. |
| 11:36:43 | 3 | THE COURT:  Okay. |
| 11:36:44 | 4 | All right.  Mr. Hill, do you have questions of |
| 11:36:46 | 5 | Mr. Holladay? |
| 11:36:47 | 6 | MR. HILL:  I do.  I do.  Mr. Holladay, how are |
| 11:36:49 | 7 | you? |
| 11:36:49 | 8 | JUROR HOLLADAY:  Yes, sir. |
| 11:36:50 | 9 | MR. HILL:  Let me ask you, I know you mentioned |
| 11:36:51 | 10 | earlier because you started out talking about the |
| 11:36:53 | 11 | experience your wife had with a bank.  Of course, I |
| 11:36:56 | 12 | represent a bank in this case, so it makes me nervous, and |
| 11:36:59 | 13 | what I'm curious about is whether, based on that |
| 11:37:02 | 14 | experience, combined with the goodwill you feel toward USAA |
| 11:37:05 | 15 | based on what you've heard from them, when you put both |
| 11:37:08 | 16 | those things together, even though the Judge instructs you |
| 11:37:10 | 17 | that you have to be impartial and fair, do we start out |
| 11:37:13 | 18 | behind, truthfully? |
| 11:37:16 | 19 | JUROR HOLLADAY:  I would say no. |
| 11:37:17 | 20 | THE COURT:  Okay. |
| 11:37:18 | 21 | JUROR HOLLADAY:  In the end, no. |
| 11:37:20 | 22 | MR. HILL:  All right.  And you think that, even |
| 11:37:22 | 23 | though we're a big bank, you had trouble with them, we're |
| 11:37:25 | 24 | not USAA, you seem to like them, if you looked at the |
| 11:37:28 | 25 | evidence and you thought it went our way, you'd be willing |

11:37:30   1   to hand us a verdict in our favor just as willingly as you

11:37:33   2   would USAA?  Or would those other feelings make you have

11:37:37   3   some reservations not based on the evidence?

11:37:39   4           JUROR HOLLADAY:  It might be in the back of my

11:37:41   5   mind.  I'm not sure, to be honest.  I'm just not sure.

11:37:44   6           MR. HILL:  Okay.

11:37:45   7           THE COURT:  Mr. Bunt, do you have any questions?

11:37:48   8           MR. BUNT:  Yes, sir.  The situation that

11:37:49   9   happened with your wife --

11:37:49  10           THE COURT:  Y'all speak up a little bit.

11:37:51  11           MR. BUNT:  I apologize again.  The situation that

11:37:54  12   happened with your wife, it was not Wells Fargo, was it?

11:37:57  13           JUROR HOLLADAY:  No.

11:37:58  14           MR. BUNT:  But it was a bank?

11:37:59  15           JUROR HOLLADAY:  Yes.

11:38:00  16           MR. BUNT:  And you understand USAA -- I know you

11:38:02  17   probably heard of it as an insurance company, but it's also

11:38:04  18   a bank.

11:38:05  19           JUROR HOLLADAY:  Yes, sir.

11:38:06  20           MR. BUNT:  Were you aware of that?

11:38:07  21           JUROR HOLLADAY:  Yes, sir.

11:38:08  22           MR. BUNT:  Okay.  So would that affect -- you've

11:38:10  23   got two banks here in this case, USAA and there's Wells

11:38:14  24   Fargo, it doesn't affect you either way?

11:38:17  25           JUROR HOLLADAY:  No.

11:38:17    1          MR. BUNT:  Thank you, sir.

11:38:18    2          THE COURT:  Mr. Holladay, bottom line, can you let

11:38:21    3   the evidence control your decisions in this case, or is

11:38:24    4   there anything that would influence you in your decisions

11:38:30    5   that you just can't put out of your mind no matter what?

11:38:33    6          JUROR HOLLADAY:  No, I could be in the middle, as

11:38:35    7   you say.

11:38:36    8          THE COURT:  You can the follow evidence?

11:38:37    9          JUROR HOLLADAY:  Yes, sir.

11:38:37   10          THE COURT:  And let that be the sole guide?

11:38:42   11          JUROR HOLLADAY:  I could.

11:38:43   12          THE COURT:  I appreciate your candor.  I'm going

11:38:44   13   to let you join the rest of the panel outside for recess.

11:38:47   14   Just don't discuss anything about what we talked about in

11:38:50   15   here.

11:38:50   16          JUROR HOLLADAY:  No problem.

11:38:51   17          THE COURT:  Thank you, sir.

11:38:52   18          JUROR HOLLADAY:  Thank you.

11:38:53   19          THE COURT:  All right.  I'm going to deny

11:38:54   20   Defendant's challenge for cause to Mr. Holladay.  He

11:38:56   21   remains on the panel.

11:39:03   22          I have no idea what Mr. Blaylock wanted to ask me,

11:39:06   23   but I guess we'll find out.

11:39:08   24          (Open court.)

11:39:08   25          THE COURT:  Mr. Blaylock, would you come up,

11:39:11  1   please, sir?

11:39:23  2          (Bench conference continued.)

11:39:23  3          THE COURT:  Good morning, Mr. Blaylock.

11:39:29  4          JUROR BLAYLOCK:  Morning, Judge.

11:39:31  5          THE COURT:  These are the microphones.  If you and

11:39:33  6   I can talk quietly to each other up here, I'd appreciate

11:39:36  7   that.

11:39:37  8          JUROR BLAYLOCK:  Yes.

11:39:38  9          THE COURT:  You indicated you had a question for

11:39:40  10  me.  I wanted to give you an opportunity to ask that

11:39:43  11  question.

11:39:44  12         JUROR BLAYLOCK:  Okay.  I just don't feel as

11:39:46  13  though I could be fair in this case.  I was -- I remembered

11:39:51  14  some of the news media about Wells Fargo and how some of

11:39:58  15  their clients had been treated and what have you.  And I

11:40:02  16  just don't feel as though I'd be a good fit for this --

11:40:08  17  this -- this jury as far as rendering -- or assisting in

11:40:13  18  rendering a verdict.

