<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
 2                         MARSHALL DIVISION

 3   UNITED STATES AUTOMOBILE      )(
     ASSOCIATION
 4                                 )(    CIVIL ACTION NO.

 5   VS.                           )(    2:18-CV-245-JRG

 6                                 )(    MARSHALL, TEXAS
                                         NOVEMBER 5, 2019
 7   WELLS FARGO BANK, N.A.        )(    1:49 P.M.

 8

 9                      TRANSCRIPT OF JURY TRIAL

10                        AFTERNOON SESSION

11        BEFORE THE HONORABLE CHIEF JUDGE RODNEY GILSTRAP,

12                  UNITED STATES DISTRICT JUDGE

13
     APPEARANCES:
14

15   FOR THE PLAINTIFF:

16
     JASON SHEASBY
17   ANTHONY ROWLES
     LISA GLASSER
18   IRELL & MANELLA
     1800 Avenue of the Stars
19   Suite 900
     Los Angeles, CA 90067-4276
20

21
     ROBERT CHRISTOPHER BUNT
22   PARKER, BUNT & AINSWORTH, PC
     100 East Ferguson
23   Suite 418
     Tyler, TX 75702
24

25
</pre>

```
 1  FOR THE DEFENDANT:

 2

    THOMAS M. MELSHEIMER
 3  M. BRETT JOHNSON
    MICHAEL A. BITTNER
 4  J. TRAVIS UNDERWOOD
    WINSTON & STRAWN LLP
 5  2121 North Pearl Street
    Suite 900
 6  Dallas, TX 75201

 7

    E. DANIELLE T. WILLIAMS
 8  WINSTON & STRAWN LLP
    300 South Tyron Street
 9  16th Floor
    Charlotte, NC 28202

10

11  MATTHEW R. MCCULLOUGH
    WINSTON & STRAWN LLP
12  275 Middlefield Road
    Suite 205
13  Menlo Park, CA 94025

14

    JACK WESLEY HILL
15  WARD, SMITH & HILL, PLLC
    P.O. Box 1231
16  1507 Bill Owens Parkway
    Longview, TX 75606

17

18

    COURT REPORTER:      Shelly Holmes, CSR, TCRR
19                       Official Court Reporter
                         United States District Court
20                       Eastern District of Texas
                         Marshall Division
21                       100 E. Houston
                         Marshall, Texas  75670
22                       (903) 923-7464

23

    (Proceedings recorded by mechanical stenography, transcript
24  produced on a CAT system.)

25
```

1                      P R O C E E D I N G S

01:49:44    2              (Jury out.)

01:49:44    3              COURT SECURITY OFFICER:  All rise.

01:49:46    4              THE COURT:  Be seated, please.

01:51:03    5              All right.  The Court is now prepared to take up

01:51:05    6    motions from either party under Rule 50(a) of the Federal

01:51:11    7    Rules of Civil Procedure.

01:51:11    8              Does Plaintiff have any motion to offer under Rule

01:51:15    9    50(a)?

01:51:16   10              MR. STRABONE:  Yes, Your Honor.

01:51:17   11              THE COURT:  Identify for me, if you will, counsel,

01:51:20   12    the substantive matters on which Plaintiff seeks to move

01:51:23   13    under Rule 50(a).

01:51:24   14              MR. STRABONE:  Thank you, Your Honor.  May it

01:51:26   15    please the Court.  Andrew Strabone for the Plaintiff.

01:51:29   16              USAA respectfully moves under Rule 50(a) for

01:51:33   17    judgment as a matter of law on four issues.

01:51:35   18              Infringement under literal -- literal infringement

01:51:37   19    and Doctrine of Equivalents; willful infringement; Section

01:51:43   20    101 Alice, Step 2; and damages -- specifically that any

01:51:46   21    award of damages cannot reflect a lump sum or fully paid-up

01:51:49   22    license for future infringement.

01:51:51   23              THE COURT:  Say that last one again.

01:51:54   24              MR. STRABONE:  Specifically that any award of

01:51:57   25    damages cannot reflect a lump sum or a fully paid-up

4

| | | |
|---|---|---|
| 01:52:02 | 1 | license for future infringement. |
| 01:52:09 | 2 | THE COURT:  All right.  Let me ask the same |
| 01:52:11 | 3 | question of Defendant.  Does Defendant care to offer any |
| 01:52:15 | 4 | motions for consideration by the Court under Rule 50(a) of |
| 01:52:18 | 5 | the Federal Rules of Civil Procedure? |
| 01:52:21 | 6 | MR. MCCULLOUGH:  Yes, Your Honor, we do. |
| 01:52:23 | 7 | THE COURT:  If you would in a similar fashion |
| 01:52:25 | 8 | identify topically those areas, please. |
| 01:52:27 | 9 | MR. MCCULLOUGH:  Yes, Your Honor.  Defendant, |
| 01:52:29 | 10 | Wells Fargo, will move for judgment as a matter of law |
| 01:52:31 | 11 | under Rule 50(a) on the issues of infringement, both |
| 01:52:34 | 12 | literal and Doctrine of Equivalents; willful infringement; |
| 01:52:36 | 13 | damages; and Section 101 patent eligibility. |
| 01:52:41 | 14 | THE COURT:  And I gather you mean Section 101 |
| 01:52:49 | 15 | patent eligibility as to Step 2 of the analysis since I've |
| 01:52:54 | 16 | already ruled on Step 1 as a matter of law? |
| 01:53:00 | 17 | MR. MCCULLOUGH:  Yes, Your Honor. |
| 01:53:03 | 18 | THE COURT:  Well, counsel, it appears -- |
| 01:53:03 | 19 | MR. MCCULLOUGH:  Sorry. |
| 01:53:03 | 20 | THE COURT:  Yes? |
| 01:53:05 | 21 | MR. MCCULLOUGH:  To clarify to preserve the issue, |
| 01:53:07 | 22 | we're -- to the extent necessary, we are also moving under |
| 01:53:10 | 23 | Step 1, as well. |
| 01:53:11 | 24 | THE COURT:  Okay.  I never have a problem with a |
| 01:53:19 | 25 | lawyer trying to preserve an issue. |

01:53:23  1          Well, it appears that the parties are effectively

01:53:27  2   in a posture of having mirror image motions of each other

01:53:31  3   as to the same substantive areas.

01:53:35  4          That being the case, I see no reason why I

01:53:40  5   shouldn't hear concurrent arguments from both Plaintiff and

01:53:43  6   Defendant on each of these four substantive areas.  And

01:53:46  7   we'll begin with the area of infringement.

01:53:51  8          Plaintiff seeks judgment as a matter of law that

01:53:54  9   the claims asserted have been infringed either both

01:53:59 10   literally or under the Doctrine of Equivalents.

01:54:02 11          Defendant seeks judgment as a matter of law that

01:54:05 12   the asserted claims have not been infringed either

01:54:08 13   literally or under the Doctrine of Equivalents.

01:54:09 14          I'll hear those competing arguments from both

01:54:12 15   sides concurrently.

01:54:15 16          I'll begin with the argument from Plaintiff, and

01:54:17 17   then hear argument from Defendant.

01:54:19 18          MR. STRABONE:  Thank you, Your Honor.

01:54:19 19          USAA moves for judgment as a matter of law that no

01:54:23 20   reasonable jury could find that the accused Wells Fargo --

01:54:27 21   Fargo product does not infringe the asserted claims of the

01:54:31 22   '571 patent and the '090 patent.

01:54:32 23          THE COURT:  Let me stop you, counsel.  Are you

01:54:34 24   going to read a 20-page document to me?

01:54:37 25          MR. STRABONE:  Half a page, Your Honor.

01:54:38   1          THE COURT:  All right.  Please continue.

01:54:40   2          MR. STRABONE:  Thank you, Your Honor.

01:54:41   3          Under literal infringement or under the Doctrine

01:54:44   4   of Equivalents.  Patent claims literally infringe if the

01:54:47   5   accused device includes each and every element of the

01:54:49   6   claim.

01:54:49   7          And under the Doctrine of Equivalents, a product

01:54:51   8   or process that does not literally infringe a patent may

01:54:56   9   nevertheless be held to infringe if it performs

01:55:00  10   substantially the same function in substantially the same

01:55:02  11   way to achieve substantially the same result.

01:55:05  12          Wells Fargo does not dispute that the Wells Fargo

01:55:08  13   mobile deposit application practices each and every element

01:55:11  14   of the asserted claims, except the capture element.

01:55:13  15          The testimony of Professor Conte and

01:55:15  16   Dr. Villasenor and Mr. Wood has shown that the Wells Fargo

01:55:19  17   mobile deposit application practices each and every element

01:55:21  18   of the asserted claims, including the capturing element.

01:55:25  19          Further, the testimony of Professor Conte has

01:55:28  20   shown that the Wells Fargo mobile deposit application

01:55:31  21   performs substantially the same function as the asserted

01:55:35  22   claims in substantially the same way to obtain

01:55:37  23   substantially the same result.

01:55:39  24          Based on the evidence presented at trial, no

01:55:41  25   reasonable jury could find that the accused Wells Fargo

01:55:44  1  product does not meet every limitation of the asserted

01:55:46  2  claims, and no reasonable jury could find that the accused

01:55:49  3  Wells Fargo product does not perform substantially the same

01:55:52  4  function as the asserted claims in substantially the same

01:55:55  5  way to achieve substantially the same result.

01:55:58  6      Therefore, USAA respectfully requests that the

01:56:00  7  Court enter judgment in its favor on the issue of

01:56:04  8  infringement under both literal infringement and the

01:56:05  9  Doctrine of Equivalents and hold that Defendant has

01:56:07  10  infringed the '571 patent and the '090 patent.

01:56:09  11      Thank you, Your Honor.

01:56:10  12      THE COURT:  Let me hear a responsive argument and

01:56:14  13  argument on their own behalf from Defendant as to this

01:56:17  14  matter.

01:56:18  15      MR. MCCULLOUGH:  Thank you, Your Honor.  May it

01:56:23  16  please the Court.

01:56:23  17      Wells Fargo submits that judgment as a matter of

01:56:27  18  law should be entered in favor of Defendant on Plaintiff's

01:56:29  19  claims for infringement, both literal and under the

01:56:33  20  Doctrine of Equivalents.

01:56:33  21      First, Plaintiff failed to establish that Wells

01:56:37  22  Fargo uses the DevApp code, which is the only code accused

01:56:40  23  of infringement.

01:56:41  24      Plaintiff's infringement case for the disputed

01:56:43  25  capture limitation rests entirely on a single source code

01:56:48  1   function in Exhibit DTX-11 at Pages 194 through 198 which

01:56:53  2   has also been presented as DTX-611.

01:56:59  3        This code is from the folder DevApp and USAA's

01:57:00  4   expert Dr. Conte testified he has no understanding of what

01:57:05  5   DevApp means.  That's from the October 31st trial

01:57:07  6   transcript in the afternoon at Page 42, Lines 13 through

01:57:11  7   20.