11:40:14  19         I thought that was very insensitive how some of

11:40:20  20  those people were treated, especially with people who had

11:40:24  21  issues with their mortgages and what have you.

11:40:27  22         THE COURT:  And those feelings are such that you

11:40:30  23  don't think you could set those aside and let the evidence

11:40:33  24  guide you?  Because you haven't heard any evidence in this

11:40:37  25  case so far.

| | | |
|---|---|---|
| 11:40:37 | 1 | JUROR BLAYLOCK:  No, I realize that, Judge.  But |
| 11:40:39 | 2 | it's just the fact that a company that large could be that |
| 11:40:44 | 3 | insensitive.  I'm a homeowner myself, and I could have been |
| 11:40:51 | 4 | one of those victims.  But I just don't -- I just don't |
| 11:41:00 | 5 | feel that I could be -- I mean, my feelings towards Wells |
| 11:41:11 | 6 | Fargo are not -- not as positive as they should be. |
| 11:41:13 | 7 | THE COURT:  Okay.  All right. |
| 11:41:15 | 8 | JUROR BLAYLOCK:  But I will do what I have to do, |
| 11:41:20 | 9 | but I just needed to share that with you. |
| 11:41:22 | 10 | THE COURT:  Well, there's a difference, |
| 11:41:24 | 11 | Mr. Blaylock, between having feelings but not letting those |
| 11:41:30 | 12 | feelings control your decisions and relying only on the |
| 11:41:34 | 13 | evidence -- |
| 11:41:35 | 14 | JUROR BLAYLOCK:  Okay. |
| 11:41:36 | 15 | THE COURT:  -- to control your decision. |
| 11:41:37 | 16 | JUROR BLAYLOCK:  Yeah. |
| 11:41:38 | 17 | THE COURT:  And then in other cases, there are |
| 11:41:40 | 18 | feelings that are so strong, they can't be put aside. |
| 11:41:43 | 19 | JUROR BLAYLOCK:  Yeah. |
| 11:41:44 | 20 | THE COURT:  And no matter what the evidence is, |
| 11:41:46 | 21 | those feelings are going to control or influence the |
| 11:41:49 | 22 | answers that you come up with at the end of the day. |
| 11:41:51 | 23 | What I really need to know -- I appreciate your |
| 11:41:54 | 24 | honesty and candor about your feelings regarding the |
| 11:41:57 | 25 | Defendant.  But which category are you in?  Are these |

| | | |
|---|---|---|
| 11:42:02 | 1 | feelings that aren't great, but you can set them aside and |
| 11:42:06 | 2 | let the evidence determine what your ultimate conclusions |
| 11:42:09 | 3 | are?  Or are your feelings such that you just can't set |
| 11:42:12 | 4 | them aside, and they're going to influence your decision no |
| 11:42:15 | 5 | matter what the evidence is? |
| 11:42:17 | 6 | JUROR BLAYLOCK:  I can set my -- I can set my |
| 11:42:19 | 7 | feelings aside. |
| 11:42:19 | 8 | THE COURT:  Okay, sir. |
| 11:42:21 | 9 | JUROR BLAYLOCK:  Yes, I can do that.  I just got |
| 11:42:23 | 10 | kind of caught up in the moment emotionally, but the |
| 11:42:26 | 11 | evidence hadn't been presented, whatever they have.  But, |
| 11:42:33 | 12 | yes, I can set my feelings aside. |
| 11:42:36 | 13 | THE COURT:  Mr. Bunt, do you have any questions of |
| 11:42:38 | 14 | Mr. Blaylock? |
| 11:42:39 | 15 | MR. BUNT:  No, sir, Your Honor. |
| 11:42:40 | 16 | THE COURT:  Mr. Hill? |
| 11:42:41 | 17 | MR. HILL:  I do, Your Honor. |
| 11:42:43 | 18 | Mr. Blaylock, now you recognize we represent Wells |
| 11:42:43 | 19 | Fargo? |
| 11:42:43 | 20 | JUROR BLAYLOCK:  Yes. |
| 11:42:45 | 21 | MR. HILL:  And so we're trying to seat a jury that |
| 11:42:48 | 22 | will be fair-minded, and we'll both start out in the same |
| 11:42:51 | 23 | position; we won't start out behind. |
| 11:42:54 | 24 | Do you feel like, based on what you've described |
| 11:42:55 | 25 | as your feelings towards Wells Fargo, based on what you've |

11:42:57  1   seen in the news and the way they've treated people in the

11:43:01  2   past, that we would start out behind the other side before

11:43:04  3   the evidence started in this case?

11:43:05  4         JUROR BLAYLOCK:  Well, that was my feelings prior

11:43:08  5   to coming up having this conversation with the Judge, but

11:43:10  6   he shedded some light in what was a gray area.  And I don't

11:43:14  7   think I would have an issue now because we were talking

11:43:18  8   about a different situation here.

11:43:20  9         MR. HILL:  Uh-huh.

11:43:23  10        JUROR BLAYLOCK:  So I just needed some clarity.

11:43:26  11        MR. HILL:  Let me ask you one other thing,

11:43:29  12  Mr. Blaylock.  This may be a very close case, okay?  The

11:43:32  13  evidence may be hotly contested.

11:43:32  14        JUROR BLAYLOCK:  Yes.

11:43:34  15        MR. HILL:  And at the end of the day, you're going

11:43:35  16  to have to make decisions about credibility and who you

11:43:37  17  believe.

11:43:38  18        JUROR BLAYLOCK:  Yes.

11:43:39  19        MR. HILL:  And do you believe that your decisions

11:43:41  20  on credibility and who you believe will be guided solely by

11:43:43  21  the evidence or -- or do you believe your view of Wells

11:43:46  22  Fargo may cause to you judge their credibility more

11:43:48  23  harshly?