01:57:11  8        As Mr. Wood explained, DevApp is internal Mitek

01:57:15  9   testing code that is not used by Wells Fargo.  That's the

01:57:18  10  November 4th morning trial transcript at 69, Lines 7

01:57:23  11  through 18.

01:57:23  12       Thus, there's no evidence tying Wells Fargo in any

01:57:28  13  manner to the only source code accused of infringement.

01:57:30  14       Second, Plaintiff has failed to establish literal

01:57:34  15  infringement.  Plaintiff failed to establish that Wells

01:57:38  16  Fargo captures "when," which the Court has construed as at

01:57:41  17  or after, the monitoring criterion is passed.

01:57:44  18       Mr. Wood testified that the accused MiSnap code

01:57:48  19  captures the image from the camera first and then performs

01:57:51  20  IQA.  Both experts -- both infringement experts agree that

01:57:55  21  the functional steps performed by the code include

01:57:58  22  receiving the image from the camera first and then

01:58:00  23  performing IQA analysis later.

01:58:02  24       Dr. Villasenor explains that such steps fail to

01:58:09  25  meet the Court's construction of "when" because the image

01:58:11  1   is not captured at or after the monitoring criterion has

01:58:13  2   passed.

01:58:14  3          Next, Plaintiff's literal infringement theory is

01:58:19  4   not capturing with the camera, as the claims require, and,

01:58:24  5   therefore, judgment as a matter of law should be entered.

01:58:26  6          Dr. Conte admitted on cross-examination that his

01:58:29  7   first and only infringement theory was the capture occurred

01:58:32  8   when the image was saved at the server.  That's the October

01:58:35  9   31st transcript in the morning at Page 125, Lines 15

01:58:41  10  through 22.

01:58:41  11         Dr. Conte further admitted that part of the basis

01:58:44  12  for his opinion was that the -- the image was not stored in

01:58:49  13  non-volatile memory until it was saved to the server.

01:58:51  14         On direct examination, Dr. Conte made a different

01:58:55  15  allegation that the moment of capture is when the image is

01:58:59  16  saved as a JPEG to a variable named docCaptureResults.

01:59:04  17  None of these theories involves the use of the camera, and

01:59:08  18  Dr. Conte does not allege otherwise.

01:59:10  19         The uncontroverted testimony of Mr. Wood and

01:59:13  20  Dr. Villasenor is that the code cited by Dr. Conte does not

01:59:16  21  involve the camera.

01:59:17  22         Additionally, Dr. Conte and Dr. Villasenor both

01:59:21  23  testified that the claims of the patent have -- make no

01:59:25  24  distinction between volatile and non-volatile memory.

01:59:30  25         Third, Plaintiff failed to establish infringement

01:59:33  1  under the Doctrine of Equivalents because Plaintiff failed

01:59:35  2  to present particularized testimony and linking argument

01:59:37  3  for the capture limitation.

01:59:38  4       Dr. Conte's analysis of the D -- of the Doctrine

01:59:42  5  of Equivalents is highly conclusory.  He fails to make any

01:59:46  6  comparison between the claim language in his proposed

01:59:49  7  equivalent and instead, merely asserts the ultimate

01:59:53  8  conclusion of equivalency.

01:59:55  9       Additionally, Plaintiff's Doctrine of Equivalents

01:59:56  10  evidence is subsumed within its literal infringement case

02:00:00  11  in violation of Ncube Corp. versus Seachange International,

02:00:05  12  436 F.3d 1317, from the Federal Circuit, 2006.

02:00:08  13       Moreover, Plaintiff's Doctrine of Equivalents case

02:00:13  14  fails to satisfy the all elements rule and show that Wells

02:00:18  15  Fargo has infringed each and every limitation of the

02:00:23  16  asserted patent.

02:00:23  17       Finally, prosecution history estoppel bars USAA's

02:00:27  18  proposed equivalent.  Wells Fargo incorporates its prior

02:00:33  19  motion for summary judgment on this subject, which was

02:00:36  20  Document No. 132.  And Wells Fargo further submits that the

02:00:38  21  trial testimony confirms that USAA should be estopped from

02:00:42  22  arguing the equivalent it advanced at trial.

02:00:45  23       All experts agree that the functional steps

02:00:48  24  performed by the code include receiving the image from the

02:00:50  25  camera first and then analyzing it later.

02:00:54  1      USAA's arguments relating to the Graham reference

02:00:57  2  during prosecution disclaimed this same process, and,

02:01:01  3  therefore, should estop USAA's DOE theories.

02:01:04  4      Therefore, Wells Fargo respectfully requests the

02:01:07  5  Court enter judgment as a matter of law on Plaintiff's

02:01:09  6  claims for infringement.

02:01:11  7      THE COURT:  Thank you, counsel.

02:01:12  8      The Court will next move to the issue of

02:01:16  9  willfulness.

02:01:17  10      Plaintiff has moved for judgment as a matter of

02:01:20  11  law that any infringement of Defendant was done willfully.

02:01:26  12      Defendant has moved for judgment as a matter of

02:01:28  13  law that any infringement was not willful.

02:01:32  14      Let me hear competing arguments on this same

02:01:35  15  substantive topic from both parties, again, beginning with

02:01:39  16  Plaintiff.

02:01:40  17      MR. STRABONE:  Thank you, Your Honor.

02:01:40  18      USAA moves for judgment as a matter of law that no

02:01:44  19  reasonable jury could find that Defendant has not willfully

02:01:47  20  infringed the asserted claims of the '571 and the '090

02:01:51  21  patents.

02:01:51  22      In particular, the testimony of Mr. Calman,

02:01:54  23  Mr. Bueche, Ms. Lockwood-Stein, Mr. Wood, and Mr. Ajami has

02:01:59  24  shown that Wells Fargo acted willfully when it infringed

02:02:03  25  the asserted claims, including by examining USAA's system

02:02:05  1  and leveraging design learning when creating its own

02:02:10  2  infringing system.

02:02:10  3          A finding of willfulness requires that Wells Fargo

02:02:14  4  acted egregiously, willfully, or wantonly when infringing

02:02:19  5  the patents-in-suit.  Infringement is egregious, willful,

02:02:22  6  or wanton when the actions of the Defendant are taken in

02:02:22  7  reckless or callous disregard of or with indifference to

02:02:27  8  the rights of the patentee.

02:02:27  9          The Defendant is indifferent to the rights of

02:02:29  10  another when it proceeds in disregard of a high or

02:02:32  11  excessive danger of infringement that is known to it or was

02:02:35  12  apparent to a reasonable person in its position.

02:02:37  13          USAA has introduced substantial evidence that

02:02:40  14  Wells Fargo willfully infringed the patents-in-suit,

02:02:42  15  including evidence that USAA marked its patent in December

02:02:47  16  2016.  USAA provided notice to Wells Fargo in August 2017,

02:02:50  17  and provided claim charts in February 2018.

02:02:53  18          There was evidence of internal Wells Fargo

02:02:56  19  documents showing that Wells Fargo had viewed screenshots

02:02:59  20  of USAA's marking page prior to the filing of this lawsuit,

02:03:02  21  as well as the continued release of different versions of

02:03:06  22  accused products since the filing of this lawsuit.

02:03:08  23          Based on the evidence presented at trial, no

02:03:11  24  reasonable jury could find that Wells Fargo has not

02:03:14  25  willfully infringed the patents-in-suit.  Therefore, USAA

02:03:17   1   respectfully requests that the Court enter judgment in its

02:03:20   2   favor on the issue of willfulness.

02:03:22   3          Thank you, Your Honor.

02:03:22   4          THE COURT:  Let me hear competing argument from

02:03:24   5   Defendant.

02:03:25   6          MR. MCCULLOUGH:  May it please the Court.

02:03:30   7          Wells Fargo submits that judgment as a matter of

02:03:34   8   law should be entered in favor of Defendant on Plaintiff's

02:03:37   9   claims for willful infringement.

02:03:38   10          First, USAA has failed to establish that Wells

02:03:41   11   Fargo knew of the '571 or '090 patents, which is a

02:03:45   12   prerequisite to finding willful infringement.  There is no

02:03:49   13   properly admissible evidence that Wells Fargo had pre-suit

02:03:52   14   knowledge of the patent, and Wells Fargo incorporates its

02:03:55   15   motion for summary judgment, as well as its motion in

02:03:57   16   limine related to the February 2018 email and all prior

02:04:02   17   argument on that subject.

02:04:02   18          Additionally, USAA adduced no evidence at trial

02:04:06   19   that Wells Fargo knew of the '090 patent in any manner.

02:04:09   20          Second, USAA has failed to establish any egregious

02:04:14   21   conduct by Wells Fargo that would support a finding of

02:04:16   22   willfulness.

02:04:17   23          USAA has not identified any improper conduct.  The

02:04:22   24   evidence it cites is generally not specific to auto

02:04:24   25   capture, and certainly not specific to the specific

02:04:28  1   sequence of steps that are required by USAA's claims.

02:04:30  2         Other evidence in the case, for example, PX-162,

02:04:36  3   evidences standard business discussions about the ground

02:04:39  4   rules for potential licensing discussions but does not

02:04:43  5   support a finding of improper or egregious conduct by Wells

02:04:46  6   Fargo.

02:04:46  7         In fact, shortly after the discussions on the

02:04:48  8   ground rules for future licensing discussions were

02:04:51  9   completed, USAA sued Wells Fargo.

02:04:53  10        USAA fails to identify any relevant or allegedly

02:05:00  11  egregious conduct by Wells Fargo in the interim after that

02:05:03  12  agreement was made, and, thus, that agreement and the

02:05:05  13  February 2018 email cannot support a finding of

02:05:10  14  willfulness.  Therefore, Wells Fargo requests that the

02:05:12  15  Court enter judgment as a matter of law that there has been

02:05:14  16  no willful infringement.

02:05:15  17        THE COURT:  Thank you, counsel.

02:05:16  18        All right.  Next let's turn to the issue of patent

02:05:23  19  eligibility.  While I said a few moments ago the Court

02:05:26  20  never has a problem with a lawyer trying to maintain its

02:05:29  21  posture in the record for potential argument at a later

02:05:33  22  stage, I am concerned about this for the following reasons.

02:05:37  23        Number one, the Court's previously issued a

02:05:42  24  lengthy and carefully considered ruling on the issue of

02:05:48  25  patent eligibility as a part of Document 283 on file in

02:05:52   1   this case.

02:05:52   2          The Court, as a part thereof, addressed the

02:05:58   3   Alice/Mayo analysis and found under Step 1 of that analysis

02:06:04   4   that the claims at issue in the patents-in-suit are not

02:06:06   5   directed to an abstract concept.

02:06:09   6          That's a question of law, clearly.  And Rule

02:06:17   7   50(a), as provided in the rule itself, is only as to

02:06:21   8   matters that have been fully heard and at issue during a

02:06:23   9   jury trial.