11:43:51  24        JUROR BLAYLOCK:  No.  Once again, in lieu of

11:43:52  25  what's -- what I've come to know, I would rely on the

| | | |
|---|---|---|
| 11:43:56 | 1 | evidence. |
| 11:43:56 | 2 | MR. HILL:  Thank you, sir. |
| 11:43:58 | 3 | THE COURT:  Thank you, Mr. Blaylock.  I'm going to |
| 11:44:00 | 4 | let you join the rest of the panel outside during recess. |
| 11:44:03 | 5 | Just don't discuss anything we've talked about in here, |
| 11:44:06 | 6 | sir. |
| 11:44:07 | 7 | JUROR BLAYLOCK:  Absolutely, yes, sir. |
| 11:44:08 | 8 | THE COURT:  Thank you. |
| 11:44:08 | 9 | (Juror exits courtroom.) |
| 11:44:09 | 10 | (Bench conference continued.) |
| 11:44:09 | 11 | THE COURT:  All right.  Mr. Blaylock remains on |
| 11:44:11 | 12 | the venire list.  He is not excused. |
| 11:44:18 | 13 | MR. HILL:  Can I explain 21 to you, Your Honor? |
| 11:44:21 | 14 | THE COURT:  Yes, I'd like that. |
| 11:44:23 | 15 | MR. HILL:  So she indicated on her questionnaire |
| 11:44:25 | 16 | that she was a member of USAA.  In the general voir dire, |
| 11:44:29 | 17 | she did not raise her hand as being a member of USAA. |
| 11:44:32 | 18 | THE COURT:  Why don't I bring her up, and I'll |
| 11:44:34 | 19 | just let you question her. |
| 11:44:35 | 20 | MR. HILL:  Okay.  Thank you, Your Honor. |
| 11:44:36 | 21 | (Open court.) |
| 11:44:36 | 22 | THE COURT:  Ms. Barnard, would you come up, |
| 11:44:36 | 23 | please? |
| 11:44:40 | 24 | (Bench conference continued.) |
| 11:44:40 | 25 | MR. HILL:  And, Your Honor, as she approaches, |

11:44:42   1   just to let the Court know, our issue would be because of

11:44:44   2   the nature of USAA, a member is -- necessarily has a

11:44:48   3   financial interest in this case and would be cause to

11:44:51   4   challenge.

11:44:52   5           THE COURT:  Okay.  Good morning, ma'am.

11:44:57   6           JUROR BARNARD:  Good morning.

11:44:58   7           THE COURT:  If you'd step up, please.  These are

11:44:59   8   our microphones, and if you and I can just talk here

11:45:00   9   quietly.

11:45:01  10           I'm going to let the lawyers ask you just a couple

11:45:05  11   followup questions real quick.

11:45:06  12           Mr. Hill, do you have some questions for

11:45:08  13   Ms. Barnard?

11:45:09  14           MR. HILL:  Ms. Barnard, in the questionnaire that

11:45:11  15   you filled out for us before you got here today, you had

11:45:14  16   indicated that you are a member of USAA, okay?  But when we

11:45:18  17   asked the questions, people raising their hand --

11:45:21  18           JUROR BARNARD:  That is incorrect.

11:45:22  19           MR. HILL:  That's incorrect?

11:45:22  20           JUROR BARNARD:  Yeah.

11:45:23  21           MR. HILL:  We just didn't know which one it was.

11:45:26  22   We were curious.

11:45:26  23           JUROR BARNARD:  No, I'm not.

11:45:27  24           MR. HILL:  Okay.

11:45:27  25           JUROR BARNARD:  Unless I misunderstood the

| | 1 | question. |

11:45:27  1  question.

11:45:27  2       MR. HILL:  All right.  But you don't have banking

11:45:28  3  or insurance business with USAA?

11:45:31  4       JUROR BARNARD:  No.

11:45:33  5       MR. HILL:  All right.  Thank you, ma'am.

11:45:34  6       THE COURT:  All right.  Any questions?

11:45:35  7       MR. BUNT:  No, Your Honor.

11:45:35  8       THE COURT:  Ms. Barnard, thank you for clarifying

11:45:38  9  that for us.  I'm going to let you join of the rest of the

11:45:40  10  panel outside.  Just don't discuss anything we've talked

11:45:44  11  about in here.  Thank you, ma'am.

11:45:44  12       (Juror exits courtroom.)

11:45:46  13       (Bench conference continued.)

11:45:46  14       THE COURT:  All right.  Ms. Barnard is not

11:45:48  15  excused.  She stays on the panel.

11:45:49  16       What's the problem with Mr. Davis?

11:45:52  17       MR. HILL:  Again, it's a questionnaire answer,

11:45:54  18  Your Honor.  He wrote in a pretty interesting point in the

11:45:58  19  end of his questionnaire where he stated he thought there

11:46:02  20  was a two-tiered justice system in this country and that it

11:46:06  21  only worked for some and not others.  It made us have

11:46:09  22  concerns about his view of fairness about the process at

11:46:12  23  large.

11:46:12  24       THE COURT:  We've got two big corporations here.

11:46:14  25  It's not a -- it's not a David and Goliath situation, but

| | | |
|---|---|---|
| 11:46:17 | 1 | I'm happy to bring him up and let you question him. |
| 11:46:21 | 2 | MR. HILL:  Thank you, Your Honor. |
| 11:46:21 | 3 | (Open court.) |
| 11:46:21 | 4 | THE COURT:  Mr. Davis, would you come up, please, |
| 11:46:23 | 5 | sir? |
| 11:46:24 | 6 | (Bench conference continued.) |
| 11:46:24 | 7 | THE COURT:  Good morning, sir. |
| 11:46:24 | 8 | JUROR DAVIS:  Good morning. |
| 11:46:40 | 9 | THE COURT:  If you'd step up, these are our |
| 11:46:42 | 10 | microphones.  And if you and I can just talk quietly here. |
| 11:46:43 | 11 | I'm going to let these lawyers ask you just a |
| 11:46:46 | 12 | couple more follow-up questions. |
| 11:46:48 | 13 | Mr. Hill, do you have questions for Mr. Davis? |
| 11:46:50 | 14 | MR. HILL:  Yes, sir. |
| 11:46:51 | 15 | Mr. Davis, how are you? |
| 11:46:53 | 16 | JUROR DAVIS:  I'm all right.  How are you? |
| 11:46:54 | 17 | MR. HILL:  Good. |
| 11:46:55 | 18 | On the questionnaire you filled out for us, you |
| 11:46:57 | 19 | wrote in there about that you felt like there was a |
| 11:46:59 | 20 | two-tiered justice system in this country and that it's not |
| 11:47:02 | 21 | always fair for everybody.  And we just wanted to follow up |
| 11:47:04 | 22 | on that and find if that's something you think influences |
| 11:47:08 | 23 | your decisions or your thoughts about this case? |
| 11:47:10 | 24 | JUROR DAVIS:  Not this particular case, no. |
| 11:47:13 | 25 | MR. HILL:  Okay.  All right.  What did you have in |

11:47:15  1    mind when you when you said there's --

11:47:17  2         JUROR DAVIS:  Well, it was more or less political.