02:06:24  10          Step 1 of the Alice/Mayo analysis was not heard as

02:06:29  11   a part of this jury trial and was not properly heard as a

02:06:34  12   part of this jury trial because it's a matter for the Court

02:06:36  13   only to decide.

02:06:37  14          So I find that any arguments regarding Step 1 of

02:06:43  15   the Alice/Mayo analysis are not proper under Rule 50(a) for

02:06:47  16   argument at this point.

02:06:50  17          With regard to the Step 2 process under Alice and

02:06:55  18   Mayo, the Court's opinion at Document -- Document 283

02:07:01  19   clearly set forth that because the Court found the targeted

02:07:07  20   claims and patents were not directed to an abstract

02:07:10  21   concept, that they were patent eligible under Step 1, but

02:07:14  22   then alternatively and as a matter of caution, the Court

02:07:17  23   went on to look at the Step 2 process and found that there

02:07:23  24   were potentially questions of fact as to Step 2 that would

02:07:27  25   have precluded the granting of summary judgment.

02:07:29  1        But based on the Court's ruling that --

02:07:32  2  affirmatively that Step 1 was not directed to an abstract

02:07:36  3  concept, it was not appropriate for either party to put on

02:07:41  4  evidence of Step 2 in this trial and neither party put on

02:07:45  5  any evidence of Step 2 in this trial that I'm aware of.

02:07:48  6        Therefore, I don't know any basis upon which

02:07:52  7  patent eligibility, either under Step 1 or Step 2, could be

02:07:56  8  appropriate for consideration and argument under Rule 50(a)

02:07:59  9  of the Federal Rules of Civil Procedure, which by

02:08:02  10 definition are limited to issues that were fully heard by

02:08:05  11 the jury.

02:08:07  12       Under Step 1, nothing was heard because it's a

02:08:10  13 question of law.

02:08:10  14       Under Step 2, nothing was heard because the Court

02:08:14  15 ruled in advance of the trial the patents were eligible.

02:08:17  16       So there's been nothing under either Step 1 or

02:08:22  17 Step 2 presented that's been to this jury during this

02:08:24  18 trial.  Consequently, I don't find that Rule 50(a) applies,

02:08:30  19 and that argument at this juncture related to issues that

02:08:31  20 arise solely under Rule 50(a) would be appropriate.

02:08:34  21       I'm happy for counsel to make what statements they

02:08:37  22 want to for the record, but I don't intend to hear

02:08:41  23 affirmative argument, having determined that this is not an

02:08:44  24 appropriate issue for presentation to the Court under Rule

02:08:47  25 50(a).

02:08:50  1            MR. STRABONE:  Understood, Your Honor.  Could I

02:08:52  2    have a moment, Your Honor?

02:08:53  3            THE COURT:  Yes.

02:09:02  4            MR. STRABONE:  Thank you, Your Honor.

02:09:03  5            We are going to make a brief statement with

02:09:08  6    respect to Step 2.

02:09:09  7            THE COURT:  As I said, you may make a brief

02:09:11  8    statement.

02:09:12  9            MR. STRABONE:  Thank you, Your Honor.

02:09:13  10           THE COURT:  I'm not going to consider it argument

02:09:16  11   for a ruling by the Court though.

02:09:17  12           MR. STRABONE:  Understood.

02:09:17  13           In the Court's memorandum and opinion on Wells

02:09:18  14   Fargo's motion for summary judgment, pursuant to 35 U.S.C.

02:09:22  15   Section 101, the Court determined that there were material

02:09:24  16   issues of fact on the question of Alice Step 2.

02:09:28  17           Specifically, the Court found that Wells Fargo

02:09:29  18   proffers no evidence that the limitations providing

02:09:32  19   corrective feedback to the user to assist in satisfying the

02:09:36  20   monitoring -- monitoring criteria were well-known in the

02:09:39  21   industry.

02:09:40  22           Wells Fargo has presented no evidence to the jury

02:09:42  23   on that issue, nor has it presented evidence that the

02:09:45  24   elements of each claim, either individually or as an

02:09:49  25   ordered combination, were well-understood, routine, and

02:09:52  1   conventional in the -- in the industry.

02:09:54  2        As such, Wells Fargo has not met its burden to

02:09:57  3   prove ineligibility by clear and convincing evidence.  The

02:10:00  4   material issues of fact that the Court had identified in

02:10:02  5   its summary judgment order are now resolved.  There are no

02:10:05  6   facts to support Wells Fargo's defense.

02:10:07  7        No reasonable jury could find for Wells Fargo with

02:10:10  8   respect to Alice Step 2, and USAA requests that judgment be

02:10:14  9   entered in its favor with respect to Alice Step 2.

02:10:16  10        Thank you, Your Honor.

02:10:18  11        THE COURT:  All right.  Does Defendant care to be

02:10:19  12   heard on this matter?

02:10:21  13        MR. HILL:  Yes, Your Honor.  Just briefly.

02:10:22  14        We obviously disagree with the position that was

02:10:24  15   just advanced by the Plaintiff.  We completely agree with

02:10:28  16   the Court's characterization of the record and the Court's

02:10:31  17   conclusion with regard to the inappropriateness of a Rule

02:10:34  18   50(a) motion on an issue that was not tried.

02:10:36  19        The Court resolved the 101 issue as a pure matter

02:10:39  20   of law and Step 1 of the Alice analysis, and that concludes

02:10:45  21   the issue.  And thus nothing was tried and no Rule 50(a)

02:10:47  22   motion is appropriate, so we would concur with the Court's

02:10:50  23   conclusions there.  And I just note that for the record.

02:10:53  24        THE COURT:  All right.  Next, the Court will take

02:10:56  25   up and hear argument from the competing motions from the

02:10:59  1  parties regarding damages.

02:11:01  2       Given that these also are mirror image positions

02:11:07  3  of each other, let me hear from Plaintiff first, and then

02:11:10  4  I'll hear appropriate argument in response from Defendant.

02:11:14  5       MR. STRABONE:  Thank you, Your Honor.

02:11:15  6       Our positions may not be mirror images, as

02:11:19  7  Plaintiff's motion is specifically addressed towards lump

02:11:22  8  sum or fully paid-up licenses for future infringement.

02:11:24  9       So after Defendant has given its motion --

02:11:29 10       THE COURT:  I'll hear your argument, then I'll

02:11:31 11  hear Defendants.

02:11:32 12       But since you raised that question, counsel, let

02:11:35 13  me ask you this.

02:11:36 14       MR. STRABONE:  Yes.

02:11:36 15       THE COURT:  The alternative to a lump-sum royalty

02:11:38 16  is a running royalty.  When at all during this trial and

02:11:42 17  where in the transcript can you point me to one time where

02:11:47 18  anybody used the two words together, "running royalty"?

02:11:51 19       MR. STRABONE:  Your Honor, I --

02:11:52 20       THE COURT:  I never heard it throughout this

02:11:54 21  entire trial.

02:11:56 22       MR. STRABONE:  I understand that, Your Honor, and

02:11:58 23  perhaps I was wrong to focus on the phrase "lump sum," and

02:12:01 24  instead, it's -- the focus was on future infringement.

02:12:03 25       And the issue here is that lump sum and fully

02:12:05  1  paid-up license, which Mr. Gerardi has used in his expert

02:12:08  2  report, is a royalty based on an estimate of sales for both

02:12:12  3  past and future infringement of the patents-in-suit.

02:12:14  4          THE COURT:  I -- I well know what a lump sum is,

02:12:17  5  counsel.

02:12:17  6          MR. STRABONE:  Understood, Your Honor.

02:12:18  7          THE COURT:  I'm talking about the evidence that's

02:12:19  8  been presented before the jury.

02:12:21  9          MR. STRABONE:  Wells Fargo --

02:12:23  10          THE COURT:  Not what an expert may have written in

02:12:24  11  his report.

02:12:25  12          MR. STRABONE:  I understand, Your Honor.

02:12:27  13          Wells Fargo has presented no evidence concerning

02:12:29  14  the extent of future sales of the accused product.

02:12:33  15  Therefore, USAA requests that the Court enter judgment in

02:12:36  16  its favor that any damages award only reflect the damages

02:12:40  17  period through the date of trial.

02:12:42  18          THE COURT:  And what evidentiary basis do you have

02:12:44  19  to ask for that for affirmative relief from the Court under

02:12:47  20  Rule 50(a)?

02:12:48  21          MR. STRABONE:  There was no evidence in the

02:12:49  22  record, Your Honor, again, of any -- any information

02:12:52  23  concerning future infringement.  And all of the evidence in

02:12:56  24  the record given by both -- both Mr. Gerardi and

02:12:59  25  Mr. Weinstein and Mr. Calman were for damages through the

02:13:02   1   date of trial.

02:13:04   2        THE COURT:  And it's your position that those

02:13:08   3   witnesses clearly testified that their damages were limited

02:13:12   4   as of the date of trial and that in their opinion, there

02:13:19   5   would be future infringement and future royalties due

02:13:24   6   beyond the date of trial, given that their testimony was

02:13:27   7   limited to only infringement through the date of trial?

02:13:32   8        MR. STRABONE:  I think that's an accurate

02:13:35   9   characterization of my opinion -- of our position, Your

02:13:39   10  Honor.

02:13:39   11       THE COURT:  Again, there may have been -- there

02:13:53   12  may have been statements made by witnesses that the

02:13:56   13  testimony they were giving was as of the date of trial.

02:14:00   14  But I don't recall any evidence that indicated that because

02:14:05   15  the -- it was at the -- as of the date of trial the door

02:14:07   16  was opened to future royalties and that the jury could

02:14:10   17  expect there to be royalties due in the future for

02:14:14   18  continuing infringement beyond the evidence that was

02:14:17   19  presented.

02:14:18   20       Nowhere in the evidence do I find that the

02:14:21   21  witnesses actually indicated there would be any damages due

02:14:26   22  beyond the evidence that they offered at trial.

02:14:29   23       Can you point me to somewhere in the record where

02:14:32   24  a witness for the Plaintiff indicated affirmatively that

02:14:35   25  there would be future royalties due for ongoing

02:14:41  1  infringement and that there was anything beyond the damages

02:14:46  2  appropriate in this case more than the evidence through the

02:14:52  3  date of trial that they gave?

02:14:54  4          Yes, they did say this is as of the date of trial.

02:14:58  5  But that's a far cry from saying, and there will be damages

02:15:01  6  in the future for ongoing infringement beyond the date of

02:15:05  7  trial that we don't know what they are yet and so you need

02:15:07  8  to set a running royalty.  That was never presented to this

02:15:10  9  jury.

02:15:13  10          And if I'm mistaken, now's the time to point it

02:15:17  11  out to me, but that's my best recollection.