11:47:20  3    I was kind of venting.

11:47:21  4         MR. HILL:  All right.

11:47:22  5         JUROR DAVIS:  And I -- I apologize.

11:47:23  6         MR. HILL:  You don't owe us apologies.  But you --

11:47:25  7    you believe in a case like this where you've got a bank on

11:47:29  8    both sides, that you could hear the evidence and decide it

11:47:31  9    fairly and render a judgment based on the evidence --

11:47:35  10        JUROR DAVIS:  On the evidence, yes, sir.

11:47:36  11        MR. HILL:  All right.  Thank you, sir.

11:47:38  12        THE COURT:  Mr. Bunt, do you have any questions of

11:47:40  13   Mr. Davis?

11:47:41  14        MR. BUNT:  No, Your Honor.

11:47:41  15        THE COURT:  All right.  Thank you, Mr. Davis.  I'm

11:47:43  16   going to let you join the rest of the group outside.  Just

11:47:45  17   don't discuss anything we've talked about in here.

11:47:48  18        JUROR DAVIS:  Okay.  Yes, sir.

11:47:49  19        THE COURT:  Thank you, sir.

11:47:49  20        JUROR DAVIS:  Thank you.

11:47:49  21        (Juror exits courtroom.)

11:47:49  22        (Bench conference continued.)

11:47:49  23        THE COURT:  Mr. Davis remains on the panel.

11:47:51  24        (Open court.)

11:47:51  25        THE COURT:  Mr. Traylor, would you come up,

| | | |
|---|---|---|
| 11:47:58 | 1 | please, sir? |
| 11:48:13 | 2 | (Bench conference continued.) |
| 11:48:13 | 3 | JUROR TRAYLOR:  Good morning. |
| 11:48:14 | 4 | THE COURT:  Good morning, Mr. Traylor.  If you'll |
| 11:48:15 | 5 | step up, these are our microphones, and you and I can talk |
| 11:48:19 | 6 | quietly here. |
| 11:48:21 | 7 | When questions were asked earlier this morning |
| 11:48:22 | 8 | about a possible award of $300 million to the Plaintiff, or |
| 11:48:28 | 9 | I guess I should say, an award up to or as high as $300 |
| 11:48:32 | 10 | million -- |
| 11:48:32 | 11 | JUROR TRAYLOR:  Yes, Your Honor. |
| 11:48:33 | 12 | THE COURT:  -- you were pretty definite -- |
| 11:48:34 | 13 | JUROR TRAYLOR:  Oh, I'm positive, no. |
| 11:48:36 | 14 | THE COURT:  -- that you couldn't get there no |
| 11:48:37 | 15 | matter what? |
| 11:48:38 | 16 | JUROR TRAYLOR:  No, sir.  No, sir.  You might find |
| 11:48:41 | 17 | a happy medium, but I wouldn't go there. |
| 11:48:46 | 18 | THE COURT:  No matter what the evidence was? |
| 11:48:46 | 19 | JUROR TRAYLOR:  No, sir.  No, sir. |
| 11:48:48 | 20 | THE COURT:  Okay.  All right.  Counsel, you have |
| 11:48:49 | 21 | questions for Mr. Traylor? |
| 11:48:51 | 22 | MR. HILL:  No, sir. |
| 11:48:52 | 23 | MR. BUNT:  No, sir. |
| 11:48:53 | 24 | THE COURT:  I'm going to let you join the rest of |
| 11:48:55 | 25 | the panel outside.  Just don't discuss what we've talked |

11:49:00  1   about in here.

11:49:00  2          (Juror exits courtroom.)

11:49:02  3          (Bench conference continued.)

11:49:02  4          THE COURT:  Mr. Traylor is excused.

11:49:04  5          Okay.  So No. 6 -- excuse me, No. 4, Mr. Parras,

11:49:08  6   is excused; No. 11, Ms. Smith is excused; and No. 25,

11:49:14  7   Mr. Traylor is excused.

11:49:15  8          The remaining members of the panel are still there

11:49:19  9   and in tact.

11:49:23  10         MR. BUNT:  Your Honor, may I -- so we're clear on

11:49:25  11  the record --

11:49:25  12         THE COURT:  Yes.

11:49:25  13         MR. BUNT:  -- we had a challenge for cause for

11:49:27  14  No. 8, and you said you would carry --

11:49:29  15         THE COURT:  Oh, that's correct.  I'm going to

11:49:32  16  excuse her.

11:49:35  17         We've had -- we've had so many challenges, I was

11:49:42  18  concerned how many people we were going to have left, and

11:49:44  19  she was a very close call, but given the outcome, I'm

11:49:46  20  satisfied we have more than enough venire members to seat a

11:49:51  21  jury.  And there's no need to take a chance on a close

11:49:53  22  call, so I'm going to excuse her.

11:49:56  23         MR. BUNT:  Would you mind, Judge, if we go through

11:49:59  24  them one more time?