02:15:20  12          MR. STRABONE:  Your Honor, both Mr. Weinstein and

02:15:22  13  Mr. Gerardi presented on a per-transaction basis their

02:15:26  14  damages analysis.  And so that assumes that going -- that

02:15:30  15  those transactions will continue going forward.  And so

02:15:32  16  that any damages award is related to that per-transaction

02:15:36  17  basis.

02:15:37  18          THE COURT:  So you're telling me that where

02:15:39  19  damages evidence is put forward on a per-transaction basis,

02:15:43  20  that that, per se, can only be a running royalty and could

02:15:48  21  never properly be a lump-sum award?

02:15:51  22          MR. STRABONE:  Your Honor, I -- I don't think

02:15:53  23  there could never properly be a lump-sum award, but, again,

02:15:58  24  I -- I think the only evidence that the jury has heard has

02:15:59  25  been for this damages period through November 4th, 2019.

02:16:03  1          THE COURT:  Let me ask you this, counsel.  What

02:16:06  2   specific evidence is before the jury in this case from

02:16:10  3   which a running royalty could possibly be calculated?

02:16:14  4          MR. STRABONE:  I believe I just mentioned, Your

02:16:18  5   Honor, it would be on a transaction basis.  I -- I don't

02:16:20  6   have the -- the transcript in front of you.  And if you'd

02:16:22  7   like us to submit written briefing on this topic, we'd be

02:16:27  8   happy to do so.

02:16:27  9          THE COURT:  I don't think that's necessary.  Do

02:16:29  10  you have anything further for me on this?

02:16:31  11         MR. STRABONE:  Not on this, Your Honor.

02:16:33  12         THE COURT:  Let me hear from the Defendant

02:16:34  13  responsively and affirmatively urging its position.

02:16:37  14         MR. HILL:  Thank you, Your Honor.

02:16:38  15         Responsively first, Your Honor, Mr. McCullough

02:16:41  16  will urge our affirmative position for Rule 50 on damages

02:16:46  17  separately because it does focus on a distinct issue, Your

02:16:50  18  Honor.  It does not focus on this issue of lump-sum damages

02:16:52  19  that the Plaintiff have raised.

02:16:54  20         Your Honor, I would respond to the Plaintiff's --

02:16:57  21  again, this is a motion for judgment as a matter of law in

02:16:59  22  favor of the Plaintiff that they're making.  We have no

02:17:01  23  burden on damages.  We don't have to put on any damages

02:17:07  24  evidence.

02:17:07  25         And the question here in a Rule 50(a) context is,

02:17:11  1  is there any evidence from which a reasonable jury could

02:17:18  2  make a finding about future damages?  And if there's not,

02:17:20  3  it doesn't mean Plaintiff is entitled to a judgment of any

02:17:24  4  sort.  It means the Plaintiff has failed to present

02:17:25  5  sufficient evidence to support a future damages

02:17:26  6  calculation.

02:17:27  7       And the Court is absolutely correct, they have

02:17:30  8  only presented a damages model in this case through the

02:17:33  9  date of trial.  That was their choice.

02:17:35  10      We rebutted that damages theory with an expert who

02:17:39  11  criticized and came up with his own number for that period.

02:17:42  12  But they chose the period to present, and that's what they

02:17:45  13  moved forward on, Your Honor.

02:17:46  14      There is no -- no evidence in the case that they

02:17:50  15  have presented that the damages would continue past the

02:17:53  16  date of trial or what or how those damages for any future

02:17:58  17  dates should be calculated.  They have no evidence of

02:18:02  18  damages for an ongoing infringement or for an ongoing

02:18:06  19  royalty.

02:18:06  20      Thus, the Plaintiff, Your Honor, has failed to

02:18:08  21  present any evidence of future damages, and they have no

02:18:11  22  entitlement to such.  And more importantly, in the Rule 50

02:18:16  23  context, they have no way to preclude any argument the

02:18:19  24  Defendants would have about future damages because, again,

02:18:22  25  we bear no burden here, Your Honor.

02:18:23   1          The availability of lump-sum damages for the life

02:18:27   2   of the patents is within the jury's discretion to award if

02:18:31   3   they believe that that is the appropriate measure of

02:18:35   4   damages in the case.  It is not dependent on the

02:18:38   5   Plaintiff's choice of how they chose to present their

02:18:41   6   model.

02:18:41   7          The jury can award damages to compensate for the

02:18:45   8   infringement if they believe, based upon the evidence, that

02:18:49   9   a lump-sum award is what would have resulted from the

02:18:53   10  hypothetical negotiation.  And we believe there is evidence

02:18:54   11  in the case that -- from which the jury can conclude that a

02:19:00   12  lump sum would be the most appropriate award.

02:19:02   13         And based on that, Your Honor, we think the

02:19:04   14  Plaintiff's motion should be denied in its entirely, and we

02:19:08   15  will separately urge our motion regarding damage issues.

02:19:11   16         THE COURT:  Let me hear Defendant's affirmative

02:19:16   17  motion.

02:19:16   18         MS. GLASSER:  Your Honor, may I be heard briefly

02:19:19   19  on the issue?

02:19:19   20         THE COURT:  I'll let you follow up after I hear

02:19:22   21  this.  That will be a better structure, I think.

02:19:24   22         MR. MCCULLOUGH:  Thank you, Your Honor.

02:19:25   23         Wells Fargo moves for judgment as a matter of law

02:19:27   24  on the issue of damages for two reasons.

02:19:29   25         First, USAA has failed to properly apportion the

02:19:32   1   value of its inventions, and, therefore, cannot support its

02:19:35   2   claims for damages.

02:19:36   3          USAA's damages expert, Mr. Weinstein, agreed the

02:19:41   4   goal of the hypothetical negotiation is to value the

02:19:43   5   invention of the patents-in-suit, which is different from

02:19:45   6   the value of mobile remote deposit capture as a whole.

02:19:48   7          The accused feature is a specific form of

02:19:51   8   automatic capture, and Mr. Weinstein agreed that the

02:19:55   9   accused mobile apps include numerous unpatented features.

02:20:00   10          Mr. Weinstein testified at trial that the evidence

02:20:03   11   he relied on to reach his opinions as to damages were

02:20:07   12   not -- was not specific to auto capture and instead related

02:20:12   13   to mobile deposit generally.

02:20:12   14          Additionally, USAA has failed to prove the

02:20:16   15   conditions necessary to support the application of the

02:20:21   16   entire market value rule.

02:20:21   17          Finally, Mr. Weinstein also relied on a flawed

02:20:24   18   apportionment factor from USAA's other damages expert,

02:20:26   19   Mr. Calman.  Mr. Calman's apportionment factor was based on

02:20:31   20   the analyses that were overbroad and included the value of

02:20:34   21   unaccused features.  Thus, Mr. Calman's testimony cannot

02:20:36   22   provide the apportionment necessary to support USAA's

02:20:39   23   claims for damages.

02:20:43   24          THE COURT:  All right.  Counsel, anything further?

02:20:45   25          MR. MCCULLOUGH:  Yes, Your Honor.

02:20:47 1          Next, judgment as a matter of law is warranted on

02:20:49 2   pre-suit damages because no reasonable jury would have

02:20:52 3   sufficient basis to find that Plaintiff sufficiently marked

02:20:55 4   the patents-in-suit or otherwise notified Defendant, Wells

02:20:59 5   Fargo, of infringement.

02:21:01 6          And it's undisputed that USAA did not mark any

02:21:04 7   product with the '090 patent.

02:21:07 8          As to the '571 patent, the only evidence of

02:21:10 9   marking presented was PX-1062.  However, the evidence that

02:21:15 10  that notification was publicly available is legally

02:21:20 11  insufficient, and Plaintiff has failed to prove that the

02:21:22 12  product was properly marked as of December 2016 or any

02:21:26 13  other date.

02:21:27 14         Additionally, Plaintiff has put forth no properly

02:21:31 15  admissible evidence that it put Defendant on notice of

02:21:34 16  infringement.  And, again, I incorporate Wells Fargo's

02:21:37 17  prior motion for summary judgment and motion in limine

02:21:39 18  relating to the February 2018 email that Wells Fargo

02:21:44 19  objects to.

02:21:45 20         Further, there is no -- there's no evidence at all

02:21:53 21  that USAA put Wells Fargo on notice of the '090 patent in

02:21:55 22  any manner.

02:21:57 23         Finally, there's no evidence that would allow a

02:22:01 24  reasonable jury to find that Defendant was aware not only

02:22:04 25  of the patents but of alleged infringement of either the

02:22:08  1    '571 or '090 patents.

02:22:09  2            And, Your Honor, may I confer with counsel?

02:22:13  3            THE COURT:  You may confer.

02:22:22  4            MR. HILL:  Your Honor, if I may, just to assist

02:22:26  5    Mr. McCullough here.

02:22:26  6            There is one additional item, Your Honor, that

02:22:30  7    joins back into this point we started with, which is the

02:22:30  8    absence of evidence of future damages.  Plaintiff has

02:22:33  9    presented no evidence of future damages on a go-forward

02:22:36  10   basis, and so we would move on a Rule 50(a) motion with

02:22:40  11   regard to that, while the jury is entitled to make a

02:22:43  12   lump-sum award, they are not entitled to entertain.  And

02:22:47  13   the Plaintiff has presented no evidence to support any kind

02:22:50  14   of go-forward royalty or continuing damages for future

02:22:53  15   periods.  They presented no evidence on that point.

02:22:56  16           THE COURT:  All right.  I'll hear follow-on

02:22:59  17   argument from additional Plaintiff's counsel.

02:23:01  18           Ms. Glasser?

02:23:05  19           MS. GLASSER:  Thank you, Your Honor.

02:23:05  20           So just to clarify a few points regarding the

02:23:11  21   concept of future damages.  As I believe the parties are in

02:23:15  22   agreement and the Court, of course, is aware, the jury is

02:23:18  23   charged with determining damages for acts of infringement

02:23:22  24   that have occurred as of the date of trial.

02:23:26  25           The Plaintiff has proceeded here on a damages

02:23:30  1  theory that includes damages for the specific acts of

02:23:34  2  infringement that have occurred as of date of trial.

02:23:38  3       The Defendant's expert responded with a different

02:23:41  4  theory but a theory that similarly was based on specific

02:23:45  5  acts of infringement through trial.

02:23:47  6       The Plaintiff had no obligation, and, in fact, no

02:23:52  7  ability to ask the jury to calculate damages for acts of

02:23:57  8  infringement that have not yet occurred.  Those would be

02:24:00  9  the matter, if they continue -- if the infringement

02:24:05  10  continues post-trial, that would either be a matter for a

02:24:08  11  new lawsuit or for a request for equitable relief before

02:24:12  12  this Court.

02:24:12  13       THE COURT:  And let me ask you, Ms. Glasser, just

02:24:15  14  hypothetically.  Hypothetically, if the Court were to leave

02:24:22  15  this issue open for the jury and the jury were to return a

02:24:27  16  verdict finding infringement and awarding some amount of

02:24:32  17  money as adequate compensation, how would you propose the

02:24:37  18  Court to determine and on what basis does the Court have

02:24:44  19  any evidence before it from which it could possibly

02:24:47  20  determine what an accurate running royalty would be in the

02:24:50  21  future?