11:50:00  25         THE COURT:  All right.  4 has been excused, 8 has

| | | |
|---|---|---|
| 11:50:02 | 1 | been excused, 11 has been excused, and 25 has been excused. |
| 11:50:11 | 2 | The other challenges for cause are overruled.  And |
| 11:50:15 | 3 | that leaves us with the panel that we have. |
| 11:50:18 | 4 | We're going to seat eight jurors.  Each side has |
| 11:50:22 | 5 | four challenges for cause.  That gets us to 16.  We've got |
| 11:50:28 | 6 | three strikes prior to 16, so that should get us through |
| 11:50:33 | 7 | 19.  I don't think you're going to reach as far as 25.  So |
| 11:50:42 | 8 | it appears to me that both sides should strike through 19. |
| 11:50:45 | 9 | Does anybody see it differently? |
| 11:50:48 | 10 | MR. HILL:  No, sir. |
| 11:50:51 | 11 | THE COURT:  How long do you need to strike your |
| 11:50:53 | 12 | list, counsel? |
| 11:50:55 | 13 | MR. BUNT:  Couple of minutes. |
| 11:51:03 | 14 | THE COURT:  It's 10 minutes till.  I'll give you |
| 11:51:04 | 15 | 15 minutes. |
| 11:51:05 | 16 | MR. HILL:  15 minutes. |
| 11:51:07 | 17 | THE COURT:  And then once you've struck your list |
| 11:51:09 | 18 | and turned them in to the courtroom deputy, I want to see |
| 11:51:11 | 19 | the four of you in chambers. |
| 11:51:15 | 20 | MR. MELSHEIMER:  Thank you, Judge. |
| 11:51:18 | 21 | (Bench conference concluded.) |
| 11:51:18 | 22 | THE COURT:  While, counsel exercise their |
| 11:51:21 | 23 | peremptory challenges, the Court will stand in recess. |
| 11:51:25 | 24 | COURT SECURITY OFFICER:  All rise. |
| 12:16:40 | 25 | (Recess.) |

| | | |
|---|---|---|
| 12:16:41 | 1 | (Venire panel in.) |
| 12:16:41 | 2 | COURT SECURITY OFFICER:  All rise. |
| 12:16:42 | 3 | THE COURT:  Please be seated. |
| 12:16:45 | 4 | Ladies and gentlemen, if you will listen carefully |
| 12:17:00 | 5 | as your name is called and then come forward and take your |
| 12:17:02 | 6 | place in the jury box. |
| 12:17:04 | 7 | We're going to seat eight jurors in this case. |
| 12:17:07 | 8 | I'm going to ask that the first four who are called |
| 12:17:10 | 9 | position themselves on the front row of the jury box, and |
| 12:17:13 | 10 | the second four, five, six, seven, and eight, position |
| 12:17:17 | 11 | themselves on the back row, or the second row, of the jury |
| 12:17:21 | 12 | box. |
| 12:17:21 | 13 | And I'd like Juror No. 1, when your name is |
| 12:17:25 | 14 | called, if when you go on to the front row of the jury box, |
| 12:17:28 | 15 | if you would stand in front of the third chair from the end |
| 12:17:34 | 16 | and leave two chairs vacant past where you stand, then |
| 12:17:38 | 17 | we'll let the other jurors stack up behind you. |
| 12:17:41 | 18 | And then if the second row, jurors four -- excuse |
| 12:17:44 | 19 | me, five, six, seven, and eight, if you'd just position |
| 12:17:48 | 20 | yourselves behind the jurors on the front row, that will |
| 12:17:50 | 21 | get us eight jurors in the box, and that will get our eight |
| 12:17:54 | 22 | jurors centered in the middle of the box. |
| 12:17:56 | 23 | There's 14 chairs in that box, and we have eight |
| 12:17:59 | 24 | jurors, and I'd like the jury to be in the center of the |
| 12:18:02 | 25 | box.  And it will all work perfectly if whoever's name is |

12:18:05  1  called first, will stand in front of the third chair from

12:18:07  2  the end on the front row.  Leave two vacant chairs.  And if

12:18:11  3  everybody on the jury whose name is called would remain

12:18:14  4  standing until all eight of you are in the box, I'd

12:18:17  5  appreciate it.

12:18:17  6       So with that, I'll ask our courtroom deputy,

12:18:19  7  Ms. Lockhart, to call the names of the eight members of the

12:18:23  8  panel who have been selected to serve as our jury.

12:18:26  9       COURTROOM DEPUTY:  Karen Hutto, Andrea Hammond,

12:18:40  10  Vanessa Carpenter, Paul Howard, Karen Blackmon, Debbie

12:18:52  11  McCain, Michael Byrd, and Charles Harris.

12:19:14  12       All right.  Please be seated.

12:19:20  13       Those of you whose names were not called, I'm

12:19:25  14  about to excuse you at this time.  But I want to excuse

12:19:29  15  you, ladies and gentlemen, with the sincere thanks and

12:19:33  16  appreciation of the Court.

12:19:35  17       Every one of you made a sacrifice to be here

12:19:37  18  today.  Every one of you put aside other things that were

12:19:40  19  important in your lives to be here today, and even though

12:19:43  20  you weren't chosen to serve on this jury, you were an

12:19:47  21  integral part of the process, and the process could not

12:19:50  22  have gone forward as intended by our founders without you

12:19:54  23  present and available and willing to serve.

12:19:56  24       The Court recognizes that, and though you weren't

12:20:00  25  selected to serve, each and every one of you on this panel

12:20:03  1   have performed a very real and important public service by

12:20:07  2   being here, and I want to recognize that on the record and

12:20:10  3   in public, and I want to thank each one of you for the

12:20:13  4   sacrifice that you've made to be here.

12:20:15  5        It is no small thing, and our system of justice,

12:20:19  6   as called for and structured under our Constitution, would

12:20:22  7   not be able to function without ordinary citizens doing

12:20:26  8   their duty as you have, to present yourselves willing to

12:20:30  9   serve when your name is called and you're summoned to

12:20:34  10  appear for jury duty.

12:20:35  11       So even though you weren't selected in this case,

12:20:37  12  ladies and gentlemen, thank you very, very much.  And I am

12:20:43  13  confident I speak for both the parties and the lawyers and

12:20:43  14  the Court staff and everyone here saying how much we

12:20:48  15  appreciate the sacrifice and the service you've rendered by

12:20:51  16  being here and allowing us to go forward and select and

12:20:54  17  seat this jury in this case.