02:24:52  22       MS. GLASSER:  So I can -- by the way, I believe

02:24:55  23  that the verdict form -- although I can check, I believe

02:24:58  24  the parties have agreed the verdict form should include

02:25:01  25  specifically damages just through the date of trial.

02:25:03  1          The Court, of course, considers --

02:25:05  2          THE COURT:  We'll talk about the verdict form and

02:25:07  3  the charge later, and they're the Court's charge and the

02:25:10  4  Court's verdict form, but I understand the parties have

02:25:12  5  registered their positions.

02:25:15  6          MS. GLASSER:  Yeah.  So if hypothetically we're in

02:25:18  7  a scenario in the future where we're down a path of a

02:25:22  8  request by the Plaintiff for an ongoing royalty

02:25:25  9  post-trial --

02:25:25  10          THE COURT:  Let's -- let's say that I follow your

02:25:27  11  suggestion and there's a verdict form that has an

02:25:31  12  award of -- a monetary amount for damages through the date

02:25:34  13  of trial, end of story, jury brings back a verdict that

02:25:38  14  awards some amount of money in that question or that

02:25:43  15  answer, what -- and then afterward at some post-trial date

02:25:46  16  I have a motion to award a running royalty urged by you,

02:25:50  17  how are you going to tell me that from the record in this

02:25:54  18  case I could possibly chart a clear and discernible path to

02:25:58  19  establishing a set running royalty?

02:26:02  20          MS. GLASSER:  So as -- as the Court is aware,

02:26:06  21  post-trial royalties are subject to a form of modified

02:26:13  22  Georgia-Pacific analysis.  It's not identical to the

02:26:15  23  original one, but typically, the starting point for the

02:26:19  24  analysis is taking the jury's verdict and determining if it

02:26:22  25  can be split into a per unit.

02:26:24  1        In this particular instance, virtually any number

02:26:28  2  the jury would come back with, although I don't know quite

02:26:30  3  what they're going to do, most likely would be fairly

02:26:34  4  easily addressed in that manner because there is clear

02:26:38  5  evidence in the record of the number of mobile deposit

02:26:42  6  transactions that occurred during the damages period of

02:26:46  7  December 15th, 2016, up through approximately the date of

02:26:52  8  trial.

02:26:53  9        So I wouldn't want to pre-judge exactly what the

02:26:57  10  equitable factors would be, and then Your Honor would go

02:27:01  11  about doing that, but that would typically be a starting

02:27:04  12  point for the analysis.  And based on the evidence in the

02:27:06  13  record, there would be plenty to -- to work with and -- and

02:27:09  14  get a -- a fairly concrete calculation there.

02:27:12  15        THE COURT:  Well, I understand that in the posture

02:27:15  16  of a forward-looking royalty, there are modified factors

02:27:20  17  for the Court to consider.  And I understand that the Court

02:27:22  18  can award a running royalty at a higher rate than to an

02:27:30  19  underlying base rate that might have been established by

02:27:33  20  the jury's verdict, given the ongoing nature of the

02:27:36  21  infringing use.

02:27:39  22        However, all of that is premised upon there being

02:27:43  23  a clear and discernible running royalty rate establishable

02:27:48  24  from the verdict as returned by the jury.  And at that

02:27:52  25  future date when you're back before me on this hypothetical

02:27:56  1  scenario with that motion for a running royalty, this jury

02:27:59  2  is going to be long gone, and the ability to get any

02:28:02  3  additional guidance from them is going to be over.  And I

02:28:05  4  don't know how, given the evidence in this case, I could

02:28:09  5  take a single number awarded in a damages answer to the

02:28:14  6  verdict form and extrapolate backwards to determine a fair

02:28:19  7  and a discernible running royalty.

02:28:22  8          And if -- if there's evidence that allows that to

02:28:25  9  be done, you need to tell me about it.  But I'm sitting

02:28:27  10  here worried about the future, which is part of what I get

02:28:31  11  paid to do.  And I know what the evidence is.  And

02:28:34  12  anticipating that that scenario might come to pass, I have

02:28:38  13  really very valid concerns about the viability of what you

02:28:43  14  tell me should be -- should be readily discernible from

02:28:49  15  what we have before us.

02:28:50  16          You telling me that and me being able to do it

02:28:54  17  based on the record and the verdict at a future date may be

02:28:59  18  two different things, which causes me a fair amount of

02:29:01  19  concern.

02:29:01  20          MS. GLASSER:  And I understand, Your Honor.  So

02:29:03  21  just to be more concrete -- and, again, I think the

02:29:05  22  situation there -- there are many cases out where Judges

02:29:09  23  have to do some extrapolation from the jury's verdict.  I

02:29:13  24  think this one is well within the range of what's

02:29:16  25  permissible.

02:29:17   1          In fact, here it's quite a bit more concrete.  Mr.

02:29:21   2   Bunt has reminded me of the specific number -- I mentioned

02:29:24   3   earlier there was a specific number in the record of the

02:29:27   4   number of deposits from which the expert's figures were

02:29:29   5   calculated.  Mr. Weinstein testified to that number, 231

02:29:35   6   million total deposits.

02:29:37   7          There's also very concrete evidence in the record

02:29:40   8   exactly how many of those deposits were auto capture.  And

02:29:44   9   so here, we -- we don't have a situation where we would

02:29:47  10   need to sort of pick a number and guess how to divide it

02:29:51  11   up.  We could discern and back out very easily what the per

02:29:55  12   unit number was.

02:29:57  13          And, in fact, there's not even the problem that

02:29:59  14   you end up with some cases where one expert is urging an

02:30:04  15   approach that really is truly a lump sum, just a number

02:30:07  16   that the parties allegedly would have agreed to.

02:30:10  17          Both parties' experts did adopt an approach that

02:30:15  18   considered specific transactions and then purported to pick

02:30:19  19   a number based upon them.  That was the approach of the

02:30:23  20   Defendant's experts, as well, although it was a -- a

02:30:26  21   different metric than the one used by the Plaintiff's

02:30:29  22   expert.

02:30:32  23          THE COURT:  Well, I hear what you say.  The

02:30:36  24   only -- the problem that I see is the damages evidence that

02:30:41  25   you put forward in this trial is not X number of deposits

| | |
|---|---|
| 02:30:46 | 1 |
| 02:30:52 | 2 |

02:30:46  1  with auto capture remote deposit times X amount per deposit

02:30:52  2  gives me my damages ask that I presented to the jury.

02:30:56  3       Your damages ask is based on additional business

02:30:59  4  that they would have gotten from customers that they didn't

02:31:02  5  get.  Your ask is based on building branch banks that don't

02:31:07  6  have anything to do with a rate per auto capture deposit

02:31:11  7  that was made.

02:31:12  8       Your evidence has to do with an ecosystem of some

02:31:17  9  sort that's in the record.  Your damages evidence is not

02:31:22  10  this many transactions times this rate gives you this

02:31:25  11  dollar amount of damages.  It's not nearly that

02:31:27  12  straightforward, Ms. Glasser.

02:31:29  13       And so telling me because there's a -- a

02:31:31  14  supposedly known number of remote auto capture deposits,

02:31:38  15  Judge, you can just easily back into a clear number for a

02:31:41  16  running royalty, that might be the case if your damages

02:31:44  17  model was rate times base equals ask.  But your damages

02:31:50  18  model is very different than that.

02:31:52  19       MS. GLASSER:  Well, to be clear, though, each of

02:31:54  20  the three components that add up to the total ask, each and

02:31:58  21  every one of those was tied to a specific number of

02:32:04  22  deposits and a specific figure.

02:32:07  23       And so, for example, the original calculation

02:32:09  24  based on the Zelle comparison was 60 cents per unit.  And

02:32:15  25  Mr. Weinstein went and walked through on a per transaction

02:32:17  1  basis exactly how he got to each of the numbers within each

02:32:22  2  category.

02:32:23  3       And so while I agree with Your Honor it's not as

02:32:27  4  easy as a case where somebody says it's 3 percent and then

02:32:30  5  we just go on and we -- we apply a 3 percent, the type of

02:32:33  6  theory here, nonetheless, turns out to be the same

02:32:38  7  construct where in the end you can back out a per unit

02:32:43  8  figure from the verdict.

02:32:44  9       And, of course, the fact that the -- the -- there

02:32:47  10  is no, you know, percentage rate in this case doesn't

02:32:50  11  change the underlying fundamentals, which is that Plaintiff

02:32:54  12  had only the ability and only the obligation to put on

02:32:59  13  evidence of damages for the actual acts of infringement

02:33:01  14  that have already transpired.

02:33:04  15       The future remedy for any future infringement post

02:33:07  16  trial is simply another issue for another day, either

02:33:10  17  through matters of equity or through another -- another

02:33:13  18  lawsuit or whatever the case may be.

02:33:24  19       THE COURT:  All right.  Do you have anything

02:33:25  20  further, Ms. Glasser?

02:33:27  21       MS. GLASSER:  Not on that issue.

02:33:29  22       THE COURT:  Anything further from Defendants on

02:33:30  23  this issue?

02:33:31  24       MR. HILL:  Your Honor, they presented a lump sum.

02:33:35  25  They don't want the jury to answer on that basis, and we

02:33:39   1   think the Court has identified the issue they've created

02:33:41   2   for themselves.  The jury is entitled to answer on the lump

02:33:44   3   sum royalty for these patents because that's the damage

02:33:48   4   model they've been given.

02:33:51   5           THE COURT:  All right.  With regard to the portion

02:34:00   6   of Defendant's affirmative motion under Rule 50(a)

02:34:03   7   concerning the topic of damages, I want to ask a question

02:34:06   8   regarding the marking issue or the pre-suit damages.

02:34:11   9           Don't we need to determine from the jury when the

02:34:14   10  damages period began with regard to marking and notice?

02:34:18   11  And is it possible that that could be different for each of

02:34:21   12  the two asserted patents?  What do Defendants say to that?

02:34:29   13          MR. MCCULLOUGH:  Your Honor, we would submit that

02:34:32   14  there is insufficient evidence of marking regardless, but

02:34:32   15  we certainly understand Your Honor disagrees and submits

02:34:37   16  that to the jury, and I think it is possible the jury could

02:34:38   17  come up with different damages periods for each of the

02:34:41   18  asserted patents.

02:34:45   19          THE COURT:  Let me ask the Plaintiffs to respond

02:34:46   20  to that same question.  Don't we need to determine when the

02:34:54   21  damages period began with regard to marking and notice, and

02:34:57   22  is it possible that's different for each of these two

02:34:59   23  patents?

02:35:00   24          MS. GLASSER:  So that's correct, Your Honor.  The

02:35:03   25  '571 patent, the evidence in the record and -- both

02:35:07  1   parties' experts testified to the period begins December

02:35:10  2   15th, 2016.