12:20:57  18       I'm excusing you at this time.  Would you please

12:21:02  19  see the clerk's office on the way out?  They're going to

12:21:06  20  want to retrieve those extremely valuable badges that

12:21:10  21  you're wearing and those numbers that you have.

12:21:11  22       If you have any questions about your appearance

12:21:11  23  today, if you need any kind of documentation for an

12:21:15  24  employer, Ms. Clendening in the clerk's office will be more

12:21:17  25  than happy to help you.  I'll refer you to them in that

| | | |
|---|---|---|
| 12:21:20 | 1 | regard.  But again, ladies and gentlemen, thank you so much |
| 12:21:22 | 2 | for your presence and your participation. |
| 12:21:25 | 3 | Those members of the panel not selected on the |
| 12:21:27 | 4 | jury are excused at this time. |
| 12:21:31 | 5 | COURT SECURITY OFFICER:  All rise. |
| 12:21:34 | 6 | (Unselected venire panel members exit the |
| 12:21:34 | 7 | courtroom.) |
| 12:22:07 | 8 | THE COURT:  Everyone but the members of the jury, |
| 12:22:09 | 9 | please be seated. |
| 12:22:10 | 10 | I'm going to ask Ms. Lockhart, the courtroom |
| 12:22:13 | 11 | deputy, to administer the oath to the members of the jury |
| 12:22:16 | 12 | at this time. |
| 12:22:18 | 13 | (Jury sworn.) |
| 12:22:19 | 14 | THE COURT:  Please be seated, ladies and |
| 12:22:34 | 15 | gentlemen. |
| 12:22:34 | 16 | Members of the jury, we're going to recess in just |
| 12:22:40 | 17 | a few minutes for lunch.  I want to give you a few |
| 12:22:43 | 18 | instructions before we do that, however. |
| 12:22:46 | 19 | First of all, lunch is going to be provided to you |
| 12:22:50 | 20 | today in the jury room, by the Court.  And the Court's |
| 12:22:53 | 21 | going to provide you lunch in the jury room every day |
| 12:22:56 | 22 | during the trial. |
| 12:22:57 | 23 | You are not going to have to leave the courthouse |
| 12:23:00 | 24 | and go out and look for a place to find lunch and then come |
| 12:23:03 | 25 | back.  It's going to be provided to you by the government, |

12:23:07   1   by the clerk's office, during each day of the trial.

12:23:10   2          That will make it more convenient for you.  It

12:23:12   3   will also allow us to take a shorter break and allocate

12:23:17   4   less time for a lunch break than we would otherwise.  That

12:23:20   5   will help us move the case along.

12:23:22   6          Also, ladies and gentlemen, I want to give you a

12:23:27   7   rough idea of what to expect from a scheduling standpoint.

12:23:33   8   Excuse me.

12:23:34   9          During the time that I've been on the bench and

12:23:38  10   tried -- I think you're my 80-something jury trial to

12:23:42  11   conduct, I have found consistently that East Texans who

12:23:47  12   serve on juries in this Court would much rather work a

12:23:51  13   longer day and be away from their families and their

12:23:54  14   businesses a shorter total number of days than have a short

12:23:59  15   day each day but have a greater number of days on jury duty

12:24:03  16   away from their families and their businesses.

12:24:06  17          So some courts start at 9:00 or 10:00 o'clock in

12:24:10  18   the morning and quit at 4:00 o'clock.  We're not going to

12:24:12  19   do that.  I'm going to start each day at 8:30, I'm going to

12:24:15  20   ask you to be assembled in the jury room and ready to come

12:24:18  21   into the courtroom and begin by 8:30 each day.  So try to

12:24:23  22   be here by 8:15 or 8:20 at the latest.

12:24:27  23          And we won't stop at 4:00 o'clock or 5:00 o'clock.

12:24:30  24   We will probably go somewhere in the neighborhood of 6:00

12:24:33  25   o'clock each day.  But by starting early and going longer,

12:24:38    1    we will finish this trial in a shorter number of days, and

12:24:41    2    you'll be back to your workplaces and your families and

12:24:44    3    your businesses in fewer days than we would any other day.

12:24:48    4         But I want you to be aware of the general time

12:24:51    5    structure that I'm going to pursue in the trial so that you

12:24:53    6    can take that into account and be aware of it.

12:24:56    7         Now, when we get to that end of the day time, it's

12:25:00    8    not an exact science, and nobody needs to look at the clock

12:25:04    9    for 6:00 o'clock and think the bell is going to ring and

12:25:08   10    we're going to be through.  It's not like that.  If we have

12:25:11   11    a witness that's been on the witness stand for an hour and

12:25:14   12    a half and they finish and step down at 10 minutes until

12:25:19   13    6:00, we're not going to start somebody new.  We'll quit

12:25:22   14    for the day.

12:25:23   15         If we have somebody on the witness stand who's a

12:25:26   16    witness and I'm told by counsel there's another 30 minutes

12:25:29   17    of testimony and that's at 5:45 we'll probably go to 6:15

12:25:37   18    and finish that witness.  I'm going to have to have some

12:25:40   19    latitude considering the witnesses and the length of their

12:25:42   20    testimony.

12:25:42   21         It's not a good practice, in my view, to break a

12:25:45   22    witness in the middle of their testimony if the Court can

12:25:47   23    help it.  So that 6:00 o'clock is a target.  It's not an

12:25:52   24    absolute hard number either way.  It's going to depend on

12:25:54   25    who's on the witness stand and where we are in the case.

12:25:57  1  But it's a general guideline, and I want you to at least

12:25:59  2  have that in mind.

12:26:00  3          Also, ladies and gentlemen, during this lunch

12:26:04  4  break that we're about to take, I'm going to ask each of

12:26:06  5  you to make sure that Ms. Clendening in the clerk's office

12:26:10  6  has a good, working cell phone number for you.  There

12:26:13  7  are -- there might be a possibility that we would need to

12:26:16  8  communicate with you before you arrived at Court or after

12:26:20  9  you left one day.  So I want to be able to know that the

12:26:23  10  clerk's office has a good, working cell phone number where

12:26:26  11  you can be reached outside of when you're here in the

12:26:28  12  courtroom.