02:35:14  3         The '090 patent issued later.

02:35:17  4         THE COURT:  Right.

02:35:18  5         MS. GLASSER  And so that one, the issue is -- is

02:35:21  6   damages would accrue from the issue date.

02:35:24  7         The parties' damages experts are in agreement that

02:35:28  8   there's no distinction between how damages would be

02:35:30  9   calculated for the two patents, and it would add in this

02:35:33 10   case I think it's -- it's a moot point because it's --

02:35:37 11   there's only one infringement defense being asserted and it

02:35:41 12   applies equally to both patents.  There's no additional

02:35:45 13   defense being asserted that would permit the jury to come

02:35:47 14   up with a finding only on the '090 patent and to reject

02:35:51 15   infringement for the '571.

02:35:56 16         THE COURT:  All right.

02:35:59 17         MR. MCCULLOUGH:  Your Honor, may I say something

02:36:01 18   further?

02:36:02 19         THE COURT:  You may.

02:36:02 20         MR. MCCULLOUGH:  Two points.

02:36:03 21         One, on the '090 patent, there is no evidence --

02:36:07 22   and I'm not even sure there's an allegation of marking.

02:36:11 23   It's undisputed that the only patent listed on that page

02:36:15 24   was the '571.  And second, in response to Ms. Glasser, we

02:36:19 25   did ask Mr. Gerardi, our damages expert, to provide his

02:36:22   1   ultimate damages calculation for several different time

02:36:25   2   periods.  So I don't think it's agreed that the parties

02:36:27   3   are -- are in agreement on the damages period or that the

02:36:33   4   '090 and '571 patent should be treated the same.

02:36:36   5          THE COURT:  All right.  Thank you, counsel, for

02:36:38   6   your arguments regarding these competing motions under

02:36:41   7   Rule 50(a).

02:36:43   8          Let me give you my rulings.

02:36:45   9          With regard to the issues related to infringement,

02:36:50   10  both literally and under the Doctrine of Equivalents,

02:36:53   11  Plaintiff's motion for judgment as a matter of law that the

02:36:57   12  asserted claims have been infringed is denied.

02:37:00   13         Defendant's motion for judgment as a matter of law

02:37:04   14  that the asserted claims have not been infringed is denied.

02:37:07   15         With regard to the allegations regarding willful

02:37:11   16  infringement, Plaintiff's motion for judgment as a matter

02:37:17   17  of law that the asserted claims have been willfully

02:37:19   18  infringed is denied.

02:37:20   19         And Defendant's motion for judgment as a matter of

02:37:22   20  law that the asserted claims have not been willfully

02:37:26   21  infringed is denied.

02:37:27   22         With regard to the presentations made to the Court

02:37:33   23  today regarding Section 101 of the Patent Act and patent

02:37:41   24  eligibility, the Court has previously ruled as a matter of

02:37:47   25  law under the Alice/Mayo analysis, particularly Step 1 of

02:37:51  1   that analysis, that these claims are directed toward a --

02:37:55  2   are not directed toward an abstract concept, and,

02:37:59  3   therefore, are patent eligible.

02:38:00  4        There has been no evidence presented under Step 2

02:38:05  5   because the parties came to trial understanding the Court

02:38:07  6   had disposed of the eligibility issue as a matter of law

02:38:13  7   under Step 1.

02:38:13  8        The Court finds that under either Step 1 or

02:38:19  9   Step 2, none of those matters have been heard by this jury

02:38:22  10  nor were they presented to this jury as a part of this

02:38:25  11  trial.  And consequently, Court finds that any relief under

02:38:30  12  Rule 50(a) of the Federal Rules of Civil Procedure

02:38:33  13  regarding patent eligibility would be improper here.

02:38:37  14       And based on that, the Court denies any and all

02:38:39  15  requested relief by the parties with regard to the

02:38:42  16  eligibility issue.

02:38:43  17       With regard to the damages issue and Plaintiff's

02:38:47  18  affirmative motion under Rule 50(a) that a lump sum award

02:38:53  19  be excluded as a matter of law and the jury only be

02:38:59  20  permitted to award an amount that would be in effect a

02:39:03  21  running royalty, that motion is denied.

02:39:05  22       With regard to Defendant's motion for judgment as

02:39:09  23  a matter of law that no damages are appropriate because

02:39:12  24  Plaintiff has failed to properly apportion, no damages are

02:39:16  25  appropriate for pre-suit damages because of the assertion

02:39:20  1  that Plaintiff has failed to properly mark.

02:39:28  2       And as to the Defendant's motion that only a lump

02:39:33  3  sum could properly be awarded in this case based on the

02:39:35  4  evidence and as a matter of law under Rule 50(a), all of

02:39:38  5  those matters are denied, as well.

02:39:39  6       All right.  That appears to the Court to complete

02:39:45  7  argument and ruling on any issues raised by either

02:39:48  8  Plaintiff or Defendant under Rule 50(a).

02:39:50  9       With this, counsel, I have 20 minutes until

02:39:57  10  2:00 -- excuse me, until 3:00.

02:39:59  11       At 3:00 o'clock, I will begin an informal charge

02:40:04  12  conference in chambers to address the current submitted

02:40:07  13  version of the final jury instructions and verdict form.  I

02:40:11  14  would invite counsel for both parties to meet me in

02:40:15  15  chambers where I intend to take these matters up

02:40:20  16  informally, asking for and receiving hopefully full and

02:40:23  17  direct input from the parties about any and all areas where

02:40:27  18  they're not in agreement.

02:40:28  19       As I've indicated, after I have the benefit of

02:40:30  20  your fulsome input from both sides, I'll generate what I

02:40:35  21  believe to be the appropriate resulting final jury

02:40:38  22  instructions and verdict form, and after you've had an

02:40:41  23  opportunity to review them, I'll conduct a formal charge

02:40:46  24  conference on the record where any objections either party

02:40:48  25  believes are appropriate can be made.

02:40:50   1          All right.  We stand in recess until 3:00 o'clock.

02:40:54   2   I'll see you in chambers then.

02:40:57   3          COURT SECURITY OFFICER:  All rise.

02:40:58   4          (Recess.)

05:33:00   5          (Jury out.)

05:33:01   6          COURT SECURITY OFFICER:  All rise.

05:33:07   7          THE COURT:  Be seated, please.

05:33:50   8          Subsequent to the Court's hearing issues raised by

05:33:57   9   the parties under Rule 50(a) of the Federal Rules of Civil

05:34:03  10   Procedure, the Court adjourned to the chambers and met with

05:34:09  11   counsel and conducted an informal charge conference at

05:34:15  12   which time the Court sought and obtained full and

05:34:20  13   informative input and comments from counsel for the

05:34:22  14   competing parties as to the latest submissions regarding a

05:34:28  15   final jury instruction and verdict form.

05:34:30  16          Questions were asked, answers were given,

05:34:35  17   discussions were held, and the Court feels it benefitted by

05:34:40  18   the input and dialog during that informal charge

05:34:43  19   conference.

05:34:43  20          Subsequent to the completion of that informal

05:34:47  21   charge conference, the Court factored into its thinking the

05:34:51  22   various comments and input received and has subsequently

05:34:55  23   generated the current version before it of the final jury

05:34:59  24   instructions and verdict form.

05:35:00  25          The Court's provided those to counsel for the

05:35:04  1   parties with an opportunity to review the same.  And the

05:35:08  2   Court will now conduct a formal charge conference on the

05:35:11  3   record by which -- or during which either party, through

05:35:16  4   its counsel, may when they feel compelled, lodge such

05:35:20  5   objections as they deem appropriate to the existing and

05:35:24  6   most current version of those final jury instructions and

05:35:27  7   verdict form.

05:35:27  8         As is the Court's typical practice, I'd like to

05:35:32  9   ask one spokesperson for each Plaintiff and Defendant to go

05:35:39  10  to the podium; I'll go through first the final jury

05:35:41  11  instructions page-by-page.  As we go through them, at any

05:35:44  12  page where you believe something has been included that's

05:35:46  13  not proper and warrants an objection, you're free to make

05:35:50  14  it.

05:35:50  15        At each place on each page, if any, where you

05:35:55  16  believe something important that you've requested has been

05:35:57  17  omitted, you're entitled to lodge that objection if you

05:36:00  18  believe it's appropriate, and as we go through these

05:36:05  19  documents page-by-page, any other matters that you believe

05:36:07  20  the interest of your clients require you to object to,

05:36:10  21  you're free to make those objections.  But to make sure

05:36:16  22  that all issues are covered and to avoid any possible

05:36:19  23  oversights, the Court will do this on a page-by-page basis,

05:36:23  24  beginning first with the final jury instructions and then

05:36:26  25  turning to the verdict form.

05:36:27  1          So with that, whoever is going to address these

05:36:29  2  matters for Plaintiff, please go to the podium, together

05:36:33  3  with whoever is going to address these matters for

05:36:35  4  Defendant.

05:36:40  5          And that appears to be Mr. Rowles for Plaintiff

05:36:44  6  and Mr. Underwood for Defendant.

05:36:46  7          MR. ROWLES:  Yes, Your Honor.

05:36:46  8          THE COURT:  Okay.  Let's turn, gentlemen, to the

05:36:50  9  final jury instructions beginning with the cover page or

05:36:53  10  Page 1.  Are there any objections here from either party?

05:36:56  11          MR. ROWLES:  None for Plaintiff, Your Honor.

05:36:58  12          MR. UNDERWOOD:  None for Defendant.

05:36:59  13          THE COURT:  Turning then to Page 2, are there

05:37:01  14  objections to -- from either party?

05:37:02  15          MR. ROWLES:  None for Plaintiff, Your Honor.

05:37:04  16          MR. UNDERWOOD:  None from Defendant.

05:37:05  17          THE COURT:  Turning next to Page 3, are there

05:37:07  18  objections from either party?

05:37:09  19          MR. ROWLES:  None for Plaintiff, Your Honor.

05:37:11  20          MR. UNDERWOOD:  None from Defendant.

05:37:13  21          THE COURT:  Next is Page 4, are there any

05:37:16  22  objections?

05:37:17  23          MR. ROWLES:  None from Plaintiff, Your Honor.

05:37:19  24          MR. UNDERWOOD:  None from Defendant.