12:26:28  13          Speaking of cell phones, I'm going to ask you

12:26:32  14  after today not to bring your cell phones in the courtroom

12:26:37  15  and not to bring your cell phones into the courthouse.

12:26:39  16  Either leave them at home or leave them in your

12:26:42  17  automobiles.

12:26:43  18          If you've got an important text message or email

12:26:46  19  you're expecting related to your business, there'll be

12:26:50  20  opportunities for you to go to your car and look at it if

12:26:52  21  you need to.

12:26:53  22          But one of the things I'm going to tell you is

12:26:55  23  that you are not to do any outside research regarding any

12:26:58  24  of the issues in this case.  And when there are eight

12:27:02  25  different cell phones that are minicomputers in the jury

| | | |
|---|---|---|
| 12:27:06 | 1 | room, it's sometimes tempting for people to say, well, I |
| 12:27:09 | 2 | didn't understand what those lawyers meant by that term, |
| 12:27:11 | 3 | let me just Google it.  That's not appropriate, and that's |
| 12:27:14 | 4 | not proper. |
| 12:27:15 | 5 | So to make it easier to follow my instructions |
| 12:27:18 | 6 | and, to say it another way, to remove the temptation, I'm |
| 12:27:22 | 7 | going to ask you to leave your cell phones at home or in |
| 12:27:25 | 8 | your vehicles starting tomorrow.  If you brought them with |
| 12:27:29 | 9 | you today, I'm going to ask you to make sure you leave them |
| 12:27:31 | 10 | in the jury room after lunch and don't, under any |
| 12:27:35 | 11 | circumstances, bring a cell phone, an Apple Watch that |
| 12:27:40 | 12 | would do the same thing, an iPad, any kind of electronic |
| 12:27:43 | 13 | devices back into the courtroom. |
| 12:27:45 | 14 | Now, you need to understand, the lawyers in the |
| 12:27:47 | 15 | case have electronic devices, and they're going to have |
| 12:27:51 | 16 | access to them during the trial.  Those are tools that they |
| 12:27:54 | 17 | use in conducting the trial.  But they're under strict |
| 12:27:59 | 18 | instructions, as is everyone else in here, not to allow |
| 12:28:02 | 19 | those devices to ring or to interrupt or distract from the |
| 12:28:05 | 20 | evidence and the presentation of the testimony.  If that |
| 12:28:12 | 21 | happens, I'll deal with it. |
| 12:28:14 | 22 | But if you see counsel with an iPad or a cell |
| 12:28:17 | 23 | phone, they're permitted to have them under the rules of |
| 12:28:20 | 24 | the Court.  But, in this case, I'm trying to make it clear |
| 12:28:23 | 25 | to you that, in the Court's view, you should not have a |

12:28:26   1   cell phone or electronic device in the courtroom this

12:28:30   2   afternoon or even in the courthouse starting tomorrow.

12:28:32   3        Now, let me give you a few other instructions.

12:28:38   4   You are not to discuss this case with anyone.  That is a

12:28:43   5   fundamental principle of how civil cases such as this are

12:28:47   6   tried.

12:28:48   7        At the end of all the evidence, you're going to be

12:28:51   8   given a document by me called the verdict form.  And there

12:28:56   9   are going to be some questions that you are to answer in

12:29:00  10   that verdict form.  It is critical that the sole source of

12:29:03  11   the information that you draw upon to decide and answer

12:29:07  12   those questions must come only from the sworn testimony

12:29:11  13   presented by the witnesses in open court and subject to

12:29:15  14   cross-examination during this trial, as well as the

12:29:19  15   documents and other exhibits that the Court admits into

12:29:23  16   evidence.  Those are the evidence in this case.

12:29:26  17        What the lawyers is -- is not evidence, what

12:29:30  18   you've heard so far today is not evidence.  The evidence is

12:29:33  19   the sworn testimony from the witnesses and the documents

12:29:36  20   and other exhibits that the Court has admitted into

12:29:39  21   evidence.

12:29:40  22        And it is critical that those must constitute the

12:29:44  23   sole source and the sole universe of the information that

12:29:47  24   you will draw upon as members of the jury to answer the

12:29:51  25   questions that are going to be put to you in the verdict

12:29:54  1    form.

12:29:55  2           Consequently, ladies and gentlemen, you must not

12:29:58  3    discuss the case with anyone.  If you do, you risk

12:30:03  4    violating that fundamental principle, and you risk

12:30:06  5    jeopardizing the entire trial process.

12:30:09  6           Now, that being said, I want to clarify that.

12:30:11  7    When I say don't discuss the case with anyone, I mean don't

12:30:14  8    communicate about it in any way.  Don't email, don't text,

12:30:19  9    don't instant message, don't tweet on Twitter, don't post

12:30:23  10   on Facebook, don't use any social media platforms in regard

12:30:29  11   to anything that happens with regard to this trial.  You

12:30:33  12   must not communicate about the case in any way.

12:30:37  13          And that also means among the eight of you.  Until

12:30:41  14   all the evidence has been presented and until I instruct

12:30:45  15   you to retire to the jury room and to consider and

12:30:48  16   deliberate on your verdict, you must not discuss the

12:30:52  17   evidence or the case in any way among the eight of you.

12:30:54  18          So throughout the trial, until all the evidence is

12:30:57  19   in and I've instructed you to retire and deliberate on your

12:31:03  20   verdict, you must not discuss even among yourselves

12:31:07  21   anything about the case.

12:31:08  22          Now, when all the evidence is in and when I

12:31:10  23   instruct you to retire to the jury room and deliberate on

12:31:13  24   the verdict, at that point, it becomes your duty to discuss

12:31:17  25   the case with each other in an effort to reach a unanimous

12:31:22  1  decision about the questions that will be included in the

12:31:24  2  verdict form.