05:37:21  25          THE COURT:  Turning next to Page 5, are there

| | | |
|---|---|---|
| 05:37:23 | 1 | objections from either party? |
| 05:37:24 | 2 | MR. ROWLES:  None for Plaintiff, Your Honor. |
| 05:37:26 | 3 | MR. UNDERWOOD:  None from the Defendant. |
| 05:37:28 | 4 | THE COURT:  Turning next to Page 6 of the final |
| 05:37:31 | 5 | jury instructions, are there objections from either party? |
| 05:37:34 | 6 | MR. ROWLES:  None from Plaintiff, Your Honor. |
| 05:37:35 | 7 | MR. UNDERWOOD:  None from Defendant. |
| 05:37:37 | 8 | THE COURT:  Turning next to Page 7, are there |
| 05:37:40 | 9 | objections from either party? |
| 05:37:43 | 10 | MR. ROWLES:  None from Plaintiff, Your Honor. |
| 05:37:44 | 11 | MR. UNDERWOOD:  None from Defendant. |
| 05:37:45 | 12 | THE COURT:  Turning next to Page 8, are there |
| 05:37:48 | 13 | objections from either party? |
| 05:37:51 | 14 | MR. ROWLES:  None from Plaintiff, Your Honor. |
| 05:37:52 | 15 | MR. UNDERWOOD:  None from Defendant. |
| 05:37:53 | 16 | THE COURT:  Turning next to Page 9, are there |
| 05:37:58 | 17 | objections here from either party? |
| 05:38:00 | 18 | MR. ROWLES:  Your Honor, I'd reurge the trial |
| 05:38:05 | 19 | brief that was filed last night regarding a curative |
| 05:38:08 | 20 | instruction on the issue of comprising to respond to the |
| 05:38:11 | 21 | testimony of Dr. Villasenor yesterday. |
| 05:38:12 | 22 | THE COURT:  All right.  Well, the Court is |
| 05:38:14 | 23 | persuaded that these final jury instructions adequately, as |
| 05:38:20 | 24 | they presently stand, cover that issue.  So that objection |
| 05:38:22 | 25 | is overruled. |

05:38:23   1          MR. ROWLES:  Understood, Your Honor.

05:38:24   2          THE COURT:  Any other objections from either party

05:38:26   3   with anything -- with regard to anything on Page 9?

05:38:29   4          MR. ROWLES:  Not from Plaintiff, Your Honor.

05:38:30   5          MR. UNDERWOOD:  None from Defendant.

05:38:31   6          THE COURT:  Turning then to Page 10, anything by

05:38:34   7   way of objection here from either party?

05:38:36   8          MR. ROWLES:  Yes, Your Honor.  In the third full

05:38:41   9   paragraph beginning, I will now instruct, a relatively

05:38:46  10   minor objection, but I believe it's a duplicate of the same

05:38:49  11   paragraph on the next page which includes the statement

05:38:51  12   about the Doctrine of Equivalents, and so we'd request that

05:38:54  13   this paragraph, which I think is superfluous, be removed on

05:38:57  14   Page 10.

05:38:57  15          THE COURT:  All right.  I don't find that those

05:39:12  16   provisions are completely duplicative, although the

05:39:15  17   language of I now instruct is common.  I think these are

05:39:20  18   distinct, and I'm going to overrule that objection.

05:39:22  19          Anything else on Page 10 from either Plaintiff or

05:39:26  20   Defendant?

05:39:26  21          MR. ROWLES:  There is from Plaintiff, Your Honor,

05:39:29  22   and it -- it crosses into Page 11, but it's the sentence --

05:39:33  23   the last sentence beginning you should not compare the

05:39:36  24   accused product with any specific examples set out in the

05:39:40  25   patent, and then the following paragraph regarding the only

05:39:43   1   correct comparison being between the accused product and

05:39:45   2   the language of the asserted claims in -- under these facts

05:39:50   3   where the commercial embodiment of the patent owner is not

05:39:54   4   disputed to practice the claims of the asserted patent, we

05:40:00   5   believe such comparisons are appropriate, and so the

05:40:00   6   instruction beginning on Page 10 and going into the top of

05:40:06   7   Page 11 would be incorrect.

05:40:26   8            THE COURT:  That objection is overruled.

05:40:28   9            Anything else on Page 10 from either party?

05:40:30   10           MR. ROWLES:  Nothing more from Plaintiff, Your

05:40:34   11   Honor.

05:40:34   12           MR. UNDERWOOD:  None from Defendant.

05:40:35   13           THE COURT:  Turning then to Page 11, is there

05:40:37   14   objection here from either party?

05:40:38   15           MR. ROWLES:  Nothing more than I've already

05:40:40   16   stated.

05:40:41   17           MR. UNDERWOOD:  None from Defendant.

05:40:42   18           THE COURT:  In that case, we'll turn to Page 12,

05:40:46   19   and I'll ask if there's any objection here from either

05:40:48   20   party?

05:40:48   21           MR. ROWLES:  Nothing from Plaintiff, Your Honor.

05:40:49   22           MR. UNDERWOOD:  Your Honor, Defendant does have an

05:40:51   23   objection to the paragraph that is the second from the

05:40:55   24   bottom on Page 12 beginning with now you heard reference.

05:41:00   25   It is Defendant's position that this paragraph is a

05:41:04   1   misstatement of the All-Elements Rule.  In addition, Your

05:41:08   2   Honor, it is Defendant's position that this -- this

05:41:11   3   paragraph can do nothing other than cause confusion for the

05:41:15   4   jury, and as a result of both of those grounds, Your Honor,

05:41:19   5   we would request that it be excluded.

05:41:21   6            THE COURT:  Well, counsel, I'm going to overrule

05:41:24   7   your objection.  You'll see that the first sentence of the

05:41:26   8   immediately following paragraph addresses the All-Elements

05:41:30   9   Rule.  It makes it clear that that's still the governing

05:41:33  10   requirement here.

05:41:35  11            So in light of the coverage that immediately

05:41:39  12   follows this paragraph and makes it clear that all elements

05:41:42  13   must be present either literally or under the Doctrine of

05:41:45  14   Equivalents for a claim to be infringed, I'm going to

05:41:48  15   overrule your objection.

05:41:49  16            MR. UNDERWOOD:  Thank you, Your Honor.

05:41:50  17            THE COURT:  Anything else from either side on Page

05:41:52  18   12?

05:41:53  19            MR. ROWLES:  Not from Plaintiffs, Your Honor.

05:41:55  20            MR. UNDERWOOD:  None from Defendant.

05:41:56  21            THE COURT:  Turning then to Page 13, is there any

05:41:59  22   objection here from either party?

05:42:01  23            MR. ROWLES:  There is from Plaintiffs, Your Honor.

05:42:04  24   In the -- preceding the sentence beginning your

05:42:08  25   determination of willfulness should incorporate the

05:42:11  1   totality of the circumstances, Plaintiffs had previously

05:42:14  2   urged that the Court provide an instruction regarding

05:42:17  3   copying of a patented embodiment of the invention, in this

05:42:21  4   case, the commercial embodiment of the patent owner, and we

05:42:25  5   believe given the evidence adduced at trial that that'd be

05:42:29  6   an appropriate instruction for the jury to hear concerning

05:42:32  7   willfulness.

05:42:32  8          THE COURT:  And I've considered that position,

05:42:34  9   although I've determined that in light of the clear

05:42:37  10  instruction, that the totality of the circumstances should

05:42:41  11  be considered.  That in no way prohibits Plaintiff from

05:42:46  12  asserting its arguments in that regard.  But I don't feel

05:42:49  13  that I should zero in on a single circumstance when I've

05:42:55  14  instructed the jury that it is, in fact, the totality of

05:42:58  15  all circumstances that they should consider.  So that

05:43:01  16  objection is overruled.

05:43:03  17         MR. ROWLES:  Understood, Your Honor.

05:43:04  18         THE COURT:  Anything else from either party with

05:43:06  19  regard to Page 13?

05:43:07  20         MR. ROWLES:  Nothing else from Plaintiff, Your

05:43:08  21  Honor.

05:43:08  22         MR. UNDERWOOD:  Defendant does have an objection,

05:43:11  23  Your Honor.  This is in the middle of the largest paragraph

05:43:14  24  on Page 13.  We object to the portion of the sentence --

05:43:22  25  the sentence is you may find Wells Fargo's actions were

05:43:25   1   egregious.  That's how it begins.  But our objection is

05:43:28   2   specifically to the portion beginning, if it acted, and

05:43:33   3   then continuing to the end of the next sentence.  And our

05:43:37   4   objection is that this misstates the law in two respects.

05:43:46   5          I beg your -- I beg your pardon, Your Honor.

05:43:52   6          Your Honor, it's our position that this misstates

05:43:56   7   the law because it includes an instruction on recklessness,

05:43:59   8   and it also includes a variation of the deliberate

05:44:03   9   indifference instruction.  We believe there's no evidence

05:44:05   10  of that and also that it misstates the test for deliberate

05:44:08   11  indifference under Global-Tech.

05:44:11   12         Your Honor, we would also object to these

05:44:15   13  instructions because there is no requirement for knowledge,

05:44:20   14  and we would request that that be included in these

05:44:24   15  instructions.

05:44:26   16         THE COURT:  All right.  And I -- I've considered

05:44:30   17  these same objections, which were voiced in the informal

05:44:34   18  charge conference, and it's the Court's determination that

05:44:38   19  that objection should be and it is overruled.

05:44:41   20         MR. UNDERWOOD:  Thank you, Your Honor.

05:44:42   21         THE COURT:  Anything else on Page 13, gentlemen?

05:44:43   22         MR. ROWLES:  Nothing for Plaintiff, Your Honor.

05:44:47   23         THE COURT:  Anything further for Defendant on Page

05:44:49   24  13?

05:44:49   25         MR. UNDERWOOD:  Not from Defendant.

| | | |
|---|---|---|
| 05:44:51 | 1 | THE COURT:  Then we'll turn next to Page 14.  Is |
| 05:44:54 | 2 | there any objection here from either party? |
| 05:44:57 | 3 | MR. ROWLES:  Not from Plaintiff, Your Honor. |
| 05:44:58 | 4 | MR. UNDERWOOD:  None from Defendant. |
| 05:44:58 | 5 | THE COURT:  Turning next to Page 15, are there any |
| 05:45:03 | 6 | objections here for either party? |
| 05:45:07 | 7 | MR. ROWLES:  Not for Plaintiff, Your Honor. |
| 05:45:09 | 8 | MR. UNDERWOOD:  None from Defendant. |
| 05:45:10 | 9 | THE COURT:  Counsel, you'll note that at the |
| 05:45:13 | 10 | beginning -- excuse me, at the bottom portion of Page 15 |
| 05:45:17 | 11 | continuing through all of Page 16 and the top half of |
| 05:45:19 | 12 | Page 17, the 15 discreet Georgia-Pacific factors are set |
| 05:45:23 | 13 | forth. |
| 05:45:24 | 14 | Is it the parties' agreement that all 15 factors |
| 05:45:27 | 15 | should be charged to the jury in this case?  That was my |
| 05:45:29 | 16 | understanding.  I'd like to confirm it on the record. |
| 05:45:33 | 17 | MR. ROWLES:  That's my understanding, as well, |
| 05:45:35 | 18 | Your Honor. |
| 05:45:35 | 19 | MR. UNDERWOOD:  Same for Defendant. |
| 05:45:36 | 20 | THE COURT:  All right.  Then with that, let's turn |
| 05:45:40 | 21 | to Page 17, and I'll begin with the bottom half of that |
| 05:45:46 | 22 | page and ask if there's any matter set forth there that |
| 05:45:49 | 23 | either party feels compelled to lodge an objection in |
| 05:45:52 | 24 | regard to? |
| 05:45:53 | 25 | MR. ROWLES:  Not from Plaintiff, Your Honor. |

05:45:54   1          MR. UNDERWOOD:  Defendant has just a couple

05:45:58   2   objections to the paragraph that is at the very bottom of

05:46:02   3   Page 17.