12:31:26  3      So until that moment in time, no discussion among

12:31:29  4  yourselves at all.  After that moment in time, you must

12:31:33  5  discuss the case among the eight of you in reaching your

12:31:36  6  verdict.  I hope that's clear.

12:31:39  7      Also, I want you to be aware that when you get

12:31:46  8  home this evening, unless you live alone, the first thing

12:31:49  9  that's going to happen when you walk through the door is

12:31:52  10 whoever is there is going to say, well, tell me what

12:31:55  11 happened in federal court in Marshall today.

12:31:57  12      Don't even try to respond to that question, which

12:31:59  13 I guarantee you you're going to get, because if you do,

12:32:03  14 you'll almost assuredly violate my instruction about

12:32:08  15 discussing the case.  Don't discuss, don't communicate

12:32:10  16 about the case with anyone in any way.  That's absolutely

12:32:11  17 essential.

12:32:12  18      As a matter of fact, ladies and gentlemen, you're

12:32:15  19 probably going to hear that same instruction from me

12:32:17  20 repeatedly throughout the trial.  You're probably going to

12:32:20  21 get tired of hearing that instruction from me before the

12:32:23  22 trial is over.

12:32:24  23      But it is so critical, that I'm going to repeat

12:32:26  24 it.  And it is so important because if it's violated, the

12:32:31  25 entire trial process is jeopardized.  And there's been too

12:32:36   1   much time, money, and effort spent to get this case to this

12:32:39   2   point to risk jeopardizing it.

12:32:41   3          When I say don't communicate about the case in any

12:32:44   4   way, I also mean -- and, again, this relates to what I told

12:32:48   5   you about cell phones.  Do not do any research about

12:32:50   6   anything in this case.  Do not go home at night and get on

12:32:54   7   your computer and pull up any of these law firms or any of

12:32:57   8   these parties or any of the words and terms you've heard

12:33:00   9   about.  Do not do any research whatsoever.

12:33:05  10          And if you're like me, don't go to the library and

12:33:07  11   pull a book off the shelf and research the old-fashioned

12:33:10  12   way.  Whether it's online or whether it's in person, don't

12:33:13  13   do any research of any kind.

12:33:16  14          Also, ladies and gentlemen, this is an important

12:33:19  15   case.  And there's a lot at stake.  And cases don't get to

12:33:23  16   trial in Federal District Court unless they are significant

12:33:27  17   disputes.  That means it's possible -- I don't think it's

12:33:31  18   likely, but it is possible -- that during the trial, some

12:33:36  19   outside third party could attempt to contact you to

12:33:39  20   influence your decision in this case.  I don't think that

12:33:43  21   will happen.

12:33:44  22          But I want you to understand that if at any time

12:33:47  23   between now and the time I discharge you from your duty as

12:33:50  24   jurors that you are approached from anybody in any way, any

12:33:56  25   overture of any kind is made towards you that you feel is

12:33:58  1   improper or off-color or not what it should be, then you

12:34:04  2   should immediately tell Ms. Clendening.  She will report it

12:34:07  3   to me, and the Court will deal with it.  I don't think it's

12:34:10  4   likely.  As a matter of fact, I think it's unlikely.  But

12:34:14  5   it is within the realm of possibility, and I want you to be

12:34:17  6   aware of it.

12:34:17  7          Finally, ladies and gentlemen, throughout this

12:34:19  8   trial, there are going to unavoidably be times when you are

12:34:24  9   going to be coming and leaving during lunch breaks and

12:34:27  10  other times.  You may pass one or more of these lawyers or

12:34:32  11  one or more of these corporate representatives or their

12:34:35  12  witnesses in the hallway, on the front steps, on the

12:34:38  13  sidewalk out front.  When that happens, none of them are

12:34:41  14  going to speak to you.  None of them are going to say, good

12:34:44  15  morning, how are you today?  None of them are going to be

12:34:47  16  friendly and outgoing like we typically are in East Texas.

12:34:51  17  That's because I've instructed them not to.

12:34:52  18         That's -- goes back to the same bedrock principle

12:34:56  19  that the only input -- the only information you should have

12:34:59  20  as a part of this trial and from which you should draw upon

12:35:03  21  to consider and answer the questions in the verdict form

12:35:07  22  must be limited to the sworn testimony that's presented by

12:35:11  23  the evidence -- excuse me, by the witnesses and the

12:35:14  24  exhibits that the Court admits into evidence.  That's it.

12:35:17  25  And it's critical that that remain the sole source of the

12:35:24   1   information that you have before you.

12:35:25   2        So when one or more of these folks passes by and

12:35:28   3   doesn't speak and walks right by, don't think they're rude,

12:35:29   4   don't think they're unfriendly, don't hold it against them

12:35:33   5   in any way, they're simply doing what the Court has

12:35:36   6   instructed them to do.  And I want to make sure you're

12:35:40   7   aware of that.

12:35:40   8        All right.  I have 25 minutes until 1:00.  I'm

12:35:43   9   told that lunch is waiting for you in the jury room, ladies

12:35:47  10   and gentlemen.  We'll attempt to bring you back and

12:35:48  11   reconvene as close to 1:15 as possible.

12:35:56  12        With that, and following all the instructions I've

12:35:58  13   given you, the jury is excused for lunch at this time.

12:36:01  14             COURT SECURITY OFFICER:  All rise.

12:36:02  15             (Jury out.)

12:36:03  16             THE COURT:  The Court stands in recess for lunch.

12:36:30  17             COURT SECURITY OFFICER:  All rise.

12:36:31  18             (Recess.)

12:38:20  19

          20

          21

          22

          23

          24

          25

1                           CERTIFICATION

2

3        I HEREBY CERTIFY that the foregoing is a true and

4   correct transcript from the stenographic notes of the

5   proceedings in the above-entitled matter to the best of my

6   ability.

7

8

9    /S/ Shelly Holmes                        10/30/19
    SHELLY HOLMES, CSR, TCRR                 Date
10  OFFICIAL REPORTER
    State of Texas No.: 7804
11  Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25