05:46:03   4          First, Defendant would object to the language,

05:46:07   5   minimum amount, in the first sentence of that paragraph

05:46:11   6   because it is confusing and misleading to the jury.

05:46:14   7          Additionally, Defendant would object to the

05:46:17   8   language evidence of additional profits in the second

05:46:22   9   sentence.  It is Defendant's position that there's no

05:46:26  10   evidentiary support for the inclusion of that language.

05:46:29  11          And then, finally, Plaintiffs would object -- or

05:46:33  12   excuse me, Defendant would object to the final sentence in

05:46:38  13   the inclusion of the language referencing the exceeding of

05:46:41  14   the profits expected by the patentee because it is our

05:46:45  15   position there is no evidence of that, and it can only

05:46:48  16   cause confusion for the jury.

05:46:50  17          THE COURT:  All right.  That objection is

05:46:51  18   overruled.

05:46:52  19          Let's turn next to Page 18, and let me ask if

05:46:57  20   either party has an objection here.

05:46:59  21          MR. ROWLES:  None from Plaintiff, Your Honor.

05:47:02  22          MR. UNDERWOOD:  Defendant does have an objection

05:47:03  23   to the second to last paragraph, the paragraph beginning

05:47:08  24   with the sentence starting the earliest date, and

05:47:13  25   specifically, Defendant's objection is to the second

05:47:17   1   sentence of that paragraph, to the inclusion of the

05:47:22   2   November 14, 2017 date, Defendants contend that there is no

05:47:26   3   evidence of marking for the specific '090 patent and that

05:47:31   4   there's no Federal Circuit authority supporting marking of

05:47:34   5   a different -- supporting the idea that -- that marking of

05:47:37   6   a different patent can satisfy Section 287.

05:47:41   7        Along those same lines, it's Defendant's position

05:47:43   8   that evidence of notice of a different patent is

05:47:46   9   insufficient to provide notice of a related patent.

05:47:51   10       And for these reasons, Defendant would request

05:47:54   11  that the Court include the date of filing of the lawsuit in

05:47:59   12  place of the November 14, 2017 date because there is no

05:48:02   13  pre-suit actual or constructive notice for the '090 patent.

05:48:05   14       THE COURT:  That objection is overruled.

05:48:11   15       Anything further on Page 18 from either party?

05:48:14   16       MR. ROWLES:  Not from Plaintiff, Your Honor.

05:48:15   17       MR. UNDERWOOD:  None from Defendant.

05:48:18   18       THE COURT:  Turning next to Page 19, is there

05:48:21   19  objection here from either party?

05:48:22   20       MR. ROWLES:  Not from Plaintiff.

05:48:23   21       MR. UNDERWOOD:  None from Defendant.

05:48:24   22       THE COURT:  And, finally, turning to the last page

05:48:26   23  of the final jury instructions, Page 20, is there objection

05:48:30   24  here from either party?

05:48:31   25       MR. ROWLES:  Nothing from Plaintiff, Your Honor.

05:48:33    1          MR. UNDERWOOD:  None from Defendant.

05:48:34    2          THE COURT:  All right.  Counsel, let's next turn

05:48:35    3    to the verdict form which you have before you.  I'll follow

05:48:42    4    the same approach here with regard to the first page of the

05:48:46    5    verdict form.

05:48:48    6          Is there any objection to anything here from

05:48:51    7    either party?

05:48:52    8          MR. ROWLES:  Not from Plaintiff, Your Honor.

05:48:53    9          MR. UNDERWOOD:  None from Defendant.

05:48:56   10          THE COURT:  Turning next to Page 2, is there

05:48:58   11    objection from either party?

05:49:00   12          MR. ROWLES:  Not from Plaintiff.

05:49:01   13          MR. UNDERWOOD:  None from Defendant.

05:49:02   14          THE COURT:  Page 3, is there any objection from

05:49:04   15    either party?

05:49:05   16          MR. ROWLES:  Not from Plaintiff, Your Honor.

05:49:07   17          MR. UNDERWOOD:  None from Defendant.

05:49:08   18          THE COURT:  Turning next to Page 4 of the verdict

05:49:10   19    form wherein Question No. 1 is found, is there objection

05:49:13   20    from either party?

05:49:15   21          MR. ROWLES:  No objection from Plaintiff, Your

05:49:16   22    Honor.

05:49:16   23          MR. UNDERWOOD:  There is an objection, too, from

05:49:19   24    Defendant to the form of this question.

05:49:20   25          The first ground, Your Honor, is that Defendant

05:49:23  1  would object to the failure to include separate questions

05:49:29  2  on infringement, one for literal infringement and one for

05:49:33  3  infringement under the Doctrine of Equivalents.

05:49:35  4      It is Defendant's position that there's legally

05:49:37  5  insufficient evidence under Federal Circuit precedence --

05:49:42  6  precedent of infringement under the Doctrine of Equivalents

05:49:47  7  as it relates to the testimony of Dr. Conte in this case,

05:49:51  8  and for that reason, Your Honor, we would object to the

05:49:52  9  form of this question on that ground.

05:49:54  10      And then, additionally, Your Honor, Defendant

05:49:57  11  objects to the form of this question because we believe

05:50:02  12  that each separate claim should be listed such that the

05:50:06  13  jury would have to find infringement for each claim on an

05:50:11  14  individual basis because each claim of a patent is a

05:50:14  15  separate invention.

05:50:17  16      THE COURT:  Thank you, counsel.  Those objections

05:50:19  17  are overruled.

05:50:22  18      MR. UNDERWOOD:  Thank you, Your Honor.

05:50:22  19      THE COURT:  We'll turn next to Page 5 of the

05:50:25  20  verdict form wherein Question 2 is located.  Is there

05:50:28  21  objection here from either party?

05:50:29  22      MR. ROWLES:  Not from Plaintiff, Your Honor.

05:50:30  23      MR. UNDERWOOD:  None from Defendant.

05:50:31  24      THE COURT:  Turning next to Page 6 where Question

05:50:35  25  3 of the verdict form is located, is there objection here

05:50:37   1   from either party?

05:50:38   2          MR. ROWLES:  Not from Plaintiff, Your Honor.

05:50:39   3          MR. UNDERWOOD:  There is an objection from the

05:50:46   4   Defendant.  The Defendant objects to the form of this

05:50:48   5   question because it does not include a lump sum

05:50:52   6   instruction, and we believe that the evidence adduced in

05:50:54   7   this trial, both by Plaintiff and Defendant, is such that

05:50:58   8   only a lump sum would be appropriate, and as a result,

05:51:02   9   that the lump sum language should be included in this

05:51:05   10   question.

05:51:06   11          And then a separate ground, Your Honor, Defendant

05:51:11   12   objects to this question and would request a separate

05:51:15   13   question on the marking issue because we believe it should

05:51:20   14   be separate.

05:51:22   15          THE COURT:  Those objections are overruled.

05:51:23   16          We'll turn to Page 7 being the final page of the

05:51:27   17   verdict form, and I'll inquire, is there objection here

05:51:30   18   from either party?

05:51:31   19          MR. ROWLES:  No objection from Plaintiff.

05:51:32   20          MR. UNDERWOOD:  None from Defendant.

05:51:35   21          THE COURT:  All right.  Counsel, that will

05:51:36   22   complete the formal charge conference with regard to these

05:51:41   23   matters.

05:51:41   24          The Court will prepare, as is its practice, eight

05:51:49   25   hard copies of the written final jury instructions so that

05:51:53   1   each member of the jury can be told they'll have their own

05:51:58   2   written copy to take with them to the jury room during

05:52:01   3   their deliberations.

05:52:02   4        The Court will also prepare one clean copy of the

05:52:06   5   verdict form and those eight copies of the final jury

05:52:10   6   instructions together with the clean copy of the verdict

05:52:12   7   form will be delivered to the jury when they are instructed

05:52:16   8   to retire and deliberate after the completion of the

05:52:19   9   Court's final instructions and the closing arguments of

05:52:23   10  counsel, which will take place in the morning.

05:52:24   11       Are counsel aware of anything else the Court

05:52:28   12  should take up this evening before recessing until tomorrow

05:52:32   13  morning?

05:52:32   14       MR. ROWLES:  Nothing from Plaintiff, Your Honor.

05:52:33   15       MR. UNDERWOOD:  There is one thing from Defendant,

05:52:33   16  Your Honor.

05:52:36   17       I was just informed -- and I'm not trying to

05:52:38   18  reopen any of the -- the objection process that we just

05:52:41   19  covered, but I was just informed by my co-counsel that I

05:52:46   20  should have made a similar objection to Question 2 of the

05:52:52   21  verdict form, the objection being similar to that raised in

05:52:55   22  response to Question 1, which is that Wells Fargo would

05:52:59   23  request that willfulness be submitted such that the jury

05:53:05   24  would have to answer willfulness with respect to each of

05:53:08   25  the asserted claims.

05:53:10   1        THE COURT:  Well, that objection is overruled, and

05:53:21   2   to the extent you're making it, I guess you are unavoidably

05:53:25   3   asking to reopen, and I'll allow you to reopen for that

05:53:29   4   purpose, but I'll overrule your objection.

05:53:31   5        MR. UNDERWOOD:  Thank you, Your Honor.

05:53:31   6        THE COURT:  All right.  The formal charge

05:53:33   7   conference is complete.

05:53:33   8        Counsel, I will see you in the morning at 8:30.

05:53:36   9        We have had a discussion in chambers about

05:53:42  10   exchanging demonstratives and other matters for use in

05:53:47  11   closing arguments.  Please inform your lead counsel who

05:53:49  12   will be presenting closing arguments that I will be in

05:53:51  13   chambers by 7:30 in case there are any disputes that cannot

05:53:54  14   be worked out overnight during the meet and confer process.

05:53:58  15        But I intend to bring the jury in and begin my

05:54:02  16   final jury instructions as close to 8:30 in the morning as

05:54:06  17   possible.

05:54:06  18        With that, counsel, we stand in recess until

05:54:09  19   tomorrow morning.

05:54:09  20        COURT SECURITY OFFICER:  All rise.

05:54:15  21        (Recess.)

          22

          23

          24

          25

1                          CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     /S/ Shelly Holmes                      11/5/19
      SHELLY HOLMES, CSR, TCRR               Date
10    OFFICIAL REPORTER
      State of Texas No.: 7804
11    Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